UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGEL BAKOV, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONSOLIDATED TRAVEL HOLDINGS GROUP, INC.; CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE; CRUISE OPERATOR INC. d/b/a BAHAMAS PARADISE CRUISE LINE; BAHAMAS PARADISE CRUISE LINE, LLC.; JAMES H. VERRILLO; and DONNA HIGGINS.<br><br>Defendants. | Case No. 1:15-cv-02980<br><br>Hon. Harry D. Leinenweber |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Angel Bakov ("Plaintiff"), on behalf of himself and all others similarly situated, through his attorney, Jeffrey Grant Brown, and for his Amended Class Action Complaint against Defendants, Consolidated Travel Holdings Group, Inc. ("CTH"), Consolidated World Travel, Inc. d/b/a Holiday Cruise Line ("HCL"), Cruise Operator Inc. d/b/a Bahamas Paradise Cruise Line ("BPL"), Bahamas Paradise Cruise Line, LLC ("BPL, LLC"), James H. Verrillo ("VERRILLO"), and Donna Higgins ("HIGGINS"), alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, the following:

I.  **NATURE OF THE ACTION**

1. HCL offers cruise packages.

2. HCL operates a cruise ship known as the Grand Celebration.

3. In an effort to market HCL's products and services, Defendants initiated (or directed to be made on their behalf) telephone calls.

4. Those telephone calls were made to the cellular telephones of Plaintiff and each of the members of the Class without prior express written consent[1] in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

5. The TCPA was designed to prevent calls and messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

6. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243,§ 11. Toward this end, Congress found that:

> "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only

---

[1] As of October 16, 2013, prior express **written** consent is required. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order (FCC Feb. 15, 2012) (amending 47 C.F.R. 64.1200(a)(2)).

> effective means of protecting telephone consumers from this nuisance and privacy invasion."

Id. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

7. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

8. As Judge Easterbrook recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> "The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance."

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

9. As Defendants know and as their records will reflect, neither Plaintiff nor the other Class members ever consented in writing, authorized, desired or permitted Defendants to make telephone calls to their cellular telephones.

10. By making such unauthorized telephone calls, Defendants caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited calls, and the monies paid to their cellular carriers for the receipt of such calls.

11. In order to redress these injuries, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited calling activities, and an award of statutory damages to the Class members under the TCPA, together with costs and reasonable attorneys' fees.

## II. JURISDICTION AND VENUE

12. This Court has federal question jurisdiction because this case arises out of a violation of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012).

13. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in Chicago, Cook County, State of Illinois, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant to this Complaint.

## III. PARTIES

*Plaintiff*

14. Plaintiff, Angel Bakov, is an individual domiciled in Cook County, Illinois.

*Defendants*

15. Defendant Consolidated Travel Holdings Group, Inc. ("CTH") is a holding company and a Florida corporation with its principal place of business at 2419 E Commercial Boulevard Suite 100, Fort Lauderdale, Florida 33308.

16. Defendant Consolidated World Travel, Inc., d/b/a Holiday Cruise Line ("HCL") is a corporation organized in and existing under the laws of the State of Florida with its principal place of business located 2121 W. Oakland Park Blvd., Suite 1, Fort Lauderdale, Florida 33311.

17. Defendant Cruise Operator Inc., d/b/a Bahamas Paradise Cruise Line ("BPC") is a Florida corporation with its principal place of business at 1 East 11th Street Suite 200, Riviera Beach, Florida 33404.

18. Defendant Bahamas Paradise Cruise Line, LLC. (BPC, LLC") is a Florida corporation with its principal place of business at 1 East 11th Street Suite 200, Riviera Beach, Florida 33404.

19. Defendant James H. Verrillo ("Verrillo") is a natural person and a resident of the State of Florida.

20. Upon information and belief, Verilo, individually and/or through his holding company, CTH, own, directs, and controls Defendants, HCL, BPC and BPC, LLC.

21. At all relevant times Defendant Donna Higgins ("Higgins") Higgins, was and continues to be the President and Marketing Manager of HCL.

22. Defendants are all "persons" as defined by 47 U.S.C. § 227(a)(2)(A).

### IV. FACTUAL BACKGROUND

23. Companies have employed advance technologies that make it easier to market their products and services. According to a recent report examining class actions under the TCPA in this District:

> ***Autodialers (also known as robocalls) automatically deliver a prerecorded message to a list of telephone numbers, and thus remove the need for human representatives***. These predictive dialers were developed to find better pacing (scheduling of dialing attempts) by collecting and analyzing data on the proportion of call attempts that are answered, durations of time from call initiation to answer, and durations of service. The technology was designed to minimize both the time that telemarketers must spend waiting between conversations and amount of abandoned calls experienced

     by consumers.[2]

24. At all relevant times, Plaintiff was the subscriber of the cellular telephone number ending in 1521.

25. In or around February 2015, Plaintiff began to receive telephone calls to his cellular telephone from a calling number listed as 1 (773) 453-7311, as identified by Plaintiff's caller identification system.

26. On or about March 26, 2015, Plaintiff again received a telephone call to his cellular telephone from a telephone number listed as 1 (773) 453-7311.

27. Upon answering the call and saying "hello", a prerecorded message and/or artificial voice identified the speaker as "Jennifer" from "Holiday Cruise Line."

28. "Jennifer's" responses were automated and developed using interactive voice or voice automation technology.

29. "Jennifer" stated that the call was regarding the promotion of a cruise with Holiday Cruise Line.

30. "Jennifer's" voice was robotic and the lacked human responses when Plaintiff attempted to have a conversation with "Jennifer".

31. "Jennifer's" responses were limited and could only be prompted when Plaintiff responded to simple "yes" or "no" questions such as: "Please verify that you are over the age of 18".

---

[2] Institute for Consumer Antitrust Studies, Loyola University Chicago School of Law, THE TELEPHONE CONSUMER PROTECTION ACT OF 1991: ADAPTING CONSUMER PROTECTION TO CHANGING TECHNOLOGY 7 (Fall 2013) (emphasis added). The report "was made possible through a cy pres distribution from a class action involving the TCPA in the Northern District of Illinois under the supervision of Senior Judge William Hart and Magistrate Judge Morton Denlow." *Id.* at 2.

32. On information and belief, the cruise to which the call referred was aboard a cruise ship called "The Grand Celebration."

33. The website for "Holiday Cruise Line" is www. hclvacation.com (the "Website").

34. HCL is the registrant of the Website.

35. On the Website, HCL asks persons viewing the site to: "Enjoy Cruising With Us On The Grand Celebration."[3]

36. HCL, acting in conjunction with, as an agent of, and/or wholly owned company of Defendants CTH, BPC, BPC, LLC., and Verillo, initiated the telephone calls to Plaintiff's cellular telephone in violation of the TCPA by utilizing an automatic telephone dialing system.

37. On information and belief, Defendants made and continue to make telephone calls to Plaintiff's and the Class members' cellular telephones without prior express written consent as part of its advertising campaign.

38. Defendants made or have made on its behalf, the same or substantially the same calls *en masse* to a list of thousands of cellular telephone numbers or randomly generated phone numbers.

39. On information and belief, Defendants made these calls to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

40. Plaintiff and the Class members never consented to, requested, or otherwise desired or permitted Defendants to call their cellular telephones.

---

[3] Holiday Cruise Line, Home, http://www.hclvacation.com/index.html (last visited March 27, 2015).

41. Defendants used an "automatic telephone dialing system" (ATDS), as defined by 47 U.S.C. § 227(a)(1) to initiate the artificial or prerecorded message to Plaintiff's cellular telephone as prohibited by 47 U.S.C. § 227(b)(1)(A).

42. These telephone communications constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4).

43. Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

44. Defendants' calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

45. Defendants lacked "prior express consent" to contact Plaintiff on Plaintiff's cellular telephone as described herein.

46. On or about April 17, 2015, after Plaintiff initiated the present lawsuit against Defendants, Plaintiff received another automated telephone call to his cellular telephone from Defendants.

## V. RELATIONSHIP AMONG DEFENDANTS

47. CTH is the sponsor for the Consolidated Travel Holdings Group, Inc., Employee Stock Ownership Plan. The "sponsor's telephone number" is 954-630-9449. (The Stock Ownership Plan is attached hereto as **Exhibit A**).

48. When the aforesaid telephone number is called, a prerecorded voice answers and states: "Thank you for calling Travel Services".

49. When one reaches an operator at that number and asks to be connected to "Consolidated World Travel", the operator indicates that the caller has reached Consolidated World Travel.

50. HCL offers the caller a "free vacation" to the Bahamas aboard the "Grand Celebration," departing from Palm Beach, Florida.

51. Upon information and belief, "Travel Services", "Consolidated World Travel" and HCL are the same entities.

52. HCL is the registered fictitious name of Consolidated World Travel, Inc.

53. HCL operates at least two websites: holidaycl.com and holiday-cruiseline.com.

54. Holidaycl.com is registered to HCL. (See Domain Registration Information attached hereto as **Exhibit B**).

55. Holidaycl.com advertises a cruise aboard the Grand Celebration, departing from the Port of Palm Beach in South Florida.

56. Site holiday-cruiseline.com also advertises a cruise to the Bahamas aboard the Grand Celebration, departing from the Port of Palm Beach. The logo on holiday-cruiseline.com is nearly identical to that on holidaycl.com.

57. Holiday-cruiseline.com is registered to Defendant Verrillo, on behalf of the organization "Holiday Cruise Line," doing business out of 2419 E Commercial Blvd Suite 100, Fort Lauderdale, FL 33308. (See Domain Registration Information attached hereto as **Exhibit C**).

58. Defendant, Verrillo has also registered the website discountedcruise.info. While this site is inactive, it is registered to "James Verillo" on behalf of Holiday Cruise Line, doing business out of 2419 E Commercial Boulevard Suite 100, Fort Lauderdale, Florida 33308.

59. Defendant, CTH, the holding company owned by Verrillo and Daniel Lambert, also lists its address with the Florida Department of State as 2419 E Commercial Blvd Suite 100, Fort Lauderdale, Florida 33308 – the same address registered to several "Holiday Cruise Line" related websites.

60. 2419 E Commercial Blvd is owned by Paramount Building Group LLC, which in turn is owned by Verrillo as well as Daniel Lambert and Gerald Greenspoon.

61. The "Grand Celebration" – the cruise ship advertised by HCL – is owned by Bahamas Paradise Cruise Line (though it is unclear at this stage whether the ship is actually owned by Defendant Cruise Operator Inc. d/b/a Bahamas Paradise Cruise Line, or Defendant BPCL, LLC).

62. Defendant Verrillo, along with Daniel Lambert, Charles Kinnear, and Edward Levitan, owns Defendant Cruise Operator Inc. d/b/a Bahamas Paradise Cruise Line.

63. Defendant, BPCL, LLC, f/k/a Grand Holiday Cruise Line, is owned by Charles Kinnear and Edward Levitan.

64. A March 5, 2015 press release by the Bahamian Government identified Verrillo as "Director of Marketing Partnership" for Bahamas Paradise Cruise Line.

65. Jennier Poole, the former president of HCL, is identified in at least one source[4] as a Marketing Executive for National Travel Service, Inc., a company owned by Verillo and CTH.

66. All corporate entities also share the same registered agent: Greenspoon Marder – the law firm of Gerald Greenspoon, co-owner of Paramount Building Group LLC, which owns the 2419 E Commercial Blvd address.

67. For the Court's convenience, the above described relationships are diagrammed in **Exhibit D.**

68. Based on the above, upon information and belief, Defendant Verrillo, individually and through his holding company, CTH, directs, encourages, or otherwise exercises control and discretion over HCL and over HCL's dissemination of automated telephone calls to cellular telephones in violation of the TCPA, in conjunction with, and in order to benefit, Verrillo's other business ventures, Defendants, BPC and BPC, LLC.

69. Upon information and belief, HCL is wholly owned by Defendant CTH.

70. The Canadian Radio-television and Telecommunications Commission (CRTC) apparently reached the same conclusions, and on March 11, 2015, fined Defendant CTH $200,000 for "initiating telemarketing telecommunication via an Automatic Dialing- Announcing Device (ADAD) without obtaining express consent from the consumers."[5] These calls advertised free cruises.

---

[4] http://national-travel-service-inc.fort-lauderdale.fl.amfibi.company/us/c/5393819-national-travel-service-inc

[5] http://national-travel-service-inc.fort-lauderdale.fl.amfibi.company/us/c/5393819-national-travel-service-inc

*Defendant Verrillo*

71. Upon information and belief, Defendant Verrillo, by and through his companies named as Defendants and others yet to be named, is the chief architect of the abusive practices detailed herein.

72. Verrillo has faced allegations of deceptive and/or abusive practices related to cruise marketing and fees dating back over a decade.

73. In 2000, a final judgment and consent decree was entered against National Travel Services, Inc., Plaza Resorts, Inc., Daniel Lambert, and James H. Verrillo for engaging in unfair and deceptive practices related to the marketing and sale of cruises.

74. In 2010, a final consent judgment was entered against Imperial Majesty Cruise Line, L.L.C., another company affiliated or owned by Verrillo, related to charging fees above the advertised fare. The consent decree required Imperial Majesty Cruise Line to pay $16 million in fines and restitution.

75. Imperial Majesty's website – www.imperialmajesty.com – now redirects to a website for Bahamas Paradise Cruise Line.

### VI. CLASS ALLEGATIONS

76. Plaintiff brings this action, as set forth below, on behalf of himself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States who, within the four (4) years prior to the filing of this Complaint, received one or more telephone calls to their cellular telephone without prior express written consent of the called party from or on behalf of Defendants, placed by an automatic telephone dialing service or by an artificial or prerecorded voice (the "Class").

77. Excluded from the Class are Defendants, their subsidiaries and affiliates, James Verrillo and Donna Higgins; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judges to whom this case is assigned and any immediate family members thereof.

78. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

79. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by Defendants' wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

80. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a. whether Defendants' conduct constitutes a violation of the TCPA;

    b. whether the equipment Defendants (or someone on Defendants' behalf) used to make the calls in question was an automatic telephone dialing system as contemplated by the TCPA;

    c. whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

    d. whether Plaintiff and the Class are entitled to treble damages based on the

willfulness of Defendants' conduct; and

e. whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

81. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

82. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. As a person who received at least one telephone call from Defendants' ATDS without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the class. The interests of the Class members will be fairly and adequately protected by the Plaintiff and his counsel.

83. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class as a whole.

84. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually

litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII. CLAIMS ALLEGED

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227 versus Defendants
### (On behalf of the Class)

85. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

86. Defendants and/or their agents made telephone calls to the cellular telephone numbers of Plaintiff and the other Class members *en masse* without their prior express consent.

87. Defendants made the telephone calls, or directed them to be initiated on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

88. Defendants utilized equipment that made the telephone calls to Plaintiff's and other Class members' cellular telephones simultaneously and without human intervention.

89. Defendants made the telephone calls, or had them initiated on their behalf, using an artificial and/or prerecorded voice.

90. By making the telephone calls to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the calls on their cellular phones and

under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

91. Should the Court determine that Defendants' conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## COUNT II
### Violation of the TCPA, 47 U.S.C. § 227 versus VERRILLO AND HIGGINS
### (On Behalf of the Class)

92. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

93. The TCPA prohibits "any person" to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A)(iii).

94. HIGGINS, directly and/or jointly with Defendants, directed, implemented and controlled the calling campaign that used an "automatic telephone dialing system" (ATDS), as defined by 47 U.S.C. § 227(a)(1) to initiate the artificial or prerecorded messages to Plaintiff's and other Class Members' cellular telephones as prohibited by 47 U.S.C. § 227(b)(1)(A).

95. As a corporate officer and Marketing Manager of HCL, HIGGINS was directly involved in the implementation of the calling campaign that utilized an ATDS to initiate telephone calls to people's cellular telephones without their prior express written consent.

96. VERRILLO, directly and/or jointly with Defendants, directed, implemented and controlled the calling campaign that used an "automatic telephone dialing system" (ATDS), as defined by 47 U.S.C. § 227(a)(1) to initiate the artificial or prerecorded messages to Plaintiff's and other Class Members' cellular telephones as prohibited by 47 U.S.C. § 227(b)(1)(A).

97. As the owner of CTH, the holding company of HCL, VERRILLO was directly involved in the implementation of the calling campaign that utilized an ATDS to initiate telephone calls to people's cellular telephones without their prior express written consent.

98. HIGGINS and VERRILLO authorized the implementation of the calling campaign that utilized an ATDS to initiate telephone calls to people's cellular telephones without their prior express written consent.

99. HIGGINS and VERRILLO approved the implementation of the calling campaign that utilized an ATDS to initiate telephone calls to people's cellular telephones without their prior express written consent.

100. HIGGINS and VERRILLO had the authority to control the calling campaign that utilized an ATDS to initiate telephone calls to people's cellular telephones without their prior express written consent.

101. Upon information and belief, HIGGINS and VERRILLO directed and/or supervised employees of Defendants in utilizing the ATDS to initiate telephone calls to people's cellular telephones without their prior express written consent.

102. Upon information and belief, HIGGINS and VERRILLO determined the number and frequency of the telephone calls that were made using the ATDS.

103. Upon information and belief, HIGGINS and VERRILLO compensated Defendants' employees and/or third parties for utilizing an ATDS to initiate telephone calls to people's cellular telephones without their prior express written consent.

104. By authorizing the telephone calls to Plaintiff and the Class, HIGGINS and VERRILLO have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of HIGGINS' and VERRILLO's unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

105. Should the Court determine that HIGGINS' and VERRILLO's conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## VII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Angel Bakov, individually and on behalf of the Class, requests that the Court enter an Order as follows:

   A.   Certifying the Class as defined above, appointing Plaintiff Angel Bakov as the representative of the Class, and appointing his counsel as Class Counsel;

   B.   Awarding of actual or statutory damages;

   C.   Requiring Defendants to cease all cellular telephone call activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

   D.   Awarding of reasonable attorneys' fees and costs; and,

   E. Awarding such other and further relief that the Court deems reasonable and just.

Dated: May 21, 2015      Respectfully submitted,

                **Angel Bakov, Individually and on Behalf of**
                **All Others Similarly Situated.**

                By: /s/ Jeffrey Grant Brown
                One of the Attorneys for Plaintiff
                And the Proposed Putative Class

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
221 North LaSalle Street, Suite 1414
Chicago, IL 60601
312.789.9700