# EXHIBIT A

Having trouble viewing this email? View it in your browser .



Dear www , Welcome to **Holiday Cruise Line!**
We are proud to travel our cruise vacationers onboard the fun-filled Grand Celebration. the Exclusive Bahamas Cruise Ship of the Port of Palm Beach, and an Official Cruise Ship of Grand Bahama Island. For more information, please visit us at www.isreadytotravel.com

Your cruise experience is certain to be special aboard our luxurious *Grand Celebration*. This well-appointed cruise ship has all the charm and ambience of an intimate European ship, along with all the amenities typically found on larger cruise ships.

The *Grand Celebration* has 10 public decks and 751 large cabins, with more than sixty percent enjoying an ocean view. The popular pool deck has 5 refreshing pools and Jacuzzis, where sun-seekers can catch some tropical rays and enjoy the balmy ocean breezes. And below, be sure to take advantage of the stunning Spa and Fitness Center that offers relaxing beauty treatments, invigorating massages, calming saunas and steam rooms. For your dining pleasure, the ship offers 4 elegant restaurants with five-star dining options. And at night, be sure to visit the state-of-the-art 950-seat Performance Center boasting well-known musical artists &

bands, along with a world-class Casino that offers all your favorite games of chance including Blackjack, Poker, Roulette and Craps.

Below are some numbers that may be of interest:



Your significantly discounted "Cruise and Resort Stay" vacation package features the perfect balance of extraordinary destinations, outstanding service and genuine hospitality! By combining a two night Caribbean Cruise, fabulous destinations in sun-kissed Florida and the tropical Bahamas, and featuring some of the most trusted names in travel - we have created your "one call does it all" Dream Vacation for you!



**YOUR VACATION PACKAGE INCLUDES:**

### YOUR 2 NIGHT CRUISE:

- o 2 Night Cruise for two aboard the ***Grand Celebration*** to **Grand Bahama Island**, with all your meals, entertainment and activities included onboard.
- o $50.00 in Casino Match Play valid on board the ship.

### PACKAGE PRICING:

- ▪ Your total package cost is only $59 ( including port charges )
  per person for the 1ST and 2ND passengers, based on double occupancy.



**About The Ports of Call:**

*Holiday Cruise Line* will be sending our lucky travelers on the ***Grand Celebration***, the Exclusive Bahamas Cruise Ship of the **Port of Palm Beach** and an Official Cruise Ship of **Grand Bahama Island.**



<u>**Check out these videos of past sailings @ Grand Celebration Live**</u>



**About The *Grand Celebration*:**

**Departure Information:** The *Grand Celebration*, conveniently departs from the **Port of Palm Beach** in South Florida at 5:30 P.M. (EST), and travels round trip to **Grand Bahama Island** - widely regarded as "The Jewel of the Bahamas." This tropical island paradise is known for its unspoiled powder-white beaches, crystal clear blue waters and a relaxed atmosphere. It's also home to our luxurious resort destinations including the luxurious, oceanfront **Grand Lucayan Golf & Spa Resort**.

**Overview:** The *Grand Celebration* boasts 751 well-appointed cabins, allowing us to travel up to 1,800 passengers comfortably. Cabin d�cor is modern and comfortable. With 24-hour room service available, and an emphasis on service throughout the ship, the *Grand Celebration* offers our travelers a memorable onboard cruise experience.

**Dining:** Everyone knows cruising and dining are synonymous, and with the *Grand Celebration*, it's no different. Multiple dining venues offer our passengers the choice of 11 distinct restaurants, bars, and lounges with mouth-watering cuisine sure to satisfy whatever their appetite is in the mood for.

**Amenities:** Everyone's definition of fun is different so we offer an array of entertainment options and activities for everybody in your family. We aim to make your cruise experience both enjoyable and memorable.

**State-of-the-Art Performance Center:** In this stunning 950 seat, two-level performance center guests can enjoy an amazing variety of top-notch nightly entertainment and regularly scheduled big name band concerts. The sun may go down but the fun and exciting activities do not.

**3 Pools & 2 Jacuzzis:** Listen to live music as you soak up the sun or unwind in the shade on our pool deck with five pools and jacuzzis including a kid's pool with water slides and a fun play area.

**Spa, Sauna & Wellness Center:** With affordably priced spa treatments you can renew your mind and body with premium therapeutic services, such as relaxing massages, soothing aromatherapy, and healing reflexology. And, for the ultimate stress relief, try our large steam room or sauna.

For more information visit us at www.isreadytotravel.com

Sincerely,

**Holiday Cruise Line**
2121 W Oakland Park Blvd. Suite 1
Fort Lauderdale, FL 33311

**Customer Service: You may contact one of our friendly Customer Care agents**

**Toll Free 1-800-219-8695,**

**Monday - Friday 9 AM till 10 PM, and for your convenience Saturday 10 AM till 4 PM (EST).**

***Passports on the ship are not needed,*** but are recommended and make getting on and off the cruise ship easier. For cruise only passengers that do not have a passport, a <u>driver's license and **raised-seal birth certificate** are required.</u>

For our customers that are staying on Grand Bahama Island with one of our **Stay and Play packages, a passport is absolutely necessary**.



Get your Passport from <u>U.S. Department of State</u>
If you want to get your Passport faster go here
<u>www.PassportVisasExpress.com</u> .
**Holiday Cruise Line is registered, licensed and bonded with the State of Florida.**
**S.O.T. Registration No. ST-38736.**







Having trouble viewing this email? <u>View it in your browser</u> .
Not interested anymore? <u>Unsubscribe</u> .

--
Julie O. Herrera
Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
<u>www.julieherreralaw.com</u>

<Herrera v. Holiday Cruise.pdf>

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit <u>http://www.mimecast.com</u>

# EXHIBIT B

# Form 5500

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

## Annual Return/Report of Employee Benefit Plan

This form is required to be filed for employee benefit plans under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code (the Code).

▶ **Complete all entries in accordance with the instructions to the Form 5500.**

OMB Nos. 1210-0110
1210-0089

**2013**

This Form is Open to Public Inspection

## Part I  Annual Report Identification Information

For calendar plan year 2013 or fiscal plan year beginning   01/01/2013   and ending   12/31/2013

**A** This return/report is for:
- [ ] a multiemployer plan;
- [ ] a multiple-employer plan; or
- [X] a single-employer plan;
- [ ] a DFE (specify) ____

**B** This return/report is:
- [ ] the first return/report;
- [ ] the final return/report;
- [X] an amended return/report;
- [ ] a short plan year return/report (less than 12 months).

**C** If the plan is a collectively-bargained plan, check here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ [ ]

**D** Check box if filing under:
- [X] Form 5558;
- [ ] automatic extension;
- [ ] the DFVC program;
- [ ] special extension (enter description)

## Part II  Basic Plan Information—enter all requested information

**1a** Name of plan
CONSOLIDATED TRAVEL HOLDINGS GROUP, INC. EMPLOYEE STOCK OWNERSHIP PLAN

**1b** Three-digit plan number (PN) ▶  | 001

**1c** Effective date of plan
01/01/2001

**2a** Plan sponsor's name and address; include room or suite number (employer, if for a single-employer plan)

CONSOLIDATED TRAVEL HOLDINGS GROUP, INC.

2419 E. COMMERCIAL BLVD., SUITE 100
FT. LAUDERDALE, FL 33308

**2b** Employer Identification Number (EIN)
65-1153829

**2c** Sponsor's telephone number
954-630-9449

**2d** Business code (see instructions)
721199

**Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.**

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, as well as the electronic version of this return/report, and to the best of my knowledge and belief, it is true, correct, and complete.

| SIGN HERE | Filed with authorized/valid electronic signature. | 11/21/2014 | DANIEL LAMBERT |
|---|---|---|---|
|  | Signature of plan administrator | Date | Enter name of individual signing as plan administrator |

| SIGN HERE | Filed with authorized/valid electronic signature. | 11/21/2014 | DANIEL LAMBERT |
|---|---|---|---|
|  | Signature of employer/plan sponsor | Date | Enter name of individual signing as employer or plan sponsor |

| SIGN HERE |  |  |  |
|---|---|---|---|
|  | Signature of DFE | Date | Enter name of individual signing as DFE |

Preparer's name (including firm name, if applicable) and address; include room or suite number. (optional)

Preparer's telephone number (optional)

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.

Form 5500 (2013)
v. 130118

| | | | |
|---|---|---|---|
| **3a** | Plan administrator's name and address ☐ Same as Plan Sponsor Name ☐ Same as Plan Sponsor Address | **3b** Administrator's EIN 65-1153829 | |
| | CONSOLIDATED TRAVEL HOLDINGS GROUP, INC.<br><br>2419 COMMERCIAL BLVD.,SUITE 100<br>FT. LAUDERDALE, FL 33308 | **3c** Administrator's telephone number 954-630-9449 | |

| | | | |
|---|---|---|---|
| **4** | If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report: | **4b** EIN | |
| **a** | Sponsor's name | **4c** PN | |

| | | | |
|---|---|---|---|
| **5** | Total number of participants at the beginning of the plan year | **5** | 454 |
| **6** | Number of participants as of the end of the plan year (welfare plans complete only lines 6a, 6b, 6c, and 6d). | | |
| **a** | Active participants | **6a** | 264 |
| **b** | Retired or separated participants receiving benefits | **6b** | 4 |
| **c** | Other retired or separated participants entitled to future benefits | **6c** | 149 |
| **d** | Subtotal. Add lines 6a, 6b, and 6c | **6d** | 417 |
| **e** | Deceased participants whose beneficiaries are receiving or are entitled to receive benefits | **6e** | 2 |
| **f** | Total. Add lines 6d and 6e | **6f** | 419 |
| **g** | Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item) | **6g** | 419 |
| **h** | Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested | **6h** | 46 |
| **7** | Enter the total number of employers obligated to contribute to the plan (only multiemployer plans complete this item) | **7** | |

**8a** If the plan provides pension benefits, enter the applicable pension feature codes from the List of Plan Characteristics Codes in the instructions:
2I  2P  2Q

**b** If the plan provides welfare benefits, enter the applicable welfare feature codes from the List of Plan Characteristics Codes in the instructions:

| **9a** Plan funding arrangement (check all that apply) | | **9b** Plan benefit arrangement (check all that apply) | |
|---|---|---|---|
| (1) ☐ | Insurance | (1) ☐ | Insurance |
| (2) ☐ | Code section 412(e)(3) insurance contracts | (2) ☐ | Code section 412(e)(3) insurance contracts |
| (3) ☒ | Trust | (3) ☒ | Trust |
| (4) ☐ | General assets of the sponsor | (4) ☐ | General assets of the sponsor |

**10** Check all applicable boxes in 10a and 10b to indicate which schedules are attached, and, where indicated, enter the number attached. (See instructions)

| **a** Pension Schedules | | | **b** General Schedules | | |
|---|---|---|---|---|---|
| (1) ☒ | R (Retirement Plan Information) | | (1) ☒ | H (Financial Information) | |
| (2) ☐ | MB (Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information) - signed by the plan actuary | | (2) ☐ | I (Financial Information – Small Plan) | |
| | | | (3) ☐ | A (Insurance Information) | |
| | | | (4) ☐ | C (Service Provider Information) | |
| (3) ☐ | SB (Single-Employer Defined Benefit Plan Actuarial Information) - signed by the plan actuary | | (5) ☐ | D (DFE/Participating Plan Information) | |
| | | | (6) ☐ | G (Financial Transaction Schedules) | |

# EXHIBIT C

FEB 08 2000   CTR-1

_~~Anthony P Liberi~~_   Clerk of the
Circuit Court

THE PEOPLE OF THE STATE OF ILLINOIS,       )
                                                        )

                Plaintiff,       )
                                                        )

        -vs-       )    NO.  99-CH-0054

                                                       )

NATIONAL TRAVEL SERVICES, INC., a Nevada       )
corporation; PLAZA RESORTS, INC., d/b/a       )
RAMADA PLAZA RESORTS ORLANDO/FORT       )
LAUDERDALE VACATIONS, a Florida corporation;       )
DANIEL LAMBERT, individually, and as president       )
and director of NATIONAL TRAVEL SERVICES,       )
INC., and as a director of PLAZA RESORTS, INC.;       )
JAMES H. VERRILLO, individually, and as an officer and       )
director of NATIONAL TRAVEL SERVICES, INC., and       )
as a director of PLAZA RESORTS, INC.; and ROBIN       )
LEACH, individually, and d/b/a LEACH ENTERTAINMENT )
ENTERPRISES, INC.,       )
                        Defendants.       )

## FINAL JUDGMENT AND CONSENT DECREE
### as to Defendants NATIONAL TRAVEL SERVICES, INC.,
### PLAZA RESORTS, INC., DANIEL LAMBERT,
### and JAMES H. VERRILLO

Plaintiff, THE PEOPLE OF THE STATE OF ILLINOIS, by JAMES E. RYAN, Attorney

General of Illinois, has filed a complaint for a permanent injunction and other relief in this matter

pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et*

*seq.* (West 1996) and the Illinois Real Estate Time-Share Act, 765 ILCS 100/1 et seq. ( West 1996),

charging defendants with violations of the respective acts.

Plaintiff, by its counsel, and defendants NATIONAL TRAVEL SERVICES, INC., PLAZA

RESORTS, INC., DANIEL LAMBERT, and JAMES H. VERRILLO (hereinafter collectively

referred to as "defendants"), by their counsel, have agreed to the entry of this final Judgment and

Consent Decree by the Court without trial or adjudication of any issue of fact or law, and without

admission of any of the violations of the respective acts alleged in the complaint.

## FINDINGS

1. On February 3, 1999, plaintiff filed a complaint in this cause pursuant to the provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Real Estate Time-Share Act, the allegations of which are incorporated herein.

2. The Illinois Attorney General is charged with, among other things, the responsibility of enforcing the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Real Estate Time-Share Act.

3. Defendants were properly served with plaintiff's complaint and with summons in accordance with section 2-208 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-208.

4. Defendants, at all times relevant hereto, have been doing business from 871 W. Oakland Park Boulevard, Fort Lauderdale, Florida 33311.

5. Defendants, at all times relevant hereto, engaged in trade or commerce within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, in that they advertised, offered for sale, and sold to Illinois consumers vacation packages in connection with the solicitation for sale and sale of time-shares to those consumers.

6. Plaintiff, by and through its complaint, has alleged that defendants engaged in unfair and deceptive acts or practices in the conduct of trade and commerce in violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, and in violation of provisions of the Illinois Real Estate Time-Share Act.

7. The aforementioned allegations of the complaint constitute the basis for the execution and filing of this Final Judgment and Consent Decree.

8. Defendants recognize and state that this Final Judgment and Consent Decree is

2

entered into voluntarily and that no promises have been made by the Attorney General's Office or any member, officer, agent or representative thereof to induce them to enter into this Final Judgment and Consent Decree, except as provided herein.

9.  Defendants waive any right they may have to appeal from this Final Judgment and Consent Decree.

10.  The Court has jurisdiction over the subject matter of the complaint having been filed herein and over the parties to this Final Judgment and Consent Decree. Plaintiff's complaint in this matter states claims upon which relief may be granted under the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Real Estate Time-Share Act.

## ORDER

NOW THEREFORE, on the basis of these findings, and for the purposes of effectuating this Final Judgment and Consent Decree,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

### I. GENERAL PROVISIONS

11.  *No Endorsements.* Under no circumstances shall this Final Judgment and Consent Decree or the name of the State of Illinois, the Office of the Attorney General, Consumer Fraud Bureau, or any of its employees or representatives be used by defendants, or their officers, agents, servants, employees, successors, assigns, attorneys or other persons and/or entities acting in concert or participation with the defendants, in connection with any selling, advertising, or promotion of products or services, or as an actual or implied endorsement or approval of defendants' acts, practices or methods of conducting business.

12.  *Application of Consent Decree.* This Consent Decree shall apply to and bind National Travel Services, Inc., Plaza Resorts, Inc. d/b/a Ramada Plaza Resorts and Ramada Plaza Resorts

3

Orlando/Ft. Lauderdale Vacations, Daniel Lambert, and James Verrillo, whether acting through their

principals, officers, directors, agents, telemarketers, direct mail marketers, servants, employees,

subsidiaries, successors or assigns, or acting through any corporation or other business entities

whose acts, practices, or policies are directed, formulated, or controlled by National Travel Services,

Inc., Plaza Resorts, Inc. d/b/a/ Ramada Plaza Resort Orlando/Ft. Lauderdale Vacations, Daniel

Lambert, or James H. Verrillo.

## II. DEFINITIONS

13.     For purposes of this Final Judgment and Consent Decree, the following definitions

shall apply:

A.     *"Clear and conspicuous"* means that the required disclosures, when made in writing

or by facsimile, televised communications, or the Internet shall be presented in such

a manner, given their size, color, contrast and proximity to any related information,

as to be readily noticed and understood by consumers.  Use of typeface at least as

large as typeface contained in the standard text of the offer is clear and conspicuous.

A disclosure is not clear and conspicuous if, among other things, it is ambiguous or

it is obscured by the background against which it appears, or by its location within

a lengthy disclosure of non-material information.  Clear and conspicuous also means

that the required disclosures, when made in an oral presentation, are presented in a

manner that a consumer will hear and understand at a normal speed in the same tone

and volume as the sales offer.

B.     *"Material"* means likely to affect a person's choice of, or decision to purchase or

receive goods or services.

C.     *"Terms and Conditions Box"* means a clearly and conspicuously delineated

4

paragraph of material disclosures outlined by a rectangle or in a rectangular form and labeled "Terms and Conditions." The Terms and Conditions Box shall include only material disclosures. The Terms and Conditions Box shall not include any non-material statements regarding the offer. The contents of the Terms and Conditions Box shall be clear and conspicuous. The first sentence of the Terms and Conditions Box shall be: "This is an offer to sell travel." The second sentence of the Terms and Conditions Box shall be a truthful description of the vacation package offered by defendants. The third sentence of the Terms and Conditions Box shall be a disclosure that the consumer, to take advantage of the offer, is required to attend a sales presentation for timeshare or interval ownership. Whenever defendants use a Terms and Conditions Box, then defendants shall provide a clear and conspicuous disclosure on the same page where the first material statement of the offer appears that additional terms and conditions apply to the offer, and shall refer to the page or placement within the solicitation at which such Terms and Conditions Box is found. The Terms and Conditions Box shall be located in a conspicuous place within the solicitation.

D.     *"Offer"* means an offer of goods and/or services to one or more consumers, including, but not limited to an offer of a vacation package, regardless of whether the offer is conveyed in writing, orally or by facsimile, televised communications, the Internet, or in any other manner. The term "offer" includes any solicitation made directly to consumers by telemarketing or any written solicitation or mailing to which consumers are asked to respond by calling a telephone number for the purpose of receiving information regarding the purchase of a vacation package. Offer also

5

includes any solicitation made by means of inviting or asking consumers to register to enter a contest, a random drawing, or any other promotion which results in the consumer being solicited directly or indirectly to purchase a vacation package.

E.   *"Represent"* and *"representation"* include any communication, whether made in writing, orally, or by facsimile, televised communication, the Internet, or in any other manner.

F.   *"Solicitation"* means any communication to a consumer that contains an offer, whether made in writing, orally, or by facsimile, televised communications, the Internet, or in any other manner.

G.   *"Time-share"* means any arrangement whereby a purchaser receives a right to use accommodations and/or facilities for specific periods of time on a recurring basis. The term includes any vacation ownership interest or similar interest.

H.   *"Vacation package"* means goods and/or services which involve a stay in a location away from the consumer's home, and includes use of accommodations whether with or without meals.

I.   *"Defendants"* means National Travel Services, Inc., Plaza Resorts, Inc. d/b/a Ramada Plaza Resorts and Ramada Plaza Resorts Orlando/Ft. Lauderdale Vacations, Daniel Lambert, and James Verrillo.

### III. INJUNCTION

14.   *Application of Injunction.* The injunctive provisions of this Final Judgment and Consent Decree shall apply to the defendants, and the defendants' successors, assigns, officers, agents, servants, employees, representatives, and all other persons or entities in active concert or participation with the defendants.

6

15.    _Notice._  All corporate, partnership and individual defendants, and any shareholder, partner, member, manager, director or officer of the corporate defendants, who is a defendant herein shall immediately inform all successors, assigns, transferees, officers, agents, servants, employees, representatives, and all other persons or entities in active concert or participation with defendants or with the corporations named as defendants in the complaint, of the terms and conditions of this Final Judgment and Consent Decree and shall direct those persons and/or entities to comply with this Final Judgment and Consent Decree.  In addition, the defendants as described herein shall provide copies of the injunctive provisions of this Final Judgment and Consent Decree to all employees, representatives, and sales agents, and upon request, shall make the entire Final Judgment and Consent Decree available to any requesting employee, representative, or sales agent.

16.    _Injunction._  Defendants and all successors, assigns, transferees, officers, agents, servants, employees, representatives and all other persons or entities in active concert or participation with defendants, are hereby permanently enjoined and restrained from directly or indirectly engaging in the following acts or practices in the State of Illinois, and from failing to comply with the provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 _et seq._, the Illinois Real Estate Timeshare Act of 1999, Public Act 91-585 (effective January 1, 2000), the Illinois Travel Promotion Consumer Protection Act, 815 ILCS 420/1 _et seq._, and the Illinois Telephone Solicitation Act, 815 ILCS 413/1 _et seq._, as they are currently written or as they are amended in the future, including but not limited to:

A.    Distributing any solicitation in the State of Illinois unless the solicitation clearly and conspicuously discloses:

1.    that a purchase of the vacation package is required, if the consumer is required to make a purchase to receive the subject matter of the

7

solicitation. Such disclosure shall be made on the same page as the first material statement of the offer in any solicitation and shall be made by providing in typeface at least as large as the typeface contained in the standard text of the offer: (a) the total price per person of the vacation package; and/or (b) the statement: "THIS IS AN OFFER TO SELL TRAVEL;" and/or (c) use of other words which clearly convey the message to the recipient that a purchase is required. This disclosure shall not be satisfied by use of a "Terms and Conditions" box.

Defendants may satisfy the disclosure requirements of paragraph 16(A)(1) above, (a) where a certificate mail piece or letter mailing is used, by providing on the first page of the offer in 12-point type, either: (1) the price of the vacation, or (2) one of the following statements which shall appear verbatim without modification: (i) "This is an Offer to Sell Travel;" (ii) "Call Toll-Free to Purchase;" or (iii)"Purchase Required;" or (b) where a postcard type mail piece is used, by providing in at least 10-point bold type, either : (1) the price of the vacation, or (2) one of the following statements which shall appear verbatim without modification: (i) "This is an Offer to Sell Travel;" (ii)"Call Toll-Free to Purchase;" or (iii) "Purchase Required." If this section is used by the defendants, the first sentence of the "Terms and Conditions Box" as defined in paragraph 13(C) above shall be a disclosure that the consumer, to take advantage of the offer, is required to attend a sales presentation for timeshare or interval ownership;

2. whether the vacation package includes: (a) transportation, including air fare; (b) meals, and/or (c) accommodations, as applicable;

3. that a consumer, when traveling on defendants' vacation, will be solicited to tour and purchase a time share or vacation ownership interest if: (a) such tour is required; (b) the consumer must participate in the tour to take advantage of the offer; or (c) the failure of the consumer to take the tour will result in a reduction of the level of goods and services the consumer will receive in relation to what the consumers would receive if they participate in the tour;

B. Failing to disclose all additional material terms and conditions which apply to the offer, including, but not limited to travel restrictions, any types of additional costs and charges for services offered, including but not limited to taxes, hotel upgrades, cabin fees, and/or cancellation fees.

C. Failing to provide, before receiving payment for goods or services, the oral and written disclosures required by Illinois law as set forth in section 4 of the Illinois Travel Promotion Consumer Protection Act, 815 ILCS 420/4.

D. Failing to disclose the terms and conditions for any and all bonus vacations, including whether the bonus vacation will be given if a purchase is not made and whether any further costs or restrictions will be required prior to using the bonus trip.

E. Failing to comply with the provisions of the Illinois Telephone Solicitations Act, 815 ILCS 413/1 et seq., which Act regulates the solicitation of the sale of goods in Illinois through the use of a telephone by live operators.

F. Failing to disclose promptly in a clear and conspicuous manner that a purchase is required.

G. Failing to promptly state: (1) the identity of the seller; and (2) that the purpose of the

9

call is to sell the consumer a vacation package or other goods and services;
(for purposes of this provision, "promptly" shall mean that the disclosure shall be made prior to the time any substantive information about the vacation package or other goods or service is conveyed to the consumer).

H.  Failing to state the total cost of the trip, including any and all costs or fees paid directly to the seller, at any time during the call when any cost associated with the trip is provided to the consumer.

I.  Failing to comply with provisions which regulate solicitations by unsolicited facsimiles as set forth in the section 26-3(b) of the Illinois Criminal Code, 720 ILCS 5/26-3(b), and in the Telephone Consumer Protection Act, 47 U.S.C. § 227 and implementing rules at 47 C.F.R. § 64.1200.

J.  Failing to comply with the registration requirements of the Illinois Real Estate Timeshare Act of 1999, Public Act No. 91-585 (effective January 1, 2000), which Act regulates the marketing, sale, resale, and exchange of timeshare plans with an accommodation or component site in Illinois, and timeshare plans without an accommodation or component site in Illinois, if the latter timeshare plans are sold or offered to be sold to any individual located within Illinois.

K.  Failing to comply with section 10-25 of the Illinois Real Estate Timeshare Act of 1999, Public Act No. 91-585 (effective January 1, 2000), which section of the Act prohibits specific conduct in the offering of a timeshare plan, and which section requires particular disclosures in a promotion being used in connection with the offering of a timeshare interest.

L.  Failing to comply with Illinois law regulating the use of simulated checks as set

10

forth in section 2X of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2X.

17.    Defendants are further permanently enjoined from:

A.    Representing, directly or by implication, that a particular destination or particular services are included in the vacation package or bonus package when such is not the case.

B.    Representing, directly or by implication, the nature of any part of the vacation package, through the use of terms such as "world class," "first class," or similar representations unless defendants can substantiate these representations through comparable ratings or evaluations by an independent, internationally or nationally recognized publication on travel or tourism.

C.    Representing to any consumer, directly or by implication, that the consumer is a "winner" or that the consumer has been "selected" or is otherwise being included in a select group for receipt of a prize or opportunity unless that is, in fact, true, or that the consumer is entering a "contest," "sweepstakes," "drawing," or other competitive enterprise from which a winner or select group of winners will receive a prize or opportunity when, in fact, the enterprise is a promotional scheme designed to make contact with prospective customers, and all or a substantial number of those "entering" receive the same "prize.

D.    Representing limitations on the offer or creating a false sense of urgency, directly or by implication, including, but not limited to misrepresenting limitations on:

1.    the time within which the consumer must take action (including contacting defendants);

11

2. the number of offers of vacation packages;

3. who is entitled to take advantage of the vacation package offer; or

4. the number of contacts that a person or household may make to take advantage of the offer.

E. Representing, directly or by implication, that a vacation package has been reserved for a consumer, by using the term "Reservation Number" or similar term, unless such number is unique to the consumer.

F. Using "Control Numbers," or any similar identifier in any communications relating to a vacation package unless such identifier is in fact employed by defendants for a specific business purpose.

G. Misrepresenting, directly or by implication, the purpose of its contact or its offer through the following:

1. that the purpose of the contact or offer is to "promote tourism," or similar wording;

2. that the purpose of the contact or offer is to "regulate" or "administer" the "disbursement" of vacation packages, or similar wording;

3. that the purpose of the contact or offer is to engender "word of mouth" advertising, or any similar wording, unless defendants have a realistic likelihood, based on past experience, of generating substantial business from consumer-to-consumer communications; or

4. that the purpose of the contact or offer is to lead the consumer to buy another vacation package in the future, unless defendants have a realistic likelihood, based on past experience, of generating

substantial repeat business from consumers;

H.    Representing to any consumer, directly or by implication, that a certain number or percentage of its customers have been satisfied with their vacation packages, or similar wording, unless there is reasonable numerical substantiation for that statement based on documentation from those consumers who have purchased and actually have used the vacation packages from defendants.

I.    Representing, directly or by implication, through the use of any envelope, other mailing device, or other communication, that defendants, or the contents of any of its communications, are in any way connected to the government or a government agency, including, but not limited to:

1.    citing the possibility of criminal penalties on the front of an envelope; or

2.    using the names of departments that are non-existent or do not represent actual entities, divisions, or departments, such as "The Office of Records of Entitlement Disbursements Division" and "The Offices of Records Entitlement/Disbursements Division.;"

J.    Using the term "confidential" when referring to any of defendants' written solicitations.

K.    Referring to documents as delivered by registered mail, express mail, overnight delivery, special delivery, or any other form of mail or delivery other than by the rate that actually applies such as bulk rate or first class mail.

L.    Representing that the duration of a time share sales presentation tour is of a specific period or amount of time unless there is reasonable substantiation for that statement

and that substantiation will be provided to plaintiff upon plaintiff's request.

18. Defendants are further permanently enjoined from misrepresenting, directly or by implication, the price of the vacation package by "unbundling" any part of the cost of the vacation package as a port fee, port charge, port tax, or any other tax unless the entire port fee, port charge, port tax, or other tax is imposed by and passed on to a governmental or quasi-governmental authority. Defendants shall include in the stated or advertised price of its vacation packages all mandatory (non-optional) charges, other than those imposed by, and passed on to, a governmental or quasi-governmental agency. Where a charge is passed on to a governmental or quasi-governmental agency as a port fee, port charge, port tax, or other tax, defendants shall disclose the amount of the fee at the time the cost of the vacation package is first disclosed. For the purpose of this Final Judgment and Consent Decree, the term quasi-governmental shall refer to an entity that is either:

A. A subordinate agency within a foreign, domestic, federal, state, or legal governmental authority; or

B. An entity created or authorized by a foreign or domestic governmental authority to carry out a governmental function for the benefit of the public.

This shall include port authorities within the United States or within a foreign jurisdiction.

19. Defendants shall be permanently enjoined from informing any and all consumers they are confirmed for a specific date for their trip unless:

A. defendants have accommodations available at a specific hotel as promised for the confirmed date at the time the confirmation is initially made to the consumer;

B. the consumers must take no further actions to confirm the date upon receipt and timely return of the confirmation notice; and

14

C.   defendants do not in any way attempt to alter the confirmed date unless specifically requested to do so by the consumer.

20.   Defendants shall disclose any right of cancellation as applicable, and if no right of cancellation is applicable, then defendants shall inform consumers that no right of cancellation exists prior to accepting payments towards the purchase price of the vacation package.

21   Defendants shall be enjoined from:

A.   Representing to consumers that defendants' vacation packages are being sold at prices which are below the cost consumers would pay if they did not acquire the accommodations through the purchase of defendants' vacation packages unless such representation is true and can be substantiated on a quantifiable basis with figures provided to the Illinois Attorney General's Office on the first day of every six (6) months for the first 24 months after the date of this agreement, and upon request, after the 24-month period is ended.

B.   Representing to consumers that defendants are paying for a portion of the cost of each vacation package unless such representations are true and can be substantiated on a quantifiable basis with figures provided to the Illinois Attorney General's Office on the first day of every six (6) months for the first 24 months after the date of this agreement, and upon request, after the 24-month period is ended.

C.   Including any bonus days in the calculation of the cost per day of the vacation package, unless defendants at the time of making any such representation also disclose (1) that such bonus days are included in such calculation, and the number thereof; (2) that transportation to the bonus location(s) is not included in the price(s) quoted for the vacation package; (3) that customers must take the Ft. Lauderdale

15

vacation package (initial or original trip) before they can take the bonus trip(s); and (4) that the vacation package and the bonus trips must all be completed within the 18-month period, unless the customer pays an additional fee for the extension of such period (if that is an option and if that is the case).

## IV. ENDORSEMENTS

22. Defendants are permanently enjoined from using a spokesperson, endorser, or other representative, or the likeness of such person, to sponsor, approve, or endorse defendants' vacation package or other travel-related services unless defendants are in full compliance with the FTC Guides Concerning Use of Endorsements and Testimonials in Advertising at 16 C.F.R. § 255 *et seq.*

## V. RESTITUTION

23. Defendants shall refund the total price of the vacation package to consumers: (1) who purchased a vacation package from defendants; (2) who have not traveled on that vacation package; and (3) who request a refund in the manner set out in paragraph 24 below. Any consumers who have already received a partial refund or have not paid the entire cost of the vacation package shall only be refunded the amount they have paid to defendants for the package.

24. Defendants shall refund any money paid to defendants by each consumer who purchased a vacation package from defendants, and who has not yet traveled using the vacation package, and who has complained in writing to the defendants, or to the State of Illinois Attorney General's Office--Consumer Fraud Bureau or any state or local governmental consumer protection agency or bureau located in the State of Illinois, or any Better Business Bureau located in the State of Illinois; or Illinois consumers who have filed with any other agency or Better Business Bureau, on or before the 60th day following the entry of this Final Judgment and Consent Decree.

25. Defendants shall refund $200 to each Illinois consumer who:

16

A.    Purchased a vacation package from defendants, and who traveled using the vacation package, and who has, on or before the date of entry of this Final Judgment and Consent Decree, complained in writing, to the defendants, to the State of Illinois Attorney General's Office--Consumer Fraud Bureau or any state or local governmental consumer protection agency or bureau located in the State of Illinois, to any Better Business Bureau located in the State of Illinois, or to any other agency or Better Business Bureau.

B.    Purchased a vacation package from defendants, and who traveled using the vacation package, and who complains in writing to the State of Illinois Attorney General's Office—Consumer Fraud Bureau or any state or local governmental consumer protection agency or bureau located in the State of Illinois, to any Better Business Bureau located in the State of Illinois, or to any other agency or Better Business Bureau.    This complaint must cite specific instances where the vacation accommodations were not as represented or portrayed by the defendants and must be in verified form, i.e., it must either be notarized or signed by the consumer as a declaration pursuant to section 1-109 of the Illinois Code of Civil Procedure, 735 ILCS 5/1-109.  This complaint must be postmarked no later than 30 days after the entry of the Final Judgment and Consent Decree.  For those consumers who file pursuant to this section 25(B), defendants will be responsible for payment up to but not exceeding $250,000.  This $250,000 is exclusive of any other financial limitations or amounts set forth in this Final Judgment and Consent Decree and is an

aggregate cap for all states participating in the settlement of this action[1]. Should consumer claims under this section exceed $250,000, consumers will be paid on a pro rata basis.

26.     Within thirty (30) days of the close of the claims period as set forth in paragraphs 24 and 25 above, defendants shall refund $200 to consumers who took the trip as set forth in paragraph 25 above, and shall refund any unrefunded monies paid for a vacation package as set forth in paragraph 24 above, or notify consumers who have not traveled that they are entitled to choose one of the following options from defendants:

A.     A refund of previously unrefunded monies paid for a vacation package; or

B.     An eighteen-month extension of the vacation package and a waiver of any and all additional service charges, with such extension beginning to run at the date it is issued or at the expiration of the date of the vacation package, whichever is later.

27.     In any notice to eligible consumers of these options, which shall be in the form attached hereto as Exhibit A, defendants shall state that the choice of remedy belongs to the consumer and that in order to obtain an extension in lieu of a refund, the consumer must notify defendants within thirty (30) days of his or her decision.

28.     Defendants shall make a refund pursuant to paragraph 23 above, less any amount already refunded or credited, to each consumer who declines defendants' offer to extend the vacation certificate within thirty (30) days of defendants' receipt of the consumer's response, or if no response, upon expiration of thirty-five (35) days of the mailing of the notice as provided in

---

[1] These states include Arizona, Arkansas, Connecticut, the District of Columbia, Florida, Illinois, Kansas, Michigan, Missouri, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Washington, West Virginia, and Wisconsin.

paragraph 27 above.

29. Defendants shall adopt and maintain procedures with regard to the handling of claims and/or requests for refunds from consumers, including maintaining copies of all written complaints or requests for refunds received, and records of all oral complaints or requests for refunds. Such records shall include the name and address of each Illinois consumer from whom a complaint or request for refund was received, the amount of refund requested, the resolution of each complaint, and the amount refunded, if any.

30. Within one-hundred and eighty (180) days of the filing of this Final Judgment and Consent Decree, or within sixty (60) days of the completion of restitution to all consumers pursuant to paragraphs 23 through 26 above, whichever is earlier, defendant shall submit an affidavit to the Illinois State Attorney General's Office--Consumer Fraud Bureau, identifying by name and address: (1) each Illinois consumer who mailed a written request for a refund to the Illinois State Attorney General's Office, to any state or local governmental consumer protection agency or bureau located in the State of Illinois, to the Better Business Bureaus located in the State of Illinois, and whose identity and address is timely delivered to defendants, or to defendants within the time period specified in paragraphs 24 and 25 of this Final Judgment and Consent Decree; (2) each Illinois consumer to whom the defendant mailed a notice of the offer to extend the vacation package in lieu of a refund as set forth in paragraph 26 above; (3) each Illinois consumer to whom restitution has been provided, and the amount of the refund or credit; (4) each Illinois consumer who has elected the alternative remedy of extension of the vacation package in lieu of a refund; and (5) each consumer who traveled and received a refund of $200 per vacation package purchased.

31. If notice is not mailed out to consumers as set forth in paragraph 26 of this Final Judgment and Consent Decree, and/or the corporate defendants are in default per paragraph 34

below, then Defendants Lambert and Verrillo shall pay consumer claims as set forth in paragraphs 23 through 30 within thirty (30) days of the date the notice should have been mailed, or payments made, to consumers as set forth in paragraphs 33 through 37 below. Defendants Lambert and Verrillo's liability for these payments is subject to the limitations set for in paragraph 34 below.

32.     If restitution is not paid within 30 days as set forth in paragraphs 23 through 31, defendants Plaza Resorts, Inc. d/b/a Ramada Plaza Resorts Orlando/Ft. Lauderdale Vacations and National Travel Services, Inc. shall be deemed in default of this Final Judgment and Consent Decree.

## VII. FINANCIAL RESPONSIBILITY OF DEFENDANTS

33.     Defendants shall be jointly and severally liable for performance of all of the terms and conditions of this Final Judgment and Consent Decree. With respect to all monetary obligations, payment will be made from the assets of Defendant National Travel Services, Inc. and Defendant Plaza Resorts, Inc., d/b/a Ramada Plaza Resorts Orlando/Ft. Lauderdale Vacations. Defendants Lambert and Verrillo shall pay subject to the limitations of paragraph 34 hereof, any consumer claims that are not paid by Defendants National Travel Services or Plaza Resorts Inc. pursuant to paragraphs 23 through 32 of this Final Judgment and Consent Decree.

34.     Concurrently with the execution of this Final Judgment and Consent Decree, the Defendants shall advance the sum of the $1.5 million to be utilized for payment of consumer claims from the participating states referred to in paragraph 25 above. Such monies shall be deposited in an account established and held by Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., located at Trade Centre South, Suite 700, 100 West Cypress Creek Road, Fort Lauderdale, Florida, 33309, in a special trust account and shall be distributed in accordance with the terms of this Final Judgment and Consent Decree in payment of the obligations of Defendants National Travel Services and Plaza Resorts for consumer restitution. In the event such monies shall be fully utilized to pay

consumer claims, Defendants National Travel Services and Plaza Resorts shall continue to make payment from their respective assets for the consumer claims in excess of $1.5 million made pursuant to paragraphs 23 through 32 of this Final Judgment and Consent Decree. Should Defendants National Travel Services and Plaza Resorts default on payment of consumer claims, Defendants Lambert and Verrillo shall each be individually responsible for $500,000.00 (for a total of $1,000,000.00) in unpaid monetary and/or consumer claims beyond the $1.5 million, which respective obligations are set forth in the "Guaranty Agreement" attached hereto and incorporated herein as Exhibit B.

35.     Should Defendant National Travel Services, Inc. and Defendant Plaza Resorts, Inc., d/b/a Ramada Plaza Resorts Orlando/Ft. Lauderdale Vacations default, and Defendants Lambert and Verrillo make total payments of $1,000,000.00 in settlement of their financial responsibilities outlined herein, plaintiff reserves its right to pursue Defendant National Travel Services, Inc. and Defendant Plaza Resorts, Inc., d/b/a Ramada Plaza Resorts Orlando/Ft. Lauderdale Vacations for all remaining monetary obligations arising from this Final Judgment and Consent Decree.

## VII. PAYMENT TO THE STATE

36.     The Court enters a judgment in favor of plaintiff and against defendants in the amount of $35,000.00 payable to the Attorney General Court Ordered and Voluntary Compliance Payment Projects Fund, which fund shall be used by the Illinois Attorney General for law enforcement activity and education programs associated with enforcement of the Consumer Fraud Act. This amount is not to be construed as a fine or civil penalty. Defendants shall mail or hand-deliver said sum of $35,000.00 to the Office of the Illinois Attorney General, 500 South Second Street, Springfield, Illinois 62706, upon executing this Final Judgment and Consent Decree, in the form of a cashier's or certified check made payable to the "Attorney General Court Ordered and Voluntary

Compliance Payment Projects Fund."

37.     Pursuant to section 7 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7 *et seq.*, plaintiff has the authority to seek civil penalties; however, plaintiff suspends such attempts based upon defendants' full compliance with all the provisions of this Final Judgment and Consent Decree.

38.     In the event the defendants default with respect to compliance with the terms of this Final Judgment and Consent Decree, plaintiff retains the right to return to Court and seek civil penalties for, among other things, conduct which took place prior to the entry of this Final Judgment and Consent Decree.

## VIII. ENFORCEMENT

39.     For a period of three (3) years from the date of the entry of this Final Judgment and Consent Decree, defendants shall provide a copy of this Final Judgment and Consent Decree to all officers, employees, and agents (including "independent contractors") who have responsibility for developing, authorizing, or using promotional materials, scripts, or marketing programs for vacation packages.  Defendants may redact the amount of any monetary payment prior to distribution of a copy of the Final Judgment and Consent Decree.

40.     For a period of three (3) years after the date of this Final Judgment and Consent Decree, and except as the same may be filed otherwise with the State of Illinois or any agency thereof pursuant to applicable Illinois law, upon request by any Illinois state agency, defendants shall, within thirty (30) days of the request, provide the requester a copy of all promotional materials and scripts used in the solicitation or sale of vacation packages to residents of the State of Illinois since the date of entry of this Final Judgment and Consent Decree.

41.     At any time upon proper notice, any party to this Final Judgment and Consent Decree

may apply to this Court, which shall retain jurisdiction, for such further orders as may be necessary or appropriate for the construction or modification of any of the provisions thereof, or the enforcement of, compliance therewith, and for the punishment of violations thereof.

42. This Final Judgment and Consent Decree does not constitute approval by the Illinois Attorney General's Office of any of defendants' advertising, programs, or practices, and defendants shall make no representation to the contrary.

43. This Final Judgment and Consent Decree shall supersede any and all agreements that defendants may have entered into, prior to the entry date of this Final Judgment and Consent Decree, with the State of Illinois Attorney General's Office in connection with the advertising, promoting, and marketing of its vacation packages, and any prior agreements shall be deemed terminated. This Final Judgment and Consent Decree shall not bind any other offices, boards, commissions, or agencies of the State of Illinois except as to the matters specified herein. This Final Judgment and Consent Decree finally resolves all claims that the Office of the Attorney General--Consumer Fraud Bureau may have against defendants in connection with the promoting and marketing of its vacation packages prior to the date of entry of this Final Judgment and Consent Decree.

44. Defendants shall submit to the jurisdiction of the courts of the State of Illinois for the purposes of any action taken to enforce this Final Judgment and Consent Decree, including any action seeking sanctions for violations of same. Unless a temporary restraining order is sought, plaintiff shall make reasonable efforts to notify defendants in writing, prior to instituting any action to enforce this Final Judgment and Consent Decree, that plaintiff believes defendants to be in default of any provision of this Final Judgment and Consent Decree. Notwithstanding the foregoing, such notice shall not be deemed to be a jurisdictional prerequisite for the Office of the Attorney General to institute an enforcement action. The notice to defendants shall set forth the basis for plaintiff's

23

belief that defendants have violated any provision of this Final Judgment and Consent Decree.

45.     This Final Judgment and Consent Decree does not limit the remedies available to the Office of the Attorney General in connection with any future violations of Illinois laws or regulations by defendants which are not specifically addressed herein.

46.     This Final Judgment and Consent Decree shall not affect the rights of any private party to pursue any remedy or remedies pursuant to the laws of the State of Illinois.

APPROVED AS TO FORM AND SUBSTANCE:

Plaintiff, THE PEOPLE OF THE STATE
OF ILLINOIS, by JAMES E. RYAN,
Attorney General of Illinois,

By: _____
    DEBORAH HAGAN
    Assistant Attorney General
    Chief, Consumer Fraud Bureau

By: _____
    AVONNE M. SEALS
    IL Bar No. 6184505
    Assistant Attorney General
    Consumer Fraud Bureau
    500 south Second Street
    Springfield, IL 62706
    217/782-4436

Defendants, NATIONAL TRAVEL
SERVICES, INC., PLAZA RESORTS,
INC., DANIEL LAMBERT, and JAMES
H. VERRILLO,

By: _____
    DANIEL LAMBERT
    an individual and a director of
    National Travel Services, Inc. and
    Plaza Resorts, Inc.

By: _____
    JAMES H. VERRILLO
    an individual and a director of
    National Travel Services, Inc. and
    Plaza Resorts, Inc.

By: _____
    RICHARD W. EPSTEIN, Esq.
    Greenspoon, Marder, Hirschfeld,
    Rafkin Ross & Berger
    Trade Centre South, Suite 700
    100 West Cypress Road
    Fort Lauderdale, FL 33309

Date Entered:  2·8·2000

_____
JUDGE

24



PLAINTIFF'S
EXHIBIT
A, p.1 of 1

[To be typed on the stationary of National Travel Services, Inc.].

Dear _____:

We are writing to inform you that we have reached an agreement with the Attorney General of the State of _____ concerning the purchase of vacation packages from National Travel Services, Inc. by consumers in _____. Pursuant to our agreement, and in our continuing efforts to ensure customer satisfaction, we are now offering you these options:

(1)     The vacation package that you purchased from us includes: [ ]
        For no additional extension fee, we are prepared to extend the time for you to use your vacation certificate for travel with National Travel Services, Inc. through [date]. You may still be responsible for any unpaid balance on your vacation purchase price.

(2)     In the alternative, if you prefer to receive a refund of amounts paid by you for your vacation package, less any refunds or credit we have already provided to you, you are entitled to receive a refund from National Travel Services, Inc.

Please review the postcard enclosed and indicate which of these options you have selected. Please mail the enclosed postcard back to us at [address], and we will honor your request within thirty (30) days after receipt of the postcard. If you do not return the postcard, we will assume that you have chosen option two.

Sincerely yours,

G:\Rhb\4865\0067\NTS.ltr



PLAINTIFF'S
EXHIBIT
A, p. 2 of 4

[Postcard]

I have received your letter offer and appreciate the options offered.
I choose to (please initial one choice):

( )     Accept the offer, at no additional extension charge,
        to extend my vacation certificate for travel with
        National Travel Services, Inc. through [date].  I
        understand that I may still be responsible for any
        unpaid balance on my vacation purchase price.

( )     Receive a refund.

Thank you for your assistance.

Please fill in name, address telephone number:

_____

_____

_____

_____


National Travel Services, Inc.



G:\Rhb\4865\0067\Postcard.nts


**PLAINTIFF'S EXHIBIT**
A, p. 3 of 4

[To be typed on the stationary of Plaza Resorts, Inc.]

Dear _____:

　　　We are writing to inform you that we have reached an agreement with the Attorney General of the State of _____ concerning the purchase of vacation packages from Plaza Resorts, Inc. by consumers in _____. Pursuant to our agreement, and in our continuing efforts to ensure customer satisfaction, we are now offering you these options:

(1)　The vacation package that you purchased from us includes: [ ]
For no additional extension fee, we are prepared to extend the time for you to use your vacation certificate for travel with Plaza Resorts, Inc. through [date]. You may still be responsible for any unpaid balance on your vacation purchase price.

(2)　In the alternative, if you prefer to receive a refund of amounts paid by you for your vacation package, less any refunds or credit we have already provided to you, you are entitled to receive a refund from Plaza Resorts, Inc.

　　　Please review the postcard enclosed and indicate which of these options you have selected. Please mail the enclosed postcard back to us at [address], and we will honor your request within thirty (30) days after receipt of the postcard. If you do not return the postcard, we will assume that you have chosen option two.

Sincerely yours,

G:\Rhb\4865\0067\PLAZA.LTR

PLAINTIFF'S
EXHIBIT
A, p. 4 of 4

PENGAD-Bayonne, N. J.

[Postcard]

I have received your letter offer and appreciate the options offered.
I choose to (please initial one choice):

( )     Accept the offer, at no additional extension charge,
        to extend my vacation certificate for travel with
        Plaza Resorts, Inc. through [date].  I understand that
        I may still be responsible for any unpaid balance on
        my vacation purchase price.

( )     Receive a refund.

Thank you for your assistance.

Please fill in name, address telephone number:

_____

_____

_____

_____

        Plaza Resorts, Inc.


G:\Rhb\4865\0067\Postcard.Plaza

PLAINTIFF'S
EXHIBIT
B, p. 1 of 2

## GUARANTY AGREEMENT

In consideration of, and as an inducement for the granting, execution and delivery of the herein attached Consent Decree entered into by and between the State of Illinois (hereinafter "Plaintiff") and National Travel Services, Inc. ("NTS"), Plaza Resorts, Inc. ("Plaza"), Daniel Lambert ("Lambert"), and James Verrillo ("Verrillo") (hereinafter "Defendants"), and Plaintiff's agreement to limit Defendants', Lambert and Verrillo, individual liability as provided in the Consent Decree, Defendants, Lambert and Verrillo, hereby guarantee to the States of Arizona, Arkansas, Connecticut, Florida, Illinois, Kansas, Michigan, Missouri, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, West Virginia, Washington, Wisconsin and the District of Columbia (the "States"), in the aggregate, the total of and the full and complete payment of $1,000,000 in consumer restitution claims payable over and beyond the $1,500,000 payment required of NTS and Plaza as provided for in the Consent Decrees of the States. Upon the payment of restitution claims to eligible consumers of the States totaling, in the aggregate, $2,500,000, the guaranty obligations of Lambert and Verrillo hereunder shall be fully discharged and satisfied.

This Guaranty is absolute and unconditional, and in partial payment of restitution claims made in accordance with the terms and conditions of the States' Consent Decrees. It shall be binding upon and enforceable against the undersigned, their heirs, personal representatives, successors and assigns, without the need for any suit or proceedings whatsoever against Defendants, NTS and/or Plaza, and without the need for acceptance of this Guaranty or of any other notice or demand. Defendants Lambert and Verrillo expressly agree to the validity of this Guaranty and expressly agree to the obligations set out in this Guaranty and the Consent Decree. Defendants, Lambert and Verrillo, also expressly agree that this Guaranty shall in no way be terminated, affected, diminished or impaired by reason of the assertion, or the failure to assert, by Plaintiff against NTS and/or Plaza, of any of the rights or remedies reserved to Plaintiffs under the terms and conditions of the Consent Decree or any facts or circumstances arising therefrom.

In further consideration of, and as an inducement to Plaintiff for the granting, execution and delivery of the herein attached Consent Decree, Defendants, Lambert and Verrillo, covenant and agree that in any action or proceeding brought on, under or by virtue of this Guaranty, they will indemnify Plaintiff from and against any and all costs and damages incurred by Plaintiff, including but not limited to, attorneys' fees, court costs and other expenses, at both the trial and appellate level. Defendants Lambert and Verrillo do hereby waive any right to trial by jury with respect to this Guaranty, and do hereby waive any objection as to the personal and subject matter jurisdiction of the courts of the Plaintiff's state.

PLAINTIFF'S
EXHIBIT
B, p. 2 of 2

The rights of Plaintiff are cumulative and shall not be exhausted by its exercise of any of its rights hereunder or otherwise against guarantors, or by any number of successive actions until and unless all indebtedness guaranteed has been paid.

Notwithstanding anything contained herein to the contrary, Defendants, Lambert and Verrillo, are each obligated individually for only $500,000 of the $1,000,000 total obligation due to the States collectively under the States' Consent Decrees and this Guaranty.

Defendants, Lambert and Verrillo, shall provide each Plaintiff state with an executed duplicate copy of this document. Each duplicate shall operate as an original.

Signed:

_____     _____
Daniel Lambert                      James Verrillo


STATE OF FLORIDA        :
                        :ss.:
COUNTY OF BROWARD       :

The foregoing instrument was acknowledged before me this ____ day of _____, 2000, by Daniel Lambert. He is personally known to me or has produced._____ as identification.

_____
Notary Public, State of Florida
My Commission expires:_____

G. GAIL CLARK
MY COMMISSION # CC 572968
EXPIRES: September 10, 2000
Bonded Thru Notary Public Underwriters


STATE OF FLORIDA        :
                        :ss.:
COUNTY OF BROWARD       :

The foregoing instrument was acknowledged before me this ____ day of _____, 2000, by James Verrillo. He is personally known to me or has produced _____ as identification

_____
Notary Public, State of Florida

My Commission expires:_____

G. GAIL CLARK
MY COMMISSION # CC 572968
EXPIRES: September 10, 2000
Bonded Thru Notary Public Underwriters

- 2 -

Approved as to form and without liability under their Guaranty Agreement.:

_____

Richard Epstein
Attorney for Defendants, Lambert and Verrillo

# EXHIBIT D

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

**OFFICE OF THE ATTORNEY GENERAL,**
**DEPARTMENT OF LEGAL AFFAIRS,**
**STATE OF FLORIDA,**

      Plaintiff,

vs.

Case No.: 08-54154 (18)
JUDGE:    Luzzo

**IMPERIAL MAJESTY CRUISE LINE L.L.C.,**
a Florida limited liability company

      Defendant.

_____/

## AGREED FINAL CONSENT JUDGMENT

Plaintiff, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA, (hereinafter referred to as "Plaintiff"), and IMPERIAL MAJESTY CRUISE LINE, L.L.C. (hereinafter collectively referred to as "Defendant"), and it having been represented that the Parties are willing to enter into this Agreed Final Consent Judgment without any admission that Defendant has violated the law and for the purpose of settlement in this matter only. Defendant acknowledges that it is aware of its right to a trial in this matter and has waived that right. Defendant admits the jurisdiction of the Court and consents to the entry of this Agreed Final Consent Judgment. Defendant states that no promise of any kind or nature whatsoever (other than the written terms of this Agreed Final Consent Judgment) was made to induce it to enter into this Agreed Final Consent Judgment and that it has entered into this Judgment freely and voluntarily. The Parties, therefore, being in agreement, agree to the entry of this Judgment, and the Parties waive the necessity of the Court making findings of fact for this Consent Judgment, this Court **ORDERS AND ADJUDGES** as follows:



1.     A Permanent Injunction and Final Judgment are hereby entered against the Defendant. Said Defendant, in such name or through any other fictitious name, acting through any corporation, partnership or business entity in which it has an ownership interest or in which it acts as an officer, director or board member, together with the Defendant's agents, employees, successors, assigns, and all other persons acting in concert or participation with defendant are hereby immediately and permanently restrained and enjoined from:

   a. engaging in the business practices identified in the complaint filed in the present cause or from otherwise violating Florida Statute, §501, Part II;

   b. charging customers any fees or charges for their cruise ticket in addition to the advertised cruise fare price other than fees or charges imposed by a governmental or quasi-governmental authority and a fuel supplement charge. Other than a fuel supplement charge, all nongovernmental and nonquasi-governmental charges or fees for the cruise ticket shall be included in the advertised cruise price;

2.     Defendant shall remit to a governmental or quasi-governmental authority, any and all charges collected in addition to the advertised cruise fare price, with the exception of a fuel supplement charge.

3.     Defendant shall clearly and conspicuously disclose the fuel supplement charge by placing the amount and frequency of the fuel supplement charge directly above, beneath, or next to the cruise fare price, and above or before the governmental or quasi-governmental imposed fees or charges. The Defendant shall be responsible for making the substantive terms and conditions of this Consent Judgment known to independent third parties who are known to Defendant to advertise Defendant's cruises.

2



4.    Defendant shall provide the Plaintiff, upon request, any documentation that would assist the Plaintiff in determining Defendant's compliance with the present Consent Judgment. By agreeing to this Consent Judgment, the Defendant authorizes the Plaintiff to verify all information provided on their financial disclosure forms with all appropriate third parties, including, but not limited to, financial institutions and credit reporting agencies.

5.    It is further ordered and adjudged, pursuant to the requirements of Florida Rule of Civ. Pro. 1.560(b) that the judgment debtor shall complete under oath Florida Rule of Civil Procedure Form 1.977(Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney, within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed. This Court retains jurisdiction to enter further orders that are appropriate to compel Defendants to complete form 1.977, including all required attachments, and to serve it on Plaintiff's attorney.

6.    The parties agree that the judgment debtor shall complete a Credit Report Authorization and Release Form provided by the Plaintiff and serve it on the Plaintiff's attorney within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed. This Court retains jurisdiction to enter further orders that are appropriate to compel Defendant to complete and serve the aforesaid Credit Authorization and Release Form. Defendant shall grant authorization to the Economic Crimes Division, Office of the Attorney General of Florida, to obtain a standard factual data credit report through the credit reporting agencies (i.e., EXPERIAN, EQUIFAX and TRANSUNION). This authorization shall remain in effect until such time that the full terms of any Consent Agreement(s) and/or Final Judgment(s) are fulfilled.

3



7.    Defendant shall be responsible for making the substantive terms and conditions of this Consent Judgment known to all successors and assigns, in the event any exist or should be created. The parties agree that the entry of this Consent Judgment in the docket by the Court will constitute notice to them of the terms and conditions of said Consent Judgment.

8.    Judgment is entered against Defendant for Four Million ($4,000,000.00) Dollars as Restitution in the form of refunds to consumers in the amount of the fuel supplement charge collected by the Defendant from those consumers who sailed between January 1, 2007 and the date of execution of the present Consent Judgment.

9.    Judgment is entered against Defendant for Six Million ($6,000,000.00) Dollars in favor of the Office of the Attorney General, for which let execution issue forthwith. Said sum shall be apportioned as follows:

    a. Three Hundred Thousand ($300,000.00) Dollars for attorneys' fees and costs made payable to The State of Florida, Department of Legal Affairs Revolving Trust Fund.

    b. Five Million Seven Hundred Thousand ($5,700,000.00) Dollars for fines and penalties made payable to The State of Florida, Department of Legal Affairs.

10.    The Court shall retain jurisdiction for the purpose of enforcing compliance with the terms and conditions of this Consent Judgment and for any potential contempt proceedings arising from same.

APPROVED:

René D. Harrod
Assistant Attorney General
Office of the Attorney General
110 SE 6th St., Tenth Floor
Ft. Lauderdale, FL 33301

Date: _11/4/10_

Mary Leontakianakos
Director, Economic Crimes Division
The Capitol
Tallahassee, FL 32399-1050

Date: _10/27/10_

4

_(signature)_

ROBERT A. HANNAH
Deputy Attorney General
The Capitol
Tallahassee, FL 32399-1050

Date: October 28, 2010

IMPERIAL MAJESTY CRUISE LINE, L.L.C.,
a Florida limited liability company

By: _____
    EDWARD LEVITAN, as manager
    of Imperial Majesty Cruise Line, L.L.C.

Date: _____

~~Approved and~~ Entered in Chambers in Fort Lauderdale, Broward County, Florida.

JOHN T ZUZZO
Circuit Judge

Date: _____

ROBERT A. HANNAH
Deputy Attorney General
The Capitol
Tallahassee, FL 32399-1050

Date: _____

IMPERIAL MAJESTY CRUISE LINE, L.L.C.,
a Florida limited liability company

By: _____
    EDWARD LEVITAN, as manager
    of Imperial Majesty Cruise Line, L.L.C.

Date: _____10/21/10_____

~~Approved and~~ Entered in Chambers in Fort Lauderdale, Broward County, Florida.

_____
JOHN T. LUZZO
Circuit Judge

Date: _____

ROBERT A. HANNAH
Deputy Attorney General
The Capitol
Tallahassee, FL 32399-1050

Date: _____


IMPERIAL MAJESTY CRUISE LINE, L.L.C.,
a Florida limited liability company

By: _____
    EDWARD LEVITAN, as manager
    of Imperial Majesty Cruise Line, L.L.C.


Date: _____


Entered in Chambers in Fort Lauderdale, Broward County, Florida.

JOHN T. LUZZO
Circuit Judge

JOHN T. LUZZO

NOV 1 7 2010

A TRUE COPY

Date: ___November 17, 2010___

Copies mailed to:

Richard Epstein, Esq.
Greenspoon Marder, P.A.
Trade Centre South, Suite 700
100 W. Cypress Creek Road
Fort Lauderdale, FL 33309
*Counsel for Imperial Majesty Cruise Line*
*L.L.C.*

Rene D. Harrod
Office of the Attorney General
Economic Crimes Division
110 Southeast 6th Street
Ft. Lauderdale, Florida 33301
*Counsel for Plaintiff Office of the Attorney*
*General*

1532706 v1

5C

# EXHIBIT E

# UNCOLLECTABLE CASE CHECKLIST

## WHERE ATTORNEY ANTICIPATES THAT DEFENDANT(S) WILL NOT BE ABLE TO FULFILL FINANCIAL TERMS AND CONDITIONS OF AVC OR SETTLEMENT AGREEMENT AND RECOMMENDS CLOSURE

Case Name and AG Number:        Imperial Majesty Cruise Line, LLC, Case No. L08-3-1078

| | | | |
|---|---|---|---|
| Total restitution due: | $39,700.00 | Amount Paid to Date: | $0.00 |
| Total attorneys fees and costs due: | $17,762.17 | Amount Paid to Date: | $0.00 |
| Total Fines and Penalties due: | $700,000.00 | Amount Paid to Date: | $0.00 |

Determination of inability to pay or secure payment made on the basis of:
**(Supporting documentation required for case file)**

___X_____        Sworn financial affidavit of Defendant(s) showing lack of assets or income sufficient to satisfy Judgment, Settlement Agreement or AVC.

_____        Asset search conducted by financial investigator.

_____        Discovery in aid of execution of judgment.

_____        The inability to locate Defendants after diligent search.

_____        The conviction/incarceration of the Defendant(s) on criminal charges.

_____        Bankruptcy filing, and claim has been submitted to the Bankruptcy Court.

___X_____        Other

Comments: (Please provide a short summary of the basis for your determination that the payments or judgment in question are either uncollectable or not financially feasible to obtain.)

Imperial Majesty, Inc. was administratively dissolved on September 14, 2007, and ceased operating having transferred its only ship to a different cruise company. The principal submitted a Form 1.977 pursuant to the terms of the final judgment, which indicates no assets. The entity had a loss of $1.3M pursuant to its 2009 taxes. Bank account currently has a minimal balance.

_____                    ____2/3/11_____
Assistant Attorney General                                    Date

# UNCOLLECTIBLE AFFIDAVIT

AG Case # No. L08-3-1078

Subject Individual Entity:  Imperial Majesty Cruise Line, LLC

I certify that all reasonable efforts have been taken to collect the funds due in this case, as per the Uncollectible Case Checklist (copy attached).

The case is now deemed to be uncollectible.

_____Rene Harrod_____
Printed Name

_____
Signature

_____2/3/11_____
Date

_____
Office

Having reviewed the case file, I agree with the above recommendation.

_____
Bureau Chief Robert Julian

Approved.

_____
Director of Economic Crimes
Florida Attorney General's Office
PL-01 The Capitol
Tallahassee, Florida  32399-1050
Phone:  (850)414-3600
Facsimile:  (850)488-4483

# EXHIBIT F

**Whois Record** ( last updated on 2015-03-20 )

```
Domain Name: HOLIDAYCL.COM
Registry Domain ID: 1728298311_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.gkg.net
Registrar URL: http://www.gkg.net
Updated Date: 2014-06-06T08:47:52.0Z
Creation Date: 2012-06-19T16:17:41.0Z
Registrar Registration Expiration Date: 2015-06-19T16:17:41.0Z
Registrar: GKG.NET, INC.
Registrar IANA ID: 93
Registrar Abuse Contact Email:  abuse@gkg.net
Registrar Abuse Contact Phone: +1.8776951790
Domain Status: clientTransferProhibited
Registry Registrant ID: GKG-C0000307B2
Registrant Name: Consolidated World Travel, Inc. Consolidated World Travel,
Inc.
Registrant Organization: Consolidated World Travel, Inc.
Registrant Street: 2121 W Oakland Park Blvd.
Registrant Street: Suite 1
Registrant City: Fort Lauderdale
Registrant State/Province: FL
Registrant Postal Code: 33311
Registrant Country: US
Registrant Phone: +1.8886020024
Registrant Email: c7e865bb84e07132f8b996cafa3d92586a947eb5@whois.gkg.net
Registry Admin ID: GKG-C0000307B2
Admin Name: Consolidated World Travel, Inc. Consolidated World Travel, Inc.
Admin Organization: Consolidated World Travel, Inc.
Admin Street: 2121 W Oakland Park Blvd.
Admin Street: Suite 1
Admin City: Fort Lauderdale
Admin State/Province: FL
Admin Postal Code: 33311
Admin Country: US
Admin Phone: +1.8886020024
Admin Email: c7e865bb84e07132f8b996cafa3d92586a947eb5@whois.gkg.net
Registry Tech ID: GKG-C0000307B2
Tech Name: Consolidated World Travel, Inc. Consolidated World Travel, Inc.
Tech Organization: Consolidated World Travel, Inc.
Tech Street: 2121 W Oakland Park Blvd.
Tech Street: Suite 1
Tech City: Fort Lauderdale
Tech State/Province: FL
Tech Postal Code: 33311
Tech Country: US
Tech Phone: +1.8886020024
Tech Email: c7e865bb84e07132f8b996cafa3d92586a947eb5@whois.gkg.net
Name Server: NS1.SUN64.COM
Name Server: NS2.SUN64.COM
URL of the ICANN WHOIS Data Problem Reporting System:  http://wdprs.interni
c.net/
```

# EXHIBIT G

Domain Name: HOLIDAY-CRUISELINE.COM
Registry Domain ID: 1736552422_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2014-07-09T17:19:03Z
Creation Date: 2012-07-31T07:36:41Z
Registrar Registration Expiration Date: 2015-07-31T07:36:41Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.480-624-2505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID:
Registrant Name: James Verillo
Registrant Organization: Holiday Cruise Line
Registrant Street: 2419 E Commerical Blvd
Registrant Street: Suite 100
Registrant City: Fort Lauderdale
Registrant State/Province: FL
Registrant Postal Code: 33308
Registrant Country: United States
Registrant Phone: +1.9543314154
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: mhunter@rwili.onmicrosoft.com

# EXHIBIT H

PAGEVAULT

Document title: Telecom - Notice of violation - Consolidated Travel Holdings Group, Inc. - File No.: PDR 9174-1506

Capture URL: http://www.crtc.gc.ca/eng/archive/2015/vt150311.htm

Captured site IP: 198.103.61.7

Page loaded at (UTC): Tuesday, Sep 15 2015, 16:26:42

Capture timestamp (UTC): Tuesday, Sep 15 2015, 16:27:25

Capture tool: v3.6.6

Page Vault server IP: 52.3.54.241

Browser engine: Chrome/41.0.2272.16

Operating system: Microsoft Windows NT 6.2.9200.0 (6.2.9200.0)

PDF length: 2

Portal URL: https://portal.page-vault.com/#/snapshot/13326

User: siprut-user2

# Canadian Radio-television and Telecommunications Commission

Canada

Phone ▾ | Internet ▾ | TV & Radio ▾ | Business & Licensing ▾

Home > Business and Licensing > Compliance and Enforcement > Telemarketing Citations, Penalties and Violations > Notices of Violation 2015 > Consolidated Travel Holdings Group, Inc.



## Enforcement Actions

**Administrative monetary penalties**

2015  2014  2013  2012  2011  2010
2009

**Citations**

2015  2014  2013  2012  2011  2010

**Notices of Violation**

2015  2014  2013  2012  2011  2010

**Undertakings**

2015

# Notice of Violation: Consolidated Travel Holdings Group, Inc.

Ottawa, 11 March 2015

File No.: PDR 9174-1506

To: Mr. Daniel Lambert
Consolidated Travel Holdings Group, Inc.

Address:
2419 E Commercial Blvd, Ste 100
Fort Lauderdale, Florida 33308-4042
United States

Date of Notice and Payment: 2 March 2015

Penalty: $200,000

Pursuant to section 72.07 of the Telecommunications Act, S.C. 1993, c. 38 (the Act), the undersigned has issued this Notice of Violation finding Consolidated Travel Holdings Group, Inc. to have committed the following violations contrary to the Canadian Radio-television and Telecommunications Commission's (CRTC's) Unsolicited Telecommunications Rules (the Rules) made under section 41 of the Act:

Between 1 February 2013 and 31 October 2014, telemarketing telecommunications were made by and on behalf of Consolidated Travel Holdings Group, Inc., resulting in violations of the Rules: Part II, section 4 for initiating telemarketing telecommunications to consumers whose telephone numbers were registered on the National Do Not Call List (DNCL); Part II, section 13 for using a version of the National DNCL that was older than 31 days; Part III, section 25 for failing to display the originating telecommunications number or an alternate telecommunications numbers whre the telemarketer can be reached; and Part IV, section 2 for initiating telemarketing telecommunication via an Automatic Dialing-Announcing Device (ADAD) without obtaining express consent from the consumers.

Pursuant to section 72.02 of the Act, a person is liable for a violation that is committed by an employee, or an agent or mandatary, of the person acting in the course of the employee's employment or the scope of the agent's or mandatary's authority, whether or not the employee, agent or mandatary who actually committed the violation is identified or proceeded against in accordance with this Act.

Pursuant to section 72.01 of the Act, the undersigned has determined that the total penalty for the violations identified above is $200,000.

United States

Date of Notice and Payment: 2 March 2015

Penalty: $200,000

Pursuant to section 72.07 of the Telecommunications Act, S.C. 1993, c. 38 (the Act), the undersigned has issued this Notice of Violation finding Consolidated Travel Holdings Group, Inc. to have committed the following violations contrary to the Canadian Radio-television and Telecommunications Commission's (CRTC's) Unsolicited Telecommunications Rules (the Rules) made under section 41 of the Act:

Between 1 February 2013 and 31 October 2014, telemarketing telecommunications were made by and on behalf of Consolidated Travel Holdings Group, Inc., resulting in violations of the Rules: Part II, section 4 for initiating telemarketing telecommunications to consumers whose telephone numbers were registered on the National Do Not Call List (DNCL); Part II, section 13 for using a version of the Naitonal DNCL that was older than 31 days; Part III, section 25 for failing to display the originating telecommunications number or an alternate telecommunications numbers whre the telemarketer can be reached; and Part IV, section 2 for initiating telemarketing telecommunication via an Automatic Dialing-Announcing Device (ADAD) without obtaining express consent from the consumers.

Pursuant to section 72.02 of the Act, a person is liable for a violation that is committed by an employee, or an agent or mandatary, of the person acting in the course of the employee's employment or the scope of the agent's or mandatary's authority, whether or not the employee, agent or mandatary who actually committed the violation is identified or proceeded against in accordance with this Act.

Pursuant to section 72.01 of the Act, the undersigned has determined that the total penalty for the violations identified above is $200,000.

The penalty of $200,000 must be paid by Consolidated Travel Holdings Group, Inc. to "The Receiver General for Canada" in accordance with subsection 72.09(3) of the Act.

Manon Bombardier
Chief Compliance and Enforcement Officer

Date modified: 2015-03-11

Terms and conditions | Transparency

**About us**
Our organization
Information Resource Centre
Plans and reports
Statutes and regulations
CRTC Interconnection Steering Committee (CISC)

**News**
News releases
Speeches

**Contact us**
Business support
Regional offices
Chairman, commissioners and senior management
Make a complaint

**Stay connected**
Facebook
RSS feeds
Twitter
YouTube

HEALTH    TRAVEL    SERVICE CANADA    JOBS    ECONOMY    Canada.ca

# EXHIBIT I

PAGEV🔒ULT

| | |
|---|---|
| Document title: | NBC 6 Investigation: Caribbean Cruise Line \| NBC 6 South Florida |
| Capture URL: | http://www.nbcmiami.com/news/local/NBC-6-Investigation-Caribbean-Cruise-Line-290281751.html |
| Captured site IP: | 23.3.13.33 |
| Page loaded at (UTC): | Thursday, Sep 3 2015, 21:27:09 |
| Capture timestamp (UTC): | Thursday, Sep 3 2015, 21:30:02 |
| Capture tool: | v3.6.4 |
| Page Vault server IP: | 54.152.69.245 |
| Browser engine: | Chrome/41.0.2272.16 |
| Operating system: | Microsoft Windows NT 6.2.9200.0 (6.2.9200.0) |
| PDF length: | 14 |
| Portal URL: | https://portal.page-vault.com/#/snapshot/11866 |
| User: | siprut-user2 |

# 6 SOUTH FLORIDA

☀ 87°

HOME | NEWS | WEATHER | INVESTIGATIONS | ENTERTAINMENT | TRAFFIC | CONTACT US | CONTESTS

WATCH LIVE TV NOW ▶

LOCAL | U.S. & WORLD | SPORTS | HEALTH | TECH | WEIRD | WEATHER | ANIMALS | NBC 6 PRIDE | CUBA CROSSROAD | ONLY IN FLORIDA

WATCH LIVE | WATCH: NBC 6 News

Share


SHIPLOADS OF FUN INCLUDED | 7-DAY CRUISES STARTING AT $429* | Carnival | START EXPLORING | *Per person. Click for legal restrictions.

## NBC 6 Investigation: Caribbean Cruise Line

By Robbi Peele, Trina Robinson and Mc Nelly Torres

View Comments (1) | Email | Print | Tweet 9 | f Recommend 35 | Send | g+1 3



DMV

**New Rule Leaves Drivers Surprised**

Why did no one tell drivers about this new rule? If you drive less than **45 miles per day**, you better read this... (Read More...)

TRENDING STORIES

VIDEO Report Details Exchange Between Arby's Worker, Officer



NBC 6 Investigation: Caribbean Cruise Line (Published Thursday, Jan. 29, 2015)

Updated at 5:22 PM EDT on Friday, Jan 30, 2015

Bob Hernan thought he was getting a good deal to take his daughter and two sons on a cruise so one morning last fall he used half of his monthly social security and took the vacation offer he got by phone.

"A cruise for two nights and four days," said 84-year-old Hernan, who said he took meticulous notes during the call. "And if I took four people, I had to pay the extra fee. I think it was $59 port fees and that was the only fee mentioned."

Sometimes the vacation deal offer comes in a voucher in the mail, others through a phone call or text; all promising a free cruise or special promotion. But when Hernan called to book the cruise for the Thanksgiving holidays; the sales person representing Caribbean Cruise Line came up with more fees that Hernan says were not mentioned when he bought the vacation package.

His daughter, Mary Hernan, explained there was a $129 per person fee just to get on the cruise, the fee for gratuities and fuel surcharges, and on and on. The final price tag: $1,600.

This was a vacation Bob Hernan could not afford. Mary Hernan went online to see what she could find out about Caribbean Cruise Line.

"All I found were complaints," Mary Hernan said.

Caribbean Cruise Line, based in Fort Lauderdale, is more of a travel marketing company than a cruise line with hundreds of unsatisfied customers all over the

TRENDING STORIES

VIDEO  Report Details Exchange Between Arby's Worker, Officer

Arby's Offers Free Meals to Miami-Area Officers

Fifth Suspect Arrested in Murder of Teen in Homestead

Judge Orders Clerk Blocking Gay Marriages to Jail

SPONSORED  The Cinephile's Guide to Building a Home Theater

WEATHER FORECAST

 WEATHER ALERTS          View All

Miami, FL

87°  Broken Clouds
Feels Like 100°

        
Radar      Forecast      Maps

31 days to a better you.
What will you start today?





NBC 6 Investigation: Caribbean Cruise Line (Published Thursday, Jan. 29, 2015)

Updated at 5:22 PM EDT on Friday, Jan 30, 2015

Bob Hernan thought he was getting a good deal to take his daughter and two sons on a cruise so one morning last fall he used half of his monthly social security and took the vacation offer he got by phone.

"A cruise for two nights and four days," said 84-year-old Hernan, who said he took meticulous notes during the call. "And if I took four people, I had to pay the extra fee. I think it was $59 port fees and that was the only fee mentioned."

Sometimes the vacation deal offer comes in a voucher in the mail, others through a phone call or text; all promising a free cruise or special promotion. But when Hernan called to book the cruise for the Thanksgiving holidays; the sales person representing Caribbean Cruise Line came up with more fees that Hernan says were not mentioned when he bought the vacation package.

His daughter, Mary Hernan, explained there was a $129 per person fee just to get on the cruise, the fee for gratuities and fuel surcharges, and on and on. The final price tag: $1,600.

This was a vacation Bob Hernan could not afford. Mary Hernan went online to see what she could find out about Caribbean Cruise Line.

"All I found were complaints," Mary Hernan said.

Caribbean Cruise Line, based in Fort Lauderdale, is more of a travel marketing company than a cruise line with hundreds of unsatisfied customers all over the

## TRENDING STORIES

VIDEO Report Details Exchange Between Arby's Worker, Officer

Arby's Offers Free Meals to Miami-Area Officers

Fifth Suspect Arrested in Murder of Teen in Homestead

Judge Orders Clerk Blocking Gay Marriages to Jail

SPONSORED The Cinephile's Guide to Building a Home Theater

## WEATHER FORECAST



Miami, FL

 87° Broken Clouds, Feels Like 100°




Radar    Forecast    Maps



31 days to a better you. What will you start today?

"All I found were complaints," Mary Hernan said.

Caribbean Cruise Line, based in Fort Lauderdale, is more of a travel marketing company than a cruise line with hundreds of unsatisfied customers all over the United States and Canada.

More than 500 complaints had been filed with the Florida Attorney General's office and more than 1,400 with the Better Business Bureau, which gives the company an "F." Most of the BBB complaints have been resolved.

*(A map of the complaints filed with the Better Business Bureau can be found at the bottom of this story.)*

The Florida Attorney General's Office said it is currently investigating Caribbean Cruise Line.

Mary Hernan called the company and asked for a refund because the package wasn't what her father expected it to be. But the customer service representative called her "stupid" and refused to refund the money.

What the Hernans did not know is that Caribbean Cruise Line is in the business of selling travel packages, license records filed with the Florida Department of Agriculture and Consumer Services show.





NEWSLETTERS

Receive the latest local updates in your inbox

SIGN UP

Privacy Policy | More Newsletters







February 28, 2014

CARIBBEAN CRUISE LINE, INC.
ATTN: ROBBY H. BIRNBAUM
100 W CYPRESS CREEK RD STE 700
FORT LAUDERDALE, FL 33309-2195

SUBJECT: Seller of Travel Registration License
Registration #: ST37425

Your application and fee for a license as a seller of travel as required by Chapter 559, Florida Statutes, have been received and processed.

Your registration certificate appears below. This certificate should be detached along the dotted line and prominently displayed at your primary place of business. Each contract of a seller of travel must include the phrase "CARIBBEAN CRUISE LINE, INC. DBA: NATIONWIDE RESERVATIONS is registered with the State of Florida as a Seller of Travel. Registration No. ST37425." Each advertisement of a seller of travel must include the phrase "Fla. Seller of Travel Ref. No. ST37425."

Proof of a current license must also be presented before the local occupational license(s) may be issued or renewed. This license will expire on January 15, 2015.

If you have any questions, please do not hesitate to call the Division of Consumer Services at 800-435-7352 or 1-800-HELP-FLA.

Cut Here

State of Florida
Department of Agriculture and Consumer Services
Division of Consumer Services
2005 Apalachee Pkwy
Tallahassee, Florida 32399-6500

Registration No.: **ST37425**
Issue Date: February 27, 2014
Expiration Date: January 15, 2015

**Florida Seller of Travel License**
Chapter 559, Florida Statutes

POST CERTIFICATE
CONSPICUOUSLY

CARIBBEAN CRUISE LINE, INC.
DBA: NATIONWIDE RESERVATIONS
DBA: CRC
DBA: GREATCRUISEDEAL.COM
5100 N STATE ROAD 7
FORT LAUDERDALE, FL 33319-3399

ADAM H. PUTNAM
COMMISSIONER OF AGRICULTURE

NBC 6 Investigators tracked down Robert P. Mitchell, president of Caribbean Cruise Line, to ask why he wouldn't return Bob Hernan's $600. Mitchell did not respond to our request for an interview.

It turns out that businessmen connected with Caribbean Cruise Line have been in trouble for deceiving customers twice before; most recently in 2006 when they owned a company called Imperial Majesty.

It turns out that businessmen connected with Caribbean Cruise Line have been in trouble for deceiving customers twice before; most recently in 2006 when they owned a company called Imperial Majesty.

James Verrillo and Daniel Lambert got in trouble for practices similar to what Caribbean Cruise Line's customers have complained about.

It was located at the same address as Caribbean Cruise Line, 2419 East Commercial Blvd. in Fort Lauderdale. Both booked cruises aboard the "Bahamas Celebration."

Five years ago, a Florida judge banned Lambert and Verillo from "charging fees" above the "advertised fare" and ordered them to "conspicuously disclose the fuel …charge…" and ordered them to pay $16 million in fines and restitution.





Plaintiff, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA, (hereinafter referred to as "Plaintiff"), and IMPERIAL MAJESTY CRUISE LINE, L.L.C. (hereinafter collectively referred to as "Defendant"), and it having been represented that the Parties are willing to enter into this Agreed Final Consent Judgment without any admission that Defendant has violated the law and for the purpose of settlement in this matter only. Defendant acknowledges that it is aware of its right to a trial in this matter and has waived that right. Defendant admits the jurisdiction of the Court and consents to the entry of this Agreed Final Consent Judgment. Defendant states that no promise of any kind or nature whatsoever (other than the written terms of this Agreed Final Consent Judgment) was made to induce it to enter into this Agreed Final Consent Judgment and that it has entered into this Judgment freely and voluntarily. The Parties, therefore, being in agreement, agree to the entry of this Judgment, and the Parties waive the necessity of the Court making findings of fact for this Consent Judgment, this Court **ORDERS AND ADJUDGES** as follows:

Page | 1 | of 7

Joe Pappacoda is a Miami attorney specializing in financial misconduct. He said the state often has a hard time collecting penalties in these types of civil cases.

"They don't care if the corporation gets a $15 million judgment because the corporation is going to get dissolved and open up a new corporation," Pappacoda said.

In fact, Verrillo and Lambert did dissolve Imperial Majesty on Sept. 14, 2007, according to an affidavit filed with the Florida Attorney General's Office, and they did not pay a penny, saying their company lost $1.3 million dollars "pursuant to its 2009 taxes," the document shows.

| DOCUMENT | PAGES | NOTES | Zoom |



**UNCOLLECTABLE CASE CHECKLIST**

WHERE ATTORNEY ANTICIPATES THAT DEFENDANT(S) WILL NOT BE ABLE TO
FULFILL FINANCIAL TERMS AND CONDITIONS OF AVC OR SETTLEMENT
AGREEMENT AND RECOMMENDS CLOSURE

Case Name and AG Number:　　　Imperial Majesty Cruise Line, LLC, Case No. L08-3-1078

| Total restitution due: | $39,700.00 | Amount Paid to Date: | $0.00 |
|---|---|---|---|
| Total attorneys fees and costs due: | $17,762.17 | Amount Paid to Date: | $0.00 |
| Total Fines and Penalties due: | $700,000.00 | Amount Paid to Date: | $0.00 |

Determination of inability to pay or secure payment made on the basis of:
**(Supporting documentation required for case file)**

___X___　　Sworn financial affidavit of Defendant(s) showing lack of assets or income
　　　　　　sufficient to satisfy Judgment, Settlement Agreement or AVC.

_____　　Asset search conducted by financial investigator.

_____　　Discovery in aid of execution of judgment.

_____　　The inability to locate Defendants after diligent search.

_____　　The conviction/incarceration of the Defendant(s) on criminal charges.

_____　　Bankruptcy filing, and claim has been submitted to the Bankruptcy Court.

___X___　　Other

Comments:　(Please provide a short summary of the basis for your determination that the
payments or judgment in question are either uncollectable or not financially feasible to obtain.)

Imperial Majesty, Inc. was administratively dissolved on September 14, 2007, and ceased
operating having transferred its only ship to a different cruise company. The principal submitted
a Form 1.977 pursuant to the terms of the final judgment, which indicates no assets. The entity
had a loss of $1.3M pursuant to its 2009 taxes. Bank account currently has a minimal balance.

_____　　　_2/3/11_
Assistant Attorney General　　　　　Date

NBC 6 Investigators reached out to Florida Attorney General Pam Bondi's office to

Document title:　　　NBC 6 Investigation: Caribbean Cruise Line | NBC 6 South Florida
Capture URL:　　　　http://www.nbcmiami.com/news/local/NBC-6-Investigation-Caribbean-Cruise-Line-290281751.html
Capture timestamp (UTC):　　　Thursday, Sep 3 2015, 21:30:02　　　　　　　　　　　　　　　　Page 8 of 14



Though Robert Mitchell is Caribbean Cruise Line's owner of record, NBC 6 Investigators found evidence that both Verrillo and Lambert are connected to the company as well.

Annual reports filed with the U.S. Department of Labor known as "Employee Retirement Income Security Act of 1974" shows Plaza Resorts – the company sued by 19 attorney generals – and Dan Lambert sponsors Caribbean Cruise Line's employee stock program. Experts said a sponsor has to be part of the company.



| Form 5500 | Annual Return/Report of Employee Benefit Plan | OMB Nos. 1210-0110 1210-0089 |
|---|---|---|

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

This form is required to be filed for employee benefit plans under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6047(e), and 6058(a) of the Internal Revenue Code (the Code).

► Complete all entries in accordance with the instructions to the Form 5500.

**2009**

This Form is Open to Public Inspection

---

**Part I    Annual Report Identification Information**

For calendar plan year 2009 or fiscal plan year beginning   01/01/2009   and ending   12/31/2009

A   This return/report is for:   ☐ a multiemployer plan;   ☐ a multiple-employer plan; or
☐ a single-employer plan;   ☐ a DFE (specify) ____

B   This return/report is:   ☐ the first return/report;   ☐ the final return/report;
☐ an amended return/report;   ☐ a short plan year return/report (less than 12 months).

C   If the plan is a collectively-bargained plan, check here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► ☐

D   Check box if filing under:   ☐ Form 5558;   ☐ automatic extension;   ☐ the DFVC program;
☐ special extension (enter description)

---

**Part II    Basic Plan Information**—enter all requested information

**1a** Name of plan
CARIBBEAN CRUISE LINE, INC. 401(K) PLAN

**1b** Three-digit plan number (PN) ►   001

**1c** Effective date of plan
01/01/1999

**2a** Plan sponsor's name and address (employer, if for a single-employer plan)
(Address should include room or suite no.)
CARIBBEAN CRUISE LINE, INC.

2419 EAST COMMERCIAL BLVD.
FT. LAUDERDALE, FL 33308

**2b** Employer Identification Number (EIN)
26-3230287

**2c** Sponsor's telephone number
954-630-9449

**2d** Business code (see instructions)
561500

---

Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, as well as the electronic version of this return/report, and to the best of my knowledge and belief, it is true, correct, and complete.

| SIGN HERE | Filed with authorized/valid electronic signature. | 03/04/2011 | DANIEL LAMBERT |
|---|---|---|---|
|  | Signature of plan administrator | Date | Enter name of individual signing as plan administrator |
| SIGN HERE | Filed with authorized/valid electronic signature. | 03/04/2011 | DANIEL LAMBERT |
|  | Signature of employer/plan sponsor | Date | Enter name of individual signing as employer or plan sponsor |
| SIGN HERE |  |  |  |
|  | Signature of DFE | Date | Enter name of individual signing as DFE |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.

Form 5500 (2009)
v.092307.1

---

So where are the men who'd failed to pay the millions they owe in fines and restitution to Florida regulators today?

James Verrillo owns a six-bedroom, 15,000-square-foot home in Lighthouse Point

So where are the men who'd failed to pay the millions they owe in fines and restitution to Florida regulators today?

James Verrillo owns a six-bedroom, 15,000-square-foot home in Lighthouse Point, which the real estate website, Zillow, values at $7.5 million.

Daniel Lambert put this 9-bedroom, 18,000-square-foot-home in Fort Lauderdale in his wife's name. The house is for sale for $17.9 million. Lambert has reportedly sunk millions into his fight club, American Top Team and is building a new 45,000-square-foot gym.

As for the Hernan's, they say the people involved with these companies are getting rich by exploiting honest, hard-working people.

"The worst thing about this is they don't tell you the truth," Bob Hernan said.

"He [Bob Hernan] trusts people. He purchased what he thought was going to be a great package that fit his family," Mary Hernan added.



Document title: NBC 6 Investigation: Caribbean Cruise Line | NBC 6 South Florida
Capture URL: http://www.nbcmiami.com/news/local/NBC-6-Investigation-Caribbean-Cruise-Line-290281751.html
Capture timestamp (UTC): Thursday, Sep 3 2015, 21:30:02



© OpenStreetMap contributors

Undo   Redo   Reset     ✜ +ableau     Share   Download

10,597 views | more by this author

Learn About Tableau

The above map shows the states where consumers filed complaints with the Better Business Bureau against Caribbean Cruise Line, Inc. during the past 36 months. Over 1,400 consumers in the United States and Canada have filed complaints for an array of reasons including billing issues, dissatisfaction with the product or service and false advertising. The vast majority have been resolved, though not always to the customer's satisfaction. The BBB gives the company an "F" rating because it has "…failed to resolve underlying cause(s) of a pattern of complaints."

Published at 9:23 PM EDT on Jan 29, 2015



*News breaks at inconvenient times.* *Download one of the NBC6 mobile*

Published at 9:23 PM EDT on Jan 29, 2015

 **News breaks at inconvenient times.** *Download one of the NBC6 mobile apps and have the news come to you. Watch live streaming newscasts, receive critical push notifications on the go and stay in touch with your city around the clock.*

*Get the latest from NBC 6 South Florida anywhere, anytime:* **iPhone/iPad App | Twitter | Facebook | Google+ | Instagram | RSS**

---

View Comments (1)  |  Email   |  Print

**Leave Comments**

1 Comment                                          Sort by [ Top ▾ ]

| Add a comment... |

**Carmell Elizabeth Hergert** · Registered Respiratory Therapist at St. Mary's Hospital
Someone please tell me the proper address to request a refund from this company.

Sincerely,
C. Hergert

Like · Reply · Jun 14, 2015 4:01pm

Ⓕ Facebook Comments Plugin



**1 Comment**

Sort by Top ▾



Add a comment...

**Carmell Elizabeth Hergert** · Registered Respiratory Therapist at St. Mary's Hospital
Someone please tell me the proper address to request a refund from this company.

Sincerely,
C. Hergert

Like · Reply · Jun 14, 2015 4:01pm

f Facebook Comments Plugin



**NEWS**
Local
U.S. & World
Sports
Health
Tech
Weird
Weather
Animals
NBC 6 Pride
Cuba Crossroad

**WEATHER**
Forecast
Maps & Radar
Weather Alerts
Weather News
Hurricane Season

**ENTERTAINMENT**
Entertainment News
The Scene
Events
6 in the Mix
Latin Beat

CoziTV.com

**CONTACT US**
Social Directory
About Us
Community
TV Listings
Careers

**TRAFFIC**

FCC Independent Programming Report
FCC News and Information Programming Report
NBC Non-Profit News Partnership Reports
WTVJ Public Inspection File
21st Century Solutions

▷ AdChoices

© 2015 NBCUniversal Media, LLC. All rights reserved.

f  t  ⊚  📱  🔊  ✉

Send Feedback | Terms of service | Privacy policy