## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL BAKOV and JULIE HERRERA, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:15-cv-02980 |
| Plaintiffs, | ) ) ) | Hon. Harry D. Leinenweber |
| v. | ) ) | Hon. Susan E. Cox |
| CONSOLIDATED TRAVEL HOLDINGS GROUP, INC., a Florida corporation, CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, JAMES H. VERRILLO, an individual, DANIEL E. LAMBERT, an individual, JENNIFER POOLE, an individual, and DONNA HIGGINS, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

# Table of Contents

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................2

A.  The Court Is Authorized to Exercise Personal Jurisdiction Over the Individual
    Defendants Verrillo, Lambert, Higgins, and Poole and Corporate Defendant CTH ..........2

    i.   Plaintiffs Sufficiently Allege Personal Jurisdiction Over the Individual
         Defendants ............................................................................................................3

    ii.  Plaintiffs Sufficiently Allege Personal Jurisdiction Over CTH .............................7

B.  The Complaint Does Not Improperly "Lump" Defendants ...............................................11

C.  Plaintiffs Have Stated a Claim Under the ATDA .............................................................15

D.  The Complaint Properly Pleads A TCPA Claim ..............................................................16

    i.   Plaintiffs Properly Plead Direct Liability Under The TCPA Because Plaintiffs
         State That HCL And CTH Are Alter Egos ...........................................................18

    ii.  Plaintiffs Properly Plead Vicarious Liability .......................................................19

    iii. The Complaint Properly Alleges That The Individual Defendants Have
         Personal Liability ................................................................................................20

CONCLUSION....................................................................................................................24

# Table of Authorities

**Cases**                                                                                                          **Page(s)**

*Alderson v. S. Co.*,
    321 Ill. App. 3d 832, 747 N.E.2d 926 (2001) .................................................................11

*Alpert v. Bertsch*,
    235 Ill . App. 3d 452 (Ill. App.  Ct. 1992) ....................................................................10

*Aranda v. Caribbean Cruise Line, Inc.*,
    No. 12 C 4069, 2016 WL 1555576 (N.D. Ill. Apr. 18, 2016)...........................................20

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
    747 F.3d 489 (7th Cir. 2014) ......................................................................................21

*Bartholet v. Reishauer A.G.*,
    953 F.2d 1073 (7th Cir. 1992) ....................................................................................14

*Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*,
    212 F.3d 1031 (7th Cir. 2000) ....................................................................................19

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014)....................................................................................9

*Castro v. Green Tree Servicing L.L.C.*,
    959 F. Supp. 2d 698 (S.D.N.Y. 2013)..........................................................................16

*Chapman v. Wagener Equities, Inc.*,
    No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014)...................................21, 22

*Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*,
    No. 05-60080-CIV, 2011 U.S. Dist. LEXIS 34544 (S.D. Fla. Mar. 30, 2011) ...............13

*Creative Montessori Learning Ctr. v. Ashford Gear, LLC*,
    No. 09 C 3963, 2010 U.S. Dist. LEXIS 92072 (N.D. Ill. Sep. 2, 2010)............................6

*Felland v. Clifton*,
    682 F.3d 665 (7th Cir. 2012) ........................................................................................2

*Fillichio v. M.R.S. Assocs.*,
    No. 09-61629-CIV, 2010 WL 4261442 (S.D. Fla. Oct. 19, 2010) ....................................16

*Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*,
    No. 06 C 3183, 2007 U.S. Dist. LEXIS 38618 (N.D. Ill. May 29, 2007)...........................7

*Gordon v. Caribbean Cruise Line, Inc., et al.*,
No. 1:14-05848 (N.D. Ill.) ...................................................9

*Haroco, Inc. v. Am. Nat'l Bank & Tr. Co.*,
747 F.2d 384 (7th Cir. 1984) .........................................14

*Howley v. U.S. Patent & Trademark Office*,
No. 08-CV-13976, 2008 U.S. Dist. LEXIS 114950 (E.D. Mich. Oct. 22, 2008) .............13

*Hudak v. Berkley Grp., Inc.*,
No. 3:13-CV-00089-WWE, 2014 WL 354676 (D. Conn. Jan. 23, 2014) ........................18

*Hyatt Int'l Corp. v. Coco*,
302 F.3d 707 (7th Cir. 2002) ................................................2

*Izsak, et al. v. Caribbean Cruise Line, Inc.*,
No. 0:14-62231 (S.D. Fla.) ...................................................9

*Jackson v. Caribbean Cruise Line, et al.*,
14-CV-2485 (E.D.N.Y. 2014) ...................................... *passim*

*Johansen v. Vivant, Inc.*,
No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ..........................16

*Kula v. J.K. Schofield & Co.*,
668 F. Supp. 1126, 1130 (N.D. Ill. 1987) ..........................10

*LLC Obi v. Chase Home Fin.*,
No. 10 C 3154, 2010 WL 4810609 (N.D. Ill. Nov. 19, 2010)..........................19

*Marc Dev. v. Wolin*,
845 F. Supp. 547 (N.D. Ill. 1993) ...................................14

*Maunder v. DeHavilland Aircraft of Canada, Ltd.*,
112 Ill. App. 3d 879, 445 N.E.2d 1303 (1983), *aff'd*, 102 Ill. 2d 342,
466 N.E.2d 217 (1984)................................................ 10-11

*Met-L-Wood Corp. v. SWS Industries, Inc.*,
594 F. Supp. 706 (N.D. Ill. 1984) ...................................9

*Minemyer v. R-Boc Representatives, Inc.*,
2007 U.S. Dist. LEXIS 62898 (N.D. Ill. Aug. 24, 2007)................................10

*Mullen v. Metra Corp.*,
05 C 1717, 2005 WL 1950392 (N.D. Ill. Aug. 11, 2005) .................................13

*Nelson v. Park Industries, Inc.*,
    717 F.2d 1120, 1123 (7th Cir.1983) ..................................................................10

*Northern Grain Mktg., LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ...........................................................................2

*Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.*,
    389 Ill. App. 3d 58, 904 N.E.2d 1050, 1060 (2009) .........................................7

*Ott v. Mortgage Inv'rs Corp. of Ohio*,
    65 F. Supp. 3d 1046 (D. Or. 2014) ..................................................................23

*Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ........................................................................2, 3

*Salam v. Lifewatch, Inc.*,
    No. 13 CV 9305, 2014 WL 4960947 (N.D. Ill. Sept. 22, 2014)........................17

*Sandusky Wellness Ctr., L.L.C. v. Wagner Wellness, Inc.*,
    No. 3:12 CV 2257, 2014 WL 1333472 (N.D. Ohio Mar. 28, 2014)...................21

*Singleton v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of City of Chicago*,
    00C395, 2000 WL 777925 (N.D. Ill. June 13, 2000) ........................................13

*Strickler v. Bijora, Inc.*,
    No. 11 CV 3468, 2012 WL 5386089 (N.D. Ill. Oct. 30, 2012) .........................17

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ...........................................................................3

*Texas v. Am. Blast Fax, Inc.*,
    164 F. Supp. 2d 892 (W.D. Tex. 2001)..........................................................5, 23

*Tompkins v. Cent. Laborers' Pension Fund*,
    2009 WL 3836893 (C.D.Ill. 2009)....................................................................14

*Toney v. Quality Res., Inc.*,
    5 F. Supp. 3d 727 (N.D. Ill. 2014) ...................................................................16

*Torco Oil Co. v. Innovative Thermal Corp.*,
    730 F. Supp. 126 (N.D. Ill. 1989) .....................................................................7

*Torres v. Nat'l Enter. Sys., Inc.*,
    No. 12 C 2267, 2012 WL 3245520 (N.D. Ill. Aug. 7, 2012)............................17

iv

*Turnock v. Cope*,
    816 F.2d 332, 333 (7th Cir. 1987) ......................................................................6

*United States v. Iroquois Apartments, Inc*,
    21 F.R.D. 151 (E.D.N.Y. 1957) .....................................................................11

*Weiland v. AssureCare, Inc.*,
    No. 12 C 01947, 2013 WL 4840460 (N.D. Ill. Sept. 10, 2013).........................................19

*Wessel Co., Inc. v. Yoffee & Beitman Mgmt. Corp.*,
    457 F.Supp. 939 (N. D. Ill . 1978) ...............................................................10

Plaintiffs Angel Bakov and Julie Herrera ("Plaintiffs") submit this Response in Opposition to Defendants' Omnibus Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("Motion").[1]

## INTRODUCTION

Defendants have amassed a fortune off of a marketing strategy that violates the Telephone Consumer Protection Act ("TCPA") and the Illinois's Automatic Telephone Dialers Act ("ATDA"). Recognizing that they *again* face liability under the TCPA, Defendants launch a misguided attack against Plaintiffs' Consolidated Class Action Complaint ("Complaint"). Defendants' Motion hurls everything it can think of into its attack, including personal jurisdiction challenges and a laundry list of routine pleading challenges. Worse, Defendants' Motion conflates the liberal notice pleading standards applicable here with the stringent evidentiary standards that apply to a motion for summary judgment. At this stage, Plaintiffs' allegations—and all reasonable inferences based on those allegations—must be accepted as true. When this standard is applied, two things are clear: the Court has personal jurisdiction over all the Defendants because of their participation in the alleged misconduct and the Complaint states cognizable TCPA and ATDA claims against all the Defendants.

---

[1] The term "Defendants" is defined as Consolidated Travel Holdings Group, Inc. ("CTH"), Consolidated World Travel Inc., d/b/a/ Holiday Cruise Line ("HCL"), James H. Verillo, Daniel E. Lambert, Jennifer Poole, and Donna Higgins (Verillo, Lambert, Poole, and Higgins, collectively are referenced as the "Individual Defendants"). The Individual Defendants and CTH, each of whom challenges this Court's personal jurisdiction over it, are referenced collectively as the "PJ Defendants."

**ARGUMENT**

A.    **The Court Is Authorized to Exercise Personal Jurisdiction Over the Individual Defendants Verrillo, Lambert, Higgins, and Poole and Corporate Defendant CTH**

Individual Defendants Verillo, Lambert, Higgins, and Poole and Corporate Defendant CTH contend that Plaintiffs' allegations regarding their contacts with Illinois are conclusory or nonexistent. Motion at 9-12. That is not true. The Complaint is replete with allegations sufficient to make the requisite showing for personal jurisdiction, and the self-serving affidavits filed by the PJ Defendants are not to the contrary.

"The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citing *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). Where the district court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing,[2] the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (citing *Northern Grain Mktg.*, 746 F.3d at 491) (internal quotation marks omitted); *see also Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (same). The Court must "accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (citing *Purdue Res. Found.*, 338 F.3d at 782).

Plaintiffs allege sufficient facts to establish specific personal jurisdiction over the PJ Defendants. "[A] court's exercise of specific jurisdiction requires that the defendant's contacts with the forum state relate to the challenged conduct." *Felland*, 682 F.3d at 673. There are various formulations of the standard, but they have in common three essential requirements: "(1)

---

[2] *See In re: Dairy Farmers of Am., Inc.*, 767 F. Supp. 2d 880, 891 (N.D. Ill. 2011) ("[T]he Court may allow discovery to proceed on the basis of a *prima facie* showing, despite some material disputes of fact, prior to requiring the plaintiff to make a "preponderance of the evidence" showing at a hearing.") (citations omitted).

2

the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state"; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* (citations omitted); *see also Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *Purdue Res. Found.*, 338 F.3d at 780-81.

### i. Plaintiffs Sufficiently Allege Personal Jurisdiction Over the Individual Defendants

Plaintiffs allege that the Individual Defendants are subject to personal liability due to their personal involvement in the business, solicitation, and tortious activities conducted on HCL's behalf in Illinois and elsewhere in the United States. Complaint ¶ 7. In particular, the Individual Defendants participated in the marketing campaign resulting in calls to Plaintiffs and the Class in Illinois. Complaint ¶¶ 9-10, 19, 23, 27, 31, 112. They oversaw the operations of HCL's representatives who took calls with Plaintiffs and other Illinois residents transferred by "Jennifer." Complaint ¶ 113. They approved the use of third parties to make calls and generate leads in Illinois for calls made on HCL's behalf. Complaint ¶¶ 113-14. They also had the authority to determine the number and frequency of calls made in Illinois. Complaint ¶ 115.

Plaintiffs need not rest on their allegations alone, however. At deposition in a case involving similar TCPA violations by Caribbean Cruise Line ("CCL"), Defendant Poole testified that the *only* difference between HCL and CCL is the ship for which each entity was marketing. *See* Transcript of Deposition of Jennifer Poole, June 29, 2015, *Jackson v. Caribbean Cruise Line, et al.*, 14-CV-2485 (E.D.N.Y. 2014) at 12:2-13:3 (attached as **Exhibit 1**). When the sign changed from CCL to HCL, employees remained in the same location, even at the same desk, using the same equipment, the same telephone numbers and, most importantly, the same

marketing campaigns employing the same third-party vendors. *Id.* at 13:14-24; 15:1-23. HCL employees' paychecks are still issued by Caribbean Cruise Line. *Id.* at 14:3-4. Thus, the Individual Defendants' involvement in CCL's marketing campaigns sheds significant light on their involvement in the same or similar campaigns conducted by HCL.

Defendants Verillo and Lambert are trustees for HCL's parent company and were the chief architects of the abusive practices described in the pleading directed at Plaintiffs and others in Illinois. Complaint ¶ 116; Transcript of Deposition of Daniel Lambert, June 25, 2015 *Jackson v. Caribbean Cruise Line, et al.*, 14-CV-2485 (E.D.N.Y. 2014) at 7:15-18; 22:1-2 (attached as **Exhibit 2**). They were directly involved in implementing the illegal telemarketing campaign at issue and directed employees (including Defendants Poole and Higgins) who were involved in the Illinois telemarketing campaign. Complaint ¶ 117-19. Verillo and Lambert had the authority to control the telemarketing campaign and actually exercised such authority to market to Plaintiffs and others in the state. Complaint ¶ 120-21. Lambert testified that he personally interacted with third-party marketers, Ex. 2 at 11:14-20, and that those marketing campaigns operated under geographic restrictions, known as "state omits," *id.* at 18:5-9 (emphasis added). Those are states where CCL, and subsequently HCL, "elected not to do business in for a variety of reasons depending on the state," such as "regulatory issues, maybe licensing issues, maybe a particular law in a particular state that it's difficult to do business in." *Id.* at 10-18. Illinois is not on that list and the Defendants purposely directed their marketing toward Illinois residents, as evidenced by the calls Bakov and Herrera received.

Defendants Poole and Higgins were also directly involved in the implementation of the telemarketing campaign directed at Plaintiffs and other Class members in Illinois. Complaint ¶ 122. Defendant Poole was the Director of Marketing at CCL and then HCL. Ex. 1 at 8:22-9:5.

She (and Defendant Lambert) had authority to make decisions with respect to marketing campaigns, *id.* at 10:15-18, and personally approved all outbound marketing projects, which usually required working with CCL's and/or HCL's legal counsel, *id.* at 19:13-18.  Defendant Poole's day-to-day responsibilities included analyzing marketing, routing inbound calls, speaking with vendors, and reporting on the statistics of calls, among other things. *Id.* at 9:6-14. Plaintiffs allege that Poole drafted and edited "Jennifer's" voice automation script.  Complaint ¶ 125.

Defendants Poole and Higgins had many of the same duties (with the exception of authority to approve marketing programs, which Higgins did not have). *Id.* at 18:25-19:9. They directed and supervised CCL's and HCL's employees and third parties who were involved in the entities' telemarketing campaigns. Complaint ¶¶ 123-24.  Defendant Higgins is the Director of Marketing Special Products at HCL and works with Poole on a day-to-day basis. *See* Transcript of Deposition of Donna Higgins, June 26, 2015, *Jackson v. Caribbean Cruise Line, et al.*, 14-CV-2485 (E.D.N.Y. 2014) at 17:6-8 (attached as **Exhibit 3**).  Higgins's duties typically relate to marketing and include interacting with call centers, analyzing reports concerning sales performance, and working with brokers to generate inbound call transfers. *Id.* at 17:16-24.  The reporting she receives displays the callers' telephone numbers. *See, e.g., id.* at 55:2-5 (describing a report associated with a unique transfer program).

Those allegations are more than sufficient to support the exercise of personal jurisdiction over the Individual Defendants.  While corporate ownership may not be enough standing alone, it is well-established that, if the employee "directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable." *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 897 (W.D. Tex. 2001) (collecting cases).  All of the

Individual Defendants directly participated in or authorized the unsolicited communications at issue in this case to Plaintiffs and other Class members in Illinois, as discussed above.

Critically, neither Defendants' motion nor the Individual Defendants' declarations demand a different outcome. While the declarations generally aver that the declarants do not have the sort of contacts with Illinois that would support *general* personal jurisdiction (i.e., they do not reside in Illinois, do not own property here, do not hold licenses here, etc.), and that the Defendants did not *personally* make or direct to be made the specific calls placed to Bakov and Herrera, the declarations do not even *attempt* to contradict the factual allegations in paragraphs 109-129 of the Complaint regarding their involvement in the illegal marketing campaign that gave rise to this suit. *See generally* Motion at Exhibits A, B, C, and D. Those unrefuted allegations alone are sufficient to establish personal jurisdiction at the pleadings stage. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) ("The allegations in his complaint are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in his favor").

The court in *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09 C 3963, 2010 U.S. Dist. LEXIS 92072, at *9 (N.D. Ill. Sep. 2, 2010), reached a similar result on similar facts. One of the individual defendants had been deposed and "admittedly created the majority of the unsolicited facsimile advertisements, corresponded directly with Business to Business [the third-party advertiser], and was in possession of the names and fax numbers of some, if not all, of the recipients." *Id.* The court found these facts "sufficient to allege an individual violation of the TCPA . . . and [ ] thus sufficient to support the assertion of personal jurisdiction over him." *Id.* (citation omitted).

6

*Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06 C 3183, 2007 U.S. Dist. LEXIS 38618 (N.D. Ill. May 29, 2007) does not help Defendants. There, the court found that the "Plaintiff ha[d] not established through affidavits or other evidence that [the individual defendant] personally directed [third-party] BW Debt Collectors' activities in Illinois generally or the unsolicited fax specifically." *Id.* at *10. The court went on to explain that the plaintiff might have prevailed on the motion by "tak[ing] the depositions of BW employees to determine Mecca's role in the day-to-day operations of BW Debt Collectors." *Id.* Plaintiffs here have done precisely that: they obtained evidence in the form of deposition testimony revealing the Individual Defendants' personal involvement with third-party advertisers on behalf of CCL and that such involvement was the same or similar for HCL. As Poole testified, *every single other aspect* of their jobs was *exactly* the same, including the third-party advertisers with which they worked, when the name on the door changed from CCL to HCL. As such, *Flexicorps* actually weighs in favor of denying Defendants' motion—not granting it.

### ii.    Plaintiffs Sufficiently Allege Personal Jurisdiction Over CTH

For the purposes of establishing personal jurisdiction over a non-resident holding company, the determinative question is whether the holding corporation is simply attempting to shield itself from lawsuits by conducting its own business through the legal fiction of "separate" subsidiaries and distribution networks. *See Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.*, 389 Ill. App. 3d 58, 68, 904 N.E.2d 1050, 1060 (2009). To support jurisdiction, alter ego allegations must meet the very low threshold of "minimally viable"—which requires only that the allegations not be "patently without merit." *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F. Supp. 126, 136 (N.D. Ill. 1989). No specific set of factors is required; rather, the inquiry is context-dependent. *Id*. at 136 (explaining "[t]here is no definitive enunciation of the components

of a 'minimally viable' allegation of a sham corporation; as an equitable principle, the alter ego exception embodies a certain fluidity of elements, more responsive to the facts of an individual case than to any overriding set of criteria"). Here, Defendant HCL concedes this Court has personal jurisdiction over it. Motion at 7, fn 1. Because HCL is merely the alter ego of CTH, this Court likewise has personal jurisdiction over CTH.

Defendants Verrillo and Lambert have made HCL the mere instrumentality or alter ego of CTH and, by creating HCL as a subsidiary of CTH, used purported corporate formalities to engage in the improper conduct alleged in the Complaint. Specifically, CTH owns, directs, and/or controls its wholly-owned subsidiaries, HCL and CCL. Complaint ¶ 59. Not only are there no meaningful distinctions between HCL and its holding company, CTH, there is similarly a lack of corporate formality as between HCL and CCL. Complaint ¶¶ 59-69. Defendants collectively transacted business and committed a tortious act in Illinois; Defendants and/or their agents made phone calls to cellular telephones of Plaintiffs *en masse* without their prior consent; CTH and HCL use each other's assets; CTH commingles the assets of its subsidiaries; CTH does business in HCL's name, "Consolidated World Travel"; CTH's "sponsor number" features a recorded message, thanking callers for contacting "Travel Services"; operators identify themselves as "Consolidated World Travel"—the actual name of Defendant HCL; HCL employees receive and/or have received compensation for their work as employees of HCL from HCL's sister company, CCL; and CTH directs HCL employees to use same office space and other assets of CCL. Complaint ¶¶ 7, 59-69, 140-146.

Defendants do not argue that these allegations are insufficient to establish lack of corporate formality or unity of interest for the purposes of an alter ego analysis. Rather, Defendants simply deny these allegations altogether. Motion at 11-12. Defendants' argument

against alter ego is supported only by the declaration of Defendant Daniel Lambert, director of CTH ("Lambert Decl.").  This sole piece of evidence contains statements called into question or directly contradicted by Plaintiffs' Complaint.  For example, in his declaration, Lambert states "At all times since its inception, CTH has been merely a holding company that has never had any business operations…" Lambert Decl. ¶ 8.  But, on March 11, 2015, the Canadian Radio-television and Telecommunications Commission—the FTC's Canadian counterpart—fined CTH $200,000 for engaging in violations of Canadian telemarketing law involving calls advertising free cruises. Among the cited violations, the Canadian agency stated that CTH initiated calls via an automatic dialing-announcing device without obtaining express consent.[3]  Complaint ¶ 91. The findings of this governmental agency directly refute Lambert's claim that CTH has never had any business operations.  And, based on the same conduct, numerous class actions have been filed against CTH subsidiary CCL since 2012[4]—prompting Defendant Verillo and CTH to conduct telemarketing operations through another CTH subsidiary, HCL, in order to evade liability.  Complaint ¶ 92-93.[5]

Given the declaration's apparent unreliability, it is within the Court's discretion to either disregard it entirely or assign the statements therein relatively little weight.  *See Met-L-Wood Corp. v. SWS Industries, Inc.,* 594 F. Supp. 706, 708 n.3 (N.D. Ill. 1984) (finding that

---

[3] Notice of Violation: Consolidated Travel Holdings Group, Inc., CRTC (Mar. 11, 2015), http://www.crtc.gc.ca/eng/archive/2015/vt150311.htm (last visited July 12, 2016).
[4] *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 243 (N.D. Ill. 2014) (discussing alleged telemarketing campaign involving political surveys); *see also Jackson v. Caribbean Cruise Line, Inc., et al.*, No. 2:14-02485 (E.D.N.Y.); *Gordon v. Caribbean Cruise Line, Inc., et al.*, No. 1:14-05848 (N.D. Ill.); *Izsak, et al. v. Caribbean Cruise Line, Inc.*, No. 0:14-62231 (S.D. Fla.).
[5] The veracity of Lambert's declaration is called into further question based upon his additional history of manipulating the corporate form to evade liability.  In 2008, the Florida Attorney General commenced an action against another company owned by Defendants Verrillo and Lambert, Imperial Majesty Cruise Line, LLC for misleading telemarketing and/or advertising practices.  Despite an order of $16 million in fines and restitution against Imperial Majesty Cruise Line, Verrillo and Lambert had already dissolved the company three years prior to the order, escaping all liability.  Complaint ¶ 74-77.  Lambert is simply not credible.

affidavit from defendant's agent in support of motion to dismiss for lack of personal jurisdiction was "entitled to little or no weight" given its inherent unreliability). And, at the pleading stage, factual disputes undergirding the question of personal jurisdiction are resolved in favor of the party asserting jurisdiction:

> To determine whether exercising personal jurisdiction is proper, a court may receive and weigh affidavits prior to trial on the merits…During this preliminary proceeding, although the burden of proof rests on the party asserting jurisdiction, if the district court's decision is based on the submission of written materials the burden of proof is met by a prima facie showing that personal jurisdiction is conferred under the relevant jurisdictional statute…Further, *the party asserting jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.*

*Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984) (emphasis added and internal citations omitted); *Minemyer v. R-Boc Representatives, Inc.,* 2007 U.S. Dist. LEXIS 62898, at *12 (N.D. Ill. Aug. 24, 2007) ("'In considering a challenge to its personal jurisdiction, a court may receive and weigh affidavits, and such conflicts as do exist in the affidavits and pleadings must be resolved in plaintiffs favor for purposes of determining whether a prima facie case for in personam jurisdiction has been established.'") (quoting *Alpert v. Bertsch,* 235 Ill. App. 3d 452, 459 (Ill. App. Ct. 1992)); *Wessel Co., Inc. v. Yoffee & Beitman Mgmt. Corp.*, 457 F.Supp. 939, 940 (N.D. Ill. 1978)); *see also Kula v. J.K. Schofield & Co.*, 668 F. Supp. 1126, 1130 (N.D. Ill. 1987) (explaining that "the party asserting personal jurisdiction[] is entitled to have all disputed factual issues resolved in his favor") (internal citations omitted).

Construing factual disputes in favor of Plaintiffs, these allegations are sufficient to establish prima facie personal jurisdiction over CTH under an alter ego theory of personal jurisdiction. *See Maunder v. DeHavilland Aircraft of Canada, Ltd.*, 112 Ill. App. 3d 879, 445

N.E.2d 1303 (1983), *aff'd*, 102 Ill. 2d 342, 466 N.E.2d 217 (1984) (finding Canadian corporation was actively and systematically doing business in Illinois and was therefore subject to jurisdiction of Illinois court, where non-resident corporation's sole distributor was its wholly-owned corporate subsidiary with principal place of business in Illinois, corporation's parts catalog directed customers to send their orders to subsidiary, orders received from U. S. customers were referred to subsidiary, nearly all officers served both corporations, corporations used combined financial statement, and corporation reaped substantial profits from sales by subsidiary); *Alderson v. S. Co.*, 321 Ill. App. 3d 832, 747 N.E.2d 926 (2001) (finding non-resident corporation subject to jurisdiction of Illinois court where non-resident corporation conducted business through affiliated Illinois corporations, many of which were formed simply to bid on projects or investments or merely for tax purposes).

**B.      The Complaint Does Not Improperly "Lump" Defendants**

The fact that an action is brought against several defendants does not reflect that a plaintiff is suing on more than one "claim."  In lieu of the traditional phrase 'cause of action', the Federal Rules of Civil Procedure have substituted the word 'claim'.  A "claim" is used to denote *the aggregate of operative facts* which give rise to a right enforceable in the courts.  *United States v. Iroquois Apartments, Inc,* 21 F.R.D. 151, 153 (E.D.N.Y. 1957).  The Complaint here does not treat the defendants' acts as separate transactions or occurrences.  All the acts are alleged to be connected by the common purpose and directed to the common end of violating the TCPA and ATDA.  The specific actions at issue are detailed in the Complaint and discussed above with respect to Defendant's jurisdictional arguments.

Defendants criticize the Complaint with the claim that it "is impossible to tell… which Defendants were accused of which violations", Motion at 13.  But the very first paragraph of the

11

Complaint defines "Defendants", and when an allegation is leveled against "Defendants" in the Complaint, that definition applies. As plainly alleged in paragraphs 11-31, Defendants are all either corporate entities or individuals who are alleged to have acted on behalf of those entities, whether as owners, agents, employees, officers, shareholders, or as any combination of those titles.

When one reads the Complaint closely, it is apparent that Paragraphs 11 through 31 and 46, 48, and 54 of the Complaint set forth facts defining the Defendants and the individuals' actions in operating the corporate defendant entities; paragraphs 59-69 demonstrate how the two corporate defendants are interchangeable in their actions complained of; and paragraphs 101-108 set forth with great specificity the actions of each of the individual defendants. Paragraphs 112 through 129 continue those specific allegations, demonstrating in detail the relationship of each of the Defendants to each other and to Plaintiffs and setting forth their wrongful actions, ranging from the allegations that, for example, "Verillo, Lambert, Poole and Higgins personally approved, authorized and/or participated in the marketing campaign resulting in calls to Plaintiffs' and the Class's cellular telephones"[6] to allegations that those same defendants "oversaw the operations of (defendant) HCL's representatives"[7], that they "approved the use of third parties to make calls on HCL's behalf"[8], and that Defendants Verillo and Lambert "instructed and oversaw HCL's employees"[9], including Defendants Poole and Higgins.[10] The following ten paragraphs, 118-128, plainly recite which defendants performed what illegal conduct that forms the basis for the two causes of action that appear thereafter. Again, "Defendants", as used within paragraphs 140-156, refers to all of the Defendants, as defined in

---

[6] Complaint ¶ 112.
[7] Id. ¶ 113.
[8] Id. ¶ 114.
[9] Id. ¶ 115.
[10] Id. ¶ 117.

the first paragraph of the Complaint. Thus, "it is feasible to clearly identify certain causes of action from (the) complaint", *Mullen v. Metra Corp.*, 05 C 1717, 2005 WL 1950392, at *4 (N.D. Ill. Aug. 11, 2005) (denying motion to dismiss based upon "lumping Defendants" into a single count). There is nothing inherently improper in including multiple defendants in a single cause of action. See, e.g., *Singleton v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of City of Chicago*, 00C395, 2000 WL 777925, at *12 (N.D. Ill. June 13, 2000) ("Since Plaintiff's cause of action is levied against multiple defendants, this Court will examine each claim as it relates to each individual Defendant, and thereby determine the proper accrual date for each cause of action.").

Notably, the *only* two cases Defendants point to in support of their argument are from other jurisdictions and apply other states' law. Regardless, neither is helpful here. *See Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080-CIV, 2011 U.S. Dist. LEXIS 34544, at *6-8 (S.D. Fla. Mar. 30, 2011) (finding that plaintiff's complaint improperly lumped defendants together where it was undisputed that defendants were entirely separate, independent entities and the *only* basis for suggesting they acted in concert was the fact that an employee of one defendant was on the board of the other, unlike here where Plaintiffs allege that the corporate and individual defendants were all essentially the *same* entity and participated in the *same* TCPA-violative campaign); *Howley v. United States Patent & Trademark Office*, No. 08-CV-13976, 2008 U.S. Dist. LEXIS 114950, at *5 (E.D. Mich. Oct. 22, 2008) (dismissing complaint for failure to state a claim because plaintiff did not allege "that any specific defendant committed any specific wrongful act" and "the claims consist of nothing more than legal conclusions without surrounding facts to support the conclusions," whereas the instant Plaintiffs' operative complaint lays out the illegal course of conduct and the Defendants'

13

participation in that conduct in great detail).  What Defendants are asking the Court to require here – a factual roadmap laying out the narrative of each particular defendant's exact involvement in the illegal marketing scheme at issue, with separate claims for relief against each particular Defendant – goes far beyond the applicable pleading standard.

Defendants' claim that the Complaint "lumps" multiple causes of action into two counts is also not true.  Only one cause of action is alleged in each count.  The Complaint alleges two distinct causes of action – violation of the TCPA and ATDA - in two separately enumerated counts.  After setting forth dozens of factual allegations about each defendant in the preceding 139 paragraphs of the Complaint, each Defendant is alleged to be liable for each of those two causes of action.  It has been held that group allegations such as those in this case are permissible where corporate insiders are involved and the role of each insider defendant is solely within their knowledge, even in the context of the higher pleading standards of Rule 9(b) allegations of fraud not applicable here.  *See, e.g., Marc Dev., Inc. v. Wolin*, 845 F. Supp. 547, 556 (N.D. Ill. 1993); see also *Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago,* 747 F.2d 384, 405 (7th Cir. 1984), aff'd, 473 U.S. 606, 105 S. Ct. 3291, 87 L. Ed. 2d 437 (1985) ("the identification of the transactions and the description of the alleged scheme to defraud put defendants on fair notice of the time and place of the alleged false representations").

Rule 10(b) literally applies to separate "transactions or occurrences," not to separate statutory remedies based on the same transaction.  *Tompkins v. Central Laborers' Pension Fund*, 2009 WL 3836893 (C.D.Ill. 2009).  "Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this.  To the contrary, the rules discourage it." *Tompkins, id., citing Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992).  The Complaint

sufficiently informs each defendant of the nature of his, her or its alleged participation; and each of them can either admit or deny the allegations of the Complaint.

## C.      Plaintiffs Have Stated a Claim Under the ATDA

Defendants repeat their same arguments in response to Count II of the Complaint, Plaintiffs' ATDA claim, that they are unable to tell from the Complaint "which Defendants and/or their agents made phone calls." Motion at 21. The answer is the same as previously set forth: the Complaint very specifically alleges which Defendants committed what wrongdoing and the Complaint defines "Defendants" in its first paragraph. *See supra* § B. The answer to the question of "which Defendant is allegedly responsible for the calls allegedly made", Motion at 21 is "all of them". That is why each of the Defendants has been named as a defendant in this lawsuit.

Defendants' other critique of Count II of the Complaint is that only one of the three calls about which one of the two Plaintiffs complains demonstrates sufficient facts to set forth a cause of action. If that were true, that is not grounds for dismissal, since that single call admittedly sets forth a cognizable claim. But as importantly, the other two calls do, too, since the Complaint plainly alleges that all three calls came from the same number, Complaint ¶¶ 35-37, and it is plausible (in fact, likely) that the telephone number from which one illegally-autodialed call emanated also generated two more. Herrera, the other Plaintiff, likewise alleged each element of the ATDA in paragraphs 49-58 of the Complaint. Defendants correctly note that their affirmative defenses cannot be used to dismiss a complaint, but, contrary to their argument, there are no facts establishing Defendants' "consent" affirmative defense to the Complaint regarding the first call Herrera received. Indeed, with respect to the other two calls, merely dialing a telephone number without knowing whose number it is cannot be seriously construed as consent

to having received an *earlier* call from that same telephone number. Plus the TCPA requires express *written* consent, which dialing a telephone plainly does not provide. Regardless of their merit, Defendants can plead and attempt to prove their affirmative defenses in an Answer to the Complaint, but those purported defenses are inappropriate at this stage of the proceedings.

**D.  The Complaint Properly Pleads A TCPA Claim.**

Defendants argue that Plaintiffs have failed to allege the requisite elements of a TCPA claim for three related reasons. Motion at 15-16. First, Defendants suggest through implication that a single call cannot not trigger TCPA liability. *Id.*at 15-16. Not so. Even a single call is a violation of the TCPA. Thus, whether Plaintiff Bakov received one call or multiple calls has no impact on the sufficiency of the Complaint. *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *2 (N.D. Ill. Dec. 18, 2012).

Second, Defendants assert that because Plaintiff Bakov only answered *one* of the three calls from Defendants, he cannot allege that the two calls he did not answer were made with an ATDS or a prerecorded voice. Motion at 15. But this argument also fails because a call need not be answered to violate the TCPA. Whether a TCPA plaintiff answers the call is immaterial for purposes of a asserting a TCPA violation. *Toney v. Quality Resources, Inc.,* 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (given that plaintiff picked up one call from Defendant, it is reasonable to infer that three *unanswered* calls also originated from Defendant); *Castro v. Green Tree Servicing LLC,* 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013) ("[T]he TCPA . . . does not distinguish between calls that are picked up and calls that go to voicemail. Accordingly, for purposes of Plaintiffs' TCPA claim, it is immaterial whether Plaintiffs picked up all of Defendants' calls or whether several of the calls went unanswered.") (citation omitted); *Fillichio v. M.R.S. Assocs.,* No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010) (There

16

is no requirement "that the recipient must answer the phone . . . for there to be a violation of the TCPA.").

Third, Defendants contend that Plaintiff Herrera has not sufficiently alleged that she was called from an ATDS, or via the use of a prerecorded voice, because she alleged she could not hear anything clearly when she answered the call. Motion at 15-16. This, too, is incorrect. Plaintiffs have provided a plausible basis for their belief that an ATDS was used.

To state a TCPA claim, a plaintiff must simply provide a plausible context for his or her belief as to why an ATDS or prerecorded voice was used. *Salam v. Lifewatch*, Inc., No. 13 CV 9305, 2014 WL 4960947, at *2 (N.D. Ill. Sept. 22, 2014). Contrary to Defendants' arguments, this is *all* that Plaintiffs are required to do in their Complaint. Plaintiffs are *not* obligated to come forward with evidence that proves the use of an ATDS. *See Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 WL 5386089, at *2 (N.D. Ill. Oct. 30, 2012) (explaining that it would be unreasonable at the pleading stage to require a TCPA plaintiff to allege details regarding the system used to send offending communications); *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (distinguishing the pleading stage from summary judgment where plaintiff will have to point to evidence showing the manner in which the calls were made).

Applying these liberal notice pleading standards, Plaintiffs have sufficiently stated a TCPA claim. The Complaint establishes the basis for Plaintiffs' belief that they received calls from an ATDS or a prerecorded voice. Plaintiff Bakov, for instance, states that he received a call on his cellular phone in February 2015 and that, when he answered a call a month later from the exact same number, he encountered a prerecorded voice that tried to sell him a cruise. Complaint ¶¶ 35-40. The third call that Plaintiff Bakov received was from a similar number and, as he

specifically states, was an automated telephone call. *Id.* ¶ 47. Likewise, Plaintiff Herrera's allegations set forth in detail the factual basis for her belief that an ATDS was used. She states that when she called the *exact same number* that had called her, she encountered a *prerecorded message* followed by a live person who tried selling her a cruise. *Id.* ¶¶ 53-58.

Drawing all inferences in Plaintiffs' favor, these allegations, at the very least, plausibly suggest that Defendants used an ATDS or a prerecorded voice. Nothing more is required at this time. As such, Plaintiffs have sufficiently alleged a violation under the TCPA.

### i. Plaintiffs Properly Plead Direct Liability Under The TCPA Because Plaintiffs State That HCL And CTH Are Alter Egos

Defendants argue that Plaintiffs have failed to sufficiently allege direct liability under the TCPA. Motion at 16. Specifically, Defendants contend that because the Complaint collectively refers to all six Defendants, the Complaint fails to allege that any of the defendants "initiated" the marketing calls. *Id.* According to Defendants, this pleading practice fails Fed. R. Civ. P. 8.

But, for reasons already discussed, this argument is incorrect. To reiterate, collective pleading is *not* per se prohibited. Rather, under Fed. R. Civ. P. 8, the test is whether the defendants are given enough notice of the claims asserted against them that they can adequately defend the lawsuit. As one court has explained, before discovery, a plaintiff is not required to explain the details of each defendant's role in "planning, funding, and executing defendants' alleged joint telemarketing scheme." *Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014). Furthermore, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical [TCPA] claims are asserted against each defendant." *Id.*

Furthermore, Plaintiffs sufficiently allege direct liability under the TCPA because they allege that HCL is the alter ego of CTH. An allegation that an entity is the alter ego of another

entity is an assertion that the two entities are one in the same and that liability is direct. *Weiland v. AssureCare, Inc.*, No. 12 C 01947, 2013 WL 4840460, at *4 (N.D. Ill. Sept. 10, 2013) (citing *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000)).

The Complaint alleges that both HCL and CTH, as the alter egos of each other, and the Individual Defendants (under a personal liability theory) acted jointly in violation of the TCPA by causing the calls to be made to Plaintiffs' phones. *See* Complaint ¶¶59-69, 99-129. The Complaint explains in great detail, over the course of 49 paragraphs, the elaborate history of all the Defendants and their complex telemarketing scheme. Complaint ¶¶70-108. Moreover, the Complaint states in detail how the Individual Defendants operate this scheme through CTH and its alter ego subsidiary, HCL. Complaint ¶¶99-129. In short, the Complaint satisfies Rule 8 because it provides each Defendant with enough notice of his, her or its role in the telemarketing scheme. *See LLC Obi v. Chase Home Fin.*, No. 10 C 3154, 2010 WL 4810609, at *3 (N.D. Ill. Nov. 19, 2010) (accepting lumped allegations and explaining that unlike claims for fraud and mistake, complaint need not give specific facts but only fair notice of the claim and the grounds upon which it rest).

### ii.    Plaintiffs Properly Plead Vicarious Liability

Defendants argue that Plaintiffs have failed to plead the elements of any vicarious liability theory, such as actual authority, apparent authority, or ratification. Motion at 17. But the liberal notice pleading standards that apply to the Complaint do not require Plaintiffs to plead with exact details the factual basis for these theories of liability. In fact, in another case involving the sister company to HCL, CCL, this Court rejected the same arguments Defendants now make.

In *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2016 WL 1555576, at *10 (N.D. Ill.

Apr. 18, 2016), the Court explained:

> Although the particular theories of vicarious and joint liability upon which plaintiffs ultimately rest their claims may have become clear to defendants only more recently, plaintiffs had no obligation under federal pleading rules to apprise defendants of their legal theories *in their complaint*. The bottom line is that defendants have been on notice since near the outset of the case that plaintiffs seek to hold them vicariously or jointly liable, and that is all plaintiffs were required to do.

(emphasis added.) As *Aranda* makes clear, Plaintiffs are not required to plead with *specificity*

their legal theories of liability—*e.g.* who or which entity is the agent or principle and why. *Id.*

The Complaint, which devotes 42 paragraphs to describing the relationship between Defendants,

is sufficient. Complaint ¶¶59-69, 99-129. This is why Defendants admit in their Motion that

Plaintiffs alleged the "inner workings" of Defendants. Motion at 17. Like the defendants in

*Aranda*, Defendants here are sufficiently on notice that Plaintiffs intend to hold them vicariously

liable for the alleged TCPA violations. This is all Rule 8 requires.

### iii. The Complaint Properly Alleges That The Individual Defendants Have Personal Liability

Defendants argue that Plaintiffs have failed to allege facts that plausibly state a claim for

personal liability under the TCPA against the Individual Defendants. Motion at 19-20. Wrong.

Defendants' argument ignores the notice pleading standard that applies to a complaint and

instead seeks to hold Plaintiffs to a summary judgment standard. This is why Defendants'

authority consists entirely of cases decided at summary judgment—not the pleading stage. *Id.* In

Defendants' cited cases, the plaintiffs could not establish personal liability because—even *after*

discovery—they lacked evidence demonstrating that the individual defendants controlled the

alleged misconduct.

At the motion to dismiss phase of litigation, plaintiffs are not required to come forth with evidence. Here, Plaintiffs only are required to plausibly allege that the Individual Defendants participated in, or authorized, the TCPA violations. As this District has explained, "courts agree that individuals acting on behalf of a corporation may be held personally liable for violations of [the TCPA] if they had *direct, personal participation in or personally authorized* the conduct found to have violated the statute*." Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *17 (N.D. Ill. Feb. 11, 2014) (emphasis added), *leave to appeal denied sub nom; Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489 (7th Cir. 2014) (collecting cases) (citation omitted); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014) (same).

The Complaint easily satisfies this requirement. Plaintiffs, for example, allege in detail how each Individual Defendant either participated in or authorized HCL's telemarketing campaign:

### *Verrillo and Lambert*

- "Verrillo and Lambert instructed the employees . . . to engage in telemarketing campaigns on behalf of HCL." Complaint ¶101.

- "Verrillo and Lambert directed HCL to use the fictitious name 'Holiday Cruise Line.'" Complaint ¶104.

- "Verrillo and Lambert used purported corporate formalities to engage in the improper conduct alleged herein, like they have been doing for at least the past 15 years." Complaint ¶108.

- Verrillo and Lambert, individual and through their holding company, Defendants CTH, direct, encourage, or otherwise exercise control and discretion over HCL and over HCL's dissemination of automated telephone calls to cellular phones." Complaint ¶ 118.

***Pool and Higgins***

- "Poole and Higgins were directly involved in the implementation of the telemarketing campaign . . . ." Complaint ¶122.

- "Poole and Higgins directed and/or supervised HCL's employees who were involved in the telemarking campaign . . . ." Complaint ¶123.

- "Poole and Higgins directed and/or supervised agents of third parties who were in the telemarking campaign . . . ." Complaint ¶124.

In addition to these allegations, the Complaint also explains that the Individual Defendants were intimately involved in the telemarketing campaign—from being its "chief architects" to determining the "number and frequency of calls that were made" and editing or drafting the "voice automation script." Complaint ¶¶ 116, 115, 125. These allegations are the *same* allegations that this District has determined "plausibly show direct, personal participation, as well as authorization . . . ." *Chapman,* 2014 WL 540250, at *17.[11]

    Defendants nevertheless argue that Plaintiffs have failed to show a connection between these allegations and the "specific calls" made to Plaintiffs. Motion at 20.  Central to Defendants' position is their argument that Plaintiffs have not alleged facts that plausibly show any of the Individual Defendants were directly  involved in the "calls at issue" or had the "requisite knowledge" that the calls violated the TCPA. *Id.* However, Plaintiffs are not required to allege this level of personal involvement for purposes of personal liability. The law simply does not require a plaintiff to allege that the individual defendants dialed the calls at issue. *Chapman*, No. 09 C 07299, 2014 WL 540250, at *17 (explaining that personal liability does not

---

[11] In *Chapman*, the court acknowledged the plaintiff's allegations that defendants "approved, authorized and participated in the scheme to broadcast advertisements by facsimile by (a) directing a list to be purchased or assembled; (b) directing and supervising employees or third parties to send the advertisements by fax; (c) creating and approving the form of advertisements to be sent; (d) determining the number and frequency of the facsimile transmissions; and (e) approving or paying the employees or third parties to send the advertisements by facsimile transmission." 2014 WL 540250, at *17.

require the individual to "hit the 'send' button on a fax machine."); *Ott v. Mortgage Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1061 (D. Or. 2014) (rejecting defendants' argument that plaintiffs failed to "allege that any of the individual defendants ever placed or participated in a telemarketing call."). Nor is there any statutory requirement that defendants have "knowledge" that the calls violate the TCPA. In fact, the TCPA expressly provides for additional damages where the violation was conducted *knowingly* or willfully. 47 U.S.C. § 227(b)(3)(C).

In sum, the Complaint tells a compelling story of individuals who achieved significant personal wealth as a result of employing telemarketing campaigns that violate the TCPA. This is not a situation where a rogue employee took matters into his own hands or in which the telemarketing scheme was unauthorized by, or unknown to, the company's management. Far from it. Here, the Complaint states that the Individual Defendants were the driving force behind the telemarketing scheme. *Texas v. Am. Blastfax*, Inc., 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) (finding personal liability under the TCPA where individuals were the "guiding spirits" and the "central figures" behind the TCPA violations). Indeed, the telemarketing scheme was the result of a well-orchestrated, top-down marketing strategy. *See* Complaint ¶¶59-129. The Defendants have been the subject of other TCPA lawsuits and investigations, and Defendants Verrillo and Lambert have built empires on this strategy. Complaint ¶¶59-98. Taken as a whole, the Complaint plausibly alleges that aggressive robo-dialing campaigns are the hallmark of the Individual Defendants' marketing strategy and that they participated in, authorized, and oversaw this strategy. It was this strategy that caused the alleged TCPA violations. Accordingly, Plaintiffs have sufficiently alleged personal liability against the Individual Defendants.

## CONCLUSION

For all of the reasons discussed above, Plaintiffs Angel Bakov and Julie Herrera respectfully request that the Court deny Defendants' Omnibus Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint in its entirety.

Dated:  July 12, 2016

Respectfully submitted,

By: */s/ Katrina Carroll*
Katrina Carroll
kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
**Lite DePalma Greenberg, LLC**
Chicago Office
211 West Wacker Drive
Suite 500
Chicago, IL 60606
Telephone: (312) 750-1265

Jeffrey Grant Brown
*jeff@jgbrownlaw.com*
**JEFFREY GRANT BROWN, P.C.**
221 North LaSalle Street, Suite 1414
Chicago, IL 60601
Phone: 312.789.9700
Fax: 312.789.9702

Joseph J. Siprut
*jsiprut@siprut.com*
**SIPRUT PC**
17 N. State Street, Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260

Robert Ahdoot*
*rahdoot@ahdootwolfson.com*
Tina Wolfson*
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069

24

Phone: 310.474.9111
Fax: 310.474.8585


*Admitted *pro hac vice*

**Counsel For Plaintiffs**
**And The Proposed Putative Class**

602805.1