IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGEL BAKOV and JULIE HERRERA, individually and on behalf of all others similarly situated, | Case No. 1:15-cv-02980 |
| | Hon. Harry D. Leinenweber |
| Plaintiffs, | Hon. Susan E. Cox |
| v. | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, | |
| Defendant. | |
| KINAYA HEWLETT, on Behalf of Herself and all Others Similarly Situated, | Case No. 1:17-cv-00973 |
| | Hon. Harry D. Leinenweber |
| Plaintiff, | |
| v. | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, | |
| Defendant. | |

## DEFENDANT'S OMNIBUS MOTION TO COMPEL

Defendant Consolidated World Travel, Inc. ("CWT"), pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and Local Civil Rule 37.2, moves for the entry of an Order compelling Plaintiffs Angel Bakov, Julie Herrera, and Kinaya Hewlett to provide complete responses to certain of CWT's discovery requests; and compelling Hewlett to authorize MetroPCS to release certain requested information to Defendant.

## INTRODUCTION

Plaintiffs in this action seek to represent a nationwide class of persons who allegedly

1

received telephone calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). On or about December 1, 2016, CWT propounded virtually identical document requests and interrogatories to Angel Bakov and Julie Herrera seeking information related to the allegations in the Complaint, to which Plaintiffs responded. *See* Exs. A-D. Kinaya Hewlett responded to discovery requests CWT served upon her on September 27, 2016, (*see* Exs. E&F), before her action was transferred to this Court and consolidated with *Bakov*. Additionally, on or about December 1, 2016, CWT issued a subpoena to MetroPCS requesting certain documents related to Plaintiff Kinaya Hewlett when her case was still pending in the Eastern District of California. (*See* Ex. G). MetroPCS advised that because of Hewlett's California residency, it cannot provide a response without a Court order authorizing the release of the information, presumably in connection with Cal. Pub. Util. Code § 2891(a). Thereafter, counsel for CWT and counsel for Hewlett conferred and agreed that MetroPCS may release information responsive to certain requests in the subpoena, which is the subject of a separate motion. *See* Dkt. No. 112. The parties, however, have not been able to agree on the remaining subpoena requests, and additional discovery remains outstanding from Hewlett.

As explained more fully below, Bakov, Herrera, and Hewlett have not fully responded to a number of document requests and interrogatories. Because the information is relevant to CWT's defenses, Plaintiffs should be compelled to provide complete discovery responses, and to supplement their interrogatory responses under oath, not in letters from their attorneys.

## ARGUMENT

### I. LEGAL STANDARD

Under Rule 37, a party may file a motion to compel discovery when another party fails to respond to a discovery request or the party's responses are evasive or incomplete. *Kodish v.*

2

*Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449 (N.D. Ill. 2006) (citing Fed. R. Civ. P. 37(a)(2)-(3)). The burden rests upon the objecting party to show why a particular discovery request is improper. *Id.* at 450. Courts have "broad discretion" when ruling on motions to compel. *Martinez v. Cook County*, No. 11 C 1794, 2012 WL 6186601, *2 (N.D. Ill Dec. 12, 2012) (internal citations omitted).

## II. PLAINTIFFS SHOULD BE COMPELLED TO PROVIDE COMPLETE RESPONSES TO CWT'S DISCOVERY REQUESTS

For the reasons set forth below, Bakov's, Herrera's, and Hewlett's responses are insufficient, and Plaintiffs should be compelled to provide complete responses.

### A. Bakov's and Herrera's Telephone Records for Six Months

As part of CWT's First Request for Production, CWT propounded a number of requests seeking documents related to Bakov's, Herrera's, and Hewlett's telephone records. (*See* Exs. A & C at Nos. 15, 16, 17). Hewlett has produced no records at all, states she has none in her custody, control, or possession, and thus invited CWT to serve a subpoena upon her cellular telephone carrier, which is the subject of Section III below. As for Bakov and Herrera, despite having agreed to "produce telephone billing records for each . . . telephone number [ ] used to receive calls from or make calls to Defendant," (Exs. A & C at Resp. Nos. 15 & 16), they produced excerpts of only three months' billing statements between them (two by Bakov, one by Herrera). CWT has agreed to limit the scope of this request to the period of six months before the telephone calls at issue for each Plaintiff (from October 2015 for Bakov, and for November 2015 for Herrera).[1] However, despite CWT's willingness to limit the scope of the request, Bakov and Herrera nonetheless have refused to produce additional documents. As Bakov and

---

[1] CWT has extended the same limitation to Hewlett's records.

Herrera have provided no information demonstrating that it would be unduly burdensome for each of them to produce the limited number of billing statements at issue, their burden objection should be overruled.

Further, the requested information is highly relevant to CWT's defenses. Specifically, the information is necessary to permit CWT to challenge the sufficiency of any concrete injury resulting from any aggravation, invasion of privacy, or distress asserted by Bakov. The Supreme Court's recent decision in *Spokeo, Inc. v Robins* clarified that "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." 136 S.Ct. 1540, 1549 (U.S. 2016). Plaintiffs' experiences, practices, and customs with respect to receiving telephone calls speaks directly to that issue. If the few alleged telephone calls at issue were no different from the regular activity on their cellular telephones during a six-month period then it is difficult to imagine what concrete injury Plaintiffs could have suffered. *Accord*, *e.g.*, *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1263 (S.D. Cal. 2016) ("When someone owns a cell phone and leaves the ringer on, they necessarily expect the phone to ring occasionally. Viewing each call in isolation, whether the phone rings as a result of a call from a family member, a call from an employer, a manually dialed call from a creditor, or an ATDS dialed call from a creditor, any 'lost time, aggravation, and distress,' are the same."); *Smith v. Aitima Med. Equip., Inc.*, No. EDCV1600339ABDTBX, 2016 WL 4618780, *4 (C.D. Cal. July 29, 2016) ("Any depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call, is a de minimis injury.").

Here, the phone records are necessary to challenge Plaintiffs' purported injuries and their

purported concreteness. If Plaintiffs routinely received multiple calls during the period of the calls at issue here, that would undermine their assertions that the calls caused any injuries. Moreover, and more pressingly, the requested information is necessary to confirm the number of calls that Plaintiffs actually received and for which they may seek to recover damages, and the telephone numbers from which the telephone calls were made. Bakov's and Herrera's complaint alleges that "[i]n or around February 2015, Bakov began to receive calls to his cellular telephone from a calling number listed and displayed as 1-773-453-7311." Ex. H at ¶ 36. Bakov, however, has produced excerpts of only two billing statements (for March 20, 2015 to April 19, 2015 and May 20, 2015 to June 19, 2015). There are no billing statements for February 2015, even though he alleged that he received telephone calls in that month. *See id.* These records are necessary, because Bakov never alleges in his Complaint or even states in his interrogatory responses the total number of calls he actually received (he instead avoids responding and refers generally to his Complaint allegations). *See* Ex. B at Nos. 3, 5-7, 12. Similarly, Herrera identifies only one telephone call in her Complaint and the one billing statement she produced, yet she alleges "calls," ***plural***, from CWT. When asked to detail the contents and number of calls she claims she received, her interrogatory responses likewise simply refer to the Complaint allegations. *See* Ex. D at Nos. 3, 5-7.

      **B.**      **Plaintiffs' Payment Records**

Plaintiffs have also resisted producing records showing who paid for the telephone accounts they claim were called. Documents regarding or reflecting payment for charges on the Plaintiffs' telephone plans are directly relevant under controlling case law as to the question of whether Plaintiffs were injured, have standing, and can serve as class representatives. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012) (explaining TCPA's

5

"use of 'called party' must mean [the] . . . current subscriber, because only the current subscriber pays"); *Jamison v. First Credit Services, Inc.*, No. 12 C 4415, 2013 WL 3872171, *3-4 (N.D. Ill. July 29, 2013) (explaining proposed TCPA class representative was inadequate because the question of whether he or his mother "paid the bill for the cellphone that was allegedly called" could prove that the mother "was the subscriber of [the] wireless phone in issue"). *See also Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238-CIV, 2013 WL 5436553,*6 (S.D. Fla. Sept. 27, 2013) (holding that where a company was alleged to be the subscriber of the accounts and pays for the accounts, the company, not the employees using the corresponding cellular phones, had standing to assert a TCPA claim).

### C. Screenshots of Plaintiffs' Calls To or From CWT

Plaintiffs should also be compelled to produce screenshots of any and all call information on their telephones from and to all telephone numbers they claim to be associated with CWT. *See*, *e.g.*, Exs. A, C, E at No. 1. Bakov is the only Plaintiff who produced any screenshots of this sort for calls he claims he received from or made to CWT. But even though Bakov is still in possession of the cellular phone that received and made those telephone calls, (and brought it to his deposition), he did not produce screenshots reflecting telephone calls he claims to have received in February 2015 or for telephone calls that his billing statements show that he himself placed on March 27, 2015.

### D. Bakov's "Call Narrative"

In Plaintiffs' Initial Disclosures, Bakov identified as documents that he may use to support his claims screenshots of calls and a "call narrative." Ex. I. Nowhere in Bakov's 21-page document production is there anything that could be described a "call narrative." Such a document would clearly be responsive to CWT's document requests, in particular Request Nos.

6

1 and 20. *See* Ex. A. Plaintiff should therefore be compelled to produce his "call narrative."

### E. How Plaintiffs Selected their Counsel and the Engagement Agreements

CWT also propounded interrogatories and requests seeking documents reflecting how and when Plaintiffs retained their attorneys. *See* Exs. A & C at No. 28; Exs. B & D at No. 10; Ex. E at No. 30; Ex. F at 12. Such information is necessary in a class action to determine whether any conflicts of interest exist and to determine the adequacy of proposed class representative, and Plaintiffs should therefore be compelled to produce it.

"Fee arrangements are relevant to the ability of named plaintiffs to protect the interest of potential class members and hence are a proper subject for discovery." *Epstein v. Am. Reserve Corp.*, No. 79 C 4767, 1985 WL 2598, *3 (N.D. Ill. Sept. 18, 1985). "Furthermore, fee arrangements are not ordinarily subject to the attorney-client privilege." *Id.* Thus, courts routinely find that engagement letters/agreements are discoverable in class actions such as this. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) (explaining that engagement agreement "should have been" disclosed "where it was plainly relevant, at the class certification stage," because "uncovering conflicts of interest between the named parties and the class they seek to represent is a critical purpose of the adequacy inquiry"); *Klein v. Henry S. Miller Residential Servs., Inc.*, 82 F.R.D. 6, 8–9 (N.D. Tex. 1978) ("I find that the inquiry into Plaintiffs' financial status and fee arrangement is relevant to the question of Plaintiffs' ability to protect the interests of potential class members by adequate funding of this lawsuit, and the question of award of attorneys fees in the settlement or possible judgment of this lawsuit."). *Accord In re Ocean Bank*, No. 06 C 3515, 2007 WL 1063042, *6 (N.D. Ill. Apr. 9, 2007) (analyzing provisions of produced retainer agreement to consider adequacy of proposed class representative).

Such concerns are particularly well-placed in this case. Plaintiffs Bakov and Herrera are attorneys who appear to have had pre-existing relationships with their counsel. Bakov's law firm shares office space with his counsel in this case, and Herrera filed a putative class action lawsuit only two days after receiving the telephone call identified in the Complaint. The need to determine that the named representative and class counsel are adequate representatives, do not have any conflicts, and are not constrained by any agreements with their lawyers to act in the best interests of the class cannot be set aside. *Accord*, *e.g.*, *Eubank v. Pella Corp.*, 753 F.3d 718, 723-24 (7th Cir. 2014). So that any conflicts can be discovered and disclosed, there should be no question that non-privileged information about how and when Plaintiffs retained their attorneys is relevant and should be produced. *Accord London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253-54 (11th Cir. 2003) (explaining "requirement for a stringent examination of the adequacy of the class representative"); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 91 (7th Cir. 1977) ("Since possible recovery of the class representative is far exceeded by potential attorneys' fees, courts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members."); *East Me. Baptist Church v. Regions Bank*, No. 4:05CV962 CAS, 2007 WL 1445257, *2 (E.D. Mo. May 10, 2007) (granting similar motion to compel); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1048-49 (N.D. Cal. 2001) ("[I]n order to determine whether a prospective lead plaintiff satisfies the requirements of Rule 23, . . . a court should consider the manner in which the prospective lead plaintiff retained counsel and negotiated an attorney's fee for the class."); 1 *McLaughlin on Class Actions* § 3:7 (11th ed. 2015) ("[B]ecause plaintiffs must demonstrate that counsel is adequate in order to satisfy Rule 23(a)(4), defendants are entitled to discovery

concerning the competence and potential conflicts of class counsel . . . .").[2]

### F. The Details of The Telephone Calls Plaintiffs Allege They Received

Plaintiffs' responses to several of CWT's interrogatories are also insufficient, and they should be compelled to provide complete responses. Specifically, CWT propounded several interrogatories requesting Bakov, Herrera, and Hewlett to describe the specific factual detail supporting the allegations in their Complaints. *See* Exs. B & D at Nos. 3, 5, 6, 7, 8, 12; Ex. E at Nos. 3, 5. In ascending order of completeness, Bakov did little more than to generally refer CWT back to the allegations in his Complaint for which it sought amplification, while Herrera at least referred to a number of Complaint paragraphs, and only Hewlett offered some factual information (although she also referred CWT to her complaint allegations). All three Plaintiffs' responses are insufficient.

Federal Rule of Civil Procedure 33(b)(3) provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." It is well-settled that "[s]imply referring to pleadings or other discovery is frequently found insufficient" to fully answer an interrogatory. 8B *Fed. Prac. & Proc. Civ.* § 2177. "The general rule is that answers to interrogatories should be complete in and of themselves, and should not refer to pleadings, depositions, or other documents. Courts have held that even reference to sworn

---

[2] Hewlett also objected to responding to this interrogatory on the ground that it "exceeds the maximum allowable number of Interrogatories under Fed. R. Civ. P. 33(a)(1)." Ex. F at No. 12. Even if that were true, and, because the subparts concerned a "common theme," it is not, (*see Jacks v. Directsat USA, LLC*, No. 10 C 1707, 2011 WL 382858, *2 (N.D. Ill. Feb. 1, 2011)), Hewlett's decision to answer later interrogatories waives that objection. *Accord* Charles Alan Wright, Arthur R. Miller, *et al.*, 8B *Fed. Prac. & Proc. Civ.* § 2168.1 (3d ed. April 2017) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer.").

deposition testimony is an insufficient response to an interrogatory." *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. 1992).[3]

Here, CWT is entitled to know the ***entirety*** of the factual basis underlying each of Plaintiffs' allegations, and Plaintiffs thus must provide an articulation of all facts. Bakov's responses are so deficient that he does not even specify to which portion of the Complaint he is referring, leaving CWT to guess exactly what he means by his response. Even if he did refer to specific complaint allegations (like Herrera) that would not be enough. Plaintiffs should be required to state the knowledge they each have that is responsive to the interrogatory.[4]

Hewlett's responses are likewise insufficient. *See*, e.g., Ex. F at No. 5 ("Subject to and without waiving the foregoing objections, Plaintiff directs Defendant to the First Amended Class Action Complaint which states the underlying facts for her claims."). In response to the request that she "provide a detailed description of all alleged communications between CWT and each putative class member, including you," Hewlett simply regurgitated her complaint allegations without even detailing how many calls she claims to have received. *See id.* at No. 3. Hewlett alleges in her complaint calls on a "nearly daily" basis for an entire month. Ex. J at ¶ 12.

---

[3] *See also*, *e.g.*, *Rowe v. Finnan*, No. 1:11-CV-00524-JMS, 2013 WL 3188731, at *2 (S.D. Ind. June 21, 2013) ("It is generally not appropriate to respond to an interrogatory by reference to a complaint or verified complaint."); *Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*, No. CV L-09-114, 2011 WL 13135608, *3 (S.D. Tex. June 28, 2011) ("[A]nswers to interrogatories should not refer to pleadings or other documents."); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 120 (N.D. Ga. 1972) ("[I]ncorporation by reference of the allegations of a pleading is not a responsive and sufficient answer to an interrogatory."); *Zatko v. Rogers Mfg. Co.*, 37 F.R.D. 29, 33 (N.D. Ohio 1964) (holding defendant could not "respond[ ] to" interrogatories "by mere reference to the answer" where interrogatories "seek elucidation of defendant's answer to the complaint").

[4] Bakov and Herrera have relied upon *Howard v. Urban Inv. Trust, Inc.*, No. 03 C 7667, 2011 WL 976767, *1 (N.D. Ill. Mar. 18, 2011), to support their responses, but the court in *Howard* permitted interrogatory responses that had "unmistakably specific" references to documents produced in discovery and provided "parenthetical descriptions of the facts." That is quite different from their responses.

Nowhere in either her complaint or her interrogatory responses does she describe this great number of supposed calls, and nowhere does she recite the contents of any telephone call. It is hard to believe that Hewlett is unable to provide additional information to ensure that her response is full and complete, such as for example why she believes the telephone calls had anything to do with CWT that would justify suing it, and she should be directed to do so.

### G. Plaintiffs' Interrogatory Responses Regarding Their Alleged Injuries

Plaintiffs should also be compelled to fully respond to CWT's interrogatories asking them to detail the injuries they allege they suffered as a result of the calls they claim to have received from CWT. In a bid to avoid the impact of *Spokeo*, and not rely merely on a statutory violation, Plaintiffs alleged a host of injuries such as aggravation, nuisance, loss of battery power, charges for electricity, and charges for receipt of the telephone calls. Ex. H at ¶¶ 3, 145, 146; Ex. J at ¶ 23. Yet, when asked to detail those injuries and present facts, Plaintiffs offer evasive and unresponsive answers.

For example, in response to the request to "[i]dentify and describe in detail the amount by which your cellular telephone bill increased as a result of receiving any of the telephone calls you alleged in the Complaint," Bakov responded by referring CWT to the billing statements he produced. *See* Ex. B at No. 14. Yet, the billing statements reveal that Mr. Bakov's plan was an unlimited minutes plan, and identify no charges for any particular telephone call. At his deposition, Bakov, an attorney, testified that he could not tell from his billing statements if he was charged for the telephone calls at issue. In other words, Bakov identified no facts whatsoever from his billing statement even though his interrogatory response states the information can be found there. Bakov's interrogatory response is patently insufficient.

Hewlett likewise avoided answering a similar interrogatory by referring generally to

11

"costs" and "burdens" and "telephone and electrical charges," without any specifics. Ex. F at No. 10. *See also* Ex. D at No. 8 (Herrera's similar response). Hewlett has resisted supplementing her response specifically to identify (including by amount) what she herself incurred. If she has none, as her counsel's subsequent correspondence has suggested, she should supplement her response to state that. *Accord Kadambi v. Express Scripts, Inc.*, No. 1:13-CV-321-JD-SLC, 2015 WL 10985383, *8 (N.D. Ind. July 14, 2015) ("Kadambi's actual written response to the interrogatory is insufficient. Given his counsel's statement via email that there are no written contracts, Kadambi clearly has not fully answered the interrogatory as required by the Federal Rules of Civil Procedure. Accordingly, Kadambi will be ordered to supplement his response to Interrogatory No. 5 to make clear whether he has contracts of any form with his patients . . . .") (internal citations omitted).

### H. Information Regarding Other Putative Class Members

When Hewlett first filed her lawsuit in the Eastern District of California, she was joined by two other plaintiffs, Mayra Garcia and Zachary Werlhof, in alleging that they all received telephone calls of the same type from CWT. *See* Ex. K. Even though CWT has requested documents and information about putative class members, which counsel for Hewlett has never disputed would apply to Ms. Garcia and Mr. Werlhof, Hewlett has refused to provide any such information, arguing that while her counsel may have responsive information, as it was never provided to Hewlett, the information is not in her custody, control, or possession. Likewise, Bakov has not provided any interrogatory responses regarding a telephone call he has claimed his girlfriend received, even though he produced a screenshot of such a telephone call. Bakov should be compelled to provide what information he or his attorneys know about his girlfriend's call(s), too.

It is well-established that documents in the possession of counsel are within a party's custody, control, or possession for purpose of Rule 34 where the client has the legal right to obtain the documents in its counsel's possession. *See*, *e.g.*, *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 924 (N.D. Ill. 2010). The same concept applies to interrogatory responses, since "[a] party must disclose facts in its attorney's possession even though the facts have not been transmitted to the party." 8B *Fed. Prac. & Proc. Civ.* § 2177. *See also*, *e.g.*, *Flomo v. Bridgestone Americas Holding, Inc.*, No. 106-CV-00627-WTL-JMS, 2009 WL 5103311, *3 (S.D. Ind. Dec. 16, 2009) (explaining that parties may "obtain via interrogatory information known to opposing counsel") (quoting *Hickman v. Taylor*, 329 U.S. 495, 505 (1947) ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney.")). The fact that Hewlett's (or the other named Plaintiffs') attorneys may not have shared information with their client does not mean that they can keep that responsive, non-privileged information from CWT.

## I. Plaintiffs' Letter Supplements to the Interrogatory Responses Are Improper

During the meet and confer process, Bakov and Herrera attempted to supplement their discovery responses in a letter from their counsel dated March 28, 2017. Plaintiffs should also be compelled to supplement their interrogatory responses in the form mandated by the Federal Rules of Civil Procedure, under oath, and not in a lawyer's letter.

Rule 33(b) provides that answers to interrogatories must be "by the party to whom they are directed," "under oath," and signed by the person who makes them. A party cannot supplement its responses in derogation of these requirements. Indeed, "supplemental interrogatory answers which plaintiffs have furnished in the form of letters are inadequate because they have not been made under oath. . . . Answers to interrogatories which have not

13

been made under oath are worthless. They cannot be used in connection with a motion for summary judgment and they cannot be used at trial." *Dana Corp. v. Am. Standard*, No. 3:92-CV-581RM, 1994 WL 228537, *1 (N.D. Ind. Apr. 15, 1994). Plaintiffs should therefore be directed to supplement their interrogatory responses in the proper form, under oath.

### III. HEWLETT SHOULD BE COMPELLED TO AUTHORIZE METRO PCS TO RELEASE CERTAIN INFORMATION TO DEFENDANT

CWT has issued a subpoena to MetroPCS requesting certain documents related to Hewlett. *See* Ex. G. Although having agreed on certain requests in the subpoena, (*see* Dkt. No. 112), the parties are at an impasse regarding several of the other requests. Specifically, the parties could not reach an agreement on the following requests:

2. All call detail and billing records for telephone number (916) 807-3717.

6. Documents sufficient to evidence the process by which the mobile telephone application "Metro Block-it" functions on a user's mobile telephone.

7. All documents or communications reflecting use of the mobile telephone application "Metro Block-it" by Plaintiff or the telephone number (916) 807-3717.

8. All documents or communications generated by the mobile telephone application "Metro Block-it" related to Plaintiff or the telephone number (916) 807-3717.

9. All documents or communications referring or relating to information submitted to, and received by, the mobile telephone application "Metro Block-it" relating to Plaintiff or the telephone number (916) 807-3717.

All of these requests relate to Hewlett's claim that she received telephone calls on a daily basis for a month and her purported injury. Telephone records of this sort are routinely produced in TCPA cases. As of now, Plaintiff has no evidence other than her own assertions that she was ever called by or in connection with CWT. And, as explained in Sections II(A) and (B) above, the call details and billing records are relevant to CWT's defenses. The information will permit

CWT to challenge the sufficiency of any asserted concrete injury resulting from any aggravation, invasion of privacy, or distress given Hewlett's experiences, practices, and customs with respect to receiving telephone calls. As such, Hewlett should be compelled to authorize MetroPCS to release this information.

Moreover, the use of the "Metro Block-it" application is likewise relevant to establishing whether Hewlett sustained a concrete injury resulting from the alleged calls. It is unclear how Ms. Hewlett has any basis to object to the production of information about the functionality of the "Metro Block-it" application generally. As to information specific to her, it is CWT's understanding (based on the document production made by the application's developer) that the application prompts users to provide certain information about the telephone calls with which they take issue. Whatever information MetroPCS has that Hewlett inputted would be relevant to her state of mind when she allegedly received the telephone calls. And, if Hewlett never actually received the calls and listened to the message(s) she claims violate the TCPA because the calls were blocked by this application, Hewlett's claims may be negated as a matter of law. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640-41 (5th Cir. 2015) ("To be liable under the 'artificial or prerecorded voice' section of the TCPA, we conclude that a defendant must make a call and an artificial or prerecorded voice must actually play. . . . [U]nless the recipient answers, an artificial or prerecorded voice is never used."). As such, CWT should be allowed to discover how Hewlett used this particular application and the application's functionalities. Accordingly, Hewlett should be compelled to authorize MetroPCS to release this information.

## CONCLUSION

For the foregoing reasons, CWT respectfully requests that the Court enter an order compelling Bakov, Herrera, and Hewlett to provide complete responses to CWT's discovery

15

requests raised herein; and compelling Hewlett to authorize MetroPCS to release certain requested information to Defendant; and granting CWT its attorneys' fee and costs in connection with bringing the subject motion pursuant to Fed. R. Civ. P. 37.

## **CERTIFICATION OF GOOD FAITH CONFERENCE**

CWT certifies that counsel for CWT, Roy Taub, met and conferred via teleconference and e-mail with counsel for Mr. Bakov, and Ms. Herrera, Jeffrey Grant Brown and Katrina Carroll starting with a telephonic meet and confer on February 13, 2017 and continuing with e-mail correspondence up to March 28, 2017. Counsel for CWT, Roy Taub, also met and conferred via teleconference and e-mail with counsel for Ms. Hewlett, Yitzhak Kopel, starting with a telephonic meet and confer on November 22, 2016 and ensuing e-mail correspondence and another telephonic meet and confer on April 19, 2017.

Dated: May 11, 2017

GREENSPOON MARDER, P.A.

*/s/ Jeffrey A. Backman*
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
richard.epstein@gmlaw.com
JEFFREY A. BACKMAN, ESQ
(Fla. Bar No. 0662501)
jeffrey.backman@gmlaw.com
ROY TAUB, ESQ.
(Fla. Bar No. 116263)
roy.taub@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

and

TABET DIVITO & ROTHSTEIN LLC

Timothy Hudson

The Rookery Building
209 South LaSalle St., Suite 700
Chicago, IL 60604
(312)762-9450 (Telephone)
(312)762-9451 (Facsimile)

*Attorneys for Defendant Consolidated World Travel, Inc. d/b/a Holiday Cruise Line*

## <u>CERTIFICATE OF SERVICE</u>

 I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via ECF on May 11, 2017.


<u>*/s/ Jeffrey A. Backman*</u>
JEFFREY A. BACKMAN