# EXHIBIT H

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL BAKOV and JULIE HERRERA, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:15-cv-02980 |
| Plaintiffs, | ) ) | Hon. Harry D. Leinenweber |
| v. | ) ) | Hon. Susan E. Cox |
| CONSOLIDATED TRAVEL HOLDINGS GROUP, INC., a Florida corporation, CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, JAMES H. VERRILLO, an individual, DANIEL E. LAMBERT, an individual, JENNIFER POOLE, an individual, and DONNA HIGGINS, an individual, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Angel Bakov ("Bakov") and Julie Herrera ("Herrera") (collectively, "Plaintiffs") bring this Consolidated Class Action Complaint against Defendants Consolidated Travel Holdings Group, Inc. ("CTH"), Consolidated World Travel, Inc. d/b/a Holiday Cruise Line ("HCL"), James H. Verrillo ("Verrillo"), Daniel E. Lambert ("Lambert"), Jennifer Poole ("Poole"), and Donna Higgins ("Higgins") (collectively, "Defendants") on behalf of themselves and all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I.    NATURE OF THE ACTION

1.    Defendant HCL offers cruise packages and operates a cruise ship known as the Grand Celebration. In an effort to market products and services, Defendants made (or directed to be made on HCL's behalf) calls to the cellular telephones of Plaintiffs and each of the members of the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and without prior express consent in violation of the Automatic Telephone Dialers Act, 815 ILCS 305/1, *et seq.* ("ATDA").

2.    Neither Plaintiffs nor the other Class members ever consented in writing, authorized, desired or permitted Defendants to make calls to their cellular telephones.

3.    By making such unauthorized calls, Defendants caused Plaintiffs and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited calls, and the monies paid to their cellular carriers for the receipt of such calls.

4.    In order to redress these injuries, Plaintiffs seek an injunction requiring Defendants to cease all unsolicited calling activities, an award of statutory damages to the Class members under the TCPA and ATDA, and trebled actual damages under the ATDA, together with costs and reasonable attorneys' fees.

## II.    JURISDICTION AND VENUE

5.    This Court has original jurisdiction over Count I, pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

6.    This Court has supplemental jurisdiction over Count II, pursuant to 28 U.S.C. § 1367, because Count II arises out of the same common nucleus of operative facts as Count I.

7.     This Court has personal jurisdiction over Defendants, pursuant to the Illinois Long-Arm Statute, 735 ILCS 5/2-209, because Defendants transact business and committed a tortious act in Illinois. Further, by engaging in solicitation activities within Illinois, Defendants have subjected themselves to the personal jurisdiction of Illinois. In addition, Verrillo, Poole, and Higgins are subject to the personal jurisdiction of Illinois based on their personal involvement in the business, solicitation, and tortious activities conducted on HCL's behalf in Illinois.

8.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this District.

## III.     PARTIES

*Plaintiffs*

9.     Plaintiff Bakov is an individual domiciled in Cook County, Illinois.

10.     Plaintiff Herrera is an individual domiciled in Cook County, Illinois.

*Defendant CTH*

11.     Defendant CTH is a corporation organized in and existing under the laws of the State of Florida with its principal place of business at 2419 East Commercial Boulevard, Suite 100, Fort Lauderdale, Florida 33308.

12.     CTH is a holding company.

13.     CTH wholly owns two subsidiaries, including Defendant HCL and Caribbean Cruise Line, Inc. ("Caribbean Cruise Line").

*Defendant HCL*

14.     Defendant HCL is a corporation organized in and existing under the laws of the State of Florida with its principal place of business at 2121 West Oakland Park Boulevard, Suite 1, Fort Lauderdale, Florida 33311.

15.     Defendant HCL is the registrant of the fictitious name "Holiday Cruise Line."

*Defendant Verrillo*

16.     Defendant Verrillo is an individual domiciled at 2021 10th SE Avenue, Unit 204, Fort Lauderdale, Florida 3316.

17.     Verrillo is a corporate officer of Defendants HCL and CTH.

18.     Verrillo is a majority shareholder of Defendants HCL and CTH.

19.     Verrillo is directly involved in the marketing operations of HCL and CTH.

*Defendant Lambert*

20.     Defendant Lambert is an individual domiciled at 4201 NE 25th Avenue, Fort Lauderdale, Florida 33308.

21.     Lambert is a corporate officer of Defendants HCL and CTH.

22.     Lambert is the second largest shareholder of Defendants HCL and CTH.

23.     Lambert is directly involved in the marketing operations of HCL and CTH.

*Defendant Poole*

24.     Defendant Poole is an individual domiciled at 1805 NW 15th Street, Fort Lauderdale, Florida 33311.

25.     Poole is a corporate officer of Defendant HCL.

26.     Poole is the Director of Marketing for HCL.

27.     Poole is directly involved in the marketing operations of HCL.

*Defendant Higgins*

28.     Defendant Higgins is an individual domiciled at 5371 NE 17th Terrace, Fort Lauderdale, Florida 33334.

29.     Higgins is a corporate officer of Defendant HCL.

30.     Higgins is the President and Marketing Manager of Defendant HCL.

31.     Higgins is directly involved in the marketing operations of HCL.

## IV.     FACTUAL BACKGROUND

32.     Companies have employed advance technologies that make it easier to market their products and services. According to a recent report examining class actions under the TCPA in the Northern District of Illinois:

> *Autodialers (also known as robocalls) automatically deliver a prerecorded message to a list of telephone numbers, and thus remove the need for human representatives*. These predictive dialers were developed to find better pacing (scheduling of dialing attempts) by collecting and analyzing data on the proportion of call attempts that are answered, durations of time from call initiation to answer, and durations of service. The technology was designed to minimize both the time that telemarketers must spend waiting between conversations and amount of abandoned calls experienced by consumers.[1]

33.     As of October 16, 2013, prior express **written** consent is required before making a call to a cellular telephone using an autodialer or prerecorded or artificial voice.

*Defendants' Calls to Plaintiff Bakov*

34.     At all times relevant to this Complaint, Plaintiff Bakov was the subscriber of the cellular telephone number ending in 1521.

35.     In or around February 2015, Bakov began to receive telephone calls to his cellular telephone from a calling number listed and displayed as 1-773-453-7311.

36.     Bakov's caller identification system identified the calling number as 1-773-453-7311.

---

[1] Institute for Consumer Antitrust Studies, Loyola University Chicago School of Law, The Telephone Consumer Protection Act of 1991: Adapting Consumer Protection to Changing Technology 7 (Fall 2013) (emphasis added). The report "was made possible through a *cy pres* distribution from a class action involving the TCPA in the Northern District of Illinois under the supervision of Senior Judge William Hart and Magistrate Judge Morton Denlow." *Id.* at 2.

37.     On or about March 26, 2015, Bakov received another call to his cellular telephone from the number 1-773-453-7311.

38.     When Bakov answered the aforementioned call, a prerecorded or artificial voice said, "hello" and identified the caller as "Jennifer" from "Holiday Cruise Line."

39.     "Jennifer's" responses were automated.

40.     "Jennifer" stated that the call was regarding the promotion of a free cruise with Holiday Cruise Line.

41.     "Jennifer's" voice was not live, but rather robotic and lacked human responses when Bakov attempted to have a conversation with "Jennifer."

42.     "Jennifer" informed Bakov that Holiday Cruise Line was giving away a free cruise.

43.     After Bakov provided "Jennifer" with affirmative answers to her automated questions, "Jennifer" told Bakov that he qualified for a free cruise.

44.     "Jennifer" told Bakov that in order to obtain the free cruise, Bakov was required to pay "governmental port fees of $59."

45.     On information and belief, the cruise referred to in the call was aboard a cruise ship called "The Grand Celebration."

46.     Defendant HCL is the owner and/or marketer of cruise packages aboard The Grand Celebration.

47.     On or about April 17, 2015, Bakov received another automated telephone call to his cellular telephone from Defendants' telephone number listed as 1-773-696-0507, as identified by his caller identification system.

48.     Defendants did not obtain prior express written consent from Bakov before making the calls to his cellular telephone.

**Defendants' Calls to Plaintiff Herrera**

49.     At all times relevant to this Complaint, Plaintiff Herrera was the subscriber of the cellular telephone number ending in 7748.

50.     On May 3, 2015, at 11:59 p.m. CST, Herrera received a call to her cellular telephone.

51.     Herrera's caller identification system identified the calling number as "918895491600."

52.     Herrera answered the call but could make out only muffled, indistinguishable voices.

53.     On the morning of May 4, 2015, at 9:23 a.m., Herrera called the "918895491600" number back and was informed via pre-recorded message that the call was being recorded and that she had won a free cruise.

54.     Defendants did not obtain Herrera's prior express written consent before making the calls to her cellular telephone.

55.     When Herrera eventually spoke with an actual human being, that individual informed her that she was a representative of HCL and presented Herrera with a pitch regarding the cruise offer.

56.     Herrera has no recollection of ever entering into any contest regarding any Holiday cruise.

57.     When the HCL representative asked Herrera to provide her credit card information, Herrera requested that Holiday send a letter or email confirming its identity and the

legitimacy of the solicitation.

58.    Within minutes, Herrera received the email attached hereto as **Exhibit A** containing promotional materials touting the benefits of a Holiday Cruise Line Cruise. The sender's address displayed as Register@holidaycl.com.

**_Defendant HCL Is The Alter Ego Of Defendant CTH_**

59.    Defendants Lambert and Verrillo, both individually and through their holding company, Defendant CTH, own, direct, and/or control the wholly owned subsidiaries, Defendant HCL and Caribbean Cruise Line.

60.    Defendant CTH does not observe corporate formalities with its subsidiaries, Defendant HCL and Caribbean Cruise Line.

61.    For example, Defendants CTH and HCL use each other's assets.

62.    In addition, CTH does business in HCL's name, "Consolidated World Travel."

63.    CTH lists the phone number 954-630-9449 as its "sponsor number" in the Consolidated Travel Holdings Group, Inc., Employee Stock Ownership Plan. (*See* **Exhibit B**.)

64.    When someone calls the sponsor number, however, a recorded message thanks the caller for contacting "Travel Services."

65.    When the caller is connected with an operator, the operator identifies the entity as "Consolidated World Travel"—the actual name of Defendant HCL.

66.    Further, Defendant CTH commingles the assets of its subsidiaries.

67.    Defendant HCL's employees, including Defendants Poole and Higgins, receive and/or have received compensation for their work as employees of HCL from Caribbean Cruise Line.

68.     CTH also directs employees of HCL to use the same office space and other assets of HCL's sister company, Caribbean Cruise Line.

69.     For example, after Defendants Verrillo and Lambert decided to end their telemarketing campaign activities through Caribbean Cruise Line, Defendants Poole and Higgins were directed to work in the same office, at the same desk, while Verrillo and Lambert ran a similar telemarketing campaign through Defendant HCL.

***Defendants Verrillo And Lambert Used Defendant HCL For An Improper Purpose***

70.     Defendants Verrillo and Lambert have a history of engaging in wrongful telemarketing campaigns, either directly or through companies, including those wholly owned by Defendant CTH, and then dissolving such companies after they incur liability.

71.     For example, in 1999, Verrillo and Lambert were named in lawsuits filed by attorney generals of 18 states, including Illinois and the District of Columbia, for unfair and deceptive practices related to the marketing and sale of cruises.

72.     In the Illinois action, the judge entered a Final Judgment And Consent Decree as to Verrillo, Lambert, and their companies.

73.     Under the Final Judgment, Verrillo and Lambert agreed that they were permanently enjoined in Illinois from, among other things, "Representing to any consumer, directly or by implication, that the consumer is a 'winner' or that the consumer has been 'selected' or is otherwise being included in a select group for receipt of a prize or opportunity unless that is, in fact, true . . . when, in fact, the enterprise is a promotional scheme designed to make contact with prospective customers, and all . . . of those 'entering' receive the same 'prize.'" In addition, Verrillo and Lambert were ordered to advance $1.5 million to a trust account to be used to pay consumer claims. (*See* **Exhibit C**.)

74. Also, in 2008, the Florida Attorney General commenced an action against another company owned by Verrillo and Lambert, Imperial Majesty Cruise Line, LLC ("Imperial Majesty Cruise Line") for misleading telemarketing and/or advertising practices.[2]

75. On November 17, 2010, a Florida judge banned Imperial Majesty Cruise Line from charging fees above the advertised fare and ordered the company to pay $16 million in fines and restitution. (*See* **Exhibit D**.)

76. Three years prior to that order, however, Verrillo and Lambert had already dissolved Imperial Majesty Cruise Line, LLC. (*See* **Exhibit E**.)

77. As a result, neither Majesty Cruise Line nor errillo nor Lambert ever paid anything pursuant to the Judge's order.

78. Defendants Verrillo, Lambert, and CTH have also been the subject of a federal investigation.

79. On March 3, 2015, the Federal Trade Commission ("FTC"), along with ten state's attorney generals, commenced an action against a company owned by Verrillo and Lambert, Caribbean Cruise Line, for violations of the Telemarketing Act and the FTC's Telemarketing Sales Rule.[3]

80. Caribbean Cruise Line is also owned by Defendant CTH and is the sister company of Defendant HCL.

81. Defendants Poole and Higgins were also personally involved in the telemarketing campaigns conducted on behalf of Caribbean Cruise Line.

82. According to the FTC, Caribbean Cruise Line entered into an agreement with third parties whereby the third parties would generate sales leads for Caribbean Cruise Line.

---

[2] *State of Florida v. Imperial Majesty Cruise Line, LLC*, No. 08-54154(18) (Fla. Cir. Ct.).
[3] *FTC et al. v. Caribbean Cruise Line, Inc. et al.*, No. 15-cv-60423 (S.D. Fla.).

83.     The third parties made robocalls to consumers about a political survey.

84.     During the calls the third parties would play a prerecorded message regarding a free cruise.

85.     If a consumer pressed a number to hear more about the cruise offer, the third parties would transfer the calls to a Caribbean Cruise Line telemarketer.

86.     If a consumer listened to at least 30 seconds of Caribbean Cruise Line's sales pitch, Caribbean Cruise Line would pay the third parties $2-$3 for the lead.

87.     Verrillo and Lambert profited from the telemarketing activities conducted by or on behalf of Caribbean Cruise Line.

88.     Thus, the goal for the third parties, Caribbean Cruise Line, and Verrillo and Lambert, was to call as many consumers as many times as possible.

89.     The FTC entered into a consent judgment with Caribbean Cruise Line, whereby Caribbean Cruise Line agreed to refrain from further robocalls and to pay $500,000 in order to suspend a civil penalty of $7,730,000.

90.     The Canadian Radio-television and Telecommunications Commission ("CRTC")—the FTC's Canadian counterpart—has also investigated Defendant CTH.

91.     On March 11, 2015, the CRTC fined CTH $200,000 for engaging in violations of Canadian telemarketing law involving calls advertising free cruises.[4] Among the cited violations, the Canadian agency stated that CTH initiated calls via an automatic dialing-announcing device without obtaining express consent.

_____

[4] Notice of Violation: Consolidated Travel Holdings Group, Inc., CRTC (Mar. 11, 2015), http://www.crtc.gc.ca/eng/archive/2015/vt150311.htm, attached hereto as **Exhibit H**.

92.     Based on essentially the same conduct, numerous class actions have been filed against Caribbean Cruise Line since 2012.[5]

93.     Faced with multimillion dollar liability from proposed class actions and civil penalties, Verrillo and CTH realized they could no longer engage in the telemarketing operations conducted through CTH's subsidiary, Caribbean Cruise Line.

94.     Nevertheless, Verrillo and Lambert have found telemarketing campaigns, such as the ones conducted by or on behalf of Imperial Majesty Cruise Line, Caribbean Cruise Line, and the telemarketing campaign alleged herein, to be *extremely* lucrative.

95.     Indeed, Verrillo and Lambert have both personally profited (and continue to profit) immensely from their telemarketing activities and used their monies to fund lavish lifestyles.[6]

96.     For example, Verrillo owns a six-bedroom, 15,000-square-foot home in Lighthouse Point, which has an estimated value of $7.5 million.

97.     Similarly, Lambert owns or has owned a nine-bedroom, 18,000-square-foot home located in Fort Lauderdale in his wife's name. The house has an estimated value of $17.9 million.

98.     Lambert also has used his profits to fund his fight club, American Top Team, and is building a new 45,000-square-foot gym.

---

[5] *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 243 (N.D. Ill. 2014) (discussing alleged telemarketing campaign involving political surveys); *see also Jackson v. Caribbean Cruise Line, Inc., et al.*, No. 2:14-02485 (E.D.N.Y.); *Gordon v. Caribbean Cruise Line, Inc., et al.*, No. 1:14-05848 (N.D. Ill.); *Izsak, et al. v. Caribbean Cruise Line, Inc.*, No. 0:14-62231 (S.D. Fla.).

[6] Robbi Peele, NBC 6 Investigation: Caribbean Cruise Line, Inc., http://www.nbcmiami.com/news/local/NBC-6-Investigation-Caribbean-Cruise-Line-290281751.html (last visited Sept. 3, 2015), attached as **Exhibit I**.

99.     In order to continue their lucrative enterprise, Verrillo and Lambert created another entity, Defendant HCL, as a wholly owned subsidiary of CTH.

100.    HCL was created on June 13, 2012, the same year numerous class actions were filed alleging TCPA violations.

101.    Verrillo and Lambert instructed the employees of Caribbean Cruise Line, including Defendants Poole and Higgins, to engage in telemarketing campaigns on behalf of HCL, like the ones previously conducted on behalf of Caribbean Cruise Line.

102.    In fact, Poole and Higgins did not even have to change desks, let alone offices.

103.    Further, while now purportedly working for HCL, Poole and Higgins were nevertheless continued to be paid by Caribbean Cruise Line.

104.    In order to further mislead consumers about who was responsible for the conduct alleged herein, Verrillo and Lambert directed HCL to use the fictitious name "Holiday Cruise Line."

105.    In essence, Verrillo and Lambert changed the name on the door from Caribbean Cruise Line to HCL and continued to do business as usual.

106.    As further alleged herein, Defendants made (or had made on HCL's behalf) calls to consumers across the country in order to pitch a cruise offer.

107.    Like the Caribbean Cruise Line telemarketing campaign, at least one third party is involved in the lead generation and/or making of the calls for HCL's telemarketing campaign.

108.    Accordingly, Verrillo and Lambert have made HCL the mere instrumentality or alter ego of CTH, and, by creating HCL as a subsidiary of CTH, Verrillo and Lambert used purported corporate formalities to engage in the improper conduct alleged herein, like they have been doing for at least the past 15 years.

*Defendants Verrillo, Lambert, Poole, And Higgins Are Personally Liable*

109.  HCL owns and/or operates the website www.holidaycl.com. (*See* **Exhibit F**.)

110.  HCL also uses the website www.holiday-cruiseline.com.

111.  Verrillo owns and/or operates the website www.holiday-cruiseline.com. (*See* **Exhibit G**.)

112.  Verrillo, Lambert, Poole, and Higgins personally approved, authorized, and/or participated in the marketing campaign resulting in calls to Plaintiffs' and the Class's cellular telephones.

113.  Verrillo, Lambert, Poole, and Higgins oversaw the operations of HCL's representatives to whom calls were transferred after recipients of the calls answered "Jennifer's" questions.

114.  Verrillo, Lambert, Poole, and Higgins approved the use of third parties to make calls on HCL's behalf and/or generate leads for calls made on HCL's behalf.

115.  Verrillo, Lambert, Poole, and Higgins had the authority to determine the number and frequency of the telephone calls that were made.

116.  Verrillo and Lambert, by and through their companies named as Defendants and others yet to be named, are the chief architects of the abusive practices detailed herein.

117.  Verrillo and Lambert, instructed and oversaw HCL's employees, including Poole and Higgins, who were involved in the telemarketing campaign alleged herein.

118.  Verrillo and Lambert, individually and through their holding company, Defendant CTH, direct, encourage, or otherwise exercise control and discretion over HCL and over HCL's dissemination of automated telephone calls to cellular telephones.

119.   As owners of CTH, which is the holding company of HCL, Verrillo and Lambert were directly involved in the implementation of the telemarketing campaign alleged herein

120.   Verrillo and Lambert had the authority to control the telemarketing campaign and used that authority.

121.   Verrillo and Lambert compensated HCL's employees and/or third parties for making the calls and/or generating sales leads.

122.   Poole and Higgins were directly involved in the implementation of the telemarketing campaign alleged herein.

123.   Poole and Higgins directed and/or supervised HCL's employees who were involved in the telemarketing campaign alleged herein.

124.   Poole and Higgins directed and/or supervised agents of third parties who were in the telemarketing campaign alleged herein.

125.   On information and belief, Poole drafted and/or edited "Jennifer's" voice automation script.

126.   Based on their direct involvement in HCL's telemarketing campaign, Defendants Verrillo, Lambert, Poole, and Higgins are personally liable under 47 U.S.C. § 227 for violations of the TCPA, which provides a private right of action against "any person."

127.   Defendants made, or had made on HCL's behalf, the same or substantially the same calls *en masse* to a list of thousands of cellular telephone numbers or randomly generated phone numbers.

128.   On information and belief, Defendants made these calls to Plaintiffs and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

129.    Plaintiffs and the Class members never consented to, requested, or otherwise desired or permitted Defendants to call their cellular telephones.

## V.    <u>CLASS ALLEGATIONS</u>

130.    Plaintiffs bring Count I, as set forth below, on behalf of themselves and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

### TCPA Class

All individuals in the United States whose cellular telephone number HCL, or someone on HCL's behalf, called using an automatic telephone dialing system or an artificial or prerecorded voice without prior express written consent of the called party.

Excluded from the TCPA Class are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

131.    Plaintiffs bring Count II, as set forth below, on behalf of themselves and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

### ATDA Class

All persons in the State of Illinois who HCL, or someone on HCL's behalf, called and played a prerecorded message placed by any device or system programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with a recorded message.

Excluded from the ATDA Class are Defendants and HCL's subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

132.    "Class members" or "the Class" refer to both the TCPA Class and the ATDA Class, unless otherwise stated.

133.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

134.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by Defendants' wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

135.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.     The manner in which HCL compiled and called the list of cellular telephone numbers, including Plaintiffs' numbers;

    b.     Whether HCL (or someone on HCL's behalf) was soliciting the sale of goods or services;

    c.     Whether the equipment HCL (or someone on HCL's behalf) used to make the calls in question was an automatic telephone dialing system as contemplated by the TCPA;

    d.     Whether the equipment HCL (or someone on HCL's behalf) used to make the calls in question involved the use of a prerecorded or artificial voice as contemplated by the TCPA;

    e.     Whether HCL's conduct constitutes a violation of the TCPA;

    f.     Whether the equipment HCL (or someone on HCL's behalf) used to make the calls in question was an autodialer as contemplated by the ATDA;

g.   Whether the equipment HCL (or someone on HCL's behalf) used to make the calls in question involved a prerecorded message as contemplated by the ATDA;

h.   Whether HCL's conduct constitutes a violation of the ATDA;

i.   Whether Plaintiffs and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief, and in what amount(s);

j.   Whether Plaintiffs and the Class are entitled to treble damages under the TCPA based on the willfulness of Defendants' conduct; and

k.   Whether Plaintiffs and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

136.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

137.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by the Plaintiffs and their counsel.

138.   **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class as a whole.

139.   **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    <u>CLAIMS ALLEGED</u>

### <u>COUNT I</u>
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of the TCPA Class)**

140.    Plaintiffs incorporate by reference the preceding factual allegations as if fully set forth herein.

141.    Defendants and/or their agents made phone calls to the cellular telephone numbers of Plaintiffs and the other Class members *en masse* without their prior express consent.

142.    Defendants made the calls, or had them made on HCL's behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

143.    Defendants utilized equipment that made the calls to Plaintiffs' and other Class members' cellular telephones simultaneously and without human intervention.

144.    Defendants made the calls, or had them made on HCL's behalf, using an artificial and/or prerecorded voice.

-19-

145.     By making the calls to Plaintiffs and the Class, Defendants violated 47 U.S.C. §
227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, the Class members suffered
actual damages in the form of monies paid to receive the calls on their cellular telephones and
under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for
each such violation of the TCPA.

146.     Should the Court determine that Defendants' conduct was willful or knowing, the
Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable
by Plaintiffs and the other Class members.

### COUNT II
### Violation of the ATDA, 815 ILCS 305/1
### (On behalf of the ATDA Class)

147.     Plaintiffs incorporate by reference the preceding factual allegations as if fully set
forth herein.

148.     Under the ATDA, it is unlawful to use an autodialer:

    a.   To dial numbers determined by successively increasing or decreasing integers.
       *See* 815 ILCS 305/15(c); *see also* 815 ILCS 305/30(a) (a violation of § 15 is a
       violation of the ATDA);

    b.   In a manner that impedes the function of any caller ID when the caller's
       equipment is capable of allowing the display of the caller's number. *See* 815
       ILCS 305/15(d); *see also* 815 ILCS 305/30(a) (a violation of § 15 is a
       violation of the ATDA); and

    c.   To play a prerecorded message. *See* 815 ILCS 305/30.

149.     Defendants and/or their agents made phone calls to the telephone numbers of
Plaintiffs and the other Class members *en masse* without their prior express consent.

150.     Defendants made the calls, or had them made on HCL's behalf, using equipment
that is capable of storing telephone numbers and which is programmed to sequentially or

randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message.

151.     Defendants made the calls to solicit goods and/or services.

152.     Accordingly, Defendants and/or their agents violated the ATDA in three ways.

153.     **First**, Defendants and/or their agents used an autodialer to dial numbers determined by successive increasing or decreasing integers.

154.     **Second**, Defendants and/or their agents made the calls in a manner that impedes the caller ID of cellular telephones of Plaintiffs and the Class.

155.     **Third**, Defendant's calls play a recorded message, namely "Jennifer's" automated and prerecorded responses.

156.     By making the calls to Plaintiffs and the Class, Defendants violated the ATDA. As a result of Defendants' unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the calls on their cellular telephones, and under 815 ILCS 305/30, are each entitled to trebled actual damages, statutory damages in the amount of $500 per violation, costs, and reasonable attorneys' fees.

## VII.     JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## VIII.     REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Angel Bakov and Julie Herrera, individually and on behalf of the Class, requests that the Court enter an Order:

A.     Certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing their counsel as Class Counsel;

B.     Awarding of actual or statutory damages;

C.    Requiring Defendants to cease all cellular telephone call activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

D.    Awarding of reasonable attorneys' fees and costs; and

E.    Granting such other and further relief that the Court deems reasonable and just.

Dated: September 17, 2015                    Respectfully submitted,

                                             By: /s/ Joseph J. Siprut

                                             Jeffrey Grant Brown
                                             *jeff@jgbrownlaw.com*
                                             **JEFFREY GRANT BROWN, P.C.**
                                             221 North LaSalle Street, Suite 1414
                                             Chicago, IL 60601
                                             Phone: 312.789.9700
                                             Fax: 312.789.9702

                                             Joseph J. Siprut
                                             *jsiprut@siprut.com*
                                             Ismael T. Salam
                                             *isalam@siprut.com*
                                             **SIPRUT PC**
                                             17 N. State Street, Suite 1600
                                             Chicago, Illinois 60602
                                             Phone: 312.236.0000
                                             Fax: 312.241.1260

                                             Robert Ahdoot*
                                             *rahdoot@ahdootwolfson.com*
                                             Tina Wolfson*
                                             *twolfson@ahdootwolfson.com*
                                             **AHDOOT & WOLFSON, PC**
                                             1016 Palm Avenue
                                             West Hollywood, California 90069
                                             Phone: 310.474.9111
                                             Fax: 310.474.8585

                                             Katrina Carroll
                                             *kcarroll@litedepalma.com*
                                             Kyle Shamberg
                                             *kshamberg@litedepalma.com*
                                             **LITE DEPALMA GREENBERG, LLC**
                                             211 W. Wacker Drive

Suite 500
Chicago, IL 60606
Phone: 312.750.1592

*Pro hac vice* application
forthcoming

**Counsel for Plaintiffs and the Proposed Putative Class**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing **Consolidated Class Action Complaint** was filed electronically with the Clerk of the Court using the CM/ECF system on this 17th day of September 2015 and served electronically on all counsel of record.

_s/ Joseph J. Siprut_

4819-9957-4055, v. 4