# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGEL BAKOV, JULIE HERRERA, and KINAYA HEWLETT, individually and on behalf of all others similarly situated, | Case No. 1:15-cv-02980 |
| Plaintiffs, | *Consolidated with* Case No. 1:17-cv-973 |
| v. | Hon. Harry D. Leinenweber |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, | Hon. Susan E. Cox |
| Defendant. | |

## PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE CALL LIST

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and Local Civil Rule 37.2, Plaintiffs Angel Bakov, Julie Herrera, and Kinaya Hewlett ("Plaintiffs"), by and through their undersigned counsel, respectfully request an order compelling defendant Consolidated World Travel, Inc. d/b/a Holiday Cruise Line ("CWT") to produce a list of the outbound calls made on CWT's behalf by non-party Virtual Voice Technologies Pvt. Ltd. ("VVT"), which is located in India, in connection with the telemarketing campaign at issue in this litigation.

## BACKGROUND

1.  Plaintiffs allege that CWT made calls to cell phones belonging to Plaintiffs and members of the proposed classes, or directed that such calls be made, without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

ECF No. 31 (Bakov and Herrera's Consolidated Class Action Complaint) at ¶1; ECF No. 94-2 (Hewlett's First Amended Class Action Complaint) at ¶¶ 1-2.[1]

2. Plaintiffs served multiple requests on CWT for the production of documents related to CWT's telemarketing activities, including lists of all outbound calls to consumers made on CWT's behalf by third-parties. *See, e.g.,* Ex. A (CWT's Objections and Responses to Bakov and Herrera's First Set of Requests For Production of Documents) at pp.7-14 (RFPs 9-16); Ex. B (CWT's Objections and Responses to Hewlett's First Set of Requests For Production of Documents) at pp.5-7 (RFPs 7-8, 10); Ex. C (CWT's Objections and Responses to Hewlett's Second RFP) at pp.3,9 (RFP 52, 67).

3. VVT is an Indian company that CWT hired to make calls to consumers to sell its cruises. Using prerecorded scripts, VVT pitches the cruises to consumers. When consumers indicate they are interested in learning more, their calls are transferred to CWT.

4. Two call lists exist and are the subject of this motion. VVT maintains a complete list of all calls made by it on CWT's behalf during the Holiday Cruise Line campaign ("Complete Call List"). CWT maintains a list of only those calls transferred to it by VVT ("Transferred Call List"). The Transferred Call List is a subset of the Complete Call List, as some number of calls initiated by VVT are not transferred to CWT. CWT is in possession, custody, or control of both lists but has refused to produce either. This motion seeks the production of the Complete Call List and, alternatively, the Transferred Call List. CWT has suggested that Plaintiffs can obtain the same information from third parties, such as its call center carrier (Sprint), but Plaintiffs recently determined that this is not possible.

---

[1] Plaintiffs Bakov and Herrera additionally allege violation of the Automatic Telephone Dialers Act, 815 ILCS 305/1, *et seq.* ECF No. 31 at ¶1.

5. In response to Bakov and Herrera's RFP No. 10, CWT advised Plaintiffs that the Transferred Call List is, in fact, in its possession, custody, and control:

> CWT has documents that identify the telephone numbers of consumers who were called by VVT and then transferred to a CWT call center.

Ex. D (January 17, 2017 letter from J. Backman to M. Reuben) at p.3. CWT nevertheless objects to producing the Transferred Call List, asserting that production would be unduly burdensome.

6. CWT claims that producing the Transferred Call List would require the review of "thousands" of documents and that it does not have the manpower to effect such a review:

> These records number in the thousands, are incredibly voluminous, and producing them will require CWT to hire persons to review the records and identify the consumers called in connection with the VVT campaign. CWT objects to any such unduly burdensome undertaking.

*Id.* CWT has not provided any information to substantiate its conclusory burden claim.

7. CWT also advised Plaintiffs that VVT maintains the Complete Call List, and that, "Plaintiffs are . . . free to seek discovery from VVT for records of the telephone numbers that it called. CWT does not have that information." *Id.*

8. CWT has refused Plaintiffs' requests that CWT request the Complete Call List from VVT. CWT's refusal is based on its erroneous interpretation of what it means under the Federal Rules of Civil Procedure to "control" documents. *See, e.g.,* Ex. A at p.9 (CWT response to Bakov and Herrera's RFP 10) ("CWT responds that there are no documents responsive to this document request in CWT's custody, control, or possession."); Ex. E (April 5, 2017 email from

R. Taub to Plaintiffs' counsel) ("CWT will not involve itself in Plaintiffs' efforts to obtain information from VVT[.]").[2]

9. As is further detailed below, CWT's discovery responses establish a contractual relationship between CWT and VVT, that significant sums of money have been paid by CWT to VVT in connection with VVT's call transfer services, the right and ability of CWT to obtain at-will outgoing call records from VVT, the production of (or agreement to produce) documents in this litigation that have been obtained from VVT. Contrary to CWT's position, therefore, CWT does in fact exert control over the Complete Call List.[3]

10. CWT and VVT have been counterparties to a Call Transfer Agreement governing the transfer of the type of marketing calls at issue in this litigation since at least April 2015. This document and all communications related to it have been designated by CWT as "Confidential— Subject to Protective Order" and are not attached hereto. *See, e.g.,* CWT-BH002555-58. Should the Court find it useful to review the Call Transfer Agreement, Plaintiffs will file it and, as appropriate, related materials under seal or otherwise make them available for *in camera* review.

11. CWT has paid VVT significant sums of money in connection with its call transfer services. Like the Call Transfer Agreement, these documents have also been designated "Confidential—Subject to Protective Order." *See, e.g.,* CWT-BH000751-52 (September 23, 2015 concerning VVT sending banking information to CWT); CWT-BH002543-44 (November 25, 2015 email concerning wire transfer to VVT). Plaintiffs will file these materials under seal or otherwise make them available for *in camera* review at the Court's direction.

---

[2] As illustrated by Exs. D and E and the other materials referenced herein, the parties have met and conferred with respect to this motion in accordance with Local Civil Rule 37.2.
[3] Plaintiffs' review of CWT's document production, ***only received approximately three weeks ago***, is ongoing. It is likely that Plaintiffs will discover additional documents establishing CWT's control over VVT and the Complete Call List as their review continues, given the volume of evidence discovery to date.

12. Pursuant to its longstanding contractual relationship and course of dealing with VVT, CWT was able to readily obtain records pertaining to the calls that Plaintiffs' received through email requests either directly to VVT (techsupport@vvtservices.com) or to go-between entities (The Marketing Source, Inc. and Media Monitors, Inc.). These documents have not been designated confidential and are attached hereto. *See, e.g.,* Ex. F (April 28, 2015 email exchange concerning calls to Bakov) (CWT-BH000264-66); Ex. G (April 23, 2015 email exchange concerning calls to Bakov) (CWT-BH000267); Ex. H (May 21, 2015 email exchange concerning calls to Herrera) (CWT-BH000268-69); Ex. I (May 2, 2016 email exchange concerning calls to Hewlett) (CWT-HEWL000261-63).

13. CWT's document production also demonstrates that it requests and receives records like those referenced above pertaining to Plaintiffs as a routine and regular part of its relationship with VVT. These documents have also been designated "Confidential—Subject to Protective Order." *See, e.g,* CWT-BH001251-52 (February 1, 2016 email from VVT to CWT stating calls were not made to a particular number); CWT-BH001255-56 (February 26, 2016 email from VVT to CWT verifying call made to number on national do not call list was made within allowable grace period); CWT-BH001238-39 (March 15, 2016 email from VVT verifying details of call made on behalf of CWT). Plaintiffs will file these materials under seal or otherwise make them available for *in camera* review at the Court's direction.

14. Despite CWT's objections to produce materials maintained by VVT, it has *already* produced and has agreed to produce other VVT documents. *See, e.g.,* Ex. E (CWT "will be producing the VVT prompts and scripts," some of which "are in CWT's possession.").

15. CWT has suggested that Plaintiffs can obtain the Complete Call List and Transferred Call List from third parties:

5

> As an alternative, CWT proposes to provide to Plaintiffs a list of telephone numbers associated with VVT that can be used to identify calls transferred by VVT to a CWT call center. CWT can provide those telephone numbers and all other information necessary to subpoena the call center telephone carrier (Sprint) so that it can far more easily generate a report identifying the calls transferred via the VVT point-to numbers to CWT, as well as the telephone number of each transferred consumer called by VVT. This proposal provides Plaintiffs with a narrowed, cost-effective alternative to the costly and burdensome review CWT would have to undertake.

Ex. D at p.3. CWT's supposed "narrowed, cost-effective alternative" has proven to be a dead-end and utter waste of resources.

16. Because VVT is located in India, any subpoena directly to it would need to go through the Hague convention, and production would take months or years, if it would come at all. *See F.T.V. v. PCCare247 Inc.*, 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013) (granting alternative service on Indian defendant after the FTC "submitted these documents to the Indian Central Authority … more than five months ago [and] the FTC has received no indication that defendants have been served. Nor has the Indian Central Authority responded to the FTC's inquiries"). Plaintiffs have emailed VVT directly requesting access to the documents, but those communications were ignored.

17. CWT recently produced the "list of telephone numbers associated with VVT" referenced in the January 17, 2017 letter, which included more than 13,000 outgoing numbers. CWT also produced a list of "point-to" numbers used to transfer calls from VVT to CWT. Plaintiffs retained an individual with appropriate expertise to investigate whether they would be able to obtain complete call lists from third parties using the information produced by CWT. The result of such consultation and Plaintiffs own investigation is that it is, contrary to CWT's

suggestion, not possible to obtain either call list from third parties using the information provided.

## ARGUMENT

18. Under Rule 37, a party may file a motion to compel discovery when another party fails to respond to a discovery request or the party's responses are evasive or incomplete. *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449 (N.D. Ill. 2006) (citing Fed. R. Civ. P. 37(a)(2)-(3)). The Federal Rules of Civil Procedure provide a court with broad discretion in resolving discovery disputes. *Meyer v. Southern Pacific Lines*, 199 F.R.D. 610, 611 (N.D.Ill.2001). A motion to compel discovery is granted or denied at the discretion of the trial court. *Id.* In ruling on motions to compel discovery, "courts have consistently adopted a liberal interpretation of the discovery rules." *Wilstein v. San Tropai Condominium Master Association*, 189 F.R.D. 371, 375 (N.D.Ill.1999).

19. For the reasons stated below, CWT's responses to Plaintiffs' request for the Complete Call List and Transferred Call List are insufficient, and CWT should be compelled to produce the Complete Call List or, alternatively, the Transferred Call List.

**A. THE COMPLETE AND TRANSFERRED CALL LISTS ARE HIGHLY RELEVANT TO "ASCERTAINABILITY" OF PLAINTIFFS' PROPOSED CLASSES**

20. Though it is not explicitly provided for in Rule 23(a), courts require that a proposed class be sufficiently definite, or "ascertainable." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)).

21. Rejecting any heightened requirements for ascertainability, the Seventh Circuit held simply that the class "must be defined clearly" and membership in the class can be determined by "objective criteria," in order for the proposed class to satisfy this requisite. *Mullins*, 795 F.3d at 657; *see also Hinman*, 545 F. Supp. 2d at 806 (A class is sufficiently definite "if its members can be ascertained by reference to objective criteria").

22. Perfect records of class membership need not exist, because, "[w]hen it comes to protecting the interests of absent class members, courts should not let the perfect become the enemy of the good." *Smith v. Family Video Movie Club, Inc.*, 311 F.R.D. 469, 474 (N.D. Ill. 2015). "In any event, the ascertainability requirement is not about evidence; it is about whether the proposed class definitions are based on objective criteria." *Id.* at 475.

23. Here, class membership is straightforward and turns on simple and objective criteria:

> All individuals in the United States whose cellular telephone number Defendant, or someone on Defendant's behalf, called using an automatic telephone dialing system or an artificial or prerecorded voice without prior express written consent of the called party (the "TCPA Class").
>
> All persons in the State of Illinois who Defendant, or someone on Defendant's behalf, called and played a prerecorded message placed by any device or system programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with a recorded message (the "ATDA Class").

ECF No. 98 (Plaintiffs' Motion for Class Certification) at ¶ 1.[4]

24. To date, the Complete and Transferred Call Lists are the only two sets of records sufficient to identify some or all members of the proposed classes. As such, they are highly

---

[4] Plaintiffs have moved to continue briefing on the class motion. *See* ECF No. 107.

relevant to this litigation and, in particular, to the "ascertainability" inquiry this Court will eventually undertake in connection with Plaintiffs' motion for class certification.

25. Many courts have found "the outbound call list [to be] reasonably calculated to identify the number of recipients of calls made during the class period, which is relevant to Rule 23 requirements." *Thrasher v. CMRE Fin. Servs., Inc.*, 2015 WL 1138469, at *2–3 (S.D. Cal. Mar. 13, 2015); *Ossola v. Am. Express Co.*, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice"); *Gossett v. CMRE Fin. Servs., Inc.*, 2015 WL 6736883, at *3 (S.D. Cal. Oct. 30, 2015) ("the outbound calls lists are relevant to the class claims and meritorious claims and defenses in this case"); *Gaines v. Law Office of Patenaude & Felix, APC*, 2014 WL 3894348, at *2 (S.D. Cal. June 12, 2014) ("the Court finds that the outbound dial list is relevant to the issue of numerosity and commonality under the Federal Rule of Civil Procedure 23(a), and is therefore discoverable."); *O'Shea v. Am. Solar Sol., Inc.*, 2016 WL 701215, at *3 (S.D. Cal. Feb. 18, 2016) (outbound call list is "relevant both to class certification and to the merits of the case"); *Khalilpour v. Cellco Partnership*, 2010 WL 1267749, at *2 (N.D. Cal. April 1, 2010) (The disclosure of names, addresses, and telephone numbers "is a common practice in the class action context.").

**B.  CWT SHOULD BE COMPELLED TO OBTAIN THE COMPLETE CALL LIST FROM VVT AND PRODUCE IT TO PLAINTIFFS**

26. CWT's principal objection to producing the Complete Call List is its view that it does not "control" those documents within the meaning of Rule 26. *See, e.g.,* Ex. A at p.9 (CWT response to Bakov and Herrera's RFP 10).

27. As the Southern District of Indiana recently ruled in an analogous scenario, under Seventh Circuit precedent, the prevailing definition of "control" is "a legal right to obtain":

Rule 34 governing requests for production provides the common sense limitation that a party may only be compelled to produce electronically stored information "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Notwithstanding the dictum in *Chaveriat v. William Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993), suggesting that having to ask someone else for a document means that the document is outside of a party's control, **the Seventh Circuit has embraced the prevailing definition of "control" as "a legal right to obtain."** *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838-39 (7th Cir. 2014) (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004)). This standard is certainly broad enough to encompass a contractual right to obtain documents. *See, e.g., Symons Int'l Grp., Inc. v. Cont'l Cas. Co.*, No. 1:01-CV-00799-RLY, 2015 WL 4392933, at *9 (S.D. Ind. July 15, 2015) (requiring plaintiff to acquire financial documents from financial institutions pursuant to account agreements); *Engel v. Town of Roseland*, No. 3:06-CV-430 JTM, 2007 WL 2020171, at *2–3 (N.D. Ind. July 6, 2007) (same), *objections overruled in relevant part*, 2007 WL 2903196 (N.D. Ind. Oct. 1, 2007). **The party seeking discovery bears the burden of showing that the nonmovant has control over the documents sought, and the Court may consider "any reasonable evidence regardless of the rules of evidence" in determining whether the movant has met this burden.** *McBryar v. Int'l Union of United Auto. Aerospace & Agr. Implement Workers of Am.*, 160 F.R.D. 691, 695 (S.D. Ind. 1993) (citing *Nat'l Utility Serv., Inc. v. Nw. Steel & Wire Co.*, 426 F.3d 222, 225 (7th Cir. 1970)).

**The evidence before the Court demonstrates that Angie's List and Salesforce have a longstanding contractual relationship and that the background data is recorded "for" Angie's List as part of the ordinary course of their business relationship.** Even while end users such as Angie's List "ordinarily" do not access such data, the evidence clearly demonstrates that they are able to do so upon asking. In fact, the most compelling fact before the Court is that Angie's List, despite dragging its feet and protesting vociferously, were actually able to retrieve and produce one year's of the background data, collected for Angie's List as part of its use of Salesforce's sales platform, to Plaintiffs in discovery. The fact that Angie's List has already produced one-third of the requested data, coupled with the evidence demonstrating the relationship between Angie's List and Salesforce, compels the conclusion that Angie's List has a "legal right to obtain" the discovery sought.

> These critical facts clearly distinguish this situation from the one described in *Chaveriat*. *Chaveriat* involved the plaintiffs' contractor's subcontractor's subcontract for a one-time chromatographic analysis of soil contamination. 11 F.3d 1420, 1423. The Seventh Circuit observed that the subcontractor never ordered the actual chromatograms from the soil testing company, instead receiving a summary of the results. *Id.* at 1423-24. Those actual chromatograms, the court stated, were not within the plaintiffs' control. *Id.* at 1426-27. But as another court later succinctly observed, "[T]he relevant parties in *Chaveriat* had no legal relationship whatsoever." *In re Subpoena Duces Tecum to Ingeteam, Inc.*, No. 11-MISC-36, 2011 WL 3608407, at *2 (E.D. Wisc. Aug. 16, 2011). Angie's List's reliance on *Chaveriat* is thus singularly misplaced and ignores the principle that "[t]he concept of control ... is often highly fact-specific." 8B Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 2210 (3d ed. 2010). ***The evidence here, in stark contrast to the one-off soil test conducted by a subcontractor of a subcontractor of a contractor of the plaintiffs in Chaveriat, establishes that Salesforce logs the background data for Angie's List in the ordinary course of their ongoing contractual relationship and that Angie's List is able to obtain such data.***
>
> The fact that Angie's List must pay for the extracting of this data is of no moment; quite frequently, retrieving and compiling electronic discovery costs substantial sums. Indeed, all discovery costs money. The evidence suggests that this is precisely the reason for the invoiced fee. [E.g., Dkt. 97-12 at 2 ("The gathering of this information is time-consuming for Salesforce....").] Plaintiffs' argument that Angie's List is attempting to pigeonhole a "proportionality" argument into a "control" issue is therefore well-taken.
>
> To conclude otherwise could introduce perverse incentives into litigation involving corporate entities.

In *Williams v. Angie's List, Inc.*, No. 116CV00878WTLMJD, 2017 WL 1318419, at *2-3 (S.D. Ind. Apr. 10, 2017) (emphasis added).

28.  As in *Williams*, CWT has a contractual relationship with VVT, *see, e.g.,* CWT-BH002555-58; CWT has paid VVT significant sums of money in connection with VVT's call transfer services, *see, e.g.,* CWT-BH000751-52; CWT-BH002543-44; CWT has the right and

11

ability to obtain outgoing call records from VVT, *see, e.g.,* Exs. F-I, CWT-BH001251-52, CWT-BH001255-56, CWT-BH001238-39; CWT has already produced or agreed to produce documents obtained from VVT, *see* Ex. E; and Plaintiffs have determined that the information in the Complete and Transferred Call Lists are not otherwise available.

29. CWT thus has "control" over the Complete Call List maintained by VVT, and should been compelled to produce it to Plaintiffs in connection with this litigation.

C. **ALTERNATIVELY, CWT SHOULD BE COMPELLED TO PRODUCE THE TRANSFERRED CALL LIST**

30. "[T]he general presumption in discovery [is] that the responding party must bear the expense of complying with discovery requests." *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 571-72 (N.D. Ill. 2004) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)). If the responding party asks the court for an order protecting it from "undue burden or expense," the court may "shift the costs to the non-producing party, rather than just disallowing the requested discovery." *Id.* (citations omitted).

31. However, the party resisting the discovery bears the burden to show why a particular discovery request is improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). "The objecting party must show with specificity that the request is improper." *Id.* "[G]eneral assertions" of hardship will not suffice. *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990). This showing of undue burden typically requires affidavits or other evidence in support. *See, e.g., Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind.1992) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence."). Other courts have applied this concept to call lists in TCPA actions. *See In re Google Litig.*, 2011 WL 286173 (N.D. Cal. Jan. 27, 2011) (rejecting discovery objections of burden where defendant "offer[ed]

no evidence to support its undue burden claims" or a declaration providing an "estimate of the number of hours, business distraction, or cost of production" that would be involved); *Mora v. Zeta Interactive Corp.*, 2017 WL 1187710, at *6 (E.D. Cal. Feb. 10, 2017) ("Accordingly, considering the relevance to Plaintiff's claim and the proportionality to the needs of the case, the Court finds that Plaintiff's request for Defendants' call logs should be granted … during the putative class period").

32. CWT has made no showing whatsoever to support its claim that producing the Transferred Call List would pose an impermissible burden. *See* Ex. D, *generally*. To the contrary, Defendant has told Plaintiffs that the entirety of their documents exist on a handful of computers in one location. Moreover, because there are potentially hundreds of millions of dollars at stake in this lawsuit, any burden of compiling the lists is certain to be proportional under Fed. R. Civ. P. 26. In the event CWT is not compelled to produce the Complete Call List, it should be compelled to produce the Transferred Call List.

## **CONCLUSION**

33. For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order compelling CWT to request and produce the Complete Call List maintained by VVT or, in the alternative, to produce the Transferred Call List that CWT maintains.

Date: May 12, 2017								Respectfully submitted,

									**LITE DEPALMA GREENBERG, LLC**

							By:	*/s/ Katrina Carroll*
								Katrina Carroll
								kcarroll@litedepalma.com
								Kyle A. Shamberg
								kshamberg@litedepalma.com
								211 West Wacker Drive, Suite 500
								Chicago, IL 60606
								Telephone: (312) 750-1265

								**JEFFREY GRANT BROWN, P.C.**
								Jeffrey Grant Brown
								*jeff@jgbrownlaw.com*
								221 North LaSalle Street, Suite 1414
								Chicago, IL 60601
								Telephone: (312) 789-9700

								**SIPRUT PC**
								Joseph J. Siprut
								*jsiprut@siprut.com*
								17 N. State Street, Suite 1600
								Chicago, Illinois 60602
								Telephone: (312) 236-0000

								**AHDOOT & WOLFSON, PC**
								Robert Ahdoot (*pro hac*)
								*rahdoot@ahdootwolfson.com*
								Tina Wolfson (*pro hac*)
								*twolfson@ahdootwolfson.com*
								1016 Palm Avenue
								West Hollywood, California 90069
								Telephone: (310) 474-9111
								***Counsel for Plaintiffs, Angel Bakov and Julie Herrera***

								Yitzchak Kopel
								Bursor & Fisher, P.A.
								888 Seventh Avenue
								New York, NY 10019
								ykopel@bursor.com
								Telephone: (646) 837-7127
								Pro Hac Vice pending
								***Counsel for Plaintiff, Kinaya Hewlett***

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that the foregoing **Plaintiffs' Motion To Compel Defendant To Produce Call List** was filed electronically with the Clerk of the Court using the CM/ECF system this 12th day of May 2017 and served electronically on all counsel of record.

　　　　　　　　　　　　　　　　　　　*/s/ Katrina Carroll*
　　　　　　　　　　　　　　　　　　　Katrina Carroll