**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGEL BAKOV and JULIE HERRERA, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:15-cv-02980 Hon. Harry D. Leinenweber |
| Plaintiffs, | ) ) | Hon. Susan E. Cox |
| v. | ) ) | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |
| KINAYA HEWLETT, on Behalf of Herself and all Others Similarly Situated, | ) ) ) | Case No. 1:17-cv-00973 Hon. Harry D. Leinenweber |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, | ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ........................................................................................... 5

    I.      THE COURT LACKS PERSONAL JURISDICTION TO
           CERTIFY A NATIONWIDE CLASS............................................................. 5

    II.     PLAINTIFFS IMPERMISSIBLY EXPAND THE CLASS
           DEFINITION ........................................................................... 6

    III.    PLAINTIFS FAIL TO SATISFY RULE 23 ...................................................... 7

          A.  Plaintiffs Have Not Demonstrated, and Cannot Demonstrate
              Numerosity ........................................................................ 8

          B.  Commonality is Not Met Because Plaintiffs Have Not Proposed
              any Issues That Will Determine the Validity of the Claims in
              One Stroke ......................................................................... 9

              1.      Proposed Class Members Did Not Suffer the Same Injury,
                     Nor Is It Possible to Prove So in One Broad Stroke ......................... 10

              2.      Who Answered Each Call and What, If Anything, They
                     Heard ........................................................................ 10

              3.      Whether a VVT Agent Unmuted Their Call Can be Decided,
                     If at All, Only on a Case-by-Case Basis ............................................ 12

              4.      Plaintiffs' Theory of Liability that VVT Agents Were Making
                     Multiple Calls at Once is Not Capable of Classwide Resolution ...... 12

          C.  Typicality Is Not Met As the Plaintiffs Each Had Very Different
               Experiences ........................................................................ 14

          D.  Plaintiffs Propose an Impermissible Overbroad Class.................................. 15

IV.     PLAINTIFFS FAIL TO SATISFY RULE 23(B)(3)'S REQUIREMENTS ......... 18

     A.  Individual Issues Will Overwhelm the Proceedings ...................................... 18

     B.  Superiority is not met Because the Class is Unmanageable and
        Class Members Cannot be Accurately Identified .......................................... 19

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abraham v. Wash. Grp. Int'l, Inc.*,
    766 F.3d 735 (7th Cir. 2014) ........................................................................ 15

*Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*,
    No. 16 C 9281, 2018 WL 3474444 (N.D. Ill. July 19, 2018) ........................... 5

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ...................................................................................... 19

*Aranda v. Caribbean Cruise Line, Inc.*,
    179 F. Supp. 3d 817 (N.D. Ill. 2016) ...................................................... 10, 11

*Bell v. PNC Bank, Nat'l Ass'n*,
    800 F.3d 360 (7th Cir. 2015) .......................................................................... 7

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014) ......................................................... 10, 11, 20

*Booth v. Appstack, Inc.*,
    No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ............. 8

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*,
    137 S. Ct. 1773 (2017) ......................................................................... 5, 8, 17

*Brodsky v. HumanaDental Ins. Co.*,
    269 F. Supp. 3d 841 (N.D. Ill. 2017) ........................................................... 19

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) ........................................................................ 19

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015) ......................................................................... 20

*Cates v. Whirlpool Corporation*,
    No. 15-CV-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017) .................. 13, 14

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) .................................................................. 7, 14,

*Chapman v. Wagener Equities, Inc.*,
    No. 09 C 07299, 2012 WL 6214597 (N.D. Ill. Dec. 13, 2012) ........................ 7

*Daimler AG v. Bauman*,
    571 U.S. 117, 137 (2014) ........................................................................... 5

*DeBernardis v. NBTY, Inc.*,
    No. 17 C 6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) .............................. 5

*Dvorak v. St. Clair Cty., Illinois*,
    No. 14-CV-1119-SMY-RJD, 2018 WL 514326 (S.D. Ill. Jan. 23, 2018) ................. 15, 20

*G.M. Sign, Inc. v. Brink's Mfg. Co.*,
    No. 09 C 05528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011) ........................... 6

*Greene v. Mizuho Bank, Ltd.*,
    289 F.Supp.3d 870 (N.D. Ill. 2017) ........................................................ 6

*Griffith v. ContextMedia, Inc.*,
    No. 16 C 2900, 2018 WL 372147 (N.D. Ill. Jan. 11, 2018) ............................. 7

*Jacobs v. Quicken Loans, Inc.*,
    No. 15-81386-CIV, 2017 WL 4838567 (S.D. Fla. Oct. 19, 2017) .................... 16

*Jamie S. v. Milwaukee Pub. Sch.*,
    668 F.3d 481 (7th Cir. 2012) ............................................................... 9

*Kaplan v. Pomerantz*,
    132 F.R.D. 504 (N.D. Ill. 1990) ........................................................... 15

*Legg v. PTZ Ins. Agency, Ltd.*,
    321 F.R.D. 572 (N.D. Ill. 2017) ........................................................... 19

*McCaster v. Darden Restaurants, Inc.*,
    845 F.3d 794 (7th Cir. 2017) ............................................................... 13

*McDonnell v. Nature's Way Prod., LLC*,
    No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ......................... 6

*Messner v. Northshore University HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ............................................................... 6

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ..................................................... 7, 15, 19, 20

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ............................................................... 15

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
    301 F. Supp. 3d 840 (N.D. Ill. 2018) ..................................................... 6

*Priddy v. Health Care Serv. Corp.*,
    870 F.3d 657 (7th Cir. 2017) ......................................................................... 7

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) ...................................................................... 20

*Sherman v. Yahoo*,
    No. 13-0041, 2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) ......................... 16

*Smith v. Microsoft Corp.*,
    297 F.R.D. 464 (S.D. Cal. 2014) ................................................................ 16

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016) ............................................................................... 11

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ...................................................................... 10

*Szabo v. Bridgeport Machs., Inc.*,
    249 F.3d 672 (7th Cir. 2001) ........................................................................ 8

*Taylor v. Universal Auto Grp. I, Inc.*,
    No. 3:13-CV-05245-KLS, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ................... 8

*Teltech Sys., Inc. v. Barbour*,
    866 F.Supp.2d 571 (S.D.Miss.2011) ............................................................. 8

*Thorogood v. Sears, Roebuck & Co.*,
    547 F.3d 742 (7th Cir. 2008) ........................................................................ 7

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D.Ill.2011) ..........................................................15, 17, 18

*Vill. of Bedford Park v. Expedia, Inc.*,
    No. 13 C 5633, 2015 WL 94851 (N.D. Ill. Jan. 6, 2015) ................................ 9

*Wal–Mart Stores, Inc.*, v. Dukes,
    564 U.S. 338 (2011) ................................................................................ 7, 9

*Willoughby v. Vill. of Fox Lake*,
    No. 17 CV 2800, 2018 WL 2718037 (N.D. Ill. June 6, 2018) ......................... 8

*Ybarra v. Dish Network, L.L.C.*,
    No. 14-11316, 2015 WL 6159755 (5th Cir. Oct. 20, 2015) ..................... 10, 18

**Statutes**

47 U.S.C. § 227 ................................................................................................................ 1, 19

**Rules**

Fed. R. Civ. P. 23.............................................................................................. *passim*

**Other Authorities**

*In re Numbering Policies for Modern Communications*,
    28 F.C.C.R. 5842, 5920 (2013)....................................................................................... 8

| **EXHIBIT LIST** | |
| --- | --- |
| Ex. A | Excerpts of Jennifer Poole Deposition Transcript, Oct. 18, 2017 |
| Ex. B | Excerpts of Clifford Albright Deposition Transcript, Aug. 25, 2017 |
| Ex. C | Excerpts of Angel Bakov Deposition Transcript, May 9, 2017 |
| Ex. D | Excerpts of Julie Herrera Deposition Transcription, May 10, 2017 |
| Ex. E | Excerpts of Kinaya Hewlett Deposition Transcript, Feb 16, 2018 |
| Ex. F | Declaration of Daniel Lambert, Aug. 31, 2018 |
| Ex. G | Plaintiffs' Status Report, Dkt. No. 164, July 17, 2018 |
| Ex. H | Excerpts of Christina Peters-Stasiweicz Deposition Transcript, June 1, 2018 |
| Ex. I | Excerpts of Colin B. Weir Deposition Transcript, Apr. 25, 2018 |
| Ex. J | Excerpts of Vance Vogel Deposition Transcript, Aug. 24, 2017 |
| Ex. K | Excerpts of Randall A. Snyder Deposition Transcript, Apr. 26, 2018 |
| Ex. L | Declaration of Margaret Daley, Mar. 8, 2018 (exhibits omitted) |

## PRELIMINARY STATEMENT

The Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), was enacted to prevent telemarketers from using automated technologies to place far more unsolicited, robotic, telephone calls at a time than would be possible if dialed manually and conducted by live human beings.  But that is precisely what the telephone calls at issue in this case were like.  The calls were manually dialed, and the real life VVT agents had real time conversations, using either audio prompts to suit the flow of the conversation and to ensure consistent messaging or by unmuting and speaking with their own voice.  Plaintiffs have had to retreat from many of the violations they claimed – gone is any proposed class based on autodialed calls – and they devote nearly two pages of their motion to paint a false picture of fraud and deception, but there is no such claim in the Complaint.  That pivot aims to obscure just how ill-suited this case is for a TCPA claim or class action treatment, given the host of individualized inquiries that would have to be undertaken and the existence of undeniable management issues.

Plaintiffs now ask the Court to certify the following class:  "All persons in the United States (1) who [VVT] called from December 29, 2014 through March 20, 2016 to market a cruise aboard the Grand Celebration cruise liner sold by Consolidated World Travel, Inc. (d/b/a Holiday Cruise Line), and (2) who answered such call or calls."  Plaintiffs Angel Bakov, Julie Herrera, and Kinaya Hewlett present an illusion of themselves as peas in a pod, supposedly representative of a class of individuals they allege each *answered* a "misleading and coercive" call from VVT offering a free cruise on behalf of Consolidated World Travel, Inc. ("CWT" or "HCL").  In actuality, each of the Plaintiffs had differing experiences in their alleged interactions with VVT and, contrary to Plaintiffs' insinuation, the free cruise offer was legitimate and taken up by many consumers.  As Defendant's expert explains, the technology used by VVT (the "VVT System") did not involve the type of robocall or static message blast that was sought to be prevented by

Congress in enacting the TCPA. Here, real people placed every call and had dynamic, one-on-one conversations assisted by voice prompts they selected and, when necessary, by unmuting and using their natural voices.[1] Every call was thus different and individualized.

To try to get around this, Plaintiffs advance a new theory of liability that VVT's agents were *undisputedly* handling more than one telephone call at a time. Even if that mattered for purposes of the TCPA (and it does not), that narrative is a concoction made out of desperation and misleading snippets of deposition testimony from two independent contractors (Cliff Albright and Vance Vogel). In actuality, those two deponents testified that they have no personal knowledge of any frequency of "multiple session" calls – Albright only testified about something Vogel had heard and told him, and Vogel testified that while he had heard things, because neither he nor Albright was ever in India, where the VVT agents were located, there was no way for him or Albright to know if agents were actually making multiple calls at once.

Plaintiffs' Motion contains numerous additional assertions unsupported by the evidence, and thus fails to survive the rigorous analysis mandated by Rule 23. For example, Plaintiffs assume the Court can certify a nationwide class, even though the Court does not have personal jurisdiction over a nationwide class. Nor have Plaintiffs presented any evidence of numerosity even with respect to an Illinois resident class. Plaintiffs insist that at least 928,023 people *answered* the same exact telephone call, but they submit no such evidence. Nor is there evidence of the originating telephone call or that each of those to be identified by Plaintiffs as class members (at some unknown time in the future, not now) "answered" the originating telephone call. As evidenced by several of the Plaintiffs' testimony, VVT also *received inbound* telephone calls for marketing purposes. Individualized inquiries would be required to determine both if each putative class member (as opposed to another member of their household) "answered" a call

---

[1] Congress specifically stated that live telemarketing calls were not unlawful and would not be prohibited.

from VVT or instead **placed a call to VVT** – by seeing the number on the caller ID, word of mouth from a friend, or other potential possibilities. An individualized inquiry would also be necessary to decide Plaintiffs' new theory of liability and ascertain which of the class members, if any, answered a telephone call where the VVT agent was simultaneously handling another call. Plaintiffs' class is also not ascertainable because it is overbroad, containing people who are identified using the unreliable method proposed by Plaintiffs but who did not "answer" a call from VVT or otherwise suffered no injury, as well as people who cannot be identified. Further, class members did not suffer the same injury, as many suffered none at all, therefore liability cannot be proven in one "broad stroke." Finally, the unreliable and arbitrary method Plaintiffs propose to identify class members only further increases the need for individualized inquiries and tips the scale, if there was still any doubt, in favor of denying class certification.

## STATEMENT OF FACTS

The VVT platform involved real human interactive communication like the telephone calls we all place every day, not "artificial" or "prerecorded" messages. A live, *i.e.*, human, agent manually placed every telephone call. Ex. B at 51:17-23; 41:6-19; 43:2-4. If the called party answered, the live agent, who was always on the line listening and communicating on the call, interacted with and responded to the call recipient using approximately 40 different voice files (segments) and/or his or her own voice. *Id.* at 46:10-24; Mot., Ex. 2 at ¶ 6. During the call, the live agent continued at each turn using a mouse to click on the applicable voice-assisted responses and prompts that the call recipient heard. *Id.* The voice assisted prompts allowed flexibility and facilitated a unique and interactive customized response the live agent selected in response to a call recipient's question or to prompt a question. Mot., Ex. 2 at ¶ 6.

Unlike a static one-way recorded message blast, the live agent dials the call, hears the telephone ring and interacts with the called party throughout the call until the call recipient

requests more information and is successfully transferred to a class center; expresses no further interest; asks not to be bothered; asks to be added to the do-not-call registry; hangs up; or was otherwise disconnected. Ex. B at 46:22-47:25. At the end of the telephone call, the live agent must physically hang up the then-current and active call, and manually code its disposition. *Id.* The live agent then must manually initiate a new telephone call. *Id.* at 41:10-19.

The VVT System did not use a pre-recorded messaging platform that replaced "live agent" interaction with consumers. Mot., Ex. 2 at ¶ 8. The VVT System merely utilized audio files chosen by the live agent in real time as a substitute for the live agent's voice (although live agents could, and would from time to time, unmute the VVT System and use their own voices to speak with consumers). Ex. B at 52:11-22. The VVT System assured a uniform, consistent, and on-script interaction with the called party from the start to the end of the call, but allowed for dynamic one-on-one conversations conducted between two people. Mot., Ex. 2 at ¶ 9.

Indeed, each named Plaintiff had remarkably different experiences with VVT. Bakov claims he received and placed multiple calls to and from VVT, but he could not recall whether he heard the VVT System prompts on the calls that he received from, or made to, VVT. Ex. C at 88:1-8; 99:2-7. Herrera heard "garbled voices," nothing else, when she *answered* her alleged call from VVT, and the telephone number that *she called* the next day was different than the one that called her. Ex. D at 26:3-27:6. The number she claims called her is not one of the numbers used by VVT. *See* Mot., Exs. 20 & 21 (listings of telephone numbers used by VVT). Hewlett claims she received multiple calls from VVT during the class period from a man – not "Jennifer" – using his natural voice. Ex. E at 102:13-18; 111:18-25. She further testified that VVT agents "called her back directly" and on those calls, "[i]t wasn't a recording. It would be from the same number . . . it would be him calling directly in." *Id.* at 112:3-7. Hewlett noted that on her alleged second call with VVT, a live agent came on after she said "Okay, Jennifer, I don't want the cruise." *Id.*

at 27:11-20.  Far from a prerecorded message, Hewlett claimed she was locked in a "battlefield" with a male VVT agent who referred to her by her name and they would call her "back-to-back" after "cussing each other out."  *Id.* at 22:25-23:6, 102:10-18.

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION TO CERTIFY A NATIONWIDE CLASS

As an initial matter, the Court is precluded from certifying a nationwide class because the Court lacks personal jurisdiction over CWT to do so.  *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) (holding that a court can validly exercise personal jurisdiction over a non-resident's claims only where the court has general jurisdiction over the defendant or specific jurisdiction over the non-resident's claims).

There can be no debate that CWT is not within the Court's general personal jurisdiction, as it is incorporated under the laws of the State of Florida, has its principal place of business in Florida, and has no systematic contacts in Illinois.  *See* Ex. F.  *Accord Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  For purposes of "specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*."  *Bristol-Myers*, 137 S. Ct. at 1780 (internal quotations and bracketed text omitted).  The Supreme Court found that due process and principles of federalism preclude the exercise of specific jurisdiction over a defendant with respect to nonresidents' claims based on injuries suffered outside the forum.  *Id.* at 1780-81.  CWT's due process rights would therefore be violated if the Court were to certify a nationwide class.  While the Supreme Court in *Bristol-Myers* did not conclude whether its holding was also applicable to class actions, the courts of this District, including this Court, have ruled that its reasoning does.  *See DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, *2 (N.D. Ill. Jan. 18, 2018) (Leinenweber, J.) ("[I]t is more likely than not  . . . that the courts will apply *Bristol–Myers*

*Squibb* to outlaw nationwide class actions . . . where there is no general jurisdiction over the Defendants."); *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, No. 16 C 9281, 2018 WL 3474444, *2 (N.D. Ill. July 19, 2018) (Leinenweber, J.) (collecting cases).[2]

## II. PLAINTIFFS IMPERMISSIBLY EXPAND THE CLASS DEFINITION

"District courts typically, though not invariably, hold a plaintiff seeking class certification to the definition espoused in the relevant complaint." *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 05528, 2011 WL 248511, *4 (N.D. Ill. Jan. 25, 2011). The TCPA class Plaintiffs proposed in their Complaint was limited to "individuals in the United States whose ***cellular*** telephone number HCL, or someone on HCL's behalf, called . . . ." Compl. at ¶ 130 (emphasis added).[3] The Plaintiffs in this case did not follow the class definition espoused in their Complaint and did not amend the Complaint despite a meaningful opportunity to do so. Indeed, after requesting an opportunity to amend their Complaint for the very purpose of adding a landline class and to drop the ATDA class, (Dkt. No. 163), Plaintiffs instead informed the Court that, "[u]pon further consideration and analysis . . . Plaintiffs do not intend to seek leave to file an amended pleading ahead of trial and ***will instead proceed based on the pleadings already on file***." Ex. G at ¶ 3 (emphasis added). Plaintiffs now do an about-turn, make the very same changes they said they declined to make, and spring upon CWT and the Court a class definition that would significantly expand the proposed class to include *landline* telephone numbers and that has no basis in the factual allegations of the Complaint. To allow Plaintiffs to expand their definition now would reward them for not following a Court-imposed deadline. While the Court has broad discretion to modify a class definition prior to final judgment, such discretion is not used to *expand* a class

---

[2] *See also, e.g., Greene v. Mizuho Bank, Ltd.*, 289 F.Supp.3d 870, 874 (N.D. Ill. 2017); *McDonnell v. Nature's Way Prod.*, LLC, No. 16 C 5011, 2017 WL 4864910, *4 (N.D. Ill. Oct. 26, 2017); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 862 (N.D. Ill. 2018).
[3] Plaintiffs also had proposed to seek certification of a class under Illinois's Automatic Telephone Dialers Act ("ATDA"), (*id.* at ¶ 132), but do not seek to certify such a class in their Motion.

definition as Plaintiffs seek here, but instead to *narrow* an overbroad, failsafe, or unworkable class definition,[4] and certainly not, as sought here, to give plaintiffs the second bite at an apple that they chose to throw away.

## III.    PLAINTIFFS FAIL TO SATISFY RULE 23

A proposed class must meet the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy of representation. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Because Plaintiffs seek to certify a class under Rule 23(b)(3), they must further establish "(1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Id.* Finally, although not explicitly proscribed, Plaintiffs must prove their proposed class is "ascertainable," meaning the class is clearly defined, its parameters are based on objective criteria, and it is not overbroad. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

District courts should exercise "caution in class certification generally." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008). "'A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites' for class certification have been met." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) (quoting *CE Design, Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 723 (7th Cir. 2011)). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule" by submitting evidence to satisfy each provision," (*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)), and must do so by a preponderance of the evidence. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017). The court cannot accept the allegations in the

---

[4] *See, e.g., Griffith v. ContextMedia, Inc.*, No. 16 C 2900, 2018 WL 372147, *2 (N.D. Ill. Jan. 11, 2018); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2012 WL 6214597, *5-6 (N.D. Ill. Dec. 13, 2012).

complaint as true, but should instead "make whatever factual and legal inquiries [that] are necessary." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001).

## A.      Plaintiffs Have Not Demonstrated, and Cannot Demonstrate, Numerosity

Plaintiffs in this case have not provided any reliable evidence of the number of putative class members, especially in light of the need to limit the class to Illinois residents under *Bristol-Myers*, to cellular telephones as alleged in their Complaint, and to only those that actually *answered* the telephone.  Plaintiffs continually allude to a "list" generated by one of their experts, Colin Weir, but it has never been provided to CWT or filed with the Court.  Without any evidence identifying putative class members presented to the Court, Plaintiffs cannot establish numerosity. *See Willoughby v. Vill. of Fox Lake*, No. 17 CV 2800, 2018 WL 2718037, *4 (N.D. Ill. June 6, 2018) (finding plaintiffs failed to establish numerosity where they submitted no evidence identifying the putative class members because "[t]he Court cannot assume that there is a sufficiently-numerous putative class; rather, it is plaintiffs' burden to demonstrate that.").

Even if the Court could base numerosity on Weir's unseen "list," the "list" fails to establish the proposed class's numerosity.  First, the "list" does not identify the number of Illinois resident class members.  Given the ability of people to move across the country while keeping their cellular telephone number, the Court cannot simply assume that if someone has a telephone number with an Illinois area code that it must mean they are a resident of Illinois.[5]

---

[5] *See, e.g.*, *In re Numbering Policies for Modern Communications*, 28 F.C.C.R. 5842, 5920 (2013) (FCC commissioner stating, "[p]eople now move and take their numbers with them.  Case in point: in my office here at the Commission, half of those who work with me have phone numbers with area codes that do not reflect where they live."); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247, *14 (W.D. Wash. Mar. 30, 2015) ("[M]obile telephone devices or services are in fact mobile and no longer tethered to a specific geographic location irrespective of the area code employed."); *Taylor v. Universal Auto Grp. I, Inc.*, No. 3:13-CV-05245-KLS, 2014 WL 6654270, *18 (W.D. Wash. Nov. 24, 2014) (denying class certification because plaintiff had not presented evidence "showing where each putative subclass member was at the time each call was received, or that such a showing can be even made," therefore "the predominance requirement . . . is not satisfied."); *Teltech Sys., Inc. v. Barbour,* 866 F.Supp.2d 571, 575–76 (S.D. Miss. 2011) ("Due to the tremendous growth of mobile phone usage and the fact that many cell

Second, Weir's "list" does not permit Plaintiffs' proposed expert to distinguish between cellular and landline telephone users. *See* Ex. H at 91:6-12 (that task "wasn't part of my work").

Third, Weir's "list" does not identify who **answered** a single call, even though that is a component of the proposed class definition. Weir did nothing more than identify "calls . . . between the 'point to' numbers and 928,023 unique US telephone numbers." Mot., Ex. 18 at ¶ 9. Weir admitted that he made no attempt to distinguish between inbound or outbound calls. Ex. I at 105:21-106:8. VVT, however, made both outbound calls *and* accepted inbound calls, transferring both to CWT without distinction. Ex. B at 40:23-41:2 61:23-25. In fact, the named Plaintiffs in this case are among those who called inbound to VVT and were transferred to a CWT call center. *See, e.g.* Ex. D at 28:2-29:17. Thus, the "list" includes an indistinguishable amount of people who *did not answer* a call, but instead missed or ignored the call (or otherwise obtained a telephone number used by VVT) and then themselves placed a telephone call **to** VVT, which landed them on Weir's "list." How many people is unknown.

## B. Commonality Is Not Met Because Plaintiffs Have Not Proposed any Issues That Will Determine the Validity of the Claims in One Stroke

To satisfy commonality, the class claims must depend on a common contention that is "capable of classwide resolution in one stroke." *Dukes*, 564 U.S. at 349–50. "Superficial common questions, such as whether each class member 'suffered a violation of the same provision of law—are not enough." *Vill. of Bedford Park v. Expedia, Inc.*, No. 13 C 5633, 2015 WL 94851, *2 (N.D. Ill. Jan. 6, 2015). Plaintiffs must show that **single, dispositive answers** to the "common questions" can be determined on a class-wide, non-individualized basis. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012). Plaintiffs fail to do so.

---

customers have mobile numbers that are associated with an area code other the one where they live . . . it is impossible . . . to know whether the recipient [of the call] . . . is in Mississippi.").

1.	**Proposed Class Members Did Not Suffer the Same Injury, Nor Is It Possible to Prove So in One Broad Stroke**

Plaintiffs' only contention of commonality is by reference to *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014).[6] They argue that a common injury is present among the class, and thus commonality is satisfied, where class members received the *same* calls, by the *same* defendant, using the *same* prerecorded voice. But that is not established by the evidence, and there are instead numerous differences that mandate individualized determinations. Herrera's own telephone records – the same type of records Weir used to generate his "list" – do not show she ever answered a call from VVT. She further testified that the call she answered had "garbled voices" instead of the prompts used in the VVT System. Ex. D at 25:5-10. Hewlett claims she received multiple confrontational calls during the class period from a man – not "Jennifer" – using his natural voice. Ex. E at 102:13-18; 111:18-25. Bakov does not remember whether he spoke to an agent using the VVT System on the calls that he received or even on those he placed to VVT. Ex. C at 88:1-8; 99:2-7. Each and every call within the class definition would need to be individually scrutinized to determine whether (a) the class member answered a call, and (b) if a prerecorded voice within the meaning of the TCPA was used. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the defendant's alleged injurious conduct differs from plaintiff to plaintiff, . . . no common answers are likely to be found.")

2.	**Who Answered Each Call and What, If Anything, They Heard**

"[M]aking a call in which a prerecorded voice *might*, but does not, play is not a violation of the TCPA." *Ybarra v. Dish Network L.L.C.*, 807 F.3d 635 (5th Cir. 2015). Unlike with an automatic telephone dialing system, TCPA liability does not arise from the use of a prerecorded voice unless the prerecorded voice actually "speak[s] during the call." *Id.* To have any injury or

---

[6] Plaintiffs' reliance on *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016), is inapposite. *Aranda* decided a summary judgment motion regarding the class certified in *Birchmeier*.

violation, therefore, the prerecorded voice "must actually play." *Id.* Here, unlike in *Birchmeier/Aranda*, (179 F. Supp. 3d at 825), the VVT System did not automatically deliver a message or prompt when a call was answered. Ex. B at 46:14-18, 51:17-20, 52:4-10. Agents had to "choose" to respond to a person who answered by clicking on one of the audio prompts or unmuting the system and using their natural voice to speak. Mot. at 3; Mot., Ex. 2 at ¶ 6. ***Nothing about the VVT system was automatic***, and therefore individual inquiry would be required with every class member to determine whether a "prerecorded voice" was even *played*, or if there was dead air or, as Hewlett testified, a live agent used his voice. Ex. E at 102:13-18. Both whether there was any violation and then whether that was a concrete injury each time a class member answered a call is not subject to classwide resolution, and would require individualized determination. *Accord Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Furthermore, it would still need to be established that every single class member even answered the call, further precluding a finding of commonality. The proposed reverse lookup methodology can only, at best, identify who the subscriber was. Ex. H at 51:11-22, 84:16-85:9. However, there is no evidence that the subscriber was always the one who *answered* the alleged call. Herrera, for example, claims to have answered a VVT call, (despite neither her telephone records nor her recollection of the call supporting that), but *her brother is the subscriber* on her account. Ex. D at 42:5-12. According to Hewlett, she was not the subscriber of the cellular number she claimed to have received a call to in 2016. *See* Ex. E at 46:12-47:6. Plaintiffs have not addressed how it can be determined on a class-wide basis *who* answered the call and whether a violative prerecorded voice played on the call.

3. **Whether a VVT Agent Unmuted Their Call Can be Decided, If at All, Only on a Case-by-Case Basis**

VVT agents used their natural voices to respond to putative class members, including Hewlett. Ex. E at 27:11-20, 112:3-7; Ex. J at 94:17-19 ("I have heard recordings though myself. I heard recordings – many recordings of where the agent would get in and help."). Plaintiffs' expert Randall Snyder conceded that he does not know "whether a call using a prerecorded voice is still considered" to be "a call using a prerecorded voice if at any point during the call a prerecorded voice is or is not used" and was "not sure if [such calls are] covered under the TCPA." Ex. K at 29:8-12, 30:7-8. To the extent that VVT agents' use of their natural voice affects the imposition of liability under the TCPA, Plaintiffs have offered no means of answering, in one "broad stroke," whether putative class members received a call in which a VVT agent unmuted.[7] Every class member, through individualized proof, would need to establish the existence or nonexistence of such circumstances within their call, which may place their call outside of any alleged TCPA violation.

4. **Plaintiffs' Theory of Liability that VVT Agents Were Making Multiple Calls at Once is Not Capable of Classwide Resolution**

Plaintiffs contend that TCPA liability was triggered when VVT agents used the VVT System to handle *two* telephone calls at once. But their evidence that such conduct occurred does not withstand any scrutiny, let alone the rigorous analysis required at the class certification stage. Plaintiffs *might* be able to argue that it is *possible* that *some* VVT agents *wanted* to make multiple

---

[7] The absurdity of Plaintiffs' theory of liability should not be ignored. Plaintiffs' interpretation of the statute means that if at any point a recorded voice or artificial voice is used during the course of any call to a cellular telephone (the TCPA applies to non-telemarketing calls to cellular telephones), then the call would violate the TCPA. This means that if Stephen Hawking had made a telephone call to his friend, the call would be a violation of the statute. Or if during a friendly telephone conversation, one of the parties to the call decided to play a snippet of a recording of a song, the call would be a violation of the statute. That the VVT calls involved marketing does not change the absurd result that would occur should the ultimate conclusion be that a call where any prerecorded sound plays on the call constitutes a violation of the TCPA. Certainly, this is not what Congress had in mind in 1991. *See* Ex. K at 26:22-46:14.

calls using multiple terminals. Ex. J at 92:22-25. "But establishing those violations (if there were any) would not involve any classwide proof." *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 801 (7th Cir. 2017) (affirming denial of class certification).

Plaintiffs present to the Court incomplete and out of context testimony from the depositions of Vogel and Albright to make it seem as though there was no question that "multiple session" calls were occurring and at a great frequency. In fact, the record supports the opposite contention. Plaintiffs fail to mention that Vogel ultimately concluded, in regards to whether he knew if or how many agents were making multiple calls, that:

> Actually I'm not sure if even Cliff [Albright] would know. The center would -- the center would say how many log-ins they wanted. We really don't know how many of them were dual. We really wouldn't know. There's really no way to tell . . . . I mean we weren't in India. So you don't know. No one would really know.

Ex. J at 92:20-93:1. Plaintiffs also argue that Vogel and Albright "fulfilled VVT's requests for multiple logins per agent." Mot. at 5. Vogel, however, testified that Albright handled that task, (Ex. J at 74:15-22), and Albright testified that he "prebuilt the log-ins" for each call center without regard to how many agents would actually be using any of the log-in credentials. Ex. B at 37:5-17. Albright had no idea how many agents were in each call center or how many log-ins were ever in use. *Id.* at 39:13-24. Plaintiffs' theory that "dual calls" were commonplace is completely unsupported.

Even if Plaintiffs' misleading evidence could support a finding that *some* agents made multiple calls at once, that only raises yet another individualized inquiry. Plaintiffs propose no way of distinguishing which class members received calls under this theory of liability, because it was not a uniform practice. In *Cates v. Whirlpool Corp.*, the plaintiff's motion for class certification was "premised on an alleged design defect that uniformly affect[ed] all [o]vens" sold by the defendant. No. 15-CV-5980, 2017 WL 1862640, *19 (N.D. Ill. May 9, 2017). The court

in *Cates* denied class certification because, like the supposed "simultaneous calls" by VVT agents in this case, the plaintiffs in *Cates* could "offer no credible evidence showing that a uniform defect exists across all ovens." *Id.* The same is true for this theory of liability.

### C.  Typicality Is Not Met As the Plaintiffs Each Had Very Different Experiences

The typicality requirement addresses concerns that the representative's claim may fail or prevail on unique grounds. *CE Design Ltd.*, 637 F.3d at 726. The "presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *Id.* at 726. As stated above, Plaintiffs' claims are not sufficiently typical of the class because their claims are each based on atypical experiences.

Herrera may not even be a member of the class because the sole call she alleges she answered – which did not include the VVT System's prompts – was not from a number used by VVT during the campaign. *Compare* Mot., Ex. 30 *with* Mot., Exs. 20 & 21. Bakov does not recall whether he interacted with a VVT agent on any of the calls he claims to have answered or dialed to VVT. Ex. C at 88:1-8, 99:2-7. Hewlett's experience borders on the bizarre compared to the class allegations, as she claims to have been in a "battlefield" with one male VVT agent who would call her "back-to-back" after "cussing each other out," receiving more than twenty-five calls to various telephone numbers (although not the telephone number claimed in her complaint). Ex. E at 22:25-23:6, 102:10-18. Her testimony only reinforces the notion that not all alleged VVT calls utilized prerecorded voices and that they could vary significantly. Hewlett also provided a sham declaration about whether she even had the telephone number allegedly called by VVT in 2016.[8] The Court should not credit that sham declaration, and the

---

[8] At her deposition, Hewlett was adamant that she had changed her telephone number five times since 2014, and thus she did not have the telephone number ending in 3717 in 2016. *See* Ex. F at 23:11-13,

numerous credibility challenges Hewlett faces make her atypical. *Accord Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (decertifying a class because, "in light of . . . false deposition testimony," "the typicality and the adequacy of representation requirements" were no longer satisfied.); *Abraham v. Wash. Grp. Int'l, Inc.*, 766 F.3d 735, 741 (7th Cir. 2014) ("[A] deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony without giving a credible explanation for the discrepancies.").

Not only are the named Plaintiffs' claims not typical of the proposed class, they are not even typical of each other. Plaintiffs have little and inconclusive proof that they answered their alleged calls, that a prerecorded voice was played, that the VVT agent was in the midst of multiple calls at the same time as the calls the Plaintiffs supposedly answered, or that Plaintiffs are members of or suffered the same harm as, the proposed class. Typicality is not met.[9]

### D. Plaintiffs Propose an Impermissible Overbroad Class

A class that is "defined clearly and based on objective criteria" is ascertainable. *Mullins*, 795 F.3d at 659. However, overbroad classes that contain members without valid claims cannot satisfy the ascertainability requirement. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229, 235 (S.D. Ill. 2011) ("Where a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite."). Plaintiffs cannot answer a host of questions to exclude a substantial number of people who have no injury and no TCPA claim under their theory, and certainly not in a manner that would be

---

35:6-11, 36:18-23, 46:12-47:6. Her declaration now states, remarkably, that she did have that telephone number in 2016. *See* Mot., Ex. 31.

[9] For the same reasons the named Plaintiffs cannot satisfy typicality, they are not adequate to represent the class. *See Dvorak v. St. Clair Cty., Illinois*, No. 14-CV-1119-SMY-RJD, 2018 WL 514326, *7 (S.D. Ill. Jan. 23, 2018). And Hewlett's submission of false testimony raises yet another credibility challenge and precludes her from being deemed an adequate class representative. *Accord Kaplan*, 132 F.R.D. at 510.

administratively manageable.

First, to whom do the telephone numbers included on Weir's unseen "list" belong? Plaintiffs' supposed expert Randall Snyder proposes a reverse look up methodology to identify class members with only the telephone numbers in Weir's "list." *See* Mot., Ex. 17 at ¶ 31; Ex. H at 18:21-25. Considering that the only probative evidence of that proposed methodology was presented through an improper "rebuttal" expert and thus, should be excluded, there is also a complete evidentiary shortfall on this issue. Moreover, as explained above, identifying a "subscriber" is not identifying an actual person that *answered* the telephone call. See Ex. L at ¶¶ 33-37. Even if considered, however, for the reasons set forth in CWT's Motions to Strike The Testimony of Colin Weir, Christina Peters-Stasiweicz, and Randall Snyder, (Dkt. Nos. 170-172), this methodology is unreliable and will require numerous arbitrary and individualized determinations. Indeed, courts have found that when dealing with a list of telephone numbers and no other identifying information, there is no accurate, reliable, and non-individualized way to identify to whom a wireless number belonged at the point in time when the call was made. *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473 (S.D. Cal. 2014); *Jacobs v. Quicken Loans, Inc.*, No. 15-81386-CIV, 2017 WL 4838567, *3 (S.D. Fla. Oct. 19, 2017); *Sherman v. Yahoo*, No. 13-0041, 2015 WL 5604400, *5-6 (S.D. Cal. Sept. 23, 2015); *Smith*, 297 F.R.D. at 473.

Second, how can Plaintiffs distinguish between those class members who answered a telephone call from VVT versus those who called inbound to VVT? The proposed class definition includes only the former. *See* Mot. at 2. Weir's unseen "list" was made without regard to whether a call was made outbound by VVT as opposed to received inbound from a caller to VVT (like Herrera). *See* Ex. I at 105:21-106:8. People could have called (and did call) VVT after seeing the telephone number on their caller ID or if a friend told them about the free cruise they just obtained, for example. Herrera is one such example of a person who was transferred to

a CWT call center only after *she* called VVT (how she got the number remains unclear). Ex. D at 26:3-27:6. The proposed class cannot be allowed to include people that do not meet the definition or as to whom there is no evidence that they suffered any harm. *Cf. Vigus*, 274 F.R.D. at 235 (denying certification of TCPA claim in part on overbreadth grounds).

Third, even if there were evidence of who answered the telephone call, how will it be established that they were a resident of Illinois at the time? Assuming the Court properly limits the class to Illinois residents as a result of *Bristol-Myers*, Plaintiffs have no way of distinguishing which unique telephone numbers identified by Weir belonged to Illinois residents at the time they answered the call (although one cannot safely presume that the subscriber is the person that answered the telephone call). Area codes alone cannot conclusively determine whether the person who picked up the phone was an Illinois resident at that time.[10]

Fourth, who actually answered the call, the subscriber (assuming even if that can accurately be determined) or another person on his or her account? Even if Plaintiffs are permitted to utilize Snyder's unknown and undone reverse lookup methodology, it will not indicate whether the name identified is the person who answered the telephone call, which is required for class membership. Plaintiffs' "rebuttal" expert testified that the LexisNexis data that will be used identifies only the "owner," or subscriber, of the telephone number. Ex. H at 51:11-22; 84:16-85:9. Even assuming the correct subscriber is identified,[11] that is of course not necessarily the person who *answered* the telephone call (Herrera's brother is the subscriber for her telephone number, for example). Ex. D at 42:5-12. Without an objective, reliable, and class-wide method of determining the purportedly qualifying and injured person who actually answered

---

[10] *See* discussion at n.4, *supra*.

[11] CWT's rebuttal expert ran the three named Plaintiffs' telephone numbers through LexisNexis, as well as the telephone number of one of their attorneys, and the only person out of the four who matched the LexisNexis data was Bakov. Ex. L at ¶¶ 33-37.

the telephone call, the Court can determine class membership only by conducting individualized inquiries with respect to each putative class member.

Fifth, who answered a telephone call from a VVT agent that was also handling another telephone call at the same time? Plaintiffs contend that the calls at issue were TCPA violations because VVT agents made multiple calls simultaneously. Yet, they offer no class-wide proof nor provide any means of obtaining proof of any such calls or proving which class members received such "simultaneous" calls. Plaintiffs have even failed to demonstrate that any such calls took place, let alone that "dual calls" were a routine practice that affected all class members. It is unclear that any kind of individualized inquiry could even establish this prerequisite for liability.

Sixth, how will Plaintiffs differentiate between landline and cellular telephone numbers? Plaintiffs elected not to amend their complaint to expand the class to include people who answered telephone calls to their landline telephone numbers, and their "rebuttal" expert admitted she will not attempt to exclude them from the class. *See* Ex. H at 91:6-12.

Seventh, how can Plaintiffs identify on which calls VVT agents used their own voices?

As a consequence of Plaintiffs' inability to answer these questions through objective and class-wide criteria, Plaintiffs' proposed class fails on account of its overbreadth. Like in *Vigus*, the proposed class includes people who have suffered no harm, as, for example, they may not have answered a call from VVT, or did but did not hear the alleged "prerecorded voice," or the live agent unmuted and spoke in his or her natural voice. Under the TCPA, liability exists for a "prerecorded voice" violation only when the plaintiff can show that a prerecorded voice was *actually played* to them by the defendant. *See Ybarra*, 807 F.3d at 641.

## IV.    PLAINTIFFS FAIL TO SATISFY RULE 23(B)(3)'S REQUIREMENTS

### A.    Individual Issues Will Overwhelm the Proceedings

The holes in Plaintiffs' method of identifying class members and failure to satisfy

commonality and typicality require individualized inquiry such that common questions do not predominate over individual ones. Rule 23(b)(3)'s "requirement of predominance is not satisfied if individual questions . . . overwhelm questions common to the class." *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (internal quotation omitted). Individual questions are not only present here, they overflow. Each class member must provide individualized evidence that: they answered a call from VVT (as opposed to having called VVT); heard a prerecorded message play and were injured; were Illinois residents at the time; their telephone number was a cellular telephone number at the time; the VVT agent who made the outbound call (assuming the call was outbound) was making two calls at once (evidence a purported class member would not have); and the VVT agent did not use his or her natural voice. As explained above, there is no way to prove such facts class-wide, and the Court will inevitably be inundated with a mini trial for every putative class member who attempts to make a claim based on their "say-so."

Trial of issues as basic and fundamental as whether each class member suffered a concrete injury by answering a call (as opposed to calling VVT) or even hearing a prerecorded message being played necessarily "will be consumed and overwhelmed by testimony from each individual class member," and there cannot be generalized evidence on the issues. *See Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 578 (N.D. Ill. 2017) (denying certification of TCPA class because individualized inquiries of consent and injury would predominate); *Brodsky v. HumanaDental Ins. Co.*, 269 F. Supp. 3d 841, 846 (N.D. Ill. 2017) (decertifying TPCA class).

### B. Superiority Is Not Met Because the Class is Unmanageable and Class Members Cannot be Accurately Identified

"If the proposed class presents unusually difficult manageability problems, district courts have discretion to press the plaintiff for details about the plaintiff's plan to identify class members," and deny certification if not satisfied. *Mullins,* 795 F.3d at 672. The foregoing

discussion has shown that the numerous deficiencies with respect to numerosity, commonality, typicality, adequacy, and predominance preclude the Court from finding that a class action would be a superior way of resolving the claims at issue. The "action would rapidly become unmanageable" and any benefits of a class action would be greatly outweighed by the "necessity of conducting hundreds or thousands of individualized hearings." *Dvorak v. St. Clair Cty., Illinois*, No. 14-CV-1119-SMY-RJD, 2018 WL 514326, *8 (S.D. Ill. Jan. 23, 2018).

In a last ditch effort, Plaintiffs – despite claiming their proposed identification methodology is exceedingly accurate and reliable – propose notice by publication and self-identification by sworn affidavit. *See* Mot. at 20. While the Seventh Circuit has approved self-identifying affidavits, (*Mullins*, 795 F.3d at 672), it has never suggested that such affidavits can be used to turn a blind eye to a proposed class that already raises numerous deficiencies and requires a host of individualized inquiries that predominate over common issues. The absence of objective records that could be used to corroborate the contents of such affidavits – as discussed above at length – further militates against a finding of superiority.[12] Even in *Birchmeier*, the court allowed class members to self-identify by sworn statements because "their class membership will plainly not rest on 'bare recollection' alone; they must also submit objective evidence." 302 F.R.D. at 253. Here, Plaintiffs have not presented any such objective evidence.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion fails under the "rigorous analysis" standard this Court must apply. The failure to satisfy any of the elements of Rule 23(a) or Rule 23(b)(3), requires the denial of Plaintiffs' Motion.

---

[12] *See, e.g.*, *Byrd v. Aaron's Inc.*, 784 F.3d 154, 170 (3d Cir. 2015) ("[T]he plaintiffs' proposed reliance on affidavits alone, without any objective records to identify class members or a method to weed out unreliable affidavits, could not satisfy the ascertainability requirement."); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 526 n.10 (6th Cir. 2015) (same).

Dated: September 5, 2018

GREENSPOON MARDER LLP

*/s/ Jeffrey A. Backman*
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
richard.epstein@gmlaw.com
JEFFREY A. BACKMAN, ESQ
(Fla. Bar No. 0662501)
jeffrey.backman@gmlaw.com
ROY TAUB, ESQ.
(Fla. Bar No. 116263)
roy.taub@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

and

TABET DIVITO & ROTHSTEIN LLC

Timothy Hudson
The Rookery Building
209 South LaSalle St., Suite 700
Chicago, IL 60604
(312)762-9450 (Telephone)
(312)762-9451 (Facsimile)

*Attorneys for Defendant Consolidated World Travel, Inc. d/b/a Holiday Cruise Line*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via ECF on September 5, 2018.

*/s/ Jeffrey A. Backman*
JEFFREY A. BACKMAN