# EXHIBIT L

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGEL BAKOV and JULIE HERRERA, individually and on behalf of all others similarly situated, ) ) ) | Case No. 1:15-cv-02980 |
| ) | Hon. Harry D. Leinenweber |
| Plaintiffs, ) | Hon. Susan E. Cox |
| v. ) ) | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, ) ) ) ) | |
| Defendant. ) ) ) | |
| KINAYA HEWLETT, on Behalf of Herself and all Others Similarly Situated, ) ) ) | Case No. 1:17-cv-00973 |
| ) | Hon. Harry D. Leinenweber |
| Plaintiff, ) ) | |
| v. ) | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, Defendant. ) ) ) ) | |

**DECLARATION OF MARGARET DALEY**

I, Margaret A. Daley, being duly sworn, declare as follows:

## I.  SUMMARY OF OPINIONS

1. Plaintiff's expert Randall Snyder's conclusion that a telephone number alone is sufficient to identify the person that received a specific telephone call at a specific time in the past is unsupported and inaccurate. Mr. Snyder's opinion that database reverse lookup services can "definitively and clearly" identify persons who received telephone calls ignores the well-known and well-documented unreliability of this data. It is understood by Data Processors and

Page | 1

professional investigators that reverse lookup services are highly inaccurate and incomplete due to a number of factors, including the anonymity provided by pre-paid plans, the ubiquity of family plans where records of actual users are not accurately maintained, and the high rate of churn of cellular numbers.

2. Mr. Snyder identifies no personal professional experience upon which his bases his unsupported opinion. In fact, it is not clear from his report that he has ever actually used or tested the accuracy of reverse lookup services. His report included no testing of the numbers at issue although they were available to him. He points to no authoritative sources, surveys or industry statistics to support his conclusions. He also fails to inform the court of the problem that reverse lookup services often provide multiple names of persons associated with a number for the exact same date range. He identifies no methodology that plaintiff would employ to address this issue.

3. Based upon my twenty years as a professional investigator and on extensive testing that I have conducted in the past on the accuracy of these services, it is my opinion, to a reasonable degree of scientific certainty, that reverse cellular lookup services are highly unreliable and unlikely to accurately identify the recipient of an historical telephone call.

4. Mr. Snyder's report names three specific data processor and database vendors as examples of "reputable" providers of reverse cellular lookup services: LexisNexis, Experian Information Solutions, and Nexxa Group. Neither Experian nor Nexxa in fact actually provide any historical data on cellular telephone users, while LexisNexis disclaims any specific claims of reliability for their historic data. It is unclear why Mr. Snyder believes these vendors to be "reputable" providers of products they do not in fact offer.

    II.    QUALIFICATIONS

5. I am a Managing Director at Berkeley Research Group ("BRG") and a leader in its Global Investigations + Strategic Intelligence practice group. BRG is a leading global strategic advisory and expert services firm that provides independent expert testimony, litigation and regulatory support, authoritative studies, strategic advice, and data analytics to major law firms, Fortune

500 corporations, government agencies, and regulatory bodies around the world. I joined BRG in 2015.

6. Prior to joining BRG I was Co-Chair of the Forensic Technology & Analytics practice at Duff & Phelps, an international consulting firm. I was also Vice President and General Counsel at an international consulting and investigations firm. I have an undergraduate degree from the University of Michigan and I received by Juris Doctor *cum laude* from Boston University School of Law.

7. I am an Illinois licensed attorney and a licensed private detective in the state of Illinois and Michigan. I was appointed by the Director of the Illinois Department of Professional Regulation to serve a member of state of Illinois board regulates private detectives and other licensed security and investigative professionals. I also serve as Chairman of the Cook County Board of Ethics.

8. I specialize in leading forensic technology investigative teams that work on complex databases housing sophisticated financial, transactional, and compliance related data.

9. I am a Certified Information Privacy Professional ("CIPP"), a Certified Fraud Examiner ("CFE") and a Certified Anti-Money Laundering Specialist ("CAMS").

10. My investigations team was named "Best of Chicago for Global Risk Investigations" by the National Law Journal. I have been named every year since 2014 by *Who's Who Legal* as one of a limited group of nationally recognized Forensic Investigation experts. I have served on the American Institute of Certified Public Accountants task force on Forensic Technology and the American Bar Association's task for on Corporate Monitors. I have authored numerous articles on topics of data security and data privacy. In 2017 I was appointed to the Sedona Conference Working Group W11 on Data Security and Privacy Liability.

11. I have been an expert witness in numerous state and federal cases throughout the United States testifying as an investigative and data analytics expert. My *curriculum vitae* is attached as Exhibit A to this Declaration.

12. I have been retained by counsel for Defendant Consolidated World Travel, Inc. I am being compensated at the hourly rate of $625.

13. A list of the documents I relied upon in reaching my conclusions are set forth in Exhibit B.

14. My understanding of the factual matters at issue in the litigation is based on my review of the pleadings, written discovery responses, deposition testimony and exhibits and document productions. I understand that discovery is ongoing and that additional information relevant to my opinions may be disclosed in additional document productions and depositions. Accordingly, I reserve the right to amend my findings based upon such additional disclosures. I also reserve the right to submit a report based on the analysis that I propose here.

### III. FACTUAL OVERVIEW

15. This case involves allegations that the Florida corporation Consolidated World Travel Inc., D/B/A Holiday Cruise Line, supposedly violated the Telephone Consumer Protection Act (47 U.S.C. § 227, "TCPA"). The plaintiffs propose to represent a class of similarly situated persons who supposedly received telemarketing calls made by or at the direction of Consolidated World Travel, using an automatic telephone dialing system or an artificial or prerecorded voice, directed to cellular telephones used by persons who had not provided prior express consent for those calls.[1]

16. I understand that plaintiffs purport to have identified the telephone numbers that were called through their analysis of Sprint billing information and Call Detail Reports from third parties Matrix Telecom and inContact, but these records do not contain the name or address of any call recipient.[2] I have not to date been asked to review these records but reserve the right to do so in the future.

17. Plaintiffs' expert Randall Snyder issued an expert opinion that stated that although these records identified only telephone numbers, they were sufficient to identify the call recipients:

---

[1] Consolidated Class Action Complaint (1:15cv02980), p. 16.
[2] Declaration of Colin Weir, par. 6, p. 2-3.

Page | 4

In addition, based on my knowledge, education, experience, expertise and training, it is my opinion that current and historical contact information about consumers called by the Defendant can be clearly and definitively determined *based solely on a telephone number, and the ability to do so is a commonly-practiced and straightforward administrative process* (emphasis added).[3]

## CONCLUSIONS AND OPINIONS

### *Randall Snyder's Opinion That Class Members Can Be Accurately Identified By Data Processors Offering Reverse Lookup Services Is Unsupported And Incorrect*

18. Randall Snyder proposes to identify the class members through the use of "Data Processors," which he defines as vendors of online databases such as LexisNexis, Experian Information Solutions ("Experian"), and Nexxa Group ("Nexxa").[4] According to Mr. Snyder, these Data Processors have the ability to obtain the name of the telephone subscriber associated with a telephone number and the owner's address during the timeframe the subscription was in service.[5] This process is known as a historical cellular lookup.

19. I have been in the private investigations business since 1997 and have conducted thousands of background checks in the last 20 years. I serve on the State of Illinois board that oversees the licensing of private detectives in the state. I am very familiar with the data provided by these Data Processors and am experienced in the use of cellular telephone reverse lookup services. I can state with a reasonable degree of scientific certainty from my professional experience and testing I personally conducted that cellular telephone reverse lookup services are *not* considered reliable in the investigations industry because they are not obtained from reliable sources of information. In my experience these lookup services at best have a 50/50 chance of accurately identifying the *current subscriber* of a cellular telephone number, and are significantly less reliable in identifying *historical* owners.

---

[3] Declaration of Randall Snyder, par. 11, p. 7.
[4] Ibid, par. 26, p. 11.
[5] Ibid, par. 26, p. 11-12.

Page | 5

20. Mr. Snyder makes sweeping statements about the ability of these Data Processors to accurately identify historical users of cellular numbers. What he fails to explain is that the identifications provided by these services are simply guesses made by the vendors based upon a variety of sources, many of which are inconsistent and unreliable.

21. The reason that reverse lookup services are so unreliable is that cellular telephone ownership identification is by its very nature difficult. Unlike landlines, no national directory of cellular telephone owners is published by any organization and cellular providers do not make the information readily available. Instead, Data Processors that provide reverse lookup services aggregate information from third-party sources such as lead lists from lead generation websites, or credit card applications and other instances in which a consumer self-reports a cellular number as being associated with them. If a cellular subscriber never volunteers their phone number to a resource used by the Data Processor, then that Data Processor is unlikely to be able to identify that person as the user of that phone number. If a person volunteers a cellular phone number that is not their own, such as a number of a friend or family member, then the Data Processor may identify a user who is neither the subscriber nor the customary user of that phone number.

22. In the case of cellular numbers that are part of family or group subscriptions, the name of the account holder is often different than the actual customary user of that number. In the case of cellular numbers that are prepaid accounts, it is often the case that even the telecommunications provider does not have a record of the subscriber's name.[6]

23. At best, Data Processors can only report "first" and "last seen" dates for information associated with reverse cellular lookups, not the phone numbers' actual service dates with the respective carriers. The "first date seen" used by a Data Processor simply refers to the earliest date when one of its sources associated an individual with that number, but this date has no relation to when the user actually subscribed with a cellular service carrier.

---

[6] The anonymous nature of pre-paid plans cause concern among legislators and security experts due to their use by terrorists and other criminals. For example, California's legislature recently considered a proposed bill, dubbed the "Closing the Pre-Paid Mobile Device Security Gap Act of 2016," or HR 4886, which proposed to ban anonymous pre-paid cellular phones. *See* https://www.govtrack.us/congress/bills/114/hr4886/summary.

Page | 6

24. LexisNexis refuses to identify its sources of cellular telephone ownership data as it considers this "confidential, proprietary info."[7] In contrast, other data provided by LexisNexis and other Data Processors, such as real estate ownership and business records, are sourced from reliable public records, including officially recorded deeds and secretary of state records. The accuracy of that data is not at issue here, and the reputation of LexisNexis and other Data Processors in adequately aggregating that type of data should not be applied to their cellular telephone number lookup services, which are drawn from an entirely different and less reliable type of data.

25. Reverse lookup services are only used by professional investigators as "leads" and would never be considered "definitive" because they exhibit many errors and omissions, such as:

    a. No identification of a user at all;

    b. Identification of more than one user for the exact same time period; or

    c. Identification of a "user" who is neither the subscriber nor the customary user.

26. As a consequence of each Data Processor relying on its own set of sources for its directories and assigning its own proprietary algorithm to weigh the significance of those different sources, searching the same phone number in two or more different Data Processors can result in different results from each. Mr. Snyder does not inform the court which service he will use, whether he will use more than one, nor how plaintiffs will choose which result to prioritize if they receive multiple name associations for a given phone number within the same time frame.

27. As a part of my work in other TCPA cases I have investigated the reliability of reverse cellular lookup services. As part of this research my staff contacted LexisNexis about the reliability of its bulk cellphone owner lookups. LexisNexis advised BRG that although its Reverse Phone Finder product "consists of hundreds of millions of cell phone numbers with names and addresses," the service typically only returns name and address information for 60-

---

[7] Email from Leslie Sherman at LexisNexis.com, April 14, 2016, attached as Exhibit C.

Page | 7

70% of the cell phone numbers fed into it.[8] Notably, that 60-70% "hit rate" only means that *a* name is returned as being associated with a cellular number at some point in time There is no guarantee that the person whose name is reported actually used or owned the cellular number at a particular time.

28. It is interesting to note that while Mr. Snyder claims that Data Processors such as Lexis Nexis can "definitively"[9] identify the persons that received a call, the Data Processors themselves categorically deny such accuracy. For example, LexisNexis provides the following disclaimer with respect to the accuracy of its telephone lookup services:

> Important: The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. ***This system should not be relied upon as definitively accurate.*** Before relying on any data this system supplies, ***it should be independently verified***. [Emphasis added] [10]

29. Acknowledging the unreliability of the data, LexisNexis actually bases its pricing on the assumption that the majority of searches will not return any result at all and the company makes no claims as the reliability of the data that is actually returned. In response to a 2016 request by BRG for reverse cellular phone lookup pricing, LexisNexis explained that it only charges a fee when the search returns a result. LexisNexis then provided a tiered price quote which charges according to a low accuracy rate.[11] BRG confirmed with LexisNexis that as of the end of 2017 its low accuracy rate had not improved..[12]

30. One of the reasons that reverse cellular directory information is especially unreliable is due to the relatively high level of service provider changes by customers. A 2015 study by the Pew Research Center found that 23% of smartphone owners have cancelled or suspended their service at some point due to financial constraints. For those smartphone owners with annual income of $30,000 or less, the number of users whose service was discontinued at some point jumps to

---

[8] Email from Tracy Morton, LexisNexis.com, April 29, 2016, attached as Exhibit D. A LexisNexis representative confirmed the responsiveness rate had not changed as of the end of 2017. See Exhibit E.
[9] Declaration of Randall Snyder, par. 33, p. 14.
[10] Exhibit F.
[11] Exhibit D.
[12] Exhibit E.

Page | 8

almost 50%.[13] It is therefore likely that a substantial number of the cellular numbers at issue in this case changed hands during the time period covered by the class definition, further complicating identification of any individual class member.[14] Indeed, I understand that at least one of the plaintiffs changed cellular telephone numbers during the time period covered by the class definition.[15]

31. As set forth below, my experience and testing shows that Data Processors only return names as being associated with a portion of the numbers queried. As many as thirty to forty percent of the numbers searched return no name. Of the numbers that do return associated names, I found that as many as half of the names returned are incorrect. Therefore, if 10 numbers are queried, the cellular directories will only return names for 6-7 of them, but in my experience and my testing, only 3-4 of those names will ultimately be determined as belonging to the actual subscriber or user during the time frame reported. The rest of the reported data is simply wrong The unreliability of these services has been noted by the courts and this methodology has been rejected based upon these failures.[16].

32. There are no shortcuts to determining which of the identities reported by the Data Processors are accurate. The only way to do so is to conduct an individualized inquiry that consists of either directly calling the person and asking if they both owned or used the cellular number and received the call in question, or conducting internet and database research to identify contemporaneous documentation such as telephone records, social media posts and historical resumes which report the telephone number. This process is both time consuming and expensive.

33. The unreliability of the information produced by Data Processors is demonstrated by the information they report on the plaintiffs in this matter. After searching the telephone numbers

---

[13] Exhibit G.
[14] Federal Communications Commission 18th Mobile Wireless Competition Report, attached as Exhibit H.
[15] Plaintiff's Responses To Defendant Consolidated World Travel, Inc.'s First Set Of Interrogatories (2:16cv00713) at 10:10-11.
[16] In Sherman v. Yahoo No. 3:13cv00041(S.D. Cal.), the court denied class certification in a TCPA matter involving a proposal to identify the class using reverse cellular lookups finding "reverse lookup systems are fraught with difficulties and are likely to provide inaccurate contact information two years later." In Jacobs v. Quicken Loans, 9:15-cv-81386 (S.D. of FL), the court cited Sherman v. Yahoo in denying class certification for a TCPA lawsuit. The court found in part that plaintiff's proposal to conduct cellular telephone reverse lookups to identify class members failed to address the inherent reliability problems with those data processing services.

Page | 9

that the plaintiffs provided as the cellular numbers on which they allegedly received the calls at issue in this case, I found that the proposed reverse lookup methodology fails to identify both Julie Herrera and Kinaya Hewlett as potential class members.

34. Ms. Hewlett claims to have received calls from the defendant on her cellular number (916) 807-3717 in March 2016.[17] I researched the telephone number (916) 807-3717 using LexisNexis's Reverse Phone Finder database, and it only associates the number with Ms. Hewlett for a single month in 2014; three names are returned in connection with the number but none of them are identified for the time period including March 2016.[18]

35. Ms. Herrera claims to have received a call from the defendant on her cellular number (217) 721-7748 in May 2015.[19] I researched the telephone number (217) 721-7748 using LexisNexis's Reverse Phone Finder database but no names at all were returned.[20]

36. I was also provided with the cellular telephone number used by plaintiff's counsel Yitz Kopel. I researched the telephone number (917) 776-6740 using LexisNexis's Reverse Phone Finder database but the only name returned was "Landon S. Sutton."[21]

37. The inability of the reverse cellular lookup process to accurately identify the plaintiffs in this matter is consistent with my professional experience of these services. I have conducted testing of the reliability of reverse cellular lookups on a number of occasions and consistently find the data to be unreliable. For example, I tested a cellular number I myself used while employed by my prior employer. LexisNexis failed to associate me with that cellular telephone number.[22]

---

[17] Plaintiff's Responses To Defendant Consolidated World Travel, Inc.'s First Set Of Interrogatories (2:16cv00713), at 5:23-6:1.
[18] Exhibit I.
[19] Plaintiff Julie Herrera's Objections And Responses To Defendant Consolidated World Travel, Inc. D/B/A Holiday Cruise Line's First Set Of Interrogatories (1:15cv02980), Response to Interrogatory No. 4 on p. 4; see also Consolidated Class Action Complaint (1:15cv02980) par. 50 p. 7.
[20] Exhibit J.
[21] Exhibit K.
[22] Exhibit L. I used this phone number from approximately mid-2008 until the spring of 2015.

38. In 2016, I conducted a more extensive testing of the reliability of LexisNexis' reverse lookup service, using a list of 167 cellular telephone numbers for which I already knew the correct current user's name. These numbers encompassed a range of phone service types including individually owned single user plans, family plans, and employer-owned plans.[23] Only 68 of these test numbers returned the correct name of the user, representing an accuracy rate of just 41%.[24] In other matters where I have been retained as an expert witness I have conducted additional testing of the accuracy of reverse cellular lookup services and found that the Data Processors was even more unreliable, failing to identify the overwhelming majority of users. [25]

39. These results are consistent with the accuracy metrics reported by LexisNexis and used in their pricing. This result is consistent with my professional experience which indicates that these reverse lookup services have a low rate of accuracy.

### *Data Processors Often Identify No Person or Multiple Persons as Being Associated with the Same Telephone Number in the Same Time Period*

40. Mr. Snyder proposes to identify class claimants by relying upon the names that are returned from Data Processors when queried by cellular telephone number. He does not inform the court that Data Processors often return no results or, in the alternative, identify more than one name as being associated with a cellular number during the exact same time period. In his report he does not disclose how he expects to handle these well-known problems. What steps will be taken when no person is identified by the Data Processors? Who will decide and how will they decide which of the multiple names returned will be awarded class status and which will not? As there is no way to determine which person actually in fact received the calls at issue, absent a complex individualized investigation, only an arbitrary method can be employed to decide which of the persons identified by the Data Processors is a class member and which is left uncompensated.

---

[23] I do not know if any pre-paid plans were included in the data set, but I did not take any steps to exclude them, and assume that pre-paid plans were included in some percentage.
[24] Exhibit M.
[25] See for example, Declaration of Margaret Daley, Flowers v. Twilio, Inc., No. RG16804363 (Superior Court for the State of California).

Page | 11

### *Many of The Data Processors Mr. Snyder Identifies Do Not Even Offer Historical Cellular Phone Number Lookup Services*

41. Mr. Snyder identified three Data Processors that he claims could provide "definitive" and "clear" identification of the class. As noted above LexisNexis admits that its historical directory information is incomplete and bases its pricing on an assumed low accuracy rate. Neither Experian nor Nexxa, the other two Data Processors he cites, even offer historical directory information.

42. Josh Eidell, an Experian Account Executive, reported to BRG in 2016 that Experian does not maintain or sell historical data on cellular telephone numbers ownership:

> Everything I am gathering is that *we cannot do reverse appends on historical data* but can look at the current owners of those numbers… please see the comments below from two product owners for different solutions in the realm of what you're looking for.
>
> * * * *
>
> We're getting live feeds from the teleco's but *do not cache the data so we cannot provide a historical view of the phone owner.* We do store disconnect data. Not sure if that would help your prospect. Happy to discuss in more detail but in back to back meetings today. Do you have time tomorrow?
>
> *We don't have any historical ownership data on the phones so we would not be able to accommodate his request for historical assignments.* [Emphasis added][26]

43. I confirmed with Experian on February 27, 2018 that this had not changed, and their service offerings do not now include, nor have they previously included, historical cellular lookup information.

44. Nexxa, another of the Data Processors identified by Mr. Snyder also denied in 2016 that it provided historical cellular telephone ownership identification. When contacted in 2016, a

---

[26] Email from Josh Eidell at Experian Data Quality, May 3, 2016, attached as Exhibit N.

Page | 12

Nexxa representative responded that "***we currently do not have access to the historical cell phone owner data***. That data resides directly with the carriers. What we do have is historical landline information for a point in time" [Emphasis added].[27] BRG confirmed that as of the end of 2017 Nexxa still does not provide historical cellular phone lookup data, and can only report the name of the current owner of the telephone number.[28]

45. I declare under the penalty of perjury under the laws of California and the United States of America, that the foregoing is true and correct.

Respectfully submitted,

*[signature: Margaret Daley]*

Margaret A. Daley

Dated: March 8, 2018

---

[27] Email from Holly Paulus at Nexxa Group, May 4, 2016, attached as Exhibit O.
[28] Exhibit E.

Page | 13