# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL BAKOV and JULIE HERRERA, individually and on behalf of all others similarly situated, | : : : | Case No. 1:15-cv-02980 |
| | : | Hon. Harry D. Leinenweber |
| *Plaintiffs,* | : : | Hon. Susan E. Cox |
| | : | |
| v. | : : | |
| | : | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, | : : : : | |
| | : | |
| *Defendant.* | : : | |

| | | |
|---|---|---|
| KINAYA HEWLETT, on Behalf of Herself and all Others Similarly Situated, | : : | Case No. 1:17-cv-00973 |
| | : | |
| *Plaintiff,* | : : | Hon. Harry D. Leinenweber |
| | : | |
| v. | : : | |
| | : | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, | : : : | |
| | : | |
| *Defendant.* | : : | |

## NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING TCPA CLAIMS AND SOUNDBOARD SOFTWARE IN SUPPORT OF CLASS CERTIFICATION [ECF NO. 165] AND MOTION TO EXCLUDE [ECF NO. 169]

Plaintiffs hereby notify the Court of the following supplemental authority regarding TCPA claims and soundboard software in support of Plaintiffs' Motion for Class Certification [ECF No. 165], and Motion to Exclude the Testimony of Kenneth R. Sponsler [ECF No. 169].

In *Braver v. NorthStar Alarm Services, LLC, et al.* (Exhibit A), following an evidentiary hearing and receiving supplemental briefing, the Court certified a national class asserting TCPA

758468.1

claims involving soundboard software, which is the same kind of technology employed by defendant Consolidated World Travel, Inc. ("CWT") and which CWT's expert opined is not subject to the TCPA. No. 17-cv-0383, slip op. at *5–7 (W.D. Okla. Oct. 15, 2018). The *Braver* opinion addresses many of the same challenges to class certification that CWT asserted in this case, including a challenge to personal jurisdiction based on *Bristol-Myers Squibb Co. v. Superior Court of California*, ___ U.S. ___, 137 S. Ct. 1773 (June 19, 2017). The *Braver* Court rejected that argument because, not unlike what occurred here, the defendants failed to raise the objection in either their answers or motions to dismiss and because the defendants had previously stipulated to personal jurisdiction. *Braver*, slip op. at *8.

On December 13, 2018, the Tenth Circuit denied the *Braver* defendants' Rule 23(f) petition for permission to appeal the order certifying the class. *NorthStar Alarm Services, LLC, et al., v. Robert H. Braver*, No. 18-603, slip op. (10th Cir. Dec. 13, 2018) (Exhibit B).


Dated: December 14, 2018          Respectfully submitted,

          **LITE DEPALMA GREENBERG, LLC**

By:    */s/ Katrina Carroll*
      Katrina Carroll
      *kcarroll@litedepalma.com*
      Kyle A. Shamberg
      *kshamberg@litedepalma.com*
      111 W. Washington Street, Suite 1240
      Chicago, IL 60602
      Telephone: (312) 750-1265

      **JEFFREY GRANT BROWN, P.C.**
      Jeffrey Grant Brown
      *jeff@jgbrownlaw.com*
      221 North LaSalle Street, Suite 1414
      Chicago, IL 60601
      Telephone: (312) 789-9700

758468.1

**SIPRUT PC**
Joseph J. Siprut
*jsiprut@siprut.com*
Todd L. McLawhorn
*tmclawhorn@siprut.com*
17 N. State Street, Suite 1600
Chicago, Illinois 60602
Telephone: (312) 236-0000

**AHDOOT & WOLFSON, PC**
Robert Ahdoot (admitted *pro hac*)
*rahdoot@ahdootwolfson.com*
Tina Wolfson (admitted *pro hac*)
*twolfson@ahdootwolfson.com*
1016 Palm Avenue
West Hollywood, California 90069
Telephone: (310) 474-9111

*Counsel for Plaintiffs Bakov and Herrera*

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (admitted *pro hac*)
ykopel@bursor.com
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7127

*Counsel for Plaintiff Hewlett*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND TO EXCLUDE THE EXPERT OPINION TESTIMONY OF KENNETH R. SPONSLER was filed electronically with the Clerk of the Court using the CM/ECF system this 14th day of December 2018 and served electronically on all counsel of record.

*/s/ Katrina Carroll*
Katrina Carroll

758468.1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ROBERT H. BRAVER, for himself       )
and all individuals similarly situated,   )
                                            )
            Plaintiff,                      )
                                            )        Case No. CIV-17-0383 -F
-vs-                                        )
                                            )
NORTHSTAR ALARM SERVICES,           )
LLC, a Company, et al.,                     )
                                            )
            Defendants.                     )

## ORDER CERTIFYING CLASS, INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the court is plaintiff Robert H. Braver's motion for class certification of the claim alleged in count one of the first amended complaint.[1]  Doc. no. 42. Count one alleges that defendants' robocalls delivered a prerecorded telemarketing message without plaintiff's or the class members' prior express written consent, in violation of the Telephone Consumer Protection Act (TCPA, or the Act), 47 U.S.C. §227(b), and 47 C.F.R. § 64.1200(a)(3).

An evidentiary hearing was held on the motion on June 8, 2018.  At the conclusion of the hearing the court requested supplemental briefing along with

---

[1] The first amended complaint was deemed further amended by the court (see doc. no. 54) after the parties stipulated to the dismissal of count two.  Accordingly, count two is no longer alleged. Class certification has not been sought with respect to count three.

proposed findings of fact and conclusions of law.  The briefing is complete, and the motion is ready for determination.[2]

Part I, the introduction to this order, reviews some of the general allegations, sets out the statute and regulation upon which count one depends, and describes the class and sub-class proposed by the plaintiff.  Part II states the court's findings of fact.  Part III states the court's conclusions of law.  When it serves readability to do so, some fact-findings have been included in the conclusions of law portion of this order.  To the extent that any matters have been characterized as conclusions of law when they are more accurately characterized as findings of fact, they should be so regarded.  The court's findings and conclusions support certification of the proposed classes, which are described in Part IV.  The schedule, going forward, is addressed in Part V.

## I.  Introduction

### A.  General Allegations

Plaintiff Robert H. Braver, individually and on behalf of all others similarly situated, brings claims against defendants, Northstar Alarm Services, LLC ("Northstar") and Yodel Technologies, LLC ("Yodel"), seeking to recover statutory damages based on defendants' alleged violations of the TCPA.

The first amended complaint alleges that Northstar hired Yodel to initiate telemarketing calls advertising Northstar's home security systems.  Doc. no. 7, ¶ 2.  Plaintiff alleges that Yodel initiated thousands of calls marketing Northstar's home security systems to residential telephone numbers using a prerecorded voice without express written consent, including calls to plaintiff's home telephone number, in

---

[2] The briefing includes the motion (doc. no. 42); NorthStar's response brief (doc. no. 57); Yodel Technologies' response brief (doc. no. 59); Braver's reply brief (doc. no. 62); Braver's supplemental brief (doc. no. 69);  and Northstar's supplemental brief (doc. no. 71).  The hearing transcript is at doc. no. 67.

violation of the TCPA, 47 U.S.C. § 227(b)(1)(B).  *Id.* at ¶¶ 2, 3, 18, 22, 34.  Plaintiff alleges that the defendants concealed their identities by spoofing phone numbers on caller IDs and using fictitious business names until consumers expressed enough interest in Northstar's goods and services to be transferred to a live representative. *Id.* at ¶¶ 19, 20, 21, 23, 24, 25, 26.  Plaintiff alleges that Northstar is vicariously liable for Yodel's conduct. *Id.* at ¶¶ 36-42. [3]   Plaintiff and class members seek statutory penalties from $500 to $1500 per violation for defendants' willful violation of the TCPA.  *Id.* at ¶¶ 60-62.

B.  <u>The Statute and the Regulation Upon Which Count One Depend</u>

Title 47 U.S.C. § 227(b)(1)(B) makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."

Federal Communications Commission regulations promulgated under the TCPA include 47 C.F.R. § 64.1200, addressing delivery restrictions on telephone calls including "telemarketing" calls.[4] Subsection (a)(3) of § 64.1200 requires that consent for "telemarketing" calls must be "prior express written consent."[5]

The term "prior express written consent" is defined in the regulation as follows.

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice,

---

[3] The court previously dismissed any direct liability claims alleged against NorthStar, after plaintiff confessed that issue.  Doc. no. 27, p. 7.

[4] "The term "telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

[5] The regulation states that except in situations not material here, "No person or entity may…[i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party…."  47 C.F.R. § 64.1200(a)(3).

and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

(i)   The written agreement shall include a clear and conspicuous disclosure informing the person signing that:

(A)      By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B)      The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(C)      The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8).

## C.  Class and Subclass Requested for Certification

The motion seeks certification of a national class and sub-class pursuant to Fed.R.Civ.P. 23(a) and (b)(3), defined as follows.

Class:

All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 20[6] or 50[7] to the call, and that resulted in the normal clearing disposition.[8]

---

[6] Status Code 20 means that the called party responded to the prerecorded prompts by stating that they did not want to be called again.  Doc. no. 42-11, pp. 32-33.

[7] Status Code 50 means that the soundboard agent played at least six prerecorded message prompts during the call, *i.e.* up to the prerecorded question "Are you a U.S. citizen?"  Doc. no. 42-11, pp. 34-35.

[8] "Normal clearing" indicates successful call completion to the called party.  Doc. no. 42-4, p. 63.

Subclass:

All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 50 to the call, and that resulted in the normal clearing disposition.

Excluded from the class are:

Any persons whose contact information is associated with either an IP address or website URL in the Red Dot Data marketing list.[9]

## II.  Findings of Fact

Northstar is in the business of providing security and home automation systems to home owners across most of the country.  Doc. no. 69-1 at 23:9-11.[10]

In January of 2016, Northstar hired Yodel to place "soundboard" or "avatar" telemarketing calls on its behalf in order to sell home security systems.  Doc. no. 42-3 at 31:7-10, 67:2-24; 42-4 at 16:617, 53:2-23, 55:6-17; doc. no. 42-5 at 98:18-24.

During these calls, "soundboard agents" played prerecorded audio files, in a scripted sequence, to the recipient.  Doc. no. 42-5 at 97:14 – 98:1.  The standard script (with each numbered paragraph representing a separate prerecorded audio file) begins as follows.

1. Intro: Hello this is Amy,[11] I am security advisor, can you hear me okay?

2. Purpose: Okay, good, I am with the security help center and the reason why I am calling today is that there have been issues with false alarms, with

---

[9] Because a few of the Red Dot Data records display an IP address or URL of a marketing website which one of the leads (sales leads, *i.e.* persons called) might have visited, and which might have displayed terms and conditions requiring consent to telemarketing calls, the proposed class definition excludes persons whose contact information, as shown in the records, is associated with either an IP address or a website URL, in an effort to preempt consent arguments.

[10] Depositions transcripts are cited by page number.  Except when citing deposition transcripts, this order cites ecf page numbers.

[11] During the class period, the name and voice in the recordings changed but otherwise the script remained largely unchanged.

home security systems in your neighborhood, have you been informed about that?

3. Security Concern: With crime rates and mass shooting on the rise in the US and national security with our borders, you can see having false alarms with home security systems in your area can be a big concern right?

4. My job: So it's my job to make sure that all the homes in your neighborhood are aware of the technologies and security programs available in your area, I just have a couple of questions to see what your home will qualify for. Are you the homeowner? . . .

Doc. no. 42-1.

These calls were placed to persons with whom the defendants had no prior relationship. Doc. no. 42-4 at 18:8-19:6. Defendants purchased the class members' telephone numbers from a data vendor, Red Dot Data, which sells the landline telephone numbers, names, and addresses of homeowners across the country. *Id.* at 18:2-19:6, 24:24-25:12.

Prior to initiating the telemarketing campaign, defendants understood that these persons had not consented to receive prerecorded calls, but purportedly believed that they did not need consent to call landline telephone numbers. *Id.* at 25:20-26:12.

The soundboard dialing system caused an invalid telephone number, which began with the same area code as the telephone number dialed, to display on the recipient's caller ID. Doc. no. 42-2 at ¶¶ 36- 44; doc. no. 42- 5 at 87:9-19.

Plaintiff received two of these calls on August 26, 2018. Doc. no. 42-13 ¶¶3-5; doc. no. 42-14.

The soundboard dialing system generated records of these calls. Doc. no. 42-4 at 57:358:6; doc. no. 42-22. The call records identify, among other things, the number dialed, the number displayed on the caller ID, the date and time of the call,

the duration of the call,[12] the telephone network's disposition of the call, and the soundboard agents' treatment of the call via "status codes."  Doc. no. 42-2 at p. 9, ¶ 27; doc. no. 42-4 at 59:1-19, 61:8-9, 62:15-20, 63:10-19, 66:22-67:16, 68:15 – 69:7, 69:17-70:9; doc. no. 42-5 at 83:6-10.

As previously stated, the proposed class is limited to calls resulting in status codes 20 or 50.  Status code 20 means that the called party responded to the prerecorded prompts by stating that they did not want to be called again.  Status code 50 means that the soundboard agent played at least six prerecorded prompts during the call.  *See*, doc. no. 42-11 at 26:10-27:19, 32:25-33:2, 34:2-35:15.

Each one of these call records corresponds to a lead in the Red Dot Data marketing list.  Doc. no. 42-22; doc. 42-4 at 59:1-19.

Plaintiff's expert, Robert Biggerstaff, analyzed the call records and marketing list and identified 239,630 persons (leads), and 252,765 calls to those persons, which fall within the parameters of the class definition.  Doc. no. 42-2 at pp. 9-10 ¶¶ 32-33; doc. no. 67, TR at 89:1 – 90:14.  He found that 47,398 persons (leads), and 54,204 calls to those persons, fall within the parameters of the sub-class definition.  Doc. no. 42-2 at p. 10 ¶ 33.

III.  <u>Conclusions of Law</u>

A. <u>Personal Jurisdiction</u>

Defendants argue that the court lacks personal jurisdiction over the defendants, relying on <u>Bristol-Myers Squibb Co. v. Superior Court of California</u>,

---

[12] Yodel's Rule 30(b)(6) witness testified at his deposition that it typically takes about 5 to 6 seconds after connection before the soundboard agent plays the first prerecorded prompt in the script.  Doc. no. 42-11 at 71:9-19.

___ U.S. ___, 137 S. Ct. 1773 (June 19, 2017).  The court disagrees for the reasons stated below.

Defendants have waived this argument by (1) failing to raise it in either their answers or motions to dismiss, and (2) admitting personal jurisdiction in the joint status report filed with the court.[13]  Defects in the district court's personal jurisdiction over a party are waived unless timely raised in a pre-answer motion or in the answer.  Williams v. Life Sav. & Loan, 802 F.2d 1200, 1202 (10th Cir. 1986), citing Fed. R. Civ. P. 12(h)(1).  *And see*, Sobol v. Imprimis Pharmaceuticals, 2018 WL 2424009, **2-3 (E.D. Mich. May 29, 2018) (rejecting argument that Bristol-Myers was an intervening change in the law which permitted defendants to raise the personal jurisdiction issue for the first time after failing to raise it in their answer).

In addition, defendants' reliance on Bristol-Myers is misplaced.  This court joins the majority of other courts in holding that Bristol-Myers does not apply to class actions in federal court.  *See, e.g.,* Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prods., Inc., 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018) (TCPA case; noting "the lack of federalism concerns in federal court" in TCPA class action); Sanchez v. Launch Tech. Workforce Solutions, LLC, 297 F. Supp. 3d 1360, 1367 (N.D. Ga. Feb. 14, 2018) (rejecting attempt to extend Bristol-Myers to federal court FCRA action, noting federalism concerns did not apply); In re Chinese-Manufactured Drywall Prod. Liability Litigation, 2017 WL 5971622, at *16 (E.D. La. Nov. 30, 2017) ("BMS does not speak to or alter class action jurisprudence."); Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc., 2017 WL 4224723, at *5 (N.D. Calif. September 22, 2017) (not extending Bristol-Myers to class actions, noting Bristol-Meyers was a mass tort action not a class action); Molock v. Whole Foods

---

[13] The joint status report, filed October 2, 2017 (after Bristol-Myers was decided), states: "The parties stipulate that the Court has personal jurisdiction over the parties."  Doc. no. 31 at p. 2.

Market, Inc., 297 F. Supp. 3d 114, 126 (D. D.C. 2018) ("Bristol-Myers does not apply to class actions.").

### B.  Standards For Determining Certification

Plaintiff, as the party seeking class certification, has the burden of proof on all prerequisites to certification.  Anderson Living Trust v. WPX Energy Production, LLC, 306 F.R.D. 312, 376 (10th Cir. 2015), citing authorities.  Plaintiff has a strict burden to show that every aspect of Rule 23 is clearly met.  Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006); *and s*ee, General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains…indispensable.").

The first inquiry is whether the plaintiff can show the existence of the four threshold requirements of Rule 23(a).  *Id.*  The four requirements are: 1) numerosity, 2) commonality, 3) typicality, and 4) adequacy of the representative party.  The district court must engage in its own "rigorous analysis" to decide whether these requirements are met.  CGC Holding Co., LLC v. Broad and Cassel, 773 F.3d 1076, 1085 (10th Cir. 2014) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)).

If the court determines that the four prerequisites of Rule 23(a) are satisfied, "'it must then examine whether the action falls within one of the three categories of suits set forth in Rule 23(b)." Shook v. El Paso County, 386 F.3d 963, 971 (10th Cir. 2004), quoting Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir. 1988). Here, plaintiff seeks certification of a class under the third of these categories, per Rule 23(b)(3).  Before a class action can be certified under Rule 23(b)(3), it is necessary for the court to find that:  1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that 2) a class action is "superior to other available methods for the fair and efficient

adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); <u>Monreal v. Potter</u>, 367 F.3d 1224, 1236-37 (10th Cir.2004).

"[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising [plaintiffs'] cause of action.'" <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 469 (1978), quoting <u>Mercantile Nat. Bank v. Langdeau</u>, 371 U.S. 555, 558 (1963). The court's view of the merits – assuming that there is some basis for guessing at the merits at the class certification stage – should not influence the decision on class certification. <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (1974). Nevertheless, the required rigorous analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 351, (2011).

Finally, whether to grant or deny certification of a class action under Rule 23 lies within the broad discretion of the district court. <u>Reed v. Bowen</u>, 849 F.2d 1307, 1309 (10th Cir.1988). The decision necessarily entails weighing the practical and prudential considerations raised by the facts unique to each case. <u>Id.</u> at 1309-1310.

## C.  <u>Fed.R.Civ.P. 23(a) Requirements</u>

### 1.  <u>Rule 23(a)(1) – Numerosity</u>

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Although there is no magic number of members which would require class certification, classes of more than forty members have been deemed to satisfy the numerosity requirement. <u>See</u>, <em>e.g.</em>, <u>Horn v. Associated Wholesale Grocers, Inc.</u>, 555 F.2d 270, 275-76 (10th Cir.1977) (class of 41 at time of filing, or 46 at time of trial, sufficient to warrant class certification). In evaluating numerosity, the court may also consider whether the proposed class members are geographically dispersed. <u>Zeidman v. J. Ray McDermott & Co.</u>, 651 F.2d 1030, 1038 (5th Cir.1981).

In this case, the proposed class and subclass contain, respectively, 239,630 and 47,398 persons residing throughout the United States.  *See*, motion, doc. no. 42 at p. 18; and doc. no. 42-2 at pp. 10-11, ¶¶ 32-33.  Joinder of 239,630 and 47,398 class members residing throughout the United States would be impracticable.  The numerosity requirement is satisfied -- a point which defendants, in any event, concede.  Doc. no. 57, p. 15.

### 2.  Rule 23(a)(2) – Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  This is a low hurdle.  <u>Williams v. Mohawk Indus., Inc.</u>, 568 F.3d 1350, 1356 (11th Cir. 2009).  Commonality requires only a single issue common to the class.  <u>J.B. ex rel. Hart v. Valdez</u>, 186 F.3d 1280, 1288 (10th Cir.1999).  The class claims must "depend upon a common contention … capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011).

A core allegation with respect to count one is that calls using a prerecorded voice, in this case soundboard audio files, were placed to the proposed class members' residential telephone lines in an effort to market Northstar's home alarm systems.  The technology in issue, called avatar or soundboard technology, involves humans who are purportedly listening in and who attempt to press computer buttons to generate a prerecorded response or a conversation which would be consistent with whatever the called party might have said.  Doc. no. 67, TR at pp. 46-47.

Core allegations require determination of a number of common questions of fact and law, including:  (1) whether the soundboard/avatar files used in the calls qualify as a "prerecorded voice" prohibited by the TCPA; (2) whether the calls constitute "telemarketing" under the FCC's rules; and (3) whether Northstar is liable for calls placed on its behalf through Yodel's system.

Defendants argue that factual variations in the calls raise individualized issues which prevent a finding of commonality. The court rejects that argument. Based on the evidence heard to date, it appears that all of the calls at issue delivered a prerecorded soundboard message. *See* doc. 67, TR at 84:14 – 91:2 (numerous measures taken to ensure that only calls which delivered a prerecorded soundboard message are included in the class). Whether the use of this technology violates the TCPA is common question for all of the calls in the proposed class. *See*, Margulis v. Eagle Health Advisors, LLC, 2016 WL 1258640 (E.D. Mo. 2016) (describing use of avatar technology and holding that these facts state a claim for relief under the TCPA).

Defendants also argue that common proof cannot show that all of the calls were to residential lines. Defendant argues, for example, that some of the numbers, including plaintiff's, may have been used for business purposes. Defendant has shown, for example, that plaintiff's number was included in the "Business Listing" section of an index of numbers complied by the Norman Chamber of Commerce. Doc. nos. 57-4, 57-5.[14]

The TCPA does not make an exception to its prohibition for calling telephone lines if the residential line is used for a home-based business or for another business purpose. Under other sections of the Act related to residential lines, such an exception has been rejected by the Federal Communications Commission. *See*, Rules and Regulations Implementing the TCPA, 70 FR 19330, 19331 (2005) ("We also decline to exempt from the do-not-call rules those calls made to 'home-based businesses….' "). Explicit Congressional findings accompanying the substantive

---

[14] The listings in question with respect to Braver, state "INDIVIDUALS" at the end of the listing. Doc. no. 57-4, p. 7, 11, 13; doc. no. 57-5, p. 2; doc. no. 57-6, p. 2. In addition, Braver testified that the phone number in question had been his residential phone number since his early teen years. Doc. no. 62-2, p. 91.

provisions of the TCPA itself state:   "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."   Public Law 102-243, § 2(12), 105 Stat. 2394 (1991) (note to 47 U.S.C. § 227).

The majority of courts to have considered this issue have concluded that factual questions related to personal use, as opposed to commercial use, do not prevent certification of consumer protection class actions.   Yazzie v. Gurley Motor Co., 2015 WL 10818834, *5 (D. N. Mex. 2015).   Moreover, if issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, in any event, through a standardized and efficient claims process at a later stage. See, e.g., id. (issues regarding the consumer nature of the transaction could be resolved simply by asking class members about their vehicle use during class notification process).

There are questions of law or fact which are common to all members of the proposed class.   The commonality requirement is satisfied.

### 3.   Rule 23(a)(3) -- Typicality

Rule 23(a)(3) requires that the claims of the representative party be "typical of the claims ... of the class."   The purpose of the typicality requirement is to assure that the interest of the named class representative aligns with the interests of the class. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992).   Typicality refers to the nature of the claim of the class representative and not to the specific facts from which it arose or to the relief sought. Id.   Factual differences will not render a claim atypical if the claim is based on the same legal or remedial theory and arises from the same events or course of conduct as do the claims of the class.

<u>Adamson v. Bowen</u>, 855 F.2d 668, 676 (10th Cir. 1988); <u>Edgington v. R.G. Dickinson and Co.</u>, 139 F.R.D. 183, 189 (D.Kan.1991) (typicality ensures the class representative's claims resemble the class's claims to an extent that adequate representation can be expected; an important part of typicality is the inquiry into whether the representative's interests or claims are antagonistic or adverse to those of the class); <u>A Aventura Chiropractic Center v. Med Waste Management</u>, 2013 WL 3463489, *4 (S.D. Fla. 2013) ("A Aventura satisfies typicality as the course of conduct that produced its TCPA claim also produced the claims of the proposed class.")

Defendants argue that Braver's claim is not typical because his number was published by the Norman Chamber of Commerce. That argument is specious. The evidence shows quite clearly that defendants wanted to call residential telephone numbers and obtained Braver's number not from the Norman Chamber of Commerce but from Red Dot Data. The fact that Braver's number is included in a publication by the Norman Chamber of Commerce does not defeat typicality.

Braver's claim and the class members' claims arise from the same operative allegation:  that without express written consent, a call was initiated, using a prerecorded voice, to Braver's and the class members' residential telephone lines, in an effort to market Northstar's home security systems, in violation of the TCPA. Braver's claim is typical of the class member's claims. The typicality requirement is satisfied.

#### 4. <u>Rule 23(a)(4) -- Adequacy</u>

Rule 23(a)(4) requires that the representative party must "fairly and adequately protect the interests of the class."  With regard to the adequacy requirement, two questions must be resolved: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members? and (2) will the named plaintiff and his counsel prosecute the action vigorously on behalf of the

class?  Rutter &Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-1188 (10th Cir.2002).   Thus, adequacy factors in potential conflicts of class counsel, and competency of class counsel.  *Id.*, citing Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 626, n.20 (1997).

No conflicts of interests have been identified and none are apparent here. Defendants do not dispute the competence of the proposed class counsel, and counsel are experienced litigators in civil cases, including in class actions.  Braver's own experience in litigating TCPA matters and his knowledge of the TCPA speak to his ability to vigorously advocate on behalf of the class.  His understanding of many of the technical aspects of this case, as was plainly evident at the hearing, is impressive.  Furthermore, like every other class member, plaintiff has a claim for statutory damages and injunctive relief under the TCPA.  *See*, 47 U.S.C. § 227(b)(3) (providing "$500 in damages for each such violation," injunctive relief, or both). These common interests support plaintiff's adequacy in this case.[15]

Defendants speculate that members of the class may not wish to pursue injunctive relief under the TCPA and would have a conflict with Braver, who stated in his deposition that injunctive relief was "not negotiable."  This speculation does not create a conflict of interest or render Braver an inadequate class representative. An alleged conflict must be more than merely speculative or hypothetical; there must be a showing that the conflict is a real probability.  *See*, *e.g.*, Robertson v. National Basketball Ass'n, 389 F. Supp. 867, 899 (S.D.N.Y.1975) (class action determination would not be denied absent a showing that the alleged potential conflicts were real

---

[15] There is a relationship between typicality and adequacy requirements.  *See*, *e.g.*, Meyers v. Southwestern Bell Telephone Co., 181 F.R.D. 499, 501 (W.D. Okla. 1997) (typicality and adequacy are interrelated; if the representative claims are not typical of the class, they cannot adequately protect the interests of the absent class members).

probabilities and not "mere imaginative speculation"). Furthermore, the election of statutory damages and injunctive relief as remedies by Braver would benefit the members of the class. The interests of Braver align with the interests of the class; their interests are not antagonistic to each other.

Defendants argue that Braver is inadequate because he "will place his own interests above the class's and even abandon class claims altogether, if it suits his purposes." The evidence indicates otherwise. For example, defendants offered Braver a substantial sum of money to dismiss his claims in this case and abandon the class, which he rejected. Doc. no. 67, TR at 36. The court concludes that Braver can be relied upon to see to it that the interests of the class come first and that, for instance, if the case is to be settled, it is settled on a basis that provides substantial relief to his fellow class members (commensurate with the merits as they may appear at that juncture), rather than a pittance for the class members and a windfall for class counsel.

Defendants also argue that Braver has made a business of pursuing TCPA claims and has made money pursuing claims and lawsuits. Defendants argue that Braver chose to have his number removed from the national do not call registry years ago, so that Braver "chooses to receive telemarketing calls." Doc. no. 57, p. 11. The fact that Braver has previously pursued TCPA claims and lawsuits is not disqualifying. If defendants' argument regarding the do not call registry is intended to suggest that Braver consented to the calls so that he is disqualified, the court rejects that argument; taking one's name off the national do not call registry is not the same thing as consent.

Braver is a fair and adequate representative for the proposed class. The adequacy requirement of Rule 23(a)(4) is satisfied.

D. <u>Fed.R.Civ.P. 23(b)(3) Requirements</u>

1. <u>Predominance</u>

The predominance requirement is similar to but far more demanding than the commonality requirement of Rule 23(a).  <u>Amchem Products</u>, 521 U.S. 591, 623-24. While commonality requires the presence of common questions of law and fact, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed.R.Civ.P. 23(b)(3).  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  <u>Amchem Products</u>, 521 U. S. 591, 623.   In other words, the inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  <u>Tyson Foods, Inc. v. Bouaphakeo</u>, ___ U.S. ___, 136 S. Ct. 1036, 1045 (2016).  "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  <u>Id.</u> For the predominance requirement to be met, plaintiff's claims must stem from a "common nucleus of operative facts" and not have "material variations in elements."  <u>See</u>, <u>Esplin v. Hirschi</u>, 402 F.2d 94, 99 (10th Cir. 1968)<u>; Edgington v. R. G. Dickinson and Co.</u>, 139 F.R.D. 183, 191 (D. Kan. 1991)<u>.</u>

The elements of the TCPA claim in issue here are the initiation of (1) telemarketing calls (2) to any residential telephone line (3) using an artificial or prerecorded voice to deliver a message.  47 U.S.C. § 227(b)(1)(B); 47 C.F.R. §64.1200(a)(3).  Class-wide evidence will determine each of these elements. For example, common evidence will show the purpose of the calls; a common legal question will be whether the purpose of the calls qualifies as telemarketing. <u>See</u>, 47

C.F.R. § 64.1200(f)(12) (definition of telemarketing). Similarly, common evidence is credibly predicted to show that every class member received a call using a soundboard voice. *See*, doc. no. 67, TR. at 84:14 – 91:2 (Robert Biggerstaff). A common question will be whether this qualifies as a prerecorded message under the Act.

Defendants make various arguments in an attempt to show that the predominance requirement has not been met. Below, the court addresses some of these arguments, all of which are rejected.

Defendants argue that class-wide evidence cannot identify calls that include live human voices; however, the fact that some calls may have included live voices, at some stage, does not defeat any of the elements of the claim.

Defendants argue that class-wide evidence cannot prove who was on the line during each call; however, the subscriber has statutory standing under the TCPA to bring a claim for calls made to that number regardless of whether he personally answered the call. As stated in <u>Maraan v. DISH Network, L.L.C.</u>, 2014 WL 6603233 at *5 (S.D. Ohio 2014): "That Dr. Maraan did not answer the calls does not rob him of standing in this Court's view. He subscribed to a cellular telephone service on behalf of himself and other family members, a fairly typical and provider-encouraged scenario, and that status alone permits him to bring suit under the TCPA."[16] Arguments about who answered the phone do not defeat the predominance requirement.

Defendants argue that class-wide evidence cannot prove that the residential line requirement is met; however, common evidence shows that defendants intended

---

[16] <u>Leyse v. Bank of Am. Nat'l Ass'n</u>, 804 F.3d 316 (3d Cir. 2015), does not hold otherwise. That decision addressed whether other residents (*i.e.* non-subscribers) have standing. It held that even non-subscribers who reside within the household fall within the zone of interests of the act. *Id.* at 325-27.

to call, and did call, residential telephone numbers.  Northstar is in the business of providing "security and home automation systems to home owners across most of the country."  Doc. no. 69-1 at 23:9-11.  It was for that reason that Northstar purchased a marketing list from Red Dot Data "for homeowners specifically," containing their landline telephone numbers.  Doc. no. 42-4 at 18:2 -- 19:16; 25:2-6.[17]  Arguments about Braver's phone number as it appeared in a Chamber of Commerce business listing are of negligible relevance here.

Defendants also argue that the issue of Northstar's vicarious liability for the calls requires individual inquiries into the belief of each class member with respect to whether Yodel was an agent of Northstar.  The question of actual authority, however, depends upon the relationship and conduct between the defendants and requires no evidence from any consumer.  Krakauer v. Dish Network L.L.C., 311 F.R.D. 384, 395 (M.D. N. Car. 2015).  Thus, it is an issue which depends upon class-wide evidence.  If plaintiff presents evidence sufficient for a jury to find actual authority, then any alleged individual issues regarding apparent authority or ratification will not predominate, as "it will not be necessary to reach apparent authority or ratification if [Plaintiff] and the class prevail on an actual authority theory."  *Id.* at 396.

Furthermore, vicarious liability under theories of apparent authority and ratification are also subject to class-wide proof.  Ratification depends on defendants' post-message behavior without concern for any conduct by the class members.  Kristensen v. Credit Payment Servs., 12 F.Supp.3d 1292, 1306 (D. Nev. 2014); *see*

---

[17] Defendants argue that there is no list called the "Red Dot Data marketing list," the list referred to in the proposed class descriptions.  However, as explained in the deposition testimony cited in the accompanying text (doc. no. 42-4 at p.18), a marketing list was compiled by Yodel from Flex Marketing Group, LLC, and Red Dot Data, LLC.  *And see*, Kristensen v. Credit Payment Services, 12 F. Supp.3d 1292, 1303 (D. Nev. 2014) ("Data from T-Mobile calling lists can be used to identify the individual class members.").

*also*, <u>Valle v. Global Exch. Vacation Club</u>, 320 F.R.D. 50, 61 (C.D. Cal. 2017) (holding individual ratification issues do not predominate because "common question is whether Defendants ratified [] conduct by accepting customers [] sent to [it]").  Similarly, apparent authority depends on whether a reasonable person would believe that the caller had authority to act on behalf of Northstar.  <u>Kristensen</u>, 12 F.Supp.3d at 1306.  Because the inquiry is limited to how a reasonable person would perceive the calls at issue, there is no need to determine how individual class members perceived the calls.  *See also*, <u>Hawk Valley, Inc. v. Taylor</u>, 301 F.R.D. 169, 188 (E.D. Pa. 2014) (certifying TCPA class and rejecting argument that individual issues regarding vicarious liability predominated).

As explained below, the court also rejects defendants' argument that individualized consent issues defeat the predominance requirement or otherwise defeat certification of a class.

Prior express written consent to the calls in question constitutes an affirmative defense.  47 U.S.C. §227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3); <u>Van Patten v. Vertical Fitness Group</u>, 847 F.3d 1037, 1044 (9th Cir. 2017); <u>Gupta v. E*Trade Bank</u>, 2013 WL 12155220 at *2 (D. N. Mex. 2013) (citing a 2011 Ninth Circuit opinion, unpublished, and <u>Breslow v. Wells Fargo Bank, N.A.</u>, 857 F. Supp.2d 1316, 1319 (S.D. Fla. 2012).  Thus, these arguments go to a defense, not to an element of plaintiff's claim alleged in count one.

Furthermore, consent may be a common question in cases, such as this one, in which evidence shows defendants had no prior relationship with class members and that defendants purchased their telephone numbers from a third party.  *See*, <u>Gene v. Gene LLC v. BioPay LLC</u>, 541 F.3d 318, 328 (5th Cir. 2008) ("whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements" was a common question and "there were therefore no questions of individual consent."); <u>Hinman v. M & M Rental Ctr.</u>, 545

F.Supp.2d 802, 807 (N.D. Ill. 2008) ("M and M's fax broadcasts were transmitted *en masse* based on the 'leads' list compiled several years earlier.  Under the circumstances, the question of consent may rightly be understood as a common question. . . .  The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification.").

In any event, defendants, to date, have presented no evidence of any written consent, making such a defense speculative (to be charitable about it).[18]  Such a speculative defense does not defeat predominance.  *See*, Del Valle v. Global Exchange Vacation Club, 320 F.R.D. 50, 61 (C.D.Cal., 2017) ("Defendants' speculation that customers may have given their consent to receive telemarketing calls  . . . is not sufficient to defeat class certification -- especially where Plaintiff has offered persuasive evidence that [defendants do] not obtain express consent before cellular phone numbers are called by Defendants' vendors on their behalf." ); Booth v. Appstack, Inc., 2015 WL 1466247, at *10–12 (W.D.Wash. 2015) ("in the absence of any affirmative evidence of consent, consent is a common issue with a common answer," citation omitted).

The court concludes that while it is conceivable consent issues might require determination separate from class-wide issues at a later stage, common issues (including common issues related to consent)[19] plainly predominate.

The predominance requirement is satisfied.

---

[18] There was deposition testimony that Yodel told NorthStar the people called had "given consent" but that NorthStar did not inquire as to whether the people called had given their express written consent, signed, and expressly stating that they were consenting to receive prerecorded calls.  Doc. no. 42-3, p. 171.

[19] For example, to the extent that a standardized consent document is ever identified, whether it meets the disclosure standard of 47 C.F.R. § 64.1200(f)(8) will be a common question.

2. Superiority

The superiority requirement of Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The "class action device is frequently superior where proceeding individually would be difficult for class members with small claims." Belote v. Rivet Software, Inc., 2013 WL 2317243, *4 (D. Colo. 2013), paraphrasing Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010). See, Mims v. Arrow Financial Services, LLC, 565 U.S. 368, 386 (2012) (recognizing that plaintiffs are unlikely to pay a $350 filing fee[20] to advance an individual TCPA claim for $500). A class action avoids this problem by aggregating what would otherwise be a series of "too small" potential individual recoveries. See, In re Checking Acct. Overdraft Litig., 286 F.R.D. 645, 659 (S.D. Fla. 2012) ("The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.")

The court also notes that, as a general proposition, class relief is potentially available for all claims, including minimum statutory damage claims, assuming there is no clear expression of congressional intent to exempt the claims from Rule 23. See, Califano v. Yamasaki, 442 U.S. 682, 700 (1979) ("[i]n the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the [Federal] Rules [of Civil Procedure] established for that purpose, class relief is appropriate in civil actions brought in federal court...."). There is no express restriction of class relief with respect to claims under the TCPA. In addition, there is no incentive for suit created by any fee-shifting provision under the TCPA.

---

[20] The current filing fee in this court is $400.00.

Defendants argue that Braver's own past success in bringing individual claims indicates that class treatment is not superior.  The court rejects this argument.

The circumstances of this action include:  standardized conduct by the defendants, impacting numerous consumers who are geographically dispersed; a potential recovery by an individual consumer which is most likely too small to justify bringing an individual action; and evidence which indicates that defendants took steps to conceal their identity from the persons called, making it difficult for consumers to obtain the type of information that would permit them to pursue individual remedies.  Given these circumstances, class action certification enables consumers to obtain a financial recovery (if legally and factually warranted) they might not have otherwise pursued on their own behalf, or which they might have been unable to pursue on their own behalf.  At this juncture, the court does not perceive any insurmountable difficulties in managing a class action.  For example, compliance with the notice requirements of Rule 23 should not pose a problem as defendants have records identifying the numbers called.

Class treatment will provide the fairest and most efficient adjudication of the alleged violations of the TCPA.  The superiority requirement of Rule 23(b)(3) is satisfied.

### E.   The Class Definitions:  Ascertainability

Although not enumerated in Rule 23, some courts require that a class definition be "precise, objective, and presently ascertainable."  <u>Lavigne v. First Community Bancshares, Inc.</u>, 2018 WL 2694457, *6 (D. N.Mex. June 5, 2018) (certifying TCPA class).

The Tenth Circuit has not spoken on this requirement and several circuits have rejected it.  *See*, <u>City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.</u>, 867 F.3d 434, 443 (3d Cir. 2017) (concurring opinion notes that the Second, Sixth, Seventh and Ninth Circuits have rejected this requirement and argues that the Third

Circuit should do so as well; in <u>City Select</u>, the majority reversed the district court's denial of certification). Nevertheless, district courts within this circuit have applied a standard of ascertainability which requires: first, that the class be defined with reference to objective criteria; and second, a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *See, e.g.*, <u>In re: Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litigation</u>, 2014 WL 104964, *2 (W.D. Okla. Jan. 9, 2014), citing <u>Hayes v. Wal-Mart Stores, Inc.</u>, 725 F.3d 349, 355 (3d Cir. 2013).

Here, the proposed class definitions are precise and objective. Phone numbers, names, and addresses of class members appear in the documents of Red Dot Data. The ascertainability requirement is generally satisfied where such business records can be used to identify the class. *See e.g.*, <u>AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.</u>, 321 F.R.D. 677, 684 (M.D. Fla. 2017) ("Defendants' records, data, and electronic systems . . . satisfy the objective criteria necessary to ascertain the class members. . . . The inquiry does not require a highly individualized assessment of the insureds because [certain information] . . . is readily accessible from Defendants' files.").

A list of telephone numbers that fall within the class definition satisfies the ascertainability requirement, and here there is additional contact information on top of that, available in the data. *See*, <u>Sandusky Wellness Center, LLC v. Medtox Sci., Inc.</u>, 821 F.3d 992, 997 (8th Cir. 2016) (finding, in a TCPA case, that "fax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable"); <u>American Copper & Brass v. Lake City Industrial Products, Inc.</u>, 757 F.3d 540 (6th Cir. 2014) ("the fax numbers are objective data satisfying the ascertainability requirement."); <u>Birchmeier v. Caribbean Cruise Line, Inc.</u>, 302 F.R.D. 240, 248 (N.D. Ill. 2014) ("it is fairly clear that the identities of the persons whose numbers are on plaintiffs' list of 930,000 -- indeed, the subscribers

for those numbers at the time defendants called them -- are sufficiently ascertainable"); Kristensen v. Credit Payment Services, 12 F.Supp.3d 1292, 1303 (D. Nev. 2014) ("Data from T-Mobile calling lists can be used to identify the individual class members.  Prospective plaintiffs can readily identify themselves as class members based on receipt of the text message."); Palm Beach Golf Center-Boca, Inc. v. Sarris, 311 F.R.D. 688, 692, 694  (S.D. Fla. 2015) (report indicated there was an error-free transmission of a one-page fax to 7,058 unique fax numbers on certain dates; court stated, "The proposed class definition here is similar to those approved by numerous courts in other B2B TCPA class actions.  The majority of courts to consider the issue have concluded that such a definition, supported by a report like the Biggerstaff report prepared for this case, satisfies Rule 23's implicit ascertainability and administrative feasibility requirement.").

Defendants argue that a class is not sufficiently definite if it includes persons who have no claim because, for example, no prerecorded message was played in certain situations, making it necessary to listen to each of the calls to identify proper class members.  Defendants argue it would not be administratively feasible to identify class members by this method, which means that the class is not sufficiently ascertainable.  Defendants have offered no evidence to show that the proposed class includes individuals to whom no prerecorded message was played, and plaintiff's proposed class and evidence makes such situations extremely unlikely.  For example, the length of the call which is used to define the proposed class (calls lasting 30 seconds) would eliminate situations in which a called person hung up before the prerecorded message was played.  Furthermore, if it should prove necessary, these types of concerns could be addressed by a claims procedure after the major, common issues are determined on a class-wide basis.

Defendants argue that ascertainability has not been shown because there may be some class members who have no claim because they did not personally answer

the phone when their number was dialed.  The court rejects this contention because, as previously explained, the subscriber to a particular phone number has standing without regard to whether he answered the call in question.

Defendants also argue that ascertainability concerns are raised because the class is an improperly defined "fail safe" class.  Defendants cite Taylor v. Universal Auto Group I, Inc., 2014 WL 6654270, at *22 (W.D.Wash.,2014) (inclusion of the "without prior consent" language in the national classes definition makes it a fail safe class; rather than deny certification, court provided plaintiff with an opportunity to refine the class definition).  The class definitions proposed by the plaintiff are not defined in terms of consent, and there is no fail safe problem.

Ascertainability requirements are satisfied.

IV.  Class Certification

After careful consideration, the court finds and concludes that plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b)(3).  This case is well-suited to adjudication under Rule 23.  Plaintiff's motion for class certification is, accordingly, **GRANTED**.  Doc. no. 42.

As proposed by the plaintiff, the following class and subclass are **CERTIFIED** with respect to count one of the first amended complaint.

Class:
All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 20 or 50 to the call, and that resulted in the normal clearing disposition.

Subclass:
All persons in the Red Dot Data marketing list for whom Yodel's records reflect a telephone call regarding Northstar's home security systems that lasted more than 30 seconds, that was handled by an agent who applied status code 50 to the call, and that resulted in the normal clearing disposition.

<u>Excluded from the class are:</u>

Any persons whose contact information is associated with either an IP address or website URL in the Red Dot Data marketing list.

## V.  <u>Schedule</u>

The parties are **DIRECTED** to confer with a view to filing a jointly proposed schedule which addresses the timing of notice to the class, as well as the timing of any pre-trial motions or other pre-trial matters that will require the court to rule.  The jointly proposed schedule **SHALL** also inform the court of plaintiff's position regarding the status of count three of the first amended complaint.  The jointly proposed schedule is **DUE** within thirty days of the date of this order.  After review of the jointly proposed schedule, the court will determine whether it is necessary to hold another scheduling conference at this stage.  If the parties are unable to agree on a jointly proposed schedule, they shall so notify the court within thirty-one days of the date of this order.

IT IS SO ORDERED this 15th day of October, 2018.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

17-0383p014 rev.docx

# EXHIBIT B

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**December 13, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

NORTHSTAR ALARM SERVICES LLC,
a Utah limited liability company, YODEL
TECHNOLOGIES LLC,

     Petitioners,

v.

ROBERT H. BRAVER, for himself and all
individuals similarly situated,

     Respondent.

No. 18-603
(D.C. No. 5:17-CV-00383-F)
(W.D. Okla.)

---

## ORDER

---

Before **TYMKOVICH**, Chief Circuit Judge, **BRISCOE** and **EID**, Circuit Judges.

---

This matter is before the court on *Petitioner Northstar Alarm Services, LLC's*
*Petition for Permission to Appeal Order Certifying Class*. On October 30, 2018, Yodel
Technologies filed a joinder to the *Petition*. We also have a response from Robert Braver,
a *Motion for Leave to File Reply in Support of Petition for Permission to Appeal Order*
*Certifying Class*, and a response filed in opposition to the reply motion.

As a preliminary matter, we grant petitioners' motion seeking leave to file a reply
in support of the *Petition*. The reply attached to that motion shall be shown on the docket
as filed effective the date of this order. We have reviewed and considered the reply in
evaluating the *Petition*.

Upon careful consideration of all the materials on file, however, the *Petition* is denied. In denying this request for permission to appeal we note the language of Federal Rule of Civil Procedure 23(c)(1)(C), which allows the district court to alter or amend an order on class certification. Should legal or evidentiary developments warrant, the district court may, in its discretion, revisit certification.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

2