# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL BAKOV and JULIE HERRERA, individually and on behalf of all others similarly situated, | : : : : | Case No. 1:15-cv-02980<br><br>Hon. Harry D. Leinenweber |
| *Plaintiffs,* | : : | Hon. Susan E. Cox |
| v. | : : | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, | : : : : : | |
| *Defendant.* | : : | |
| KINAYA HEWLETT, on Behalf of Herself and all Others Similarly Situated, | : : : | Case No. 1:17-cv-00973<br><br>Hon. Harry D. Leinenweber |
| *Plaintiff,* | : : | |
| v. | : : | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, | : : : | |
| *Defendant.* | : : | |

# PLAINTIFFS' MOTION FOR
# APPROVAL OF CLASS NOTICE PLAN

758965.1

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

I.      INTRODUCTION ..........................................................................................1

II.     RELEVANT PROCEDURAL HISTORY .......................................................1

III.    IDENTIFICATION OF CERTAIN CLASS MEMBERS ...............................2

IV.     SELECTION OF KCC CLASS ACTION SERVICES TO ADMINISTER NOTICE .......4

V.      PLAINTIFFS' PROPOSED NOTICE PLAN .................................................5

        A.      Individual Notice .................................................................................5

        B.      Internet Advertising ............................................................................6

        C.      Press Release........................................................................................6

        D.      Case Website........................................................................................6

        E.      Toll-Free Telephone Number ..............................................................7

        F.      Notice Design and Content ..................................................................7

VI.     APPLICABLE LEGAL STANDARD .............................................................8

VII.    ARGUMENT.................................................................................................11

        A.      The Notice Plan Is the Best Practicable Under the Circumstances ......................11

                1.      Individual notice would be provided to Class members who have been identified through reasonable effort..........................12

                2.      Publication notice utilizing internet media, a press release, a website, and a toll-free telephone number would be provided to reach Class members who are not identifiable through reasonable effort...................12

        B.      The proposed forms of notice comport with the requirements of Rule 23 and due process because they are easy to read and understand..........................14

VIII.   OTHER SCHEDULING AND ADMINISTRATIVE MATTERS...................16

IX.     CONCLUSION.............................................................................................17

i

# **TABLE OF AUTHORITIES**

## *Cases*

*Abante Rooter and Plumbing Inc. v. Alarm.com Incorporated*,
    No. 4:15-cv-06314 (N.D. Cal. Feb. 2, 2018) ..................................................11

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
    280 F.R.D. 408 (N.D. Ill. 2012) ..................................................................9

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) .................................................................. 10-11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ..................................................................................9, 12

*F.C.V., Inc. v. Sterling Nat. Bank*,
    652 F. Supp. 2d 928 (N.D. Ill. 2009) ............................................................16

*Hughes v. Kore of Indiana Enterprise, Inc.*,
    731 F.3d 672 (7th Cir. 2013) ...............................................................9, 10, 11

*Johnson v. Yahoo! Inc.*,
    No. 14-cv-2028 (N.D. Ill. Dec. 12, 2016) ....................................................11

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ....................................................................8

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
    877 F.3d 276 (7th Cir. 2017) ..................................................................10, 14

*Lees v. Anthem Ins. Cos., Inc.*,
    No. 4:13-cv-01411 (E.D. Mo. Sept. 29, 2014) ...........................................12

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .....................................................................................11

*Mirfasihi v. Fleet Mortgage Corp.*,
    356 F.3d 781 (7th Cir. 2004) .......................................................8, 9, 13, 14

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................5, 8, 9

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .............................................................. *passim*

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..................................................................................9, 12, 16

*Tylka v. Gerber Prods. Co.*,
    182 F.R.D. 573 (N.D. Ill. 1998)..................................................................10

*Youngman v. A&B Insurance and Financial, Inc.*,
    No. 6:16-cv-01478 (M.D. Fla. Apr. 17, 2018)............................................12

## <u>OTHER AUTHORITIES</u>

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................... *passim*

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii) ............................................................15

758965.1

Plaintiffs Angel Bakov, Julie Herrera, and Kinaya Hewlett ("Plaintiffs"), individually and on behalf of the certified class, respectfully move the Court for approval of their proposed notice plan, which fully satisfies all requirements under Rule 23(c)(2)(B) and due process.

## I.     INTRODUCTION

Plaintiffs' notice plan proposes sending individual notice to members of the class who have been identified and utilizing internet media, a press release, a website, and a toll-free number to disseminate notice to members of the class who have not been identified. Plaintiffs' notice administrator has opined that the notice plan described below, which has been approved by numerous other courts in Illinois and elsewhere around the country, will reach over 70% of class members and is the best practicable under the circumstances. Further, because they are based on the Federal Judicial Center's model forms for notice of pendency of a class action, Plaintiffs' proposed forms of notice are easy to read and understand and thus comport with the requirements of Rule 23 and due process. Plaintiffs' thus request that the Court approve their proposed notice plan and establish a 60-day window (running from the dissemination of notice) for Class members to exclude themselves.

## II.    RELEVANT PROCEDURAL HISTORY

On March 21, 2019, the Court certified a class pursuant to Rule 23(b)(3) consisting of all Illinois residents (1) who VVT called from December 29, 2014 through March 20, 2016 (the "Class Period"), to market a cruise aboard the Grand Celebration cruise liner sold by CWT, and (2) who answered such calls (the "Class"). Dkt. No. 215 ("Cert. Order").

On April 10, 2019, the Court directed Plaintiffs to file their motion for approval of class notice on today's date, scheduled a subsequent status hearing to occur on May 29, 2019, and established deadlines for the filing of motions for summary judgment. Dkt. No. 217. The Court did not set dates for CWT to oppose Plaintiffs' motion for approval of class notice or for

Plaintiffs to file a reply in further support of this motion. *Id.* Instead, as discussed during the April 10 hearing, the parties are to meet and confer regarding the proposed notice plan and, prior to the next hearing date (May 29), determine whether CWT has any objections that the parties cannot resolve informally amongst themselves. As directed, the parties will advise the Court of their progress in that respect during the May 29 hearing.

## III.     IDENTIFICATION OF CERTAIN CLASS MEMBERS

Based on available call records, Plaintiffs identified 28,239 Class members who, collectively, received 31,369 telephone calls from CWT or its agent during the Class Period. *See* Data Analysis Declaration of Christina Peters-Stasiewicz at ¶¶ 10–11 ("Data Analysis Decl."). These numbers do not represent the total number of Class members who received an illegal outbound call from CWT or VVT. Rather, they represent the fraction of Class members who received an outbound call *and* were transferred to a U.S. based call center. *See* Cert. Order at 43 ("Plaintiffs assert that the total number of VVT's outbound calls—and thus the potential number of class members—albeit unknown, is likely many times the number of calls VVT transferred to CWT, since most individuals hung up on VVT, did not qualify for the vacation package, or were not transferred for some other reason."). The total number of Class members is thus unknown but "much higher" than the 28,239 Plaintiffs have identified. *Id.* at 9 ("The overall number of outbound calls VVT made is unknown, but that number is sure to be much higher than the number of calls VVT transferred.").

To identify this portion of the Class, Plaintiffs utilized the methodology their expert, Christina Peters-Stasiewicz, proffered in support of the motion for class certification, which the Court approved:

> The process . . . identifies users of a given telephone number for a given timeframe and provides a current address for that person based upon their address history. That information is derived from data vendors, such as TransUnion,

2

LexisNexis, Experian, Microbilt, and others. The data vendors access their database of public and private information to produce the relevant identification information. . . .

Peters-Stasiweicz's proffered methodology for identifying class members in TCPA lawsuits has been tested, and courts in this District and around the country have found the method acceptable. Those courts found that this methodology was reliable and "satisfied the strictures of Daubert." The Court finds this precedent persuasive. . . .

[T]he Court finds that Peters-Stasiweicz's opinion testimony is admissible under Rule 702.

Dkt. No. Cert. Order at 29–35 (citations omitted); *see also* Dkt. No. 165-19 at ¶¶ 11–16

(Declaration of Christina Peters-Stasiewicz filed in support of Plaintiffs' motion for class

certification describing methodology in detail).

Specifically, immediately after the Court certified the Class, Plaintiffs provided

Ms. Peters-Stasiewicz the "Illinois Call Data" file and the Illinois Area Code Report of Colin

Weir. Data Analysis Decl. at ¶ 5; *see also* Dkt. No. 194-5 (Declaration of Colin B. Weir

submitted in support of Plaintiffs' motion for class certification). The "Illinois Call Data" shows

44,796 calls to 39,969 unique telephone numbers with Illinois area codes (217, 224, 309, 312,

331, 618, 630, 708, 773, 779, 815, 847 and 872). *Id.* at ¶ 6. Pursuant to the methodology set forth

last year, Ms. Peters-Stasiewicz uploaded the list of unique Illinois telephone numbers to the

TransUnion batch interface. *Id.* at ¶ 7. The output file from TransUnion identified: (i) the

customary users of the telephone numbers, where available; (ii) the customary users' addresses at

the time of the calls; and (iii) the associated time-ranges for the records. *Id.* For telephone

numbers for which TransUnion did not identify customary users for the times of the calls,

Ms. Peters-Stasiewicz performed the same search type on the LexisNexis database. *Id.* at ¶ 8.

Upon receipt of the data from LexisNexis and TransUnion, Ms. Peters-Stasiewicz reviewed all of

the data to identify those customary users during the class period who lived in Illinois at the time

of the illegal call or calls. *Id.* at ¶ 9. As a result of applying this methodology, which again survived CWT's *Daubert* challenge, *see* Cert. Order at 32–35, Ms. Peters-Stasiewicz identified 28,239 Class members and 31,369 telephone calls to those Class members. *Id.* at ¶ 10.

## IV. SELECTION OF KCC CLASS ACTION SERVICES TO ADMINISTER NOTICE

Plaintiffs also immediately solicited bids from four experienced notice administration firms following entry of the Court's order certifying the Class. At the conclusion of that process, Plaintiffs selected KCC Class Action Services ("KCC") to design an effective notice program and review the forms of notice to Class members. *See* Declaration of Carla Peak Regarding Class Certification Notice Plan at ¶ 2 ("Peak Decl.").

KCC is a leading class action administration firm with more than 30 years' experience providing comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, and other related services critical to the effective administration of class action notice programs. Peak Decl. at ¶ 4. KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with notice programs to ensure the orderly and fair treatment of class members and all parties in interest. *Id.* Since 1984, KCC has been retained to administer more than 6,000 class actions and distributed settlement payments totaling well over $20 billion in assets. *Id.*

Carla Peak is the Vice President of Legal Notification Services at KCC and has personally been involved in administering many of the largest and most significant class actions, *id.* at ¶ 6, as well as numerous TCPA case, *id.* at ¶ 7. In forming her opinions, Ms. Peak draws on over 15 years' experience working in the class action notification field. *Id.* at ¶ 8. In that time, she has been involved in all aspects of the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements

4

of Rule 23 and adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC"). *Id.*

## V.     PLAINTIFFS' PROPOSED NOTICE PLAN

The notice plan devised by KCC proposes individual notice to all reasonably identifiable Class members, paid digital notices on the Google Display Network and the social media platform Facebook limited geographically to Illinois, and issuance of a press release to a variety of media in Illinois. Peak Decl. at ¶ 9. KCC estimates that the digital notice efforts alone will reach approximately 70% of likely Class members, and that this coverage will be further enhanced by the individual notice effort and press release. *Id.* KCC has also worked with Plaintiff's counsel to develop various forms of notice for court approval, which were designed to be noticeable, clear and concise, and written in plain, easily understood language. *Id.* at ¶ 11.

Ms. Peak's opinion is that the Notice Plan proposed for this case, the particulars of which are set forth below, is consistent with other effective class certification notice programs. *Id.* at ¶ 24. It is the best notice practicable and meets the "desire to actually inform" due process communications standard of *Mullane*, 339 U.S. at 314. *Id.* It meets or exceeds the same reach and frequency evidence that courts have approved and that has withstood appellate scrutiny, other expert critiques, as well as collateral review. *Id.* The Notice Plan and notice documents are consistent with the guidelines set forth in Rule 23, the Manual for Complex Litigation, Fourth, and the FJC Checklist.

### A.     Individual Notice

Plaintiffs provided KCC with the list of 28,239 Class member names and addresses (the "Class List") prepared by Ms. Peters-Stasiewicz.[1] Peak Decl. at ¶¶ 13–14. KCC proposes to send

---

[1] The Class List is Exhibit A to the Data Analysis Declaration of Christina Peters-Stasiewicz but, given its length (over 600 pages) and the volume of identifying information it contains (the

758965.1

a Summary Notice via United States Postal Service ("USPS"), to all Class members on the Class List. Prior to mailing, all postal addresses would be checked against the National Change of Address ("NCOA") database maintained by USPS, certified via the Coding Accuracy Support System ("CASS"), and verified through Delivery Point Validation ("DPV"). *Id.* at ¶ 15. Any notices returned by USPS as undeliverable would be re-mailed to any address available through postal service forwarding order information. *Id.* at ¶ 16.

### B. Internet Advertising

Plaintiffs propose to implement an internet media effort consisting of digital media advertising. Peak Decl. at ¶ 17. If the Court approves Plaintiffs' plan, approximately 16.3 million digital media advertising impressions would be purchased and distributed via the Google Display Network and Facebook over a period of 30 days. *Id.* The impressions would be targeted to likely Class members in the state of Illinois and would appear on both desktop and mobile devices, including tablets and smartphones. *Id.*

### C. Press Release

Plaintiffs propose issuing a press release based on the Summary Notice throughout the state of Illinois to a variety of media. Peak Decl. at ¶ 18. It is not possible to predict the number of press outlets that would report the story or to apply a reach percentage or circulation statistics to it, but the press release would provide a valuable role in extending coverage of notice and distributing information. *Id.*

### D. Case Website

Plaintiffs propose establishing a case specific website to allow Class members the ability to obtain additional information and documents about the litigation. Peak Decl. at ¶ 19. The case

---

names and address of nearly 30,000 Class members), Plaintiffs have not filed it with this motion. Plaintiffs have served a copy of the Class List on Defendant.

758965.1

website would allow users to read, download, and print the operative pleadings, the Court's order certifying the Class, and a Detailed Notice. *Id.* Class members would also be able to review a list of Frequently Asked Questions and Answers as well as obtain contact information for Class Counsel. *Id.* The website address would be displayed in the Summary Notice and would be accessible through a hyperlink embedded in the internet notices. *Id.*

### E.    Toll-Free Telephone Number

Plaintiffs also propose establishing and hosting a case-specific toll-free number to allow Class members to learn more about the litigation in the form of Frequently Asked Questions and Answers. Peak Decl. at ¶ 20. It would also allow Class members to request to have a copy of the Detailed Notice mailed directly to them. *Id.* The toll-free number will be displayed in the Summary and Detailed Notices, and on the case website. *Id.*

### F.    Notice Design and Content

KCC worked with Class Counsel to develop the various notice documents proposed for this case, which are attached to the Declaration of Carla Peak Regarding Class Certification Notice Plan filed herewith. Peak Decl. at ¶ 24, **Exhibits 1–3**. The Notices were designed to satisfy the requirements of Rule 23, adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth*, and comply with the FJC's Illustrative Forms of Class Action Notices. *Id.* Accordingly, the Summary Notice contains a plain language summary of all the key information about Class members' rights and options. *Id.* at ¶ 23. In addition to plain language summary, the Detailed Notice includes a summary page, providing an overview of the important information, and a table highlighting key options available to Class members. *Id.* The question and answer format makes it easy to find answers to common questions by organizing the information and

breaking it up into simple headings. *Id.* Many courts have approved notices that have been written and designed in a similar fashion. *Id.*

## VI.    APPLICABLE LEGAL STANDARD

Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Rule 23(c)(2)(B) "does not insist on actual notice to all class members in all cases. It recognizes it might be impossible to identify some class members for purposes of actual notice." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (citation omitted). "While actual individual notice may be the ideal, due process does not always require it." *Id.* (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (rejecting requirement of individual notice)); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (noting that "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice" and collecting cases); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated*, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

758965.1

opportunity to present their objections.") (emphasis added). For instance, in some cases, records identifying the names and addresses of the class members simply may not exist. *See Mirfasihi*, 356 F.3d at 786 ("Maybe Fleet should have such a record, but it doesn't and so individual notice is impossible.").

"When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail." *Mullins*, 795 F.3d at 665 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75 (1974) ("[T]he express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort.")); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985) (in decision "limited to those class actions which seek to bind *known* plaintiffs," finding due process satisfied "where a fully descriptive notice [wa]s sent first-class mail to each class member") (emphasis added).

"When [individual notice] is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins*, 795 F.3d at 665 (citing *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676–77 (7th Cir. 2013) ("When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted.")); *see also Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."). "As long as the alternative means satisfy the standard of Rule 23(b)(3), there is no due process violation." *Id.* (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 418 (N.D. Ill. 2012) (rejecting notice argument for same reason)). "Due process simply does not require the ability to identify all

members of the class at the certification stage." *Id.*; *see also Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573, 578 (N.D. Ill. 1998) (holding Rule 23 "accords considerable discretion to a district court in fashioning notice" and seeks "cooperative ingenuity on the part of counsel and the court in determining the most suitable notice in each case").

There is no express requirement that notice reach a certain percentage of class members. *See* Fed. R. Civ. P. 23(c)(2)(B) ("best notice that is practicable"); *Hughes*, 731 F.3d at 676 (the "reasonable effort" required by Rule 23(c)(2)(B) is "effort commensurate with the stakes."); *Mullins*, 795 F.3d at 666 ("We approved the plan because the notice plan was 'commensurate with the stakes.'"). However, Federal Judicial Center guidelines provide that notice "effectively" reaches a class if a "high percentage (*e.g.*, between 70–95%)" of class members "will be exposed to a notice based on a proposed notice plan[.]" *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (Federal Judicial Center 2010); *see also Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 287 (7th Cir. 2017) ("Thanks to the district court's decision to appoint a notice expert, notice was provided to this massive class in a reasonable and effective manner, reaching approximately 70% of the members."); *In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016) ("This multi-faceted notice plan is conservatively estimated to reach eighty percent of the settlement class, which is well within an acceptable range for class actions.").

Notwithstanding such guidelines, "[w]hen it comes to protecting the interests of absent class members, courts should not let the perfect become the enemy of the good." *Mullins*, 795 F.3d at 666 (citations omitted). Broadly speaking, in "class actions for low-value claims like this one . . . 'only a lunatic or a fanatic' would litigate the claim individually, so opt-out rights are not likely to be exercised by anyone planning a separate individual lawsuit." *Id.* (quoting *Carnegie v.*

*Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). "When this is true, it is particularly important that the types of notice that courts require correspond to the value of the absent class members' interests." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands.")). "That is why in *Hughes*, for example, where each plaintiff's claim was valued at approximately $1,000 or less, [the Seventh Circuit] approved a notice plan consisting of sticker notices on the defendant's two ATMs, publication of a notice in the primary local newspaper, and notice on a website." *Id.* (citing *Hughes*, 731 F.3d at 676–77). In that case, the Seventh Circuit "did not insist on first-class mail even though the notice plan likely would not reach everyone in the class. [Instead, it] approved the plan because the notice plan was 'commensurate with the stakes.'" *Id.* (quoting *Hughes*, 731 F.3d at 676).

## VII.   ARGUMENT

### A.    The Notice Plan Is the Best Practicable Under the Circumstances

Plaintiffs propose coupling individual postcard notice to Class members who have been identified with publication notice utilizing internet media, a press release, a website, and a toll-free telephone number to Class members who are not identifiable through reasonable effort. Numerous courts in Illinois and elsewhere around the country have approved similar notice plans in TCPA cases. *See, e.g., Johnson v. Yahoo! Inc.*, No. 14-cv-2028, slip op. (N.D. Ill. Dec. 12, 2016) (approving notice of pendency of class action with the following components: individual postcard notice to a portion of the class, a Facebook newsfeed campaign, a website, toll-free number, email address for class member inquiries, long form notice and other documents posted on a notice website, and a press release); *Abante Rooter and Plumbing Inc. v. Alarm.com Incorporated*, No. 4:15-cv-06314, slip op. (N.D. Cal. Feb. 2, 2018) (approving notice of pendency of class action with following components: email notice, individual postcard notice,

internet banner notice, and a website); *Lees v. Anthem Ins. Cos., Inc.*, No. 4:13-cv-01411, slip op. (E.D. Mo. Sept. 29, 2014) (approving notice of class action settlement with the following components: individual postcard notice to a portion of the class, internet banner notice, and website notice); *Youngman v. A&B Insurance and Financial, Inc.*, No. 6:16-cv-01478, slip op. (M.D. Fla. Apr. 17, 2018) (approving notice of class action settlement with the following components: individual postcard notice to a portion of the class, internet banner notice, and website notice).

1. **Individual notice would be provided to Class members who have been identified through reasonable effort.**

Plaintiffs have identified 28,239 Class members, Data Analysis Decl. at ¶¶ 10–11, and propose sending individual notice (in the form of a Summary Notice) via USPS to each of them, Peak Decl. at ¶¶ 13–16. Rule 23(b)(3) specifically contemplates individual notice via USPS to Class members who have been identified through reasonable effort, as here, and it is universally endorsed by the courts. *See Mullins*, 795 F.3d at 665 (citing *Eisen*, 417 U.S. at 174–75 ("[T]he express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort.")); *see also Phillips Petroleum*, 472 U.S. at 811–12 (in decision "limited to those class actions which seek to bind known plaintiffs," finding due process satisfied "where a fully descriptive notice [wa]s sent first-class mail to each class member"). As to these Class members, Plaintiffs' proposal constitutes effective notice.

2. **Publication notice utilizing internet media, a press release, a website, and a toll-free telephone number would be provided to reach Class members who are not identifiable through reasonable effort.**

Class members who received an illegal outbound call but were *not* transferred to a CWT call center represent the vast majority of the Class, but they are not identifiable through

reasonable effort of counsel. *See* Cert. Order at 43 ("Plaintiffs assert that the total number of VVT's outbound calls—and thus the potential number of class members—albeit unknown, is likely many times the number of calls VVT transferred to CWT, since most individuals hung up on VVT, did not qualify for the vacation package, or were not transferred for some other reason."); *id.* at 9 ("The overall number of outbound calls VVT made is unknown, but that number is sure to be much higher than the number of calls VVT transferred."). As explained at length in connection with Plaintiffs' motion for class certification and the parties' competing *Daubert* motions, the reason not all Class members are easily identifiable is that CWT did not maintain records of the outbound calls made by VVT, CWT's agents and affiliates in the United States destroyed any such records, and VVT refused to participate in the discovery process. *See*, e.g., Dkt. No. 182 at 7–8 (Plaintiffs' opposition to CWT's motion to strike the testimony of Ms. Peters-Stasiweicz summarizing what discovery was available to identify Class members). Individual notice is thus not feasible for this portion of the Class.

Plaintiffs thus additionally propose implementing an internet media effort consisting of digital media advertising, which is described in more detailed above. Peak Decl. at ¶ 17. Plaintiffs also propose issuing a press release in to Illinois media outlets, establishing a case website, and setting up a toll-free telephone number. Peak Decl. at ¶¶ 18–20. Given the circumstances of the case, these methods of disseminating notice are reasonable substitutes for individual notice. *See Mullins*, 795 F.3d at 665 ("When [individual notice] is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process."); *Mirfasihi*, 356 F.3d at 786 ("[Individual notice] is preferable to newspaper or other collective notice but it was impossible here because Fleet has no record of those customers whose financial information it

gave the telemarketers but who did not buy anything from the latter. (Those who did buy, the members of the telemarketing class, received individual notice.) Maybe Fleet should have such a record, but it doesn't and so individual notice is impossible. . . . "); *Mirfasihi*, 356 F.3d at 786 ("The World Wide Web is an increasingly important method of communication, and, of particular pertinence here, an increasingly important substitute for newspapers.").

Ms. Peak's opinion is that the digital notice efforts alone will reach approximately 70% of likely Class members, and that this coverage will be further enhanced by the individual notice effort and press release. Peak Decl. at ¶ 9. This represents effective notice under both the Federal Judicial Center guidelines and relevant Seventh Circuit precedent. *See Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (Federal Judicial Center 2010) (noting reach in the range of "70–95%" represents a "high percentage" of class members and "effective[]" notice); *see also Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 287 (7th Cir. 2017) ("Thanks to the district court's decision to appoint a notice expert, notice was provided to this massive class in a reasonable and effective manner, reaching approximately 70% of the members.").

**B.** **The proposed forms of notice comport with the requirements of Rule 23 and due process because they are easy to read and understand.**

Plaintiffs' Detailed and Summary Notices, which are attached to Ms. Peak's Declaration as Exhibit 1–2, satisfy the content requirements of Rule 23(c)(2)(B)(i)–(vii):

| Requirement | Detailed Notice | Summary Notice |
|---|---|---|
| "The nature of the action." Fed. R. Civ. P. 23(c)(2)(B)(i). | First introductory bullet; Q&A nos. 2 and 7. | ¶¶ 1, 3. |
| "The definition of the class certified." Fed. R. Civ. P. 23(c)(2)(B)(ii). | Second introductory bullet; Q&A no. 4. | ¶ 2. |

14

| Requirement | Detailed Notice | Summary Notice |
|---|---|---|
| "The class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B)(iii). | First introductory bullet; Q&A nos. 2, 7, and 8. | ¶¶ 1, 3. |
| "That a class member may enter an appearance through an attorney if the member so desires." Fed. R. Civ. P. 23(c)(2)(B)(iv). | Q&A no. 15. | ¶ 4. |
| "That the court will exclude from the class any member who requests exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v). | Table of "Your Legal Rights and Options;" Q&A nos. 12 & 13. | ¶ 4. |
| "The time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(vi). | Fourth introductory bullet; Q&A no. 13. | ¶ 4. |
| "The binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(vii). | Table of "Your Legal Rights and Options"; Fourth introductory bullet; Q&A nos. 11 and 12. | ¶ 4. |

The various other forms of notice would either direct Class members to a copy of the Detailed Notice or would be based on the Summary Notice.

In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii), the Detailed and Summary Notices are based on the Federal Judicial Center's model forms for notice of pendency of a class action. The FJC prepared these models at the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure. *See* www.fjc.gov. The FJC models are designed to illustrate how attorneys and judges might comply with Fed. R. Civ. P. 23(c)(2)(B)'s requirement that class action notices "must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class action and how it might affect potential class members' rights. *Id.* The FJC explained its methodology for preparing these models as follows:

> We began this project by studying empirical research and commentary on the plain language drafting of legal documents. We then tested several notices from

15

> recently closed class actions by presenting them to nonlawyers, asking them to point out any unclear terms, and testing their comprehension of various subjects. Through this process, we identified areas where reader comprehension was low. We found, for example, that nonlawyers were often confused at the outset by use of the terms "class" and "class action." Combining information from the pilot test with principles gleaned from psycholinguistic research, we drafted preliminary illustrative class action notices and forms. We then asked a lawyer-linguist to evaluate them for readability and redrafted the notices in light of his suggestions.

*Id.* The FJC then tested the redrafted model notices "before focus groups composed of ordinary citizens from diverse backgrounds" and also through surveys "[u]sing objective comprehension measures." *Id.*

Based on FJC's testing, Plaintiffs believe that the Detailed and Summary Notices, which are very closely based on the FJC models, with the format and content adopted almost verbatim in most instances, are accurate, balanced, and comprehensible. Further, as Ms. Peak explained, the notice documents were designed with the express purpose of being noticeable and understandable. Peak Decl. at ¶ 24. Her opinion is that the proposed forms of notice are informative, reasonably convey all required information, and afford a reasonable time for those interested to act on their rights or make their appearance. *Id.* Accordingly, the requirements of Rule 23 and due process are satisfied. *See F.C.V., Inc. v. Sterling Nat. Bank*, 652 F. Supp. 2d 928, 944 (N.D. Ill. 2009) ("'The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.'") (quoting *Phillips Petroleum*, 472 U.S. at 812).

## VIII. OTHER SCHEDULING AND ADMINISTRATIVE MATTERS

Plaintiffs additionally propose that the deadline for Class members to request exclusion from the Class shall be 60 days after the dissemination of notice. Plaintiffs believe a 60-day

16

window will allow sufficient time for the opt-out deadline to lapse before the Court is likely to decide the parties' anticipated motions for summary judgment.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) approve the notice plan and forms of notice described in the Peak Declaration, and (2) allow Class members 60 days from the effectuation of Plaintiffs' notice plan to exclude themselves from the Class.

Date: May 1, 2019

LITE DEPALMA GREENBERG, LLC

By:    _____/s/ Katrina Carroll_____
Katrina Carroll
*kcarroll@litedepalma.com*
Kyle A. Shamberg
*kshamberg@litedepalma.com*
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265

LITE DEPALMA GREENBERG, LLC
Jeremy Nash (*pro hac vice* pending)
*jnash@litedepalma.com*
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000

BURSOR & FISHER, P.A.
Yitzchak Kopel (admitted *pro hac vice*)
ykopel@bursor.com
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7127

*Class Counsel*

JEFFREY GRANT BROWN, P.C.
Jeffrey Grant Brown
*jeff@jgbrownlaw.com*
221 North LaSalle Street, Suite 1414
Chicago, IL 60601
Telephone: (312) 789-9700

17

**SIPRUT PC**
Joseph J. Siprut
*jsiprut@siprut.com*
Todd L. McLawhorn
*tmclawhorn@siprut.com*
17 N. State Street, Suite 1600
Chicago, Illinois 60602
Telephone: (312) 236-0000

**AHDOOT & WOLFSON, PC**
Robert Ahdoot (admitted *pro hac*)
*rahdoot@ahdootwolfson.com*
Tina Wolfson (admitted *pro hac*)
*twolfson@ahdootwolfson.com*
1016 Palm Avenue
West Hollywood, California 90069
Telephone: (310) 474-9111

***Additional Counsel for Plaintiffs Bakov and Herrera***


## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE PLAN was filed electronically with the Clerk of the Court using the CM/ECF system this 1st day of May 2019 and served electronically on all counsel of record.

*/s/ Katrina Carroll*
Katrina Carroll