**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANGEL BAKOV and JULIE HERRERA, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:15-cv-02980 |
| | ) | Hon. Harry D. Leinenweber |
| Plaintiffs, | ) ) | Hon. Susan E. Cox |
| v. | ) ) | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, a Florida corporation, | ) ) ) ) | |
| Defendant. | ) ) | |
| | ) | |
| KINAYA HEWLETT, on Behalf of Herself and all Others Similarly Situated, | ) ) ) | Case No. 1:17-cv-00973 |
| | ) | Hon. Harry D. Leinenweber |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CONSOLIDATED WORLD TRAVEL, INC. d/b/a HOLIDAY CRUISE LINE, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT CONSOLIDATED WORLD TRAVEL, INC.'S MOTION FOR
RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER
OF DECEMBER 9, 2019 AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .......................................................................................................................3

    I.    APPLICABLE LEGAL STANDARDS ..................................................3

    II.    THE ORDER INCORRECTLY OVERLOOKED THE ABSURD
        RESULTS OF A LITERAL VIEW OF "PRERECORDED VOICE" ...................3

    III.    THE ORDER GAVE IMPROPER WEIGHT TO THE AGREEMENT
        AND MISAPPLIED THE LAW ON AGENCY ......................................................5

    IV.    THE ORDER'S FINDING OF A WILLFUL AND KNOWING
        VIOLATION SHOULD ALSO BE RECONSIDERED .........................................9

    V.    THE ENTRY OF SUMMARY JUDGMENT ON THE TCPA CLAIM
        WAS PREMATURE AND SHOULD BE RECONSIDERED ...........................17

CONCLUSION .....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                       **<u>Page(s)</u>**

*Abante Rooter and Plumbing, Inc. v. Arashi Mahalo, LLC*,
    No. 18-cv-07311-VC, 2019 WL 6907077 (N.D. Cal. Dec. 19, 2019)................................8

*ACA Int'l v. Fed. Commc'ns Comm'n*,
    885 F.3d 687 (D.C. Cir. 2018) .........................................................................................5

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970)..........................................................................................................1

*Allan v. Pennsylvania Higher Educ. Assistance Agency*,
    398 F. Supp. 3d 240 (W.D. Mich. 2019) ...................................................................12, 13

*Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*,
    923 F.3d 159 (4th Cir. 2019) .........................................................................................19

*Amwest Sur. Ins. Co. v. Szabo*,
    No. 00 C 2716, 2001 WL 1230643, *4 (N.D. Ill. Oct. 11, 2001) ....................................18

*Angelopoulos v. Keystone Orthopedic Specialists, S.C.*,
    No. 12-CV-5836, 2017 WL 2178504 (N.D. Ill. May 16, 2017)........................................15

*Aranda v. Caribbean Cruise Line, Inc.*,
    179 F. Supp. 3d 824 (N.D. Ill. 2016) ...................................................................14, 15, 16

*Bakov v. Consol. World Travel, Inc.*,
    No. 15 C 2980, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019) .............................. 12, 13-14

*Barr v. Political Consultants*,
    No. 19-631, 2020 WL 113070 (U.S. Jan. 10, 2020).......................................................19

*Bridgeview Health Care Center, Ltd. v. Clark*,
    816 F.3d 935 (7th Cir. 2016) ...................................................................................... 7, 9

*Cazares v. Frugoli*,
    No. 13 C 5626, 2017 WL 4547982 (N.D. Ill. Oct. 11, 2017).............................................3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................................................1, 2

*Chemtool, Inc. v. Lubrication Techs., Inc.*,
    148 F.3d 742 (7th Cir. 1998) .........................................................................................5

*Crawford v. Yellow Cab Co.*,
    572 F. Supp. 1205, 1209 (N.D. Ill. 1983) ........................................................................15

*Dimmitt v. City of Clearwater*,
    985 F.2d 1565 (11th Cir. 1993) ......................................................................................20

*Dolemba v. Kelly Servs., Inc.*,
    No. 16 C 4971, 2017 WL 429572 (N.D. Ill. Jan. 31, 2017) ..............................................4

*Espejo v. Santander Consumer USA, Inc.*
    No. 11 C 8987, 2019 WL 2450492 (N.D. Ill. June 12, 2019) .........................................11

*Farmer v. Brennan*,
    511 U.S. 825 (1994)........................................................................................................10

*Fed. Trade Comm'n v. AT&T Mobility LLC*,
    883 F.3d 848 (9th Cir. 2018) ..........................................................................................13

*First Nat'l Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978)........................................................................................................20

*Greater New Orleans Broad. Ass'n v. United States*,
    527 U.S. 173 (1999)........................................................................................................20

*Homan Mfg. Co. v. Long*,
    242 F.2d 645 (7th Cir. 1957) ............................................................................................1

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
    27 F.C.C. Rcd. 1830 (2012)........................................................................................4, 13

*Jones v. All Am. Auto Prot., Inc.*,
    No. 314CV00199LRHWGC, 2015 WL 7566685 (D. Nev. Nov. 24, 2015) .......................7

*Jones v. Royal Admin. Servs., Inc.*,
    887 F.3d 443 (9th Cir. 2018) ........................................................................................7-8

*Krakauer v. Dish Network, LLC*,
    925 F.3d 643 (4th Cir. 2019) ..............................................................................10, 15, 16

*Lamkin v. Portfolio Recovery Assocs., LLC*,
    No. 2:18-CV-03071-WBSKJN, 2019 WL 4670829 (E.D. Cal. Sept. 25, 2019) ...............10

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
    780 F.3d 1101 (11th Cir. 2015) ......................................................................................10

*Legg v. PTZ Ins. Agency, Ltd.*,
    No. 14 C 10043, 2018 WL 3869970 (N.D. Ill. Aug. 15, 2018)........................................18

*Levy v. Receivables Performance Mgmt., LLC*,
    972 F. Supp. 2d 409 (E.D.N.Y. 2013) ...........................................................................15

*Logan v. Commercial Union Ins. Co.*,
    96 F.3d 971 (7th Cir. 1996) ............................................................................................18

*McCann v. Iroquois Mem. Hosp.*,
    622 F.3d 745 (7th Cir. 2010) ............................................................................................2

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
    460 U.S. 575 (1983)........................................................................................................20

*Navistar Int'l Transp. Corp. v. Freightliner Corp.*,
    No. 96 C 6922, 1998 WL 786388 (N.D. Ill. Nov. 6, 1998)..............................................18

*Patrick v. City of Chicago*,
    103 F. Supp. 3d 907 (N.D. Ill. 2015) ................................................................................3

*Police Dep't of Chicago v. Mosley*,
    408 U.S. 92 (1972)..........................................................................................................20

*Rappa v. New Castle Cty.*,
    18 F.3d 1043 (3d Cir. 1994)............................................................................................20

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ..........................................................................................10

*Robert W. Mauthe, M.D., P.C. v. MCMC LLC*,
    387 F. Supp. 3d 551 (E.D. Pa. 2019) ...............................................................................10

*Smith v. Premier Dermatology*,
    No. 17 C 3712, 2019 WL 4261245 (N.D. Ill. Sept. 9, 2019)...........................................11

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    30 F. Supp. 3d 765 (N.D. Ill. 2014) .................................................................5, 6, 7, 8, 9

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)........................................................................................................20

*Sunshine Imp & Exp Corp. v. Luxury Car Concierge, Inc.*,
    No. 13 C 8925, 2015 WL 2193808 (N.D. Ill. May 7, 2015) ...........................................18

iv

*Thompson Med. Co. v. FTC*,
    791 F.2d 189 (D.C. Cir. 1986) ............................................................................13

*United Cent. Bank v. Wells Street Apartments, LLC*,
    957 F.Supp.2d 978 (E.D. Wisc. 2013) ..............................................................18

*United States v. Ligas*,
    549 F.3d 497 (7th Cir. 2008) ..............................................................................3

*United States v. Miller*,
    673 F.3d 688 (7th Cir. 2012) ............................................................................15

*Waldridge v. Am. Hoechst Corp.*,
    24 F.3d 918 (7th Cir. 1994) ................................................................................1

*Wienco, Inc. v. Katahn Assocs., Inc.*,
    965 F.2d 565, 568 (7th Cir. 1992) ......................................................................1

**Statutes**
47 U.S.C. § 227 ...................................................................................... *passim*

**Rules**
Fed. R. Civ. P. 54 ............................................................................................1, 3

**Other Authorities**

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584 (2015) ...................................19

Luke Dormehl, Cult of Mac, *189 million iPhones are currently in use in the U.S.*,
https://www.cultofmac.com/605442/189-million-iphones-are-currently-in-use-in-the-u-s/ (Feb. 7, 2019) ............................................................................................................4

Restatement (Third) Of Agency § 1.01 (2006) ............................................................6

Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015) ................................................4, 13

Pursuant to Federal Rules of Civil Procedure 54(b), Defendant Consolidated World Travel, Inc. ("CWT" or "HCL"), files this Motion for Reconsideration of the Court's Summary Judgment Order of December 9, 2019 (the "Order"), and in support thereof states as follows:

## PRELIMINARY STATEMENT

CWT is mindful of the limited role of motions for reconsideration, but this is one instance where reconsideration is appropriate given the several issues of law and fact that the Order appears to have overlooked or misapprehended, and which resulted in an order that improperly decided disputed questions of fact that should instead be decided by a jury.

Summary judgment is not "a vehicle for resolving factual disputes. . . . [T]he district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "[O]nce such an issue is found the court's function on that aspect of the case ends." *Homan Mfg. Co. v. Long*, 242 F.2d 645, 656 (7th Cir. 1957). "[A] party seeking summary judgment always bears the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation omitted). "Where the evidentiary matter in support of the motion [for summary judgment] does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Moreover, in deciding on a motion for summary judgment whether

there is a genuine issue of material fact, the Court must draw reasonable inferences in favor of the non-moving party, in this case, CWT. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *McCann v. Iroquois Mem. Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

Unfortunately, the Order in this case did not stop at identifying if there were disputed facts, but, without considering whether Plaintiffs' showing was sufficient or admissible, proceeded to answer what was believed to be credible or persuasive, without giving CWT the benefit of all reasonable inferences. The Order also failed to address the absurd results that would follow from a literal interpretation of "prerecorded voice" based on an incorrect interpretation of the TCPA,[1] applied the law of agency in a manifestly erroneous manner to find no question of fact as to the fact-intensive issue of vicarious liability, and advanced a legally and factually erroneous rationale to find that the use of the VVT technology at issue by a third party was a willful and knowing violation of the TCPA (presumably by CWT, although that, too, is unclear).

Moreover, and in any event, the Order prematurely enters summary judgment for the class on their TCPA claim. Plaintiffs sought ***partial*** summary judgment only as to whether VVT used prerecorded voice, whether CWT was vicariously liable, as to the affirmative defense of consent, and whether CWT's conduct was "willful" or "knowing." There are still numerous affirmative defenses that preclude entry of summary judgment on the TCPA claim, including the Twenty-Fourth Affirmative Defense that the TCPA violates the First Amendment, a ruling the Fourth Circuit recently made and which is now being reviewed by the Supreme Court this term.

For all these reasons, the Order should be reconsidered.

---

[1] Unless stated otherwise, capitalized terms shall have the definitions ascribed to them in the Court's Order.

## ARGUMENT

## I.  APPLICABLE LEGAL STANDARDS

Because the Court's Order did not dispose of this case, CWT's Motion for Reconsideration is reviewed under Federal Rule of Civil Procedure 54(b).  Rule 54(b) provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  "Thus, the Court has the 'discretionary authority' to reconsider an interlocutory order," including the granting of partial summary judgment.  *Cazares v. Frugoli*, No. 13 C 5626, 2017 WL 4547982, *1 (N.D. Ill. Oct. 11, 2017).

Motions for reconsideration under Rule 54(b) "serve the limited function of correcting manifest errors of law or fact or to presenting newly discovered evidence." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911-12 (N.D. Ill. 2015).  "A manifest error of law or fact under this standard occurs 'when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.'"  *Cazares*, 2017 WL 4547982 at *1 (quoting *United States v. Ligas*, 549 F.3d 497, 501–02 (7th Cir. 2008)).

## II.  THE ORDER INCORRECTLY OVERLOOKED THE ABSURD RESULTS OF A LITERAL VIEW OF "PRERECORDED VOICE"

In their summary judgment papers, CWT advanced numerous examples of how interpreting the TCPA's prohibition on the use of a "prerecorded voice," including "to deliver a message," (47 U.S.C. §§ 227(b)(1)(A) & 227(b)(1)(B)), in the literal manner advanced by Plaintiffs would lead to absurd results, and thus the Court could not adopt such an interpretation.  *See, e.g.*, Dkt. No. 228 at 9-20; Dkt. No. 243 at 4-7; Dkt. No. 250 at 4-12.  Among these absurd results would be the subjecting of millions of people on a daily basis – there are nearly 200

million iPhones in use in the United States[2] – to liability under the TCPA for use of the relatively new feature of "voice messages" that can be sent through native "smartphone" operating systems as well as through a host of "apps." The Order dismissed this line of argument as "unavailing and frivolous" on the ground that "[t]he [TCPA] itself creates a mechanism to avert this outcome," namely 47 U.S.C. § 227(b)(2)(B)(i)'s authorization for the FCC to "exempt from the requirements . . . calls that are not made for a commercial purpose . . . ." Order at 10. This was a manifest error.

The cited authorization to exempt certain calls does not avert the absurd results. It permits an exemption only "from the requirements *of paragraph 1(B) of this subsection*," (47 U.S.C. § 227(b)(2)(B)(i) (emphasis added)), that is, *only* telephone calls placed to a residential telephone line.[3] There is no such statutory authority to exempt *any* calls to, among other types of phones, cellular telephones such as the alleged calls to Plaintiffs Bakov and Herrera. *Accord Dolemba v. Kelly Servs., Inc.*, No. 16 C 4971, 2017 WL 429572, *2 n.2 (N.D. Ill. Jan. 31, 2017); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 824, 825-26 (N.D. Ill. 2016).[4] Thus, the Order fails to avoid the absurd results from a literal interpretation of "prerecorded voice."

Indeed, if, as the Order presumes, only commercial text messages were subject to the

---

[2] *See* Luke Dormehl, Cult of Mac, *189 million iPhones are currently in use in the U.S.*, https://www.cultofmac.com/605442/189-million-iphones-are-currently-in-use-in-the-u-s/ (Feb. 7, 2019).

[3] Section 227(b)(1) of the TCPA has two subsections. Subsection (1)(A) prohibits the unconsented use of an automatic telephone dialing system ("ATDS") or artificial or prerecorded voice in a call to emergency-service numbers, telephone lines in hospitals or similar facilities, and numbers "assigned to a paging service [or] cellular telephone service." Subsection (1)(B), on the other hand, prohibits only the use of an artificial or prerecorded voice to deliver a message "to any residential telephone line" "without the prior express consent of the called party." Subsection (1)(B) is therefore narrower than subsection (1)(A), and only subsection (1)(A) applies to calls to cellular telephone numbers.

[4] As the *Dolemba* court noted, the FCC itself clarified this distinction and lack of statutory authority in one of its declaratory rulings and orders. *See* In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7967-68 (2015).

TCPA, then the whole hypothetical that led the D.C. Circuit Court to invalidate the FCC's "expansive" definition of "capacity" as leading to the absurd and unacceptable result that all smartphone users would be subject to potential liability under the TCPA – that of a person who sends an invitation to a social gathering to a person she recently met for the first time by text message from her smartphone, (*ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 697-98 (D.C. Cir. 2018)) – would have been pointless and of no weight. But that is not the case, and it is why a literal interpretation of "prerecorded voice" to apply to voice messages sent through smartphones would similarly (and also absurdly) lead to clearly unintended TCPA exposure. As the Order's ruling as to the interpretation of "prerecorded voice" is based on a mistaken understanding of law and overlooked CWT's arguments, it should be reconsidered.

## III. THE ORDER GAVE IMPROPER WEIGHT TO THE AGREEMENT AND MISAPPLIED THE LAW ON AGENCY

In finding no genuine issue of material fact as to the issue of vicarious liability, the Court concluded that it "need look no further than the contract between [CWT] and VVT" to indisputably demonstrate express agency. Order at 15-16. As a matter of law, however, a contractual relationship is not necessarily an agency relationship. As observed in a decision cited in the Order, "the existence of a contract between [CWT] and [VVT]—even one that imposes certain constraints on [VVT]—does not necessarily mean that [CWT] had the power to give interim instructions to [VVT], which is the hallmark of an agency relationship." *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 775-76 (N.D. Ill. 2014) ("*State Farm*"). *See also Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) ("While an agency relationship can be created by contract or by conduct, not all contracts create agency relationships and not all conduct creates agency relationships.").

Here, the Order's analysis was limited to the facts that, under the Agreement, CWT had

the right to approve and modify any scripts, that CWT agreed to provide weekly performance reports to VVT, and both parties had the right to terminate the agreement. *See* Order at 15-16. Respectfully, there is nothing about providing weekly performance reports that demonstrates a power to give interim instructions. Nor does the fact that the agreement is mutually terminable, a common contractual term, indisputably support an express agency relationship. At most, viewing the evidence in the light most favorable to CWT, these are facts to be put before a jury to determine the extent and scope of any purported agency relationship.

The predominant factor in the Order's analysis of an express agency relationship is the power to give interim instructions. But the record comes nowhere close to *indisputably* establishing that requisite extent or right of power, and the Order erred in finding the Agreement indisputably establishes that standard so as to avoid the need to even have a jury decide this fact-intensive question. The Restatement of Agency instructs:

> The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents. *In many agreements to provide services, the agreement between the service provider and the recipient specifies terms and conditions creating contractual obligations that, if enforceable, prescribe or delimit the choices that the service provider has the right to make*. In particular, if the service provider breaches a contractual obligation, the service recipient has a claim for breach of contract. The service provider may be constrained by both the existence of such an obligation and the prospect of remedies for breach of contract. ***The fact that such an agreement imposes constraints on the service provider does not mean that the service recipient has an interim right to give instructions to the provider***. Thus, setting standards in an agreement for acceptable service quality does not of itself create a right of control.

Restatement (Third) Of Agency § 1.01, cmt. f (2006) (emphases added).

The Order cited *State Farm*, but overlooked that *State Farm* concluded the contract sufficed to permit a finding of express agency because the contract "specified the days of the week and times in which [the telemarketer] should make its class, the geographic location of the

customers whom it should call, and the number of calls Variable should transfer to the insurance agency each day." 30 F. Supp. 3d at 776. Notably, there is no indication in *State Farm* or any other Seventh Circuit decision that the purported principal's control of the content of what the telemarketer was permitted to say about its products, standing alone, is sufficient to render the fact-specific inquiry of an agency relationship undisputed and a trial unnecessary. Indeed, in *Bridgeview Health Care Center, Ltd. v. Clark*, another decision cited in the Order, the Seventh Circuit explained that even though the purported principal (Clark) "edited and approved the language of the ad" that was faxed by B2B, "[f]or this type of agency [express agency] to exist, Clark must have directly spoken or written to B2B, telling it to send nearly 5,000 fax ads across multiple states." 816 F.3d 935, 936 & 939 (7th Cir. 2016). Approval of marketing content is legally insufficient to create an express agency for purposes of the TCPA, and Plaintiffs presented no evidence of the kind required in *Bridgeview*.

Similarly, courts applying *State Farm* have clarified that the mere ability of a company to approve what a telemarketer says about its goods or services is insufficient to give rise to an agency relationship. One court expressly found that "provid[ing] materials, training, *and scripts* . . . **did not rise to the level found in [State Farm]**" so as to permit the finding of a formal agency relationship. *Jones v. All Am. Auto Prot., Inc.*, No. 314CV00199LRHWGC, 2015 WL 7566685, *4 (D. Nev. Nov. 24, 2015) (emphases added). The Ninth Circuit affirmed that decision, concluding there could be no actual authority where the agreement expressly prohibited the telemarketer from "any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling,'" (a parallel to the language that the Order dismissed as irrelevant, (Order at 18)), and, again, like in this case, there was no evidence of exercise of sufficient control over the "manner and means" of the telemarketing. *Jones v. Royal Admin.*

*Servs., Inc.*, 887 F.3d 443, 449-453 (9th Cir. 2018). As the Ninth Circuit put it, a TCPA plaintiff must show that the purported agent had "actual authority to place calls in violation of the TCPA. . . . [Plaintiffs] must do more than establish an agency relationship. They must also establish actual authority to place the unlawful calls" alleged by the plaintiff. *Id.* at 449. Thus, a district court recently found, pursuant to *Jones* (and, thus, based upon *State Farm*), that there could be no express agency where the principal had not "actually granted" the agent "the authority to use an ATDS or to call merchants on the Do-Not-Call Registry." *Abante Rooter and Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-cv-07311-VC, 2019 WL 6907077, *1 (N.D. Cal. Dec. 19, 2019).

The Order, though, rejected CWT's insistence upon a showing of the requisite right to control the means and manner of the telephone call allegedly in violation of the TCPA. It did so on the ground that the alleged "TCPA violation does not hinge on *whom* VVT called or *when* VVT called them," (Order at 18), but, respectfully, the alleged TCPA violation also does not hinge on *what* VVT stated on the call, that is, whether the words uttered by VVT were those that were approved by CWT. Even there, the Order disregards that CWT disputed "that VVT agents could not deviate from the approved script because in fact they could and they would when they unmuted the VVT platform and spoke in their own voice." *See* CWT's Resp. to Pls.' Statement of Undisputed Material Facts at No. 18 (Dkt. No. 244). This plainly creates a disputed issue of fact, especially when all reasonable inferences are made in favor of CWT, as to the existence and extent, if any, of an agency relationship and control.

But, even more broadly, the Order overlooks the applicable legal framework. Plaintiffs' claims are based upon whether the VVT technology utilized a prerecorded voice and if the people that VVT called did not consent to receive such a telephone call. Plaintiffs presented no evidence – in the Agreement or elsewhere in the record – that CWT ever required or authorized

VVT to utilize the audio prompts at issue in this case, nor, as noted extensively in the papers and above, is there evidence that CWT had the right to control the means and manner of VVT's telemarketing in the ways the *State Farm* court or other courts have described. That is the telltale sign that the courts, including the Seventh Circuit in *Bridgeview*, have required for an express agency to be found. *See* 816 F.3d at 936 & 939. *Bridgeview* confirms that the law in the Seventh Circuit is the same as it is elsewhere, namely that what is required for express agency is control over the means and manner of the telemarketing alleged to violate the TCPA. Plaintiffs presented no evidence as to that key fact, and CWT presented evidence to the contrary. *See* Dkt. No. 244-13 at ¶¶ 11-20 (denying CWT had any right of control over VVT). Accordingly, there was no basis for the question of vicarious liability to be taken away from the fact finder and for the Order to conclude, from a legally as well as factually faulty premise, especially when considered in the light most favorable to CWT, that vicarious liability had been indisputably demonstrated. The Order's ruling this regard was manifest error and should be reconsidered.

## IV. THE ORDER'S FINDING OF A WILLFUL AND KNOWING VIOLATION SHOULD ALSO BE RECONSIDERED

The Order also concluded, based on almost exclusively irrelevant and inadmissible evidence, that not only that CWT violated the TCPA, but that such violation was willful and knowing. *See* Order at 20-25. At most, if what Plaintiffs "allege[d]" and "claim[ed]" was to be credited, there was a disputed question of fact on this subject that should not have been decided.

The Seventh Circuit has not defined the meaning of a "defendant willfully or knowingly violat[ing]" the TCPA. 47 U.S.C. § 227(b)(3)(C). The Order concluded this standard is met simply when "the action itself was intentional," without any consideration of "whether the defendant knew that the conduct violated the statute," (Order at 20-21), or, under the circumstances of a case like this one involving vicarious liability, whether the "agent" acted

9

knowingly or willfully. But, again, "if mere knowledge of the fax's transmission [or other violative conduct] rendered a violation knowing or willful, treble damages would be available in nearly every TCPA cases, not just those where the defendant acted particularly egregiously." *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 571 (E.D. Pa. 2019).

Only the Fourth and Eleventh Circuits have defined this standard. The Eleventh Circuit reasoned that a willful or knowing violation requires that the defendant "know he was performing the conduct that violates the statute," such as, in that case, "that he is using an 'automatic telephone dialing system' to place a 'call' . . . ." *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015). The Fourth Circuit also understood this language to impose a heightened showing greater than simply non-negligent conduct by an agent, but rather a principal's "indifference to ongoing violations and a conscious disregard for compliance with the law" by the agent. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 662 (4th Cir. 2019). Most recently, the Eastern District of California similarly observed that "[a] defendant willfully or knowingly violates the TCPA when the defendant intends or knows that it was performing each of the elements of a TCPA claim . . . ." *Lamkin v. Portfolio Recovery Assocs., LLC*, No. 2:18-CV-03071-WBSKJN, 2019 WL 4670829, *5 (E.D. Cal. Sept. 25, 2019) (internal quotation omitted). These rulings are consistent with the Seventh Circuit's observation that, generally, "[t]o act 'willfully' is, for purposes of civil law, to engage in conduct that creates 'an unjustifiably high risk of harm ***that is either known or so obvious that it should be known*** . . . .'" *Redman v. RadioShack Corp*., 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (emphasis added)).

The Order does not address or consider the reasoning of *Lary* or similar decisions regarding the meaning of a "willful or knowing" violation. Instead, it relies upon decisions from

other courts in this District. *See* Order at 21-22. To the extent the Court believed it was applying a unanimous or unquestioned principle in this District that, for a violation to be "willful or knowing" under § 227(b)(3), all that is required is intentional conduct, that is not the case. Two courts in this District recently considered an interpretation of the statutory definition of an ATDS that they acknowledged could not lead to a willful or knowing violation of the TCPA through the use of such an ATDS – randomly or sequentially dialing telephone numbers that had not consented to be so called. One court rejected the interpretation as untenable because it would render the language of a "defendant willfully or knowingly violat[ing]" superfluous, while the other court concluded it was permissible because even though such a violation could not be established in that case, not every potential violation of the TCPA need be capable of being violated willfully or knowingly. *See Smith v. Premier Dermatology*, No. 17 C 3712, 2019 WL 4261245, *5 (N.D. Ill. Sept. 9, 2019) (finding willful and knowing violation provision would not be rendered meaningless because it could still apply to other potential violations); *Espejo v. Santander Consumer USA, Inc.* No. 11 C 8987, 2019 WL 2450492, *7 (N.D. Ill. June 12, 2019) (rejecting interpretation because "[i]t is difficult to square a defendant could commit a willful and knowing violation of the TCPA if the employed ATDS is dialing numbers randomly or sequentially"). The two decisions, agree, however, that intentional or non-negligent conduct is insufficient – surely a defendant could have decided to use a dialer of the type discussed in *Smith* or *Espejo* intentionally. Far more is thus required to qualify as a willful or knowing violation of the TCPA, but Plaintiffs presented no evidence that CWT knew its purported agent was in violation of the TCPA (and in breach of their Agreement).

The Order's rejection of any weight being given to the FTC Letter also requires reconsideration. First, it is Plaintiffs' burden to demonstrate that any violation was willful or

11

knowing with respect to each element of the asserted violation. The mere existence of the FTC Letter, which was the only regulatory guidance regarding the use of a "prerecorded voice . . . to deliver a message," or the Telemarketing Sales Rule's similar prohibition on the similar prohibition on the use of a "prerecorded message," precludes Plaintiffs' ability to make such a showing at all as to either CWT or VVT, never mind without any dispute, and requires affirmative evidence of knowledge of the use of a prerecorded voice in violation of the TCPA. *Cf. Allan v. Pennsylvania Higher Educ. Assistance Agency*, 398 F. Supp. 3d 240, 245 (W.D. Mich. 2019) ("Plaintiffs argue that PHEAA's conduct constituted willful and knowing violations . . . because [it] continued calling Plaintiffs using an ATDS after they revoked consent to receive such calls. However, that is simply what is required to violate the statute. ***Moreover, at the time that PHEAA acted in violation of the statute, the FCC had equivocated on whether the type of system PHEAA used qualified as an ATDS. Therefore, the Court finds that PHEAA did not violate the TCPA willfully or knowingly***.") (emphasis added).

The Order assigned no weight to the FTC Letter on the ground that it "did not address TCPA enforcement, nor was it issued by the government body that enforces and interprets the TCPA (which is the FCC)." Order at 21 (quoting *Bakov v. Consol. World Travel, Inc*., No. 15 C 2980, 2019 WL 1294659, *6 (N.D. Ill. Mar. 21, 2019) ("*Bakov I*")). That is an unexplained and unsupported change in position, because that quoted language is from the Court's quotation of Plaintiffs' motion to strike one of Plaintiffs' experts, and it ignores that the Court, in the same paragraph of its order on that motion, found that the expert's "consideration of the TSR and 2009 FTC Letter is neither misplaced nor unfounded," because the FCC itself has asserted that "'entities subject to the authority of both agencies ***need only comply with the FTC's more restrictive requirements to ensure compliance with both agencies' rules***.'" *Bakov I*, 2019 WL

1294659 at *6 (quoting In the Matter of Rules & Regulations Implementing the Tel. Consumer

Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1836 (2012)) (emphasis added).[5]  It would make no

sense for expert opinion based upon the TSR and the 2009 FTC Letter to be relevant and fit the

facts of the case for purposes of a *Daubert* motion, but for the underlying 2009 FTC Letter itself

to be irrelevant in the same case at summary judgment.

The Court also concluded that "Defendant cannot here rely on the FTC Letter as a

defense" in the absence of any evidence in the record that it had relied upon the FTC Letter.

Order at 21.  That is not the law (nor, for that matter, is it reflective of the actual facts).  The FTC

Letter reflected the state of the law as to the meaning of "prerecorded voice," and Plaintiffs did

not present any evidence of willful or knowing conduct by CWT – or, for that matter, VVT,

which agreed its services would comply with the TCPA and the TSR – that constitutes a use of a

"prerecorded voice" as it was then understood.  Indeed, in *Allan*, there is no discussion of

whether the defendant had relied upon the fact that "the FCC had equivocated on whether the

type of system PHEAA used qualified as an ATDS" in determining whether its 353 TCPA

violations toward the lone plaintiff were willful or knowing.  398 F. Supp. 3d at 245.  The mere

fact that regulatory guidance as to what was required to ensure compliance was then unclear was

sufficient to preclude such a violation.  Here, however, the regulatory guidance – what qualifies

as a technology that does not use a "prerecorded message" in violation of the TSR, which, as this

Court previously noted, would also comply with the TCPA's prohibition on the use of a

"prerecorded voice" – was at all relevant times clear, ***but in favor of an interpretation that it is***

---

[5] To borrow from the Ninth Circuit's explanation in a case that also involved overlapping jurisdiction between the FTC and FCC, this is "a classic example of concurrent jurisdiction with two agencies sharing regulatory oversight.  In the administrative context, two cops on the beat is nothing unusual." *Fed. Trade Comm'n v. AT&T Mobility LLC*, 883 F.3d 848, 862 (9th Cir. 2018). *See also*, *e.g.*, See *Thompson Med. Co. v. FTC*, 791 F.2d 189, 192 (D.C. Cir. 1986) ("[O]urs is an age of overlapping and concurring regulatory jurisdiction.").

*inconsistent with a violation*.  Accordingly, it is undisputed that use of the VVT technology, the functional equivalent of which had been blessed for purposes of compliance with **both** the TSR and the TCPA, cannot be a willful or knowing violation, if even a violation, of the TCPA.

All that Plaintiffs presented as evidence of willfulness is:  (1) "the calls were intentionally placed" – not by CWT but by a third party lead generator; (2) the Illinois Consent Decree, which has nothing to do with the TCPA; and (3) and the alleged "owners" of CWT allegedly also "owned and controlled Caribbean Cruise Line, Inc.," which was a defendant in one another TCPA lawsuit, *Aranda*.  See Dkt. No. 226 at 13-15.  Even if this were admissible evidence – and the Court did not address any of CWT's arguments that the findings in *Aranda* regarding a non-party are inadmissible hearsay or that, even if Lambert and Verrillo exercised general control, that would be insufficient to create liability under the TCPA – it hardly constitutes evidence that CWT "willfully or knowingly violated" the TCPA.  47 U.S.C. § 227(b)(3)(C).

The first listed item is addressed in length above.  As for the Illinois Consent Decree, it was not discussed in the Order.  That leaves *Aranda*, which the Order deemed to evidence a "pattern" of "illegal conduct" that "should not be ignored."  Order at 25.  Respectfully, this finding was a manifest error of law and fact, and should be reconsidered.  To begin with, CWT was not a party to *Aranda*.  The Court cites no support for its position that prior "violations," especially by a different entity, could ever be relevant to establish that the violations at issue in the lawsuit at bar were willful or knowing.  The provision in the TCPA concerns whether the "defendant" at issue, not someone else, "willfully or knowingly violated" the TCPA in the manner alleged in the suit at hand with respect to the plaintiff(s) at hand.  *See* 47 U.S.C. § 227(b)(3)(C).  And there is no evidence in the record, and certainly none sufficient to support a supposed "pattern" by CWT viewing the evidence in the light most favorable to CWT.  The

question of "control" by Messrs. Lambert and Verrillo over CWT and non-party CCL was not at issue in the summary judgment briefing, nor is it relevant to the issues in this case.

The Court's view that a "pattern" of prior violations in various ways and by various entities can render a violation at issue willful or knowing is contrary to the plain text of the statute. *Cf. Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 425 (E.D.N.Y. 2013) ("With respect to the other cases plaintiff highlights in which RPM has been sued for similar conduct, the fact that RPM has been found to have violated the TCPA in other instances does not suggest, as a matter of law, that they acted knowing and willfully when they used their ATDS to place calls to plaintiff's cell phone."). The Court appears to rely upon the *Krakauer* decision for this "pattern" theory, but the violations in that case concerned the same agent and the same type of TCPA violation. A "pattern" formed by disconnected and widely varying incidents by different entities is simply inadmissible under Federal Rule of Evidence 404, and thus could not provide the basis for a summary judgment ruling on any issue in the case.[6]

The telephone calls at issue in *Aranda* were entirely different from those at issue in this case. They ended years before the calls at issue in this case, did not use anything like the VVT technology, did not involve CWT, and were not placed by VVT. A different entity allegedly used an autodialer to place those telephone calls from August 2011 to August 2012, and the calls featured prerecorded messages that requested "participation in various short political surveys."

---

[6] *See, e.g.*, *United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) ("Pattern evidence is propensity evidence, and it is inadmissible unless the pattern shows some meaningful specificity or other feature that suggests identity or some other fact at issue."); *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-CV-5836, 2017 WL 2178504, *12 (N.D. Ill. May 16, 2017) ("Generic patterns are insufficient for purposes of *modus operandi* because allowing such evidence would gut the Rule, rending it useless as a check on character evidence that would otherwise be inadmissible.") (internal quotation omitted); *Crawford v. Yellow Cab Co.*, 572 F. Supp. 1205, 1209 (N.D. Ill. 1983) (rejecting evidence of "similar but disconnected instances of misconduct" to establish a "generalized corporate pattern or practice").

*Aranda*, 179 F. Supp. 3d at 820. The *Aranda* calls thus were alleged to violate the TCPA in a separate and irrelevant way here from whether the VVT "soundboard" technology uses a "prerecorded voice . . . to deliver a message." Moreover, there was no determination in *Aranda* of any violation by CCL, Lambert, or Verrillo, or of any liability under the TCPA. Plaintiffs in *Aranda* sought "summary judgment only regarding whether the calls made to the named plaintiffs and the two certified classes were unlawful calls under the TCPA," which the court granted only as to the cellular phone class. 179 F. Supp. 3d at 823 & 835. The court, however, found that there was a genuine issue of material fact as to any basis of vicarious liability against CCL for the calls. *Id.* at 833. ***There is no order finding CCL violated the TCPA***. *Aranda* thus cannot evidence a "pattern" of illegality. But, as discussed, even if any violations by CCL had been found, they would have no relevance to whether the totally different type of violation of the TCPA alleged in this case by use of totally different technology by a different company pursuant to a contract with yet another different company was willful or knowing.

Nor is there any evidence to justify the trebling of damages "to deter future violations." Order at 22 (citing *Krakauer*, *supra*). Nothing like the facts of the *Krakauer* case – which concerned only "do not call list" violations of the TCPA – appear in the record here. There is no evidence of "many occasions on which [CWT] noted [VVT's] noncompliance and failed to act," broken promises by CWT to "forty-six state attorneys general . . . that it would enforce TCPA compliance by its marketers," of "[CWT] repeatedly look[ing] the other way" "when it learned of [VVT's] noncompliance," or of "the half-hearted way in which [CWT] responded to consumer complaints . . . ." 925 F.3d at 662-63. Unlike the obvious "do not call" violations in *Krakauer*, there is no evidence that CWT knew, tolerated, or encouraged violations. Again, when viewed in the light most favorable to CWT, it is plain that at all relevant times, the only

16

available regulatory guidance was that the VVT calls did not violate the dual TSR and TCPA regime on the use of prerecorded messages and voices in telemarketing.[7]

Rather than find no admissible evidence in support of a willful or knowing violation or, at most, a dispute of fact given the state of the law at the time for the jury to resolve, the Order decided the question of a willful or knowing violation (but mostly based upon irrelevant, incorrect, and/or inadmissible matters). Even if Plaintiffs had presented admissible evidence about CWT's knowledge or willfulness regarding the calls placed by VVT, a jury must answer those questions. Accordingly, the granting of summary judgment on this issue was erroneous and should be reconsidered.

## V.  THE ENTRY OF SUMMARY JUDGMENT ON THE TCPA CLAIM WAS PREMATURE AND SHOULD BE RECONSIDERED

Finally, and in any event, the Order prematurely enters summary judgment for the class on their TCPA claim. Plaintiffs sought ***partial*** summary judgment only as to four items: (1) whether VVT used prerecorded voice; (2) whether CWT was vicariously liable; (3) as to CWT's affirmative defense of consent; and (4) whether CWT's conduct was "willful" or "knowing." There are still numerous affirmative defenses that must be decided before any judgment can be entered on the TCPA claim, and therefore, as a matter of the law of summary judgment motion practice, even if nothing else in the Order is revised, the Order's entry of summary judgment should be reconsidered.

---

[7] To the extent the Court relied upon the Illinois Consent Decree in finding a willful or knowing violation, which does not appear to be the case from the Order, the same reasons would render such reliance erroneous. Nothing in the Illinois Consent Decree concerns the TCPA or TCPA compliance. Plaintiffs used it solely to attack the content of the marketing in the VVT calls, but there is no such right of action under the TCPA. Nor would a violation of the Illinois Consent Decree demonstrate that CWT "willfully or knowingly violated this subsection or the regulations prescribed under this subsection," (47 U.S.C. § 227(b)(3)(C)), a qualification that plainly does not include the Illinois Consent Decree.

"When summary judgment is sought on issues 'where the nonmovant bears the burden of proof at trial,'" courts in this District, in line with Seventh Circuit case law, have required the movant to meet an initial burden of production as to the inapplicability of asserted affirmative defenses before judgment can be entered. *See Navistar Int'l Transp. Corp. v. Freightliner Corp*., No. 96 C 6922, 1998 WL 786388, *1-2 (N.D. Ill. Nov. 6, 1998) (citing *Logan v. Commercial Union Ins. Co*., 96 F.3d 971, 978 (7th Cir. 1996)); *Amwest Sur. Ins. Co. v. Szabo*, No. 00 C 2716, 2001 WL 1230643, *4 (N.D. Ill. Oct. 11, 2001). "Thus, a moving party cannot simply ignore an affirmative defense; it must initially demonstrate the lack of a genuine issue of material fact as to that defense." *Amwest Sur.*, 2001 WL 1230643 at *4. Where a plaintiff movant fails to meet this burden regarding the other side's affirmative defenses, including by "simply ignoring those defenses," judgment cannot be entered. *Navistar*, 1998 WL 786388 at *2.

It is recognized that only "[w]hen the plaintiff moves for summary judgment on an entire claim" is it considered to be "necessarily also moving for summary judgment on an affirmative defense to that claim" such that it is "incumbent on a defendant" to make a showing to avoid summary judgment. *Legg v. PTZ Ins. Agency, Ltd.*, No. 14 C 10043, 2018 WL 3869970, *4 (N.D. Ill. Aug. 15, 2018) (quoting *United Cent. Bank v. Wells Street Apartments, LLC*, 957 F.Supp.2d 978, 987-88 (E.D. Wisc. 2013)). *See also Sunshine Imp & Exp Corp. v. Luxury Car Concierge, Inc*., No. 13 C 8925, 2015 WL 2193808, *3 (N.D. Ill. May 7, 2015) ("By moving for summary judgment on an entire claim, the plaintiff implicitly contends there is no genuine dispute about any fact material to the defendant's affirmative defense."). In this case, however, Plaintiffs moved only for ***partial*** summary judgment, and addressed only CWT's affirmative defenses based on lack of consent. *See* Dkt. No. 225 at 1; Dkt. No. 82 at Aff. Def. Nos. 10, 12, 13, 15. Plaintiffs "simply ignored" the other Affirmative Defenses, including lack of standing,

laches, waiver, ratification, failure to join necessary and indispensable parties, lack of actual damages, failure to mitigate damages, that "the TCPA violates CWT's First Amendment right to free speech," the class action violates the Eighth Amendment, that the calls at issue did not constitute telephone solicitations or unsolicited advertisements. *See* Dkt. No. 82 at Aff. Def. Nos. 3, 11, 14, 18, 20, 24, 25, 28, 29. Nowhere, for example, did Plaintiffs address the Twenty-Fourth Affirmative Defense that the TCPA violates the First Amendment. The TCPA exempts all calls using an automatic telephone dialing system or prerecorded voice to cell phones or residential telephone lines if they are "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1), 129 Stat. 584, 588 (2015) (amending 47 U.S.C. § 227(b)(1)(A)(iii) & (b)(1)(B)). The Fourth Circuit has held that the statutory exemption "fails to satisfy strict scrutiny, constitutes an unconstitutional content-based restriction on speech, and therefore violates the Free Speech Clause" of the First Amendment. *See Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 162 (4th Cir. 2019). The Supreme Court recently granted *certioriari* to review the Fourth Circuit's ruling, which also includes the question of whether the statutory exemption is severable, or if the entirety of the prohibition on the use of prerecorded voices and automatic telephone dialing systems is invalidated. *See Barr v. Political Consultants*, No. 19-631, 2020 WL 113070 (U.S. Jan. 10, 2020).

When concluding that an exception to a speech restriction shows that the restriction is unconstitutional, courts have consistently invalidated the restriction – in this case, 47 U.S.C. § 227(b)(1)'s prohibition on the use of prerecorded voices – and not just the exception (which

19

would, ironically, result in more restricted speech).[8] The constitutionality of the TCPA has yet to be decided, among numerous other affirmative defenses asserted by CWT. Plaintiffs simply ignored those defenses and moved only as to a few regarding consent in seeking partial summary judgment. That decision has consequences and failed to evidence a genuine issue of material fact as to the entirety of the TCPA claim or liability thereon, especially in the absence of establishing no genuine issue of material fact as to CWT's affirmative defenses. As there remain a number of issues to be decided, the Order's "ent[ry of] summary judgment for the class on their TCPA claim," (Order at 28), was premature and should be reconsidered.

## **CONCLUSION**

For the foregoing reasons, the Court should reconsider its Order and deny Plaintiffs' Motion for Partial Summary Judgment.

Dated: January 27, 2020

GREENSPOON MARDER LLP

*/s/ Roy Taub*
JEFFREY A. BACKMAN, ESQ
(Fla. Bar No. 0662501)
jeffrey.backman@gmlaw.com
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
richard.epstein@gmlaw.com

---

[8] *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592-93 (1983); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795 (1978); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 (1972). *See also*, *e.g.*, *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072-73 (3d Cir. 1994) (declining to sever unconstitutional exception to ordinance regarding content of advertising signs, even though "the rest of the statute could surely function independently," because "[e]liminating the offending exception would mean that we would be requiring the State to restrict more speech than it currently does"); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) (criticizing the district court for invalidating "only the exemption" to a permit requirement because that leaves plaintiff "in a worse position than if the City had prevailed, and thus the permit requirement "must also be declared unconstitutional as it exists in this statutory framework").

ROY TAUB, ESQ.
(Fla. Bar No. 116263)
roy.taub@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

and

TABET DIVITO & ROTHSTEIN LLC
Timothy Hudson
The Rookery Building
209 South LaSalle St., Suite 700
Chicago, IL 60604
(312)762-9450 (Telephone)
(312)762-9451 (Facsimile)

*Attorneys for Defendant Consolidated World
Travel, Inc. d/b/a Holiday Cruise Line*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via ECF on January 27, 2020.

*/s/ Roy Taub*
ROY TAUB, ESQ